**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Gary Peterson, Chris Nakashima, John English, Jaquetta English, LT-1 Exchange Trust, LT-2 Exchange Trust, LT-3 Exchange Trust, LT-4 Exchange Trust, LT-5 Exchange Trust, LT-6 Exchange Trust, LT-7 Exchange Trust, LT-8 Exchange Trust, LT-9 Exchange Trust, LT-12 Exchange Trust, LT-14 Exchange Trust, LT-15 Exchange Trust, LT-17 Exchange Trust, LT-18 Exchange Trust, LT-19 Exchange Trust, LT-20 Exchange Trust, on their own behalf and on behalf of all others similarly situated, | § § § § § § § § § § § § § § § § § § | Civil Action No. 4:25-cv-2761 <br><br> **Jury Demanded** |
| **Plaintiffs,** | § § | |
| **VS.** | § § § | |
| David R. Jones, Elizabeth Carol Freeman, The Law Office of Liz Freeman, PLLC, Jackson Walker, LLP, and Porter Hedges, LLC, | § § § § | |
| **Defendants,** | § § | |

**DEFENDANTS', THE LAW OFFICE OF LIZ FREEMAN, PLLC**
**AND ELIZABETH CAROL FREEMAN,**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and (6)**

TO THE HONORABLE CHIEF U.S. DISTRICT JUDGE ALIA MOSES:

COMES NOW, THE LAW OFFICE OF LIZ FREEMAN, PLLC ( "Freeman PLLC") and ELIZABETH CAROL FREEMAN ("Freeman") (Freeman PLLC and Freeman collectively referred to as the "Freeman Defendants"), and make this their Defendants', The Law Office of Liz Freeman, PLLC and Elizabeth Carol Freeman, Motion to Dismiss Pursuant to Fed. R. Civ. P, 12(b)(1) and (6) and would show as follows:

1

## **TABLE OF CONTENTS**                                    **Page**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

    A.  GWG's business and financial downfall caused by Bradley Heppner,
        Murray Holland, and BEN.  . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

    B.  GWG's Chapter 11 filing, mediation, and Plan confirmation. . . . . . . . . . .    18

    C.  The post-confirmation Litigation Trust is established under the Plan. . . . . .    21

    D.  The post-confirmation Wind Down Trust is established under the Plan. . . .    23

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24

    A.  The Plaintiffs lack standing, and their claims should be dismissed for
        lack of jurisdiction under Fed. R. Civ. P. 12(b)(1).  . . . . . . . . . . . . . . .    24

       i.  Standard of review under Rule 12(b)(1) and law of standing. . . . . . . .    24

       ii.  The claims belong to the Litigation Trust, and only the Trustee of the
          Litigation Trust has standing to pursue the claims. . . . . . . . . . . . . . .    26

    B.  The Plaintiffs claims should be dismissed for failure to state a claim
        under Fed. R. Civ. P. 12(b)(6).  . . . . . . . . . . . . . . . . . . . . . . . . .    28

       i.  Standard of Review under Rules 12(b)(6) and 9(b). . . . . . . . . . . . .    28

       ii.  All of Plaintiffs' claims should be dismissed, because the Complaint
          does not adequately plead causation of damages. . . . . . . . . . . . . . .    31

       iii.  Plaintiffs' Section 1692(c) RICO claims should be dismissed.  . . . . .    32

          a.  Plaintiffs' RICO claims should be dismissed, because there are
             insufficient factual allegations to support the existence of an enterprise.    32

          b.  The Plaintiffs' RICO claim with respect to the predicate act of
             obstruction of justice should be dismissed, because that claim
             can only apply to Judge Jones.  . . . . . . . . . . . . . . . . . . . . . . .    36

c.  The Plaintiffs' RICO claim with respect to the predicate act
    of mail fraud should be dismissed, because the acts are
    all lawful judicial actions relying on the common allegation
    of failure to disclose the relationship with no specific allegation
    as to how the pleadings constituted fraud. . . . . . . . . . . . . . . . . . . . . .    37

d.  The Plaintiffs' RICO claim with respect to the predicate
    act of wire fraud should be dismissed, because the acts are all
    lawful judicial actions relying on the common allegation
    of failure to disclose the relationship with no specific allegation
    as to how the pleadings constituted fraud. . . . . . . . . . . . . . . . . . . . .    38

e.  The Plaintiffs' RICO claim with respect to the predicate act
    of honest services should be dismissed, because the statute
    has been held unconstitutional in these instances and
    there are insufficient allegations to support the claim. . . . . . . . . . .    38

f.  The Plaintiffs' RICO claim with respect to the predicate act
    of bankruptcy fraud should be dismissed, because there
    are no specific allegations of what was false in a pleading
    or that Freeman signed or filed a declaration or application
    to approve employment.    . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    39

g.  The Plaintiffs' RICO claims should be dismissed, because
    the Plaintiffs have failed to plead injury and causation necessary
     to establish standing.    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    40

iv. Plaintiffs' Section 1962(d) RICO conspiracy claims should
    be dismissed.    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    41

a.  There are no specific allegations of an agreement
    to commit predicate acts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    41

b.  The Plaintiffs have failed to plead injury and
    causation necessary to establish standing. . . . . . . . . . . . . . . . . . . .    42

v.  The Plaintiffs' common law fraud claim should be dismissed,
    because there are no allegations of any false representation
    made directly by either of the Freeman Defendants. . . . . . . . . . . . . . . .    42

vi. The Plaintiffs' breach of fiduciary duty claim should be dismissed,
    because Freeman did not owe Plaintiffs a fiduciary duty
    encompassing disclosure of personal relationships and because
    Plaintiffs have not pleaded how the business judgment rule
    does not apply.    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    47

vii. The Plaintiffs' aiding and abetting breach of fiduciary duty claim
should be dismissed, because the Complaint fails to allege
specific facts to support elements of the claim. . . . . . . . . . . . . . . . . . . . 48

viii. The Plaintiffs' negligent misrepresentation claim should
be dismissed, because the Complaint fails to allege
any affirmative misrepresentation of specific false information
made by the Freeman Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

ix. The Plaintiffs' professional negligence claim should be dismissed,
because the claim is barred by attorney immunity and the
judicial-proceedings privilege.   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

x.   The Plaintiffs' common law civil conspiracy claim should be dismissed,
because the Complaint fails to allege specific facts to show the
agreement or the meeting of the minds.  . . . . . . . . . . . . . . . . . . . . . . . . 51

xi. The Plaintiffs are barred from seeking punitive or exemplary damages
against Freeman, because the Wind Down Trust Agreement bars
recovery of those damages.   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

CONCLUSION AND PRAYER         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

CERTIFICATE OF SERVICE        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

APPENDIX

Exhibit 1 - Disclosure Statement for the Debtors' Further Modified Second
Amended Joint Chapter 11 Plan, Submitted by the Debtors, the
Bondholder Committee, and L Bond Management, LLC as Co-
Sponsors. (GWG Doc. No. 1698)[1].

Exhibit 2 - Unsealed Complaint in *Michael L. Goldberg, Trustee of the GWG
Litigation Trust v. Bradley K. Heppner et al*, Adv. Pro. No. 24-3090, in
the United States Bankruptcy Court for the Southern District of Texas,
Houston Division. (Adv. Pro. 24-3090, Doc. No. 3).

Exhibit 3 - Motion of the Debtors and Special Committee of the Board of GWG
Holdings, Inc. for Entry and Order (I) Appointing a Judicial Mediator,
(II) Requiring Parties to Maintain Confidentiality of Mediation
Communications, and (III) Granting Related Relief. (GWG Doc. No.
1128).

---

[1] In this motion, references to "GWG Doc. No. __" refer to documents on the docket in *In re GWG Holdings, Inc., et al*, 22-90032, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

Exhibit 4 - Findings of Fact, Conclusions of Law, and Order Confirming Debtors'
Further Modified Second Amended Joint Chapter 11 Plan. (GWG Doc.
No. 1952).

Exhibit 5- Order Authorizing Debtors to Sell Beneficient Shares Free and Clear of
All Liens, Claims, and Encumbrances, and Other Interests Following
Consummation of De-Spac Transactions. (GWG Doc. No. 1957)

Exhibit 6 - Order Authorizing and Approving Settlement. (GWG Doc. No. 2305).

Exhibit 7 - Settlement Agreement with Fifth Season Operating, L.P.

Exhibit 8 - Transcript of November 14, 2022, Hearing on Joint Emergency Motion
for Status Conference [1055].

## **TABLE OF AUTHORITIES**

**Cases:**

*1st & Trinity Super Majority, LLC v. Milligan*,
    657 S.W.3d 349 (Tex. App. – El Paso 2022, no pet.).          50 fn. 172

*ABC Arbitrage Plaintiffs Group v. Tchuruk*,
    291 F.3d 336 (5th Cir. 2002).  . . . . . . . . . . . . . . . . . . . . . . . .  43 fn. 147

*Abraham v. Singh*,
    480 F.3d 351 (5th Cir. 2007).  . . . . . . . . . . . . . . . . . . . . . . . .  41 fn. 142

*Agar Corp. v. Electro Cirs. Int'l, LLC*,
    580 S.W.3d 136 (Tex. 2019).  . . . . . . . . . . . . . . . . . . . . . . . .  51 fn. 175,
                                              52 fn. 176

*Allen v. Wright*,
    468 U.S. 737, 104 S.Ct. 3315 (1984). . . . . . . . . . . . . . . . . . . . . . .  25 fn. 79

*Allstate Ins. Co. v. Donovan*,
    C.A. No. H-12-0432, 2012 WL 2577546
    (S.D. Tex. July 3, 2012).  . . . . . . . . . . . . . . . . . . . . . . . .  30 fn. 111

*Anza v. Ideal Steel Support Corp.*,
    547 U.S. 451, 126 S.Ct. 1991 (2006). . . . . . . . . . . . . . . . . . . . . . .  40 fn. 138

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937 (2009). . . . . . . . . . . . . . . . . . . . . . .  28, 29 fn. 101-
                                              104, 30, 31 fn.
                                              112, and 41

*Atkinson v. Anadarko Bank & Trust Co.*,
    808 F.2d 438 (5th Cir.),
    *cert. denied,* 483 U.S. 1032, 107 S.Ct. 3276 (1987). . . . . . . . . . . . .  34 fn. 134

*Beck v. Prupis*,
    529 U.S. 494, 120 S.Ct. 1608 (2000). . . . . . . . . . . . . . . . . . . . . . .  42 fn. 143

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S.Ct. 1955 (2007). . . . . . . . . . . . . . . . . . . . . . .  29 fn. 95, 99,
                                                100, and 102,
                                              30 fn. 105,
                                                31 fn. 112, 32
                                                fn. 114, and 41

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
    343 F.3d 719 (5th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . .     31 fn. 108,
                                                  43 fn. 144

*Boudreaux v. La. State Bar Ass'n*,
    3 F.4th 748 (5th Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . .     25 fn. 72

*Boyle v. United States*,
    556 U.S. 938, 129 S.Ct. 2237 (2009). . . . . . . . . . . . . . . . . . . . . . .     33 fn. 123

*Bradford v. Vento*,
    48 S.W.3d 749 (Tex. 2001). . . . . . . . . . . . . . . . . . . . . . . .     44 fn. 150

*Campbell v. City of San Antonio*,
    43 F.3d 973 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . .     29 fn. 103

*Center for Inquiry, Inc. v. Warren*,
    845 Fed. App'x 325 (5th Cir. 2021). . . . . . . . . . . . . . . . . . . . . . .     25 fn. 76

*Collins v. Zolnier*,
    No. 09-17-00418-CV, 2019 WL 2292333
    (Tex. App. – Beaumont May 30, 2019, pet. denied). . . . . . . . . . . . .     51 fn. 174

*Crest Const. II, Inc. v. Doe*,
    660 F.3d 346 (8th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . .     30 fn. 107, 110
                                                  33 fn. 123

*Crowe v. Henry*,
    43 F.3d 198 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . .     41 fn. 142

*Cuvillier v. Taylor*,
    503 F.3d 397 (5th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . .     30 fn. 105

*D&T Partners, L.L.C. v. Baymark Partners Management, L.L.C.*,
    98 F.4th 198 (5th Cir.), *cert. denied*, 145 S.Ct. 264 (2024). . . . . . . .     33 fn. 118

*Dahlgren v. First Nat'l Bank of Holdrege*,
    533 F.3d 681 (8th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . .     32 fn. 116

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332, 126 S.Ct. 1854 (2006). . . . . . . . . . . . . . . . . . . . . . .     26 fn. 85

*Delta Truck & Tractor, Inc. v. J.I. Case Co.*,
    855 F.2d 241 (5th Cir.1988),
    *cert. denied*, 489 U.S. 1079, 109 S.Ct. 1531 (1989). . . . . . . . . . . . .     33 fn. 124

*Dorsey v. Portfolio Equities, Inc.*,
    540 F.3d 333 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . .     30 fn. 109

*Elliott v. Foufas*,
    867 F.2d 877 (5th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . .     35 fn. 125, 126

*FDIC v. Benson*,
    867 F.Supp. 512 (S.D. Tex. 1994). . . . . . . . . . . . . . . . . . . . . . . .     47 fn. 163

*FDIC v. Brown*,
    812 F.Supp. 722 (S.D. Tex. 1992). . . . . . . . . . . . . . . . . . . . . . . .     47 fn. 163

*FDIC v. Schreiner*,
    892 F.Supp. 869 (W.D. Tex. 1995). . . . . . . . . . . . . . . . . . . . . . . .     47 fn. 163

*Fed. Land Bank Ass'n v. Sloane*,
    825 S.W.2d 439 (Tex. 1991). . . . . . . . . . . . . . . . . . . . . . . .     49 fn. 168

*Fernandez-Lopez v. Hernandez*,
    2020 WL 9396487 (W.D. Tex. Nov. 20, 2020). . . . . . . . . . . . . . . .     36 fn. 130

*Ferrer v. Chevron Corp.*,
    484 F.3d 776 (5th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . .     29 fn. 97,
        31 fn. 112

*Foval v. First Nat'l Bank of Commerce*,
    841 F.2d 126 (5th Cir.1988). . . . . . . . . . . . . . . . . . . . . . . .     33 fn. 124

*Frankoff v. Norman*,
    448 S.W.3d 75 (Tex. App. – Houston [14th Dist.] 2014, no pet.). . .     44 fn. 148

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
    528 U.S. 167, 120 S.Ct. 693 (2000). . . . . . . . . . . . . . . . . . .     26 fn. 83, 84

*Futrell v. JPMorgan Chase Bank, NA*,
    No. 3:19-cv-054-S-BH, 2019 WL 3948222
    (N.D. Tex. July 19, 2019),
    *adopted by* 2019 WL 3947713 (N.D. Tex. Aug. 21, 2019). . . . . . . .     30 fn. 107, 109

*FW/PBS, Inc. v. Dallas*,
    493 U.S. 215, 110 S.Ct. 596 (1990). . . . . . . . . . . . . . . . . . . . . . . .     26 fn. 81

*Gamboa v. Velez*,
    457 F.3d 703 (7th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . .     32 fn. 117

*Guidry v. Bank of LaPlace,*
    954 F.2d 278, 281 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . .   29 fn. 98

*Handeen v. Lemaire,*
    112 F.3d 1339 (8th Cir.1997). . . . . . . . . . . . . . . . . . . . . . . . .   36 fn. 129

*Haynes & Boone, LLP v. NFTD, LLC,*
    631 S.W.3d 65 (Tex. 2021). . . . . . . . . . . . . . . . . . . . . . . . .   50 fn. 169

*Hemi Group, LLC v. City of New York,*
    559 U.S. 1, 130 S.Ct. 983 (2010). . . . . . . . . . . . . . . . . . . . . . . . .   40 fn. 140

*Hitt v. City of Pasadena*,
    561 F.2d 606 (5th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . .   24 fn. 70

*Holmes v. Securities Investor Protection Corporation*,
    503 U.S. 258, 112 S.Ct. 1311 (1992). . . . . . . . . . . . . . . . . . . . . . . . .   40 fn. 139

*Home Builders Ass'n of Miss., Inc. v. City of Madison,*
    143 F.3d 1006 (5th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . .   25 fn. 71, 73

*Immobiliere Jeuness Establissement v. Amegy Bank Nat'l Ass'n,*
    525 S.W.3d 875 (Tex. App.—Houston [14th Dist.] 2017, no pet.).   48 fn. 165

*In re Capco Energy, Inc.*,
    Bankr. No. 08-32282, Adv. No. 10-3349,
    2012 WL 253148 (Bankr. S.D. Tex. Jan. 25, 2012). . . . . . . . . . . . .   25 fn. 77

*In re Cleveland Imaging & Surgical Hospital, LLC*,
    26 F.4th 285 (5th Cir. 2022). . . . . . . . . . . . . . . . . . . . . . . . .   27 fn. 88

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
    668 F.3d 281 (5th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . .   25 fn. 75

*In re Great Lakes Dredge & Dock Co., LLC*,
    624 F.3d 201 (5th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . .   31 fn. 112

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . .   29 fn. 96

*In re Steed*,
    614 B.R. 395 (Bankr. N.D. Ga. 2020). . . . . . . . . . . . . . . . . . . . . . . . .   31 fn. 113

*In re Taxable Mun. Bond Sec. Litig.*,
    51 F.3d 290 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . .   40 fn. 137

*Jackson v. Nat'l Ass'n for Advancement of Colored People*,
    546 F.App'x 438 (5th Cir. 2013).   . . . . . . . . . . . . . . . . . . . . . . . .   40 fn. 136

*Jefferson v. Lead Indus. Ass'n, Inc.*,
    106 F.3d 1245, 1250 (5th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . .   29 fn. 103

*Joffroin v. Tufaro*,
    600 F.3d 235 (5th Cir. 2010).   . . . . . . . . . . . . . . . . . . . . . . . .   41 fn. 141

*K. Griff Investigations, Inc. v. Cronin*,
    633 S.W.3d 81 (Tex. App. – Houston [14th Dist.] 2021, no pet.). . .   49 fn. 168

*Kelly v. Nichamoff*,
    868 F.3d 371 (5th Cir. 2017).   . . . . . . . . . . . . . . . . . . . . . . . .   50 fn. 171

*Landry's, Inc. v. Animal Legal Def. Fund*,
    631 S.W.3d 40 (Tex. 2021).   . . . . . . . . . . . . . . . . . . . . . . . .   51 fn. 173

*Limestone Dev. Corp. v. Vill. of Lemont*,
    520 F.3d 797 (7th Cir. 2008).   . . . . . . . . . . . . . . . . . . . . . . . .   30 fn. 111

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555, 112 S. Ct. 2130 (1992). . . . . . . . . . . . . . . . . . . . . . .   25 fn. 79,
                                            26 fn. 82, 84

*Manax v. McNamara*,
    660 F. Supp. 657 (W.D. Tex. 1987),
    *aff'd*, 842 F.2d 808 (5th Cir. 1988).   . . . . . . . . . . . . . . . . . . . . . .   33 fn. 124,
                                            35 fn. 126

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*,
    369 F.3d 464 (5th Cir. 2004).   . . . . . . . . . . . . . . . . . . . . . . . .   29 fn. 96

*Massey v. Armco Steel Co.*,
    652 S.W.2d 932 (Tex. 1983).   . . . . . . . . . . . . . . . . . . . . . . . .   51 fn. 175

*Matter of Est. of Poe*,
    591 S.W.3d 607 (Tex. App. – El Paso 2019),
    *Aff'd in part, rev'd in part*,
    648 S.W.3d 277 (Tex. 2022).   . . . . . . . . . . . . . . . . . . . . . . . .   47 fn. 161,
                                            162

*Montesano v. Seafirst Commercial Corp.*,
    818 F.2d 423 (5th Cir.1987).   . . . . . . . . . . . . . . . . . . . . . . . .   33 fn. 124

*Morton S. Bouchard, III, et al v. David R. Jones, et al*,
    Civil Action No. 4:24-cv-0693 (S.D. Tex. Feb. 26, 2024). . . . . . . . .   14

*Nitro Distrib., Inc. v. Alticor, Inc.,*
    565 F.3d 417 (8th Cir. 2009).    . . . . . . . . . . . . . . . . . . . . . . .    32 fn. 115,
    33 fn. 119

*Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*,
    868 F.2d 740 (5th Cir. 1989).    . . . . . . . . . . . . . . . . . . . . . . .    41 fn. 141

*Price v. Pinnacle Brands, Inc.*,
    138 F.3d 602 (5th Cir. 1998).    . . . . . . . . . . . . . . . . . . . . . . .    40 fn. 136

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001).    . . . . . . . . . . . . . . . . . . . . . . .    24 fn. 70

*Reynolds v. Sanchez Oil & Gas Corp.*,
    No. 01-18-00940-CV, 2023 WL 8262764
    (Tex. App. – Houston [1st Dist.] Nov. 30, 2023, no pet.). . . . . . . . .    48 fn. 164

*Sedima S.P.R.L. v. Imrex Co.,*
    473 U.S. 479, 105 S.Ct. 3275 (1985). . . . . . . . . . . . . . . . . . . . . . .    33 fn. 119

*See Ins. Co. of N. Am. V. Morris*,
    981 S.W.2d 667 (Tex. 1998).    . . . . . . . . . . . . . . . . . . . . . . .    44 fn. 151

*Shaffer v. Williams*,
    794 F.2d 1030 (5th Cir.1986).    . . . . . . . . . . . . . . . . . . . . . . .    34 fn. 124

*Skilling v. U.S.*,
    561 U.S. 358, 130 S.Ct. 2895 (2010). . . . . . . . . . . . . . . . . . . . . .    38 fn. 134

*Southland Sec. Corp. v. Inspire, Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004).    . . . . . . . . . . . . . . . . . . . . . . .    43 fn. 145

*Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*,
    237 S.W.3d 379 (Tex. App. – Houston [14th Dist.] 2007, no pet.).    44 fn. 149

*Sneed v. Webre*,
    465 S.W.3d 169 (Tex. 2015).    . . . . . . . . . . . . . . . . . . . . . . .    47 fn. 160,
    161

*Spokeo, Inc. v. Robins*,
    578 U.S. 330, 136 S. Ct. 1540 (2016),
    *as revised* (May 24, 2016).    . . . . . . . . . . . . . . . . . . . . . . .    25 fn. 79,
    26 fn. 87, 88

*Stockman v. FEC*,
    138 F.3d 144 (5th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . .   25 fn. 75

*Tele-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
    975 F.2d 1134 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . .   41 fn. 142

*Tilton v. Marshall*,
    925 S.W.2d 672 (Tex. 1996). . . . . . . . . . . . . . . . . . . . . . . . .   52 fn. 176

*TransUnion LLC v. Ramirez*,
    594 U.S. 413, 141 S. Ct. 2190 (2021). . . . . . . . . . . . . . . . . . . . . . . . .   26 fn. 80

*Tuchman v. DSC Commc'ns Corp.*,
    14 F.3d 1061 (5th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . .   30 fn. 109

*United States v. Connolly,*
    341 F.3d 16 (1st Cir.2003). . . . . . . . . . . . . . . . . . . . . . . . .   33 fn. 120, 122

*United States v. Kragness,*
    830 F.2d 842 (8th Cir.1987). . . . . . . . . . . . . . . . . . . . . . . . .   34 fn. 124

*United States v. Lee,*
    374 F.3d 637 (8th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . .   34 fn. 124

*United States v. Nagin,*
    810 F.3d 348 (5th Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . .   38 fn. 134

*United States v. Nascimento*,
    491 F.3d 25 (1st Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . .   33 fn. 122

*United States v. Turkette*,
    452 U.S. 576, 101 S.Ct. 2524 (1981). . . . . . . . . . . . . . . . . . . . . . . . .   33 fn. 120, 121 35 fn. 127

*U.S. ex rel Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . .   32 fn. 114

*Van Deelan v. Jones*,
    C.A. No. 4:23-cv-3727 (S.D. Tex. Oct. 4, 2023). . . . . . . . . . . . .   14 fn. 3, 15, 15 fn. 5, 54

*Walters v. McMahen*,
    684 F.3d 435 (4th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . .   40 fn. 139, 42 fn. 143

*Whelan v. Winchester Prod. Co.*,
    319 F.3d 225 (5th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . 35 fn. 128

*Williams v. WMX Technologies, Inc.*,
    112 F.3d 175 (5th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . 30 fn. 111,
                                                     36 fn. 133,
                                                     43 fn. 145, 146

*Youngkin v. Hines*,
    546 S.W.3d 675 (Tex. 2018). . . . . . . . . . . . . . . . . . . . . . . . . 50 fn. 172

**Constitution, Statutes and Rules:**

18 U.S.C. § 1503(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36 fn. 131
18 U.S.C. § 1961(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33 fn. 120
18 U.S.C. § 1962(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32 fn. 115, 33,
                                                     41
18 U.S.C. § 1962(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 42
Fed. R. Civ. P. 8(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28 fn. 94, 41
Fed. R. Civ. P. 9(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 30 fn. 105,
                                                     31, 36, 41, 42,
                                                     47, 52
Fed. R. Civ. P. 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25 fn. 78
Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28 fn. 94, 29,
                                                     30, 31, 32, 41,
                                                     50
Fed. R. Civ. P. 12(h)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25 fn. 78
U.S. Const., Art. III § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25 fn. 74

**Treatises and Articles:**

Scalia, The Doctrine of Standing as an Essential Element
    of the Separation of Powers,
    17 Suffolk U. L. Rev. 881, 882 (1983). . . . . . . . . . . . . . . . . . 26 fn. 80

# I.

## <u>INTRODUCTION</u>

1. If this motion feels like "déja vu all over again"[2], well, it is. The déja vu is caused by the complaint which is nearly identical to the complaint filed by Plaintiffs' counsel in *Michael D. Van Deelan v. David R. Jones, et al*, Civil Action No. 4:23-cv-3729 (S.D. Tex. Oct. 4, 2023) and *Morton S. Bouchard, III, et al v. David R. Jones, et al*, Civil Action No. 4:24-cv-0693 (S.D. Tex. Feb. 26, 2024). Thus, much of the argument and briefing in this motion mirrors Freeman's arguments and briefing in those two earlier filed cases. The Plaintiffs' Complaint rests primarily on the conclusory allegations that Jones and Freeman were in a romantic relationship during the time GWG's bankruptcy was pending, and no one disclosed the existence of the romantic relationship. This is not enough to maintain the Plaintiffs' causes of action against the Freeman Defendants.

2. This Court has already dismissed these same claims against the Freeman Defendants in the *Van Deelan* case.[3] Despite this previous dismissal, The Bandas Law Firm is back at it, raising the same claims, based on the same conclusory allegations. There is one critical difference between this case and the *Van Deelan* and *Broussard* cases that weighs against the Plaintiffs' duplicative claims – Judge Jones was not the bankruptcy judge presiding over GWG's bankruptcy case - Judge Marvin Isgur was. The Plaintiffs are now asking this Court to unwind the fruits of a voluntary mediation, a confirmed plan of reorganization in which the Plaintiff Trusts were co-proponents[4], and the Litigation Trust and Wind Down Trust that were established under the confirmed plan. This Court should reject the Plaintiffs' brazen request.

---

[2] Attributed to the timeless Lawrence Peter "Yogi" Berra, catcher and later manager and coach of the New York Yankees.
[3] *Van Deelan v. Jones et al*, C.A. No. 4:23-cv-3729, Doc. No. 101, p. 1.
[4] Through their agent, L Bond Management.

3.    This Court warned The Bandas Law Firm in connection with a motion for sanctions in *Van Deelan* that they "should know the limits of Article III standing. Yet across hundreds of pages of briefing, they advance a theory of the Plaintiff's injury that contradicts binding precedent and leaves this Court without jurisdiction over almost all of the Plaintiff's claims."[5] This Court held that Van Deelan's claim was not frivolous, but it admonished "Mr. Clore and Mr. West to diligently review the facts and the relevant law in all future filings." And yet here we are again. The Bandas Law Firm has now filed another complaint that flies in the face of Article III standing. The Bandas Law Firm is attempting to pull one over on this Court by raising the same arguments that this Court has already rejected in a well-reasoned 38-page opinion.

## II.

## **FACTUAL BACKGROUND**

**A. GWG's business and financial downfall caused by Bradley Heppner, Murray Holland and BEN.**

4.    GWG Holdings, Inc. and its affiliates[6] operated as a financial services firm that has specialized in life settlement assets.[7] To help finance its business, GWG Holdings, Inc. and GWG Life, LLC issued Public L Bonds.[8] GWG was operating profitably until January of 2018.[9] It then stumbled upon a group of companies dominated by Bradley K. Heppner ("Heppner") and doing business as Beneficient, which  fell under the umbrella of The Beneficient Company Group, L.P. (together with its general partner and wholly subsidiaries, referred to as "BEN").[10]

---

[5] *Van Deelan*, C.A. No. 4:23-cv-3729, Doc. No. 101, p. 36.

[6] The debtors in the Chapter 11 Cases were: GWG Holdings, Inc., GWG Life, LLC, GWG Life USA, LLC, GWG DLP Funding IV, LLC, GWG DLP Funding Holdings VI, LLC, and GWG DLP Funding VI, LLC. (the "Debtors" or "GWG").

[7] App'x Ex. 1, p. 64.

[8] App'x Ex. 1, p. 14 fn. 6.

[9] App'x Ex. 2, p. 10 ¶ 7.

[10] App'x Ex. 2, p. 8 ¶ 2.

5.  BEN was founded by Heppner sometime in the 2015 – 2017 timeframe. Heppner developed the business plan that was ultimately to become BEN's business. "BEN's business plan was to earn fees and interest by operating a "fund of funds" type investment business—through a complex network of related trusts—that would obtain illiquid alternative assets from mid-to-high net worth individuals and smaller institutions holding alternative assets (e.g., limited partnership interests in private equity funds), for which there is not an established secondary market."[11] BEN had minimal capital and was losing money – until it met GWG and convinced it to enter into transactions with it.

6.  The first liquidity transaction BEN engaged in was on or about September 1, 2017, "when BEN and MHT Financial, L.L.C. ("MHT Financial") entered into agreements to provide liquidity in exchange for the economic rights to several portfolios of alternative assets from various third-party sellers. MHT Financial, led by Murray Holland, served as middleman to facilitate the transfer of these secondary assets in exchange for what the sellers expected would be cash that they could then distribute to investors before winding down their funds. The parties structured the transaction so that MHT Financial, as buyer, could purchase assets from a seller and immediately settle them in an "Exchange Trust" (aka "Seller Trust") whose first act would be to exchange the economic interests in those assets for BEN common units (the "BEN Units")."[12] The BEN units were then to be auctioned in order to pay the sellers. BEN announced that GWG was the "winner" of the auction, "which consisted of $150 million cash, $250 million in L Bonds, and $150 million of GWG common stock."[13] This "Exchange Transaction" was completed on December 28, 2018.[14]

---

[11] App'x Ex. 2, p. 10 ¶ 6.
[12] App'x Ex. 2, p. 36 ¶ 84.
[13] App'x Ex., p. 37 ¶ 89.
[14] App'x Ex. 1, p. 69.

7.  "Heppner and his allies seized control of GWG in April 2019 and then funneled nearly $300 million in cash from GWG" to BEN.[15] Heppner and BEN bought out GWG's founders and took over GWG, allowing BEN to "hijack GWG's capital raising machinery and use it to funnel cash into BEN."[16] Heppner then caused BEN and other entities he controlled to siphon at least $140 million into his own network of affiliated trusts and other entities.[17]

8.  After Heppner and BEN took over GWG, GWG's entire board resigned and was replaced by Heppner and other BEN designated directors. Each of the members of GWG's new board was also a BEN director. At the first board meeting, the new GWG board installed Heppner collaborator Murray Holland as GWG's new President and CEO.[18]

9.  On October 6, 2020, the Enforcement Division of the SEC served a subpoena on GWG informing GWG of a non-public, fact-finding investigation into GWG (the "SEC Investigation").[19] The subpoenas requested information related to the Company's securities, including the Bonds, information related to its SEC filings, information related to its relationship and communications with Beneficient and certain other parties, and information related to firm-wide policies and practices generally.[20]

10. In February 2021, GWG posed accounting questions to the SEC's Office of Chief Accountant.[21] Obtaining answers to those questions took almost six months. As a result, GWG was forced to suspend Bond sales. The consultation with the SEC's Office of Chief Accountant ended on July 26, 2021. GWG was not able to sell Bonds from April to December of 2021, but it had approximately $40 million per month in cash obligations for interest and principal on Bonds,

---

[15] App'x Ex. 2, p. 8 ¶ 2.
[16] App'x Ex. 2, p. 13 ¶ 14.
[17] App'x Ex. 1, p. 14 fn. 6.
[18] App'x Ex., p. 13 ¶ 14.
[19] App'x Ex. 1, p. 79.
[20] *Id.*
[21] *Id.*

premiums of the Policy Portfolio, operating expenses and dividends and redemptions of preferred stock, amounting to $350 million spent without capital influx.[22]

11. When GWG began to sell Bonds again, the SEC notified many of GWG's broker dealers that the SEC would issue subpoenas and document requests to them if they sold the Bonds. This caused GWG's Bond sales to be dramatically lower than anticipated, and the funds from sales were not sufficient to cover GWG payment obligations on Bonds. GWG defaulted on interest payments of approximately $10.35 million and principal payments of approximately $3.25 million due on January 15, 2022.[23]

12. The Initial Debtors' financial distress and ultimate financial failure was, by Plaintiffs' own admission throughout their Complaint, triggered by the SEC Investigation. The Plaintiffs admit in their complaint that "the company was forced to file Chapter 11 bankruptcy after the SEC conducted a lengthy and overreaching investigation."[24] The Plaintiffs repeatedly refer to the SEC Investigation as a "rogue" investigation[25] and further state in their complaint that "SEC staff . . . informed GWG's attorneys that . . . GWG was essentially running an illegal "Ponzi scheme."[26] The Plaintiffs point to the SEC's actions and threats as the sole cause of the financial downfall of the Initial Debtors.[27]

**B.  GWG's Chapter 11 bankruptcy filing, mediation, and Plan confirmation.**

13. In January and February of 2022, GWG engaged restructuring counsel, a financial advisor, and an investment banker in connection with identifying and evaluating restructuring alternatives.[28] GWG was forced to solicit bridge financing and debtor-in-possession financing

---

[22] *Id.*
[23] *Id.* at 80.
[24] Plaintiffs' Original Complaint, p. 7, ¶ 5.
[25] Plaintiffs' Original Complaint, p. 40, ¶ 76.
[26] Plaintiffs' Original Complaint, p. 40, ¶ 77.
[27] Plaintiffs' Original Complaint, p. 41, ¶ 79.
[28] App'x Ex. 1, pp. 82-83.

proposals. Three of the GWG entities[29] determined that it would be necessary to seek chapter 11 relief to address their liquidity issues and approve the debtor-in-possession financing proposal. On April 20, 2022, the Initial Debtors filed voluntary petitions for relief under the Bankruptcy Code.[30] On October 31, 2022, the DLP Entities[31] each filed petitions for bankruptcy under chapter 11 of the Bankruptcy Code on October 31, 2022.[32]

14. On May 9, 2022, the U.S. Trustee appointed the Bondholder Committee as a seven-member official committee of the Bondholders.[33] The Bondholder Committee was formed to represent the interests of the L Bonds holders. The Bondholder Committee selected Akin Gump Strauss Hauer & Feld LLP and Porter Hedges LLP as co-counsel. On July 5, 2022, Judge Isgur approved the Bondholder Committee's employment of its co-counsel.[34]

15. The Debtors' cases were heavily contested from the inception.  Significant questions arose. On November 14, 2022, the Chief Restructuring Officer, and the Debtors' Investigation Committee filed a Joint Emergency Motion for Status Conference due to concerns with regards to conduct of certain members of the board, including filing a false and misleading 8K with the Securities and Exchange Commission.[35]  The Court conducted a status conference on November 14, 2022.[36]  In that hearing, the Court ordered the board of directors suspended pending a hearing.[37] Prior to the hearing on the matter, Murray Holland and other board members resigned.[38] The

---

[29] The three initial debtors were GWG Holdings, Inc., GWG Life, LLC, and GWG Life USA, LLC (the "Initial Debtors").
[30] App'x Ex. 1, pp. 82-83.
[31] The three subsequent "DLP" debtors were GWG DLP Funding IV, LLC, GWG DLP Funding Holdings VI, LLC, and GWG DLP Funding VI, LLC.
[32] App'x Ex. 1, p. 96.
[33] GWG Doc. No. 214.
[34] GWG Doc. No. 507, 508.
[35] GWG Doc. No. 1055.
[36] App'x Ex. 8.
[37] App'x Ex. 8, pp. 32-33.
[38] GWG Doc. No. 1127.

Bondholder Committee aggressively represented the interests of the L Bond Holders. Separately, L Bond Management, LLC ("LBM") acted as agent for a number of L Bond Holders who reportedly held bonds in 24 identified trusts. LBM is a special purpose Delaware LLC holding a power of attorney to act as agent for the Plaintiff Trusts.[39] Among these are each of the trusts who are plaintiffs here (the "Plaintiff Trusts"). The ultimate economic beneficiaries of those Trusts were not disclosed on the record during the Debtors' cases. However, Murray Holland has been held out to be a settlor of and a former Trust Advisor of those Plaintiff Trusts. Disputes existed during the Bankruptcy cases regarding the legitimacy of the LBM (ie. Plaintiff Trusts') claims. The Bondholder Committee challenged the claims of LBM (including the claims of the Plaintiff Trusts) due to the conduct of GWG, Ben, the Plaintiff Trusts and Murray Holland to the detriment of the other L Bond Holders.[40]

16. In November of 2022, the Debtors, the Special Committee, and the "Creditor Constituents," which included the Bondholder Committee, LMB (as agent for the Plaintiff Trusts), and an ad hoc group of broker/dealers, exchanged draft proposals for a chapter 11 plan. The proposals made substantial progress towards a consensual resolution of GWG's chapter 11 cases. Nevertheless, the parties had been unable to resolve some important remaining issues.

17. To resolve those issues, the parties filed a motion to appoint a judicial mediator.[41] In the motion, the parties asked the Court to appoint then Judge Jones as the mediator. On January 5, 2023, Judge Isgur granted the motion and signed an order appointing Jones as mediator.[42] Under the terms of the order, the Bondholder Committee was permitted to participate, and it did

---

[39] GWG Doc. No. 560.
[40] GWG Doc. No. 1250 and GWG Doc. No. 1663.
[41] App'x Ex. 3.
[42] GWG Doc. No. 1323.

participate, in the mediation. Further, LBM, the agent for the Plaintiff Trusts, participated in the mediation.

18. As a result of certain agreements reached at the mediation, a plan and a disclosure statement were filed. The plan was proposed collectively by the Debtors, the Bondholder Committee, and LBM (as agent for the Plaintiff Trusts) as co-proponents.[43] The Plan contained a settlement pursuant to which approximately 15% of the LBM (including the Plaintiffs Trusts') claims were subordinated to the claims of the other L Bond Holders.[44] This subordination means that payment to the subordinated Plaintiffs Trusts' claims will come only after satisfaction of the other L Bond Holders from Wind Down Trust Assets. The Plaintiff Trusts received releases pursuant to the compromise contained within the Plan. The collectively proposed plan provided for the liquidation of the Debtors' assets, the creation of a Litigation Trust[45] and of a Wind Down Trust.[46] More than 99% of the L Bondholders voted in favor of the Plan.[47]

19. On June 20, 2023, the bankruptcy court entered its Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Further Modified Second Amended Joint Chapter 11 Plan (the "Confirmation Order").[48]

**C. The Post-Confirmation Litigation Trust is established under the Plan.**

20. The Litigation Trust was established "to retain and hold all Retained Causes of Action."[49] Retained Causes of Action is defined in the Plan to mean "all Avoidance Actions, all Causes of Action set forth on a schedule in the Plan Supplement, the form and substance of which

---

[43] Second Amended Plan filed on March 22, 2023 Docket No. (GWG Doc. No. 1563) and with modifications culminating with the Second Amended Plan filed June 14, 2023 (GWG Doc. No. 1924).
[44] *See* App'x Ex. 1, p. 32, ¶ II.B.2(a); App'x Ex. 4, pp. 99-100.
[45] App'x Ex. 4, p. 86.
[46] App'x Ex. 4, p. 92 and *see also generally* pp. 188-214 for the form of the Litigation Trust Agreement approved.
[47] GWG Doc. No. 1893.
[48] *See generally*, App'x Ex. 4.
[49] App'x Ex. 4, p. 92, ¶ IV.E.2.

being subject to the Proponents Consent Right, and any other Causes of Action belonging to the Debtors or their Estates that are not released pursuant to this Plan or other Final Order."[50] The Plan provides for the Litigation Trustee to have the sole authority to prosecute the causes of action:

> The Litigation Trustee shall have the sole authority to make decisions and take action with respect to the Initial Litigation Trust Assets, the Retained Causes of Action.[51]

The Litigation Trust Agreement provides the Litigation Trustee with that same sole authority.[52]

Finally, to make the Trustee's authority clear, the Litigation Trust Agreement states:

> The Litigation Trustee shall have the sole and absolute right to pursue, not pursue, release, abandon, and/or settle, and otherwise make all decisions with respect to, any and all Retained Causes of Action and any other Causes of Action subsequently acquired, received, transferred or assigned to the Litigation Trust (including any counterclaims asserted against the Litigation Trust) as the Litigation Trustee determines is in the best interests of the Litigation Trust, and consistent with the purposes and objectives of the Litigation Trust, and shall have no liability for the outcome of its decision except as set forth in Article V.[53]

In addition, the Plan contemplated the Litigation Trustee's standing to the exclusion of the Plaintiffs. Paragraph IV.E.2 of the Plan provides that "in exercising such sole discretion, the Litigation Trustee shall consider and may take such actions in connection with the exercise of such sole discretion that promote the greatest recovery to the holders of the New WDT Interests."[54] Each of the Plaintiffs' interests have been replaced by "New WDT Interests" by their own admission in the Plaintiffs' Original Complaint in this case.[55]

21. "The sole beneficiary of the Litigation Trust" is the Wind Down Trust or the Wind Down Trustee on behalf of the Wind Down Trust, and "all proceeds of the Litigation Trust

---

[50] App'x Ex. 4, p. 70, ¶ I.A.163.
[51] App'x Ex. 4, p. 93, ¶ IV.E.2.
[52] App'x Ex. 4, p. 194, Art. III, ¶ 3.1.
[53] *Id.*
[54] App'x Ex. 4, p. 93, ¶ IV.E.2.
[55] Plaintiffs' Original Complaint, pp. 15 – 16, ¶ 20 – 23; *see also generally* App'x Ex. 4, pp. 95 – 97, ¶ IV.F.2 establishing New WDT Interests.

distributed to the Wind Down Trust" are "for the sole purpose of distributions to the holders of the New WDT Interests issued by the Wind Down Trust."[56]

**D. The Post-Confirmation Wind Down Trust is established under the Plan.**

22. The bankruptcy court's confirmation order also established the Wind Down Trust and approved Freeman as the Trustee of the Wind Down Trust.[57] Under the terms of the confirmed Plan, the Wind Down Trust was established "to retain all necessary steps to wind down the business affairs of the Debtors"[58] and "to liquidate the Wind Down Trust Assets with a view towards maximizing the value of such assets for the benefit of New WDT Interest holders, and promptly distributing such liquidation proceeds (in accordance with the provisions of this Plan) to New WDT Interest holders."[59] Freeman as the Wind Down Trustee was tasked with " the orderly liquidation of the Wind Down Trust Assets using her discretion and "reasonable business judgment".[60] The Wind Down Trust Agreement confirmed that:

> All determinations with respect to the monetization of the Wind Down Trust Assets, including the Wind Down Trust's interests in Beneficient and FOXO, will be subject to the reasonable business judgment of the Wind Down Trustee, . . . For the avoidance of doubt, the Wind Down Trustee may conduct sales or liquidations of Wind Down Trust Assets on any terms it deems reasonable, without further order of the Bankruptcy Court (except as provided herein).[61]

23. As Trustee of the Wind Down Trust, Freeman's powers were "exercisable solely in a fiduciary capacity *consistent with, and in furtherance of, the purpose of the Wind Down Trust and not otherwise*."[62] Her fiduciary duty was tempered by not only the scope of the Wind Down Trust, but by the reasonable business judgment rule.[63] Finally, the Wind Down Trust provided that

---

[56] App'x Ex. 4, p. 92, ¶ IV.E.1 and p. 195, Art. III, ¶ 3.3.
[57] App'x Ex. 4, p. 20-21, ¶ G.8.
[58] App'x Ex. 4, p. 86, ¶ IV.A.1.
[59] *Id.*
[60] *Id.* at p. 87, ¶ IV.A.1.
[61] App'x Ex. 4, p. 88, ¶ IV.A.3 and p. 174, Sec. 6.2(a)(v).
[62] App'x Ex. 4 , p. 149, Sec. 1.4 (emphasis added).
[63] App'x Ex. 4, p. 174, Sec. 6.2(a).

Freeman had no liability in her individual capacity.[64] Section 8.4 of the Wind Down Trust Agreement specifically exculpated Freeman from causes of action brought by the Plaintiffs.[65] Finally, Section 8.5 of the Wind Down Trust provides that the "Wind Down Trustee . . . will not be liable for punitive, exemplary, consequential, special or other damages" for breach of the trust agreement "or any other matter relating to this Agreement under any circumstances."[66]

24. Freeman proceeded with liquidation of assets of the Wind Down Trust, pursuant to the confirmed plan and pursuant to separate orders entered by the bankruptcy court, such as the June 21, 2023, Order Authorizing Debtors to Sell New Beneficient Shares Free And Clear Of All Liens, Claims, Encumbrances, And Other Interests Following Consummation Of De-Spac Transaction[67] and the November 16, 2023, Order Authorizing and Approving Settlement[68] by Freeman as Trustee of the Wind Down Trust with Fifth Season Operating, L.P., as assignee of Fifth Season Investments LLC.[69]

## III.

## ARGUMENT

### A. The Plaintiffs lack standing, and their claims should be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1).

#### i.  Standard of review under Rule 12(b)(1) and the law of standing.

25. "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[70] Under Federal Rule of Civil Procedure 12(b)(l), "[a] case is properly dismissed for lack

---

[64] App'x Ex. 4, p. 149-150, Sec. 1.4 and p. 180, Sec. 8.2.
[65] App'x Ex. 4, 181, Sec. 8.4.
[66] App'x Ex. 4, p. 181, Sec. 8.5.
[67] App'x Ex. 5.
[68] App'x Ex. 6.
[69] See App'x Ex. 7 setting the specific timing and method of sale of BENF shares.
[70] *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)).

of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[71] "On a Rule 12(b)(1) motion, the party seeking to invoke federal jurisdiction has the burden [of proof]."[72] Courts assessing subject matter jurisdiction under Rule 12(b)(l) may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[73]

26. Federal courts are courts of limited jurisdiction.[74] Without jurisdiction conferred by statute or the Constitution, district courts lack the power to adjudicate claims.[75] If a party lacks standing to sue, then there is no "case of controversy" and thus no jurisdiction.

27. "The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines."[76] "When parties lack either statutory or constitutional standing to assert claims, a federal court does not have subject matter jurisdiction to address those claims."[77] In such instances, "the Court must dismiss the claims for lack of subject matter jurisdiction."[78]

28. Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy.[79] For there to be a case or controversy under Article III, the plaintiff must

---

[71] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

[72] *Boudreaux v. La. State Bar Ass'n*, 3 F.4th 748, 753 (5th Cir. 2021).

[73] *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010.

[74] *See* U.S. Const., Art. III, § 2.

[75] *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286-87 (5th Cir. 2012); *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998).

[76] *Center for Inquiry, Inc. v. Warren*, 845 Fed. App'x 325, 328 (5th Cir. 2021) (*quoting FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).

[77] *In re Capco Energy, Inc.*, Bankr. No. 08-32282, Adv. No. 10-3349, 2012 WL 253148, at *2 (Bankr. S.D. Tex. Jan. 25, 2012) (Isgur, J.) (citations omitted).

[78] *Id.*; *see also* Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(h)(3).

[79] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, (1992); *See, e.g., Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324 (1984).

have a personal stake in the case, or as Justice Scalia put it – the plaintiffs must be able to sufficiently answer the question: "What's it to you?"[80]

29. The party invoking federal jurisdiction bears the burden of establishing these elements.[81] U.S. Supreme Court cases have established that the "irreducible constitutional minimum" of standing consists of three elements.[82] The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.[83]

30. To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."[84] For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way."[85] Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be "concrete."[86] A "concrete" injury must be "*de facto* ;" that is, it must actually exist.[87]

### ii. The claims belong to the Litigation Trust, and only the Trustee of the Litigation Trustee has standing to pursue the claims.

31. The claims that the Plaintiffs have brought against the Freeman Defendants are all claims that are owned by the Litigation Trust. The Plaintiffs' claims allege harm to GWG, such as diminution of the bankruptcy estate. These are derivative claims, not direct claims. The Trustee of

---

[80] *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 141 S. Ct. 2190, 2203 (2021) (citing Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983)).
[81] *See FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 608 (1990).
[82] *Lujan,* 504 U.S. at 560.
[83] *Id.,* at 560–561; *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 180–181, 120 S.Ct. 693 (2000).
[84] *Lujan,*504 U.S. at 560, 112 S.Ct. 2130 (internal quotation marks omitted); *Friends of the Earth, Inc.*, 528 U.S. at 180–181.
[85] *Ibid.,* n. 1; *see also, e.g., DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 342, 126 S.Ct. 1854, 1861 (2006).
[86] *Spokeo, Inc.*, 578 U.S. at 339.
[87] *Spokeo, Inc.*, 578 U.S. at 340.

the Litigation Trust has the exclusive right to pursue those causes of action alleging harm to the Debtors due to conduct during or related to the bankruptcy cases, including fee disgorgement claims. Further, the Plaintiffs fail to show a direct harm to themselves that is distinct and separate from the harm suffered by the Debtors and the bankruptcy estates.

32. To the extent that this Court believes there may be derivative standing, only creditors' committees, not individual creditors, may assert derivative standing on behalf of a debtor.[88] As individual creditors, the Plaintiffs lack the legal right to seek derivative standing, particularly post-confirmation. Further, the *Louisiana World* test for derivative standing does not apply in a post-confirmation context where the plan controls.

33. Perhaps most disturbing is the Plaintiffs' request for this Court to appoint Murray Holland as a Special Administrator or Special Litigating Trustee for this case. The Plaintiffs frame Murray as a disinterested person who would handle litigation of the claims "because of his legal training, business experience, and extensive knowledge of the facts and transactions that have occurred with GWG and the bankruptcy, which give him the strong incentive to work wisely and diligently to achieve recovery."[89] Earlier in the Complaint, the Plaintiffs frame Mr. Holland only as the newly hired CEO for GWG in April of 2019,[90] who highlights the "abnormal extent of the [SEC] investigation" because "even though CEO Holland had, at the time, only been with GWG for a year, the SEC demanded ten years of his personal bank statements and all his social media data."[91] The Plaintiffs fail to disclose that Murray: (i) was formerly a director of BEN with Heppner, (ii) assisted Heppner in taking control of GWG, (iii) assured approval of large transfers of GWG's cash to BEN and ultimately through Heppner's entities for Heppner's personal benefit

[88] *In re Cleveland Imaging & Surgical Hospital, L.L.C.*, 26 F.4th 285, 297 (5th Cir. 2022).
[89] Plaintiffs' Original Complaint, pp. 68-69 ¶ 142.
[90] Plaintiffs' Original Complaint, p. 38 ¶ 72.
[91] Plaintiffs' Original Complaint, p. 40 ¶ 76.

through his positions at GWG, (iv) resigned as CEO of GWG in the bankruptcy proceedings under allegations of misconduct, and (v) is now being sued by the Litigation Trustee for breach of fiduciary duties he owed to GWG and [92] fraudulent transfers associated with the 2021 decoupling transaction between BEN and GWG.[93] Perhaps the SEC was interested in Mr. Holland's bank statements and social media data going back 10 years because of his involvement with BEN, which was the target of the investigation. But the Plaintiffs fail to disclose any of this background so they can get the wolf put in charge of the hen house.

34.    The Trustee of the Litigation Trust has the sole authority to pursue the causes of action that the Plaintiffs are attempting to bring in this case. The Trustee of the Litigation Trust brings those causes of action and resolves them for the benefit of the holders of the New WDT Interests – the Plaintiffs among them. The proceeds from causes of action that the Trustee brings are distributed to the Wind Down Trust, which in turn distributes the funds to the holders of the New WDT Interests – the Plaintiffs among them. The Plaintiffs do not have standing; only the Trustee of the Litigation Trust has standing to bring the causes of action asserted by the Plaintiffs. The Plaintiffs, as owners of New WDT Interests, are fully protected by the Litigation Trustee's claims. This Court should dismiss the Plaintiffs' claims for lack of standing and lack of jurisdiction over the claims.

**B.  The Plaintiffs claims should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).**

**i.  Standard of review under Rules 12(b)(6) and 9(b).**

35.    A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[94] The Supreme Court in *Ashcroft v. Iqbal* has dictated that:

---

[92] App'x Ex. 2, p. 239, 242, 248; *See also* App'x Ex. 8, pp. 9, 16-23, and 30-31.
[93] App'x Ex. 2, p. 295.
[94] Fed. R. Civ. P. 8(a)(2); *see also* Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[95]

In deciding a Rule 12(b)(6) motion, courts accept all well-pleaded facts as true viewing them in the light most favorable to the plaintiff.[96] However, courts cannot accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[97] To avoid dismissal, the pleadings must show specific, well-pleaded facts, not merely conclusory allegations.[98] "A formulaic recitation of the elements of a cause of action will not do."[99] A complaint is insufficient if it "tenders naked assertion[s] devoid of further factual enhancement."[100] The well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct."[101] While this standard does not require "detailed factual allegations," it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[102]

36. To survive a motion to dismiss, the complaint must contain more than "conclusory allegations or legal conclusions masquerading as factual conclusions[.]"[103] Moreover, in considering a motion to dismiss, the court is not bound to accept as true a legal conclusion couched as a factual allegation.[104] Likewise, "when the allegations in a complaint, however true, could not

---

[95] 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).
[96] *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) (*quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[97] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).
[98] *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).
[99] *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555.
[100] *Bell Atl. Corp. v. Twombly*, 550 U.S. at 557.
[101] *Ashcroft*, 556 U.S. at 679.
[102] *Ashcroft*, 556 U.S. at 678 (*citing Bell Atl. Corp.*, 550 U.S. at 555).
[103] *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1250 (5th Cir. 1997); *See also, Ashcroft*, 556 U.S. 662, 663 (2009); *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (complaint must contain direct factual allegations "on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.").
[104] *Ashcroft*, 566 U.S. at 678-79 (holding that Rule 8 "does not unlock the doors for discovery for a plaintiff armed with nothing more than conclusions.")

raise a claim or entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."[105]

37. Furthermore, fraud and RICO claims trigger a heightened pleading standard under which a plaintiff must state "with particularity the circumstances constituting the fraud."[106] A motion to dismiss for failure to plead fraud with particularity under Rule 9(b) is treated the same as a Rule 12(b)(6) motion[.]"[107] And the heightened pleading standard requires, at a minimum, "the who, what, when, where, and how to be laid out with respect to a fraud claim."[108] A fraud claim must be dismissed for failure to set forth "specific facts" in support of those fundamental elements and reliance on solely conclusory allegations and "unwarranted deductions of fact[.]"[109] Similarly, RICO claims that are based on mail or wire fraud also must satisfy Fed. R. Civ. P. 9(b) by stating the circumstances constituting fraud with particularity by identifying the time, place, and content of the fraudulent communications, as well as the parties to the communications.[110] The heightened pleading standards under *Twombly* and *Iqbal* are particularly important in RICO cases to protect defendants against baseless charges of racketeering that are serious, harmful, and expensive to defend.[111]

---

[105] *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558).

[106] Fed. R. Civ. P. 9(b).

[107] *Futrell v. JPMorgan Chase Bank, NA*, No. 3:19-cv-054-S-BH, 2019 WL 3948222, at 4 (N.D. Tex. July 19, 2019) (Ramirez, Mag. J.), adopted by 2019 WL 3947713, at *1 (N.D. Tex. Aug. 21, 2019) (Scholer, J.); *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011).

[108] *Id.* (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).

[109] *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994); *Futrell*, 2019 WL 3948222, at *4 (*quoting Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)).

[110] *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011).

[111] *See, Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008) (affirmed dismissal of RICO claims and warned against permitting a plaintiff "with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence."); *Williams v. WMX Technologies, Inc.*, 112 F.3d 175 (5th Cir. 1997); *Allstate Ins. Co. v. Donovan*, No. CIV.A. H-12-0432, 2012 WL 2577546 (S.D. Tex. July 3, 2012 – Judge Lake).

38. All of Plaintiff's claims against the Freeman Defendants are alleged in a conclusory and speculative fashion and otherwise fail "to state a claim to relief that is plausible on its face."[112] This Court should dismiss the Plaintiffs' claims.

### ii. All of Plaintiffs' claims should be dismissed, because the Complaint does not adequately plead causation of damages.

39. As with the First Amended Complaint in Van Deelen, all of Plaintiff's claims against the Freeman Defendants are based upon the non-sequitur that the nondisclosure of Judge Jones's relationship with Freemen caused damages to the Plaintiffs. In fact, non-disclosure of Judge Jones's relationship with Freeman had nothing to do with the damages that Plaintiffs allege. Rather, the Plaintiffs' damages were caused by Heppner's and Holland's use of BEN to drain GWG of its cash and the SEC's investigation into their misconduct and mismanagement of the Debtors prior to Freeman's appointment Trustee of the Wind Down Trust. Further, Fed. R. Bank. P. 2014 does not apply to a mediator and non-disclosure under Fed. R. Bank. P. 2014 is not grounds for a private cause of action.[113]

40. Consequently, on a threshold basis, all the Plaintiffs' claims should be dismissed under Rule 12(b)(6) because they have failed to state a claim on how the Freeman Defendants – rather than Heppner's and Holland's mismanagement of the Debtors – caused damages to them. In cases of alleged fraud-based claims, the Fifth Circuit has stated that "Rule 9(b) has long played [a] screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later. We apply Rule 9(b) to fraud complaints with 'bite' and 'without apology,'. . .

---

[112] *Ashcroft*, 556 U.S. at 697 (*quoting Twombly*, 550 U.S. at 570); *In re Great Lakes Dredge & Dock Co., LLC*, 624 F.3d 201, 210 (5th Cir. 2010); *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

[113] *In re Steed*, 614 B.R. 395, 411 n. 13 (Bankr. N.D. Ga. 2020) ("The Federal Rules of Bankruptcy Procedure are designed and maintained to aid in the just and efficient resolution of matters pending before the Court . . . [and] do not allow for a private cause of action for damages from violating a rule of procedure.").

which after *Twombly* must make relief plausible, not merely conceivable, when taken as true."[114] Plaintiffs' Complaint does not make a plausible case that the non-disclosure of the Jones-Freeman relationship or any action of the Freeman Defendants caused damages to Plaintiffs or prevented them from exercising their rights in opposing the Plan – a Plan that they participating in formulating and co-sponsored. This Court should dismiss all of the Plaintiffs' claims for failure to plead any damages that were directly and proximately caused by the alleged non-disclosure of the Jones/Freeman relationship.

### iii.  Plaintiffs' Section 1692(c) RICO claims should be dismissed.

#### a.  Plaintiffs' RICO claims should be dismissed, because there are insufficient factual allegations to support the existence of an enterprise.

41. The Court should dismiss the Plaintiffs' section 1962(c) claim for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Section 1962 of the RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."[115] "RICO provides a private right of action for any person 'injured in his business or property by reason of a violation of' its substantive prohibitions."[116]  However, RICO "does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity."[117]

---

[114] *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009) (*citing Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).
[115] *Nitro Distrib., Inc. v. Alticor, Inc.,* 565 F.3d 417, 428 (8th Cir. 2009) (*quoting* 18 U.S.C. § 1962(c)).
[116] *Dahlgren v. First Nat'l Bank of Holdrege,* 533 F.3d 681, 689 (8th Cir. 2008) (*quoting* 18 U.S.C. § 1964(c)).
[117] *Gamboa v. Velez,* 457 F.3d 703, 705 (7th Cir. 2006).

42. The recent Fifth Circuit case of *D&T Partners, L.L.C. v. Baymark Partners Management, L.L.C.*[118] provides a roadmap for the requirements of pleading a RICO claim under 18 U.S.C. § 1692(c) and (d). "A violation of § 1962(c) requires appellants to show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' "[119]

43. This Court's consideration of the RICO claims should start and end with the Plaintiffs' failure to plead facts to support the existence of an enterprise. A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."[120] A plaintiff must prove that the enterprise existed in some coherent and cohesive form.[121] The enterprise must have been an "ongoing organization" operating as a "continuous unit."[122]

44. The Plaintiffs in this case have pleaded an "association-in-fact enterprise." "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."[123] The association-in-fact enterprise must have an existence separate and apart from the pattern of racketeering, must be an ongoing organization, and its members must function as a continuing unit as shown by a hierarchical or consensual decision-making structure.[124]

---

[118] 98 F.4th 198 (5th Cir.), *cert. denied*, 145 S.Ct. 264 (2024).
[119] *Nitro Distrib.,* 565 F.3d at 428 (quoting *Sedima S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (footnote omitted)).
[120] 18 U.S.C. § 1961(4). The enterprise need not be a legitimate business or a form of organization sanctioned by state law. *United States v. Turkette,* 452 U.S. 576, 587, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). It "need only be a group of persons associated together for a common purpose of engaging in a criminal course of conduct." *United States v. Connolly,* 341 F.3d 16, 28 (1st Cir.2003) (citations and internal quotation marks omitted).
[121] *Turkette,* 452 U.S. at 583, 101 S.Ct. 2524.
[122] *Connolly,* 341 F.3d at 25; *See also, United States v. Nascimento,* 491 F.3d 25, 32 (1st Cir. 2007).
[123] *Boyle v. United States,* 556 U.S. 938, 129 S.Ct. 2237, 2244, 173 L.Ed.2d 1265 (2009); *Crest Const. II, Inc. v. Doe,* 660 F.3d 346, 354–55 (8th Cir. 2011).
[124] *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 243–44 (5th Cir. 1988), cert denied, 489 U.S. 1079, 109 S.Ct. 1531 (1989) (*citing, Manax v. McNamara,* 842 F.2d 808, 811 (5th Cir.1988); *Foval v. First Nat'l Bank of Commerce,* 841 F.2d 126, 129–30 (5th Cir.1988)). *See also Montesano v. Seafirst Commercial Corp.,* 818 F.2d 423,

45. The Plaintiffs make only bare, conclusory allegations of the existence of an enterprise. In paragraphs 58 and 59 of the Complaint, the Plaintiffs quote from text messages of Jackson Walker partners regarding the Jones/Freeman relationship, but those allegations have no bearing on the alleged enterprise. There is no mention in the texts of what the enterprise was, how it was structured, or how it functioned. The only other paragraphs alleging the enterprise (paragraphs 166, 168 through 170, 175, and 176) are even more conclusory:

- Paragraph 166 of the Complaint: ". . . RICO Defendants . . . participate[d], . . . in the conduct, management, and operation of the affairs of the Enterprise."

- Paragraph 168 of the Complaint: "RICO Defendants constitute an association-in-fact enterprise with a clear common purpose, clear relationships between them and longevity sufficient to permit RICO Defendants to pursue the purpose of the Enterprise."

- Paragraph 169 of the Complaint: "RICO Defendants are a group of business entities and individuals associated in fact ("the Enterprise"), which were engaged in . . . interstate commerce. Each RICO Defendant participated in the operation and management of the Enterprise. As such, RICO Defendants collectively have constituted an "enterprise" as that term is defined in 18 U.S.C. § 1961 (4)."

- Paragraph 170 of the Complaint: "RICO Defendants formed an ongoing structure of persons and entities that continually associated over an extended period of time . . . RICO Defendants were in regular contact with one another via email, phone and in-person communications for the purposes of securing appointments in and making decisions regarding bankruptcy cases, getting cases filed in the "friendly" court of Jones or ensuring that he was appointed as mediator, and using Jones—either directly as the presiding judge or indirectly as the mediator—to obtain favorable decisions and lucrative fees in those cases."

- Paragraph 171 of the Complaint: "The Enterprise was organized in a manner amenable to consensual decision making between the RICO Defendants and hierarchical decisions or recommendations handed down by Jones. Further, the Enterprise members followed a uniform course of conduct in always denying and concealing the Jones-Freeman relationship."

- Paragraph 175 of the Complaint alleges "In general, the Enterprise functioned as a continuing association-in-fact enterprise from approximately 2017 through present

426–27 (5th Cir.1987); *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 440–41 (5th Cir.), *cert. denied*, 483 U.S. 1032, 107 S.Ct. 3276, 97 L.Ed.2d 780 (1987); *Shaffer v. Williams*, 794 F.2d 1030, 1032 (5th Cir.1986); *United States v. Lee*, 374 F.3d 637, 647 (8th Cir. 2004) (citing *United States v. Kragness*, 830 F.2d 842, 855 (8th Cir.1987)).

. . . Plaintiff alleges open-ended continuity based on a series of related predicates extending over a substantial period— at least several years."

- Paragraph 176 of the Complaint: "The Enterprise consists of RICO Defendants Jones, Freeman, Freeman PLLC, and Jackson Walker, who associated together in fact and carried out their common purpose by committing bankruptcy fraud, mail fraud, wire fraud, and theft of honest services mail/wire fraud."

In none of these paragraphs is there any specificity. How was the enterprise structured? How did the enterprise function? Which defendant served which function in the enterprise? Who were the persons who performed the functions for each of the entity defendants? Who were the persons who made the communications on behalf of each defendant within the enterprise and did those persons communicate? The Complaint fails to explain how the enterprise made decisions or coordinated its internal affairs. The allegation that Judge Jones' orders constituted "hierarchical decision[s]" is conclusory in that it fails to identify "the additional organizational characteristics necessary" to fulfill RICO's pleading requirement of an enterprise's hierarchical decision-making structure.[125] Further, Judge Jones served as a mediator rather than issuing orders.  This is not sufficient pleading to survive a motion to dismiss.[126]

46. Further, "the existence of an enterprise is an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other.' "[127] A RICO enterprise must "exist separate and apart from the pattern of racketeering activity in which it engages."[128] In deciding whether an alleged RICO enterprise has an ascertainable structure distinct from the pattern of racketeering activity, the court must "determine if the enterprise would still

---

[125] *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).
[126] *Manax v. McNamara*, 660 F. Supp. 657, 662 (W.D. Tex. 1987), aff'd, 842 F.2d 808 (5th Cir. 1988) (there is no enterprise where there is "no . . . indication of a decision-making structure" other than "a loose analogy to a Mafia family"). *See also Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989) (RICO claims were dismissed where plaintiff did "not allege the additional organizational characteristics necessary" for an enterprise).
[127] *Boyle,* 129 S.Ct. at 2245 (*quoting United States v. Turkette,* 452 U.S. at 583).
[128] *Whelan v. Winchester Prod. Co*., 319 F.3d 225, 229 (5th Cir. 2003).

exist were the predicate acts removed from the equation."[129] In the Complaint, Plaintiffs assert that the purpose of the alleged Jones-Freeman-Porter Hedges-JW enterprise was to get Jones appointed as the judge or mediator and to engage in the alleged RICO predicate acts "by committing bankruptcy fraud, mail fraud, wire fraud, and theft of honest services mail/wire fraud." Thus, Plaintiffs assert that the Defendants formed the alleged enterprise to commit the same criminal acts that Plaintiff alleges as predicate acts, which is insufficient to plead the existence of an enterprise that is separate from the alleged racketeering activity in which it engages.[130]

47. Reading the Plaintiffs' bare-bones, conclusory allegations of the enterprise, one is left with the question "Where's the beef?"[131] There is none, and this Court should dismiss the RICO claims for failure to state a claim upon which relief may be granted.

> **b. The Plaintiffs' RICO claim with respect to the predicate act of obstruction of justice should be dismissed, because that claim can only apply to Judge Jones.**

48. The Plaintiffs' obstruction of justice claim must be dismissed, because the Complaint fails to allege with any specificity how the Freeman Defendants "acted corruptly with the specific intent to influence, obstruct, or impede" judicial proceedings in "its due administration of justice."[132] The Complaint makes only vague assertions that fail to provide the "who, what, when and where"[133] required by Fed. R. Civ. P. 9(b)'s pleading requirements. Even under the more relaxed pleading standards of Rule 8 of the Federal Rules of Civil Procedure, the Complaint's conclusory assertion—merely mimicking the statute's elements—do not provide factual assertions

---

[129] *Handeen v. Lemaire,* 112 F.3d 1339, 1352 (8th Cir.1997).

[130] *Fernandez-Lopez v. Hernandez*, 2020 WL 9396487, at *12 (W.D. Tex. Nov. 20, 2020) (Moses, J.).

[131] The saying is taken from the Wendy's TV commercial made popular in the 1980s. https://en.wikipedia.org/wiki/Where%27s_the_beef%3F.

[132] 18 U.S.C. § 1503(a).

[133] *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 178 (5th Cir. 1997).

permitting for a plausible conclusion that the Freeman Defendants engaged in the obstruction of justice.

        **c.** **The Plaintiffs' RICO claim with respect to the predicate act of mail fraud should be dismissed, because the acts are all lawful judicial actions relying on the common allegation of failure to disclose the relationship with no specific allegation as to how the pleadings constituted fraud.**

49. The Plaintiffs' Complaint is devoid of any specific allegation of acts that the Freeman Defendants committed in violation of 18 U.S.C. § 1341. In paragraph 190, the Plaintiffs allege that the defendants placed the following general items in the mail:

    (i)     matters used to communicate with each other as co-conspirators and to further the goals of the Enterprise,

    (ii)    matters used to communicate with clients and potential clients regarding the favorable outcomes Defendants Freeman, Freeman PLLC, and/or Jackson Walker have and would be able to obtain in proceedings or mediations before Jones,

    (iii)   matters containing misrepresentations or omissions regarding the relationship that existed between Freeman and Jones, and

    (iv)   invoices and billing materials reflecting fees sought and awarded to RICO Defendants.

There is no allegation that the Freeman Defendants placed any of these items in the mail. There is no allegation of what particular items were placed in the mail, how the items furthered an enterprise, or what specific misrepresentations or omissions were in which items. Paragraph 191 of the Complaint lists four general categories of documents that were passed by mail: (1) an application by Jackson Walker signed by Kristhy M. Peguero to be appointed as co-counsel and conflicts counsel for GWG, (2) "multiple" applications for attorney's fees filed by Ms. Peguero on behalf of Jackson Walker, (3) the motion to appoint Jones as judicial mediator filed by Ms. Peguero on behalf of Jackson Walker, and (4) the proposed plan of reorganization filed by Peguero of Jackson Walker. None of those documents, by Plaintiffs' own admission, were placed into the mail

by the Freeman Defendants. This Court should dismiss the RICO claim based on this predicate act for failure to state a claim.

>    **d.  The Plaintiffs' RICO claim with respect to the predicate act of wire fraud should be dismissed, because the acts are all lawful judicial actions relying on the common allegation of failure to disclose the relationship with no specific allegation as to how the pleadings constituted fraud.**

50.  The Plaintiffs' Complaint is devoid of any specific allegation of acts that Freeman committed in violation of 18 U.S.C. § 1343. The allegations, found in paragraphs 194 and 195 of the Complaint mimic the mail fraud allegations. These are insufficient for the same reasons the mail fraud allegations are insufficient. This Court must dismiss the RICO claim based on this predicate act.

>    **e.  The Plaintiffs' RICO claim with respect to the predicate act of honest services should be dismissed, because the statute has been held unconstitutional in these instances and there are insufficient allegations to support the claim.**

51. The Plaintiffs' honest services claim should be dismissed, because the statute has been held unconstitutionally vague except with respect to bribes and kickbacks.[134] The Plaintiffs plead generally that the failure to disclose the Jones/Freeman relationship is the grounds for their honest services claim. That claim cannot stand. There are also no facts pleaded showing what damages were directly and proximately caused by this alleged predicate act. This claim should be dismissed.

---

[134] *Skilling v. U.S.*, 561 U.S. 358, 130 S.Ct. 2896, (2010); *See also United States v. Nagin*, 810 F.3d 348, 351 (5th Cir. 2016) (Holding that to convict for honest-services fraud the prosecution must prove a bribery or kickback scheme as part of the crime).

**f. The Plaintiffs' RICO claim with respect to the predicate act of bankruptcy fraud should be dismissed, because there are no specific allegations of what was false in a pleading or that Freeman signed or filed a declaration or application to approve employment.**

52. The Plaintiffs' bankruptcy fraud claims must be dismissed, because they are not supported by any specific allegations. 18 U.S.C. § 152(2) requires a false oath or account, and 18 U.S.C. § 152(3) requires a false declaration, certificate, verification or statement under penalty of perjury. There are no specific allegations in the Complaint of any false oath or account made by the Freeman Defendants, and there are no specific allegations in the Complaint of any false declaration, certificate, verification or statement under penalty of perjury made by the Freeman Defendants. This claim must be dismissed.

53. There are also no specific allegations to support the Plaintiffs' claim under 18 U.S.C. § 152(6). To violate that section, Freeman must have knowingly and fraudulently received or attempted to obtain "money or property, remuneration, compensation, reward, advantage, or promise thereof for acting or forbearing to act in any cause under title 11." The Plaintiffs make the conclusory allegation that the Freeman Defendants "committed acts of bankruptcy fraud by Jones knowingly giving Jackson Walker and Freeman favorable treatment at mediation and overseeing mediation of a Plan that provided for Freeman to serve in the lucrative position of Wind Down Trustee."[135] There is no allegation of what the Freeman Defendants did to obtain favorable treatment or what the favorable treatment was. Further, Jones had no control over who would be appointed to serve as the Wind Down Trustee. That decision was made by the parties at mediation, which mediation included the Bondholder Committee and the Plaintiff Trusts through their agent, LBM. Freeman's appointment was approved by Judge Isgur in the Order confirming the Plan,

---

[135] Plaintiffs' Original Complaint, p. 99, ¶ 206.

which was co-sponsored by the Bondholder Committee. The allegations are insufficient to state a claim, and this claim should be dismissed.

### g.    The Plaintiffs' RICO claims should be dismissed, because the Plaintiffs have failed to plead injury and causation necessary to establish standing.

54. The Plaintiffs fail to plead the injury and causation necessary to establish their standing to assert the RICO claims.[136] Speculative damages are insufficient to establish standing to maintain a RICO claim.[137] The Plaintiffs must allege specific facts of what injuries were the direct result of which alleged predicate act.[138] There must be a direct link between an alleged predicate act and the plaintiff's injury.[139] The RICO predicate acts must not only be a 'but for' cause of a plaintiff's injury, but the proximate cause of that injury as well.[140]

55. Plaintiffs suggest that their damages were caused by the predicate acts, all of which center around the failure of the defendants to disclose the Jones/Freeman relationship. There are no specific factual allegations explaining how that failure to disclose caused their damages. Further, the Plaintiffs' alleged injury derives from the SEC investigation and the liquidity problems caused by that investigation, not the failure to disclose the relationship. As discussed above, the SEC investigation was caused by the gross misconduct and self-dealing by Heppner and Holland in their takeover and cash drain of GWG through BEN. The alleged RICO claims are not direct

---

[136] *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 521 (5th Cir. 1998); *Jackson v. Nat'l Ass'n for Advancement of Colored People*, 546 F. App'x 438, 442 (5th Cir. 2013).
[137] *In re Taxable Mun. Bond Sec. Litig*, 51 F.3d 290, 297 (5th Cir. 2005).
[138] *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461, 126 S.Ct. 1991, 1998 (2006).
[139] *Holmes v. Securities Investor Protection Corporation,* 503 U.S. 258, 269–70, 112 S.Ct. 1311 (1992); *See also Walters v. McMahen*, 684 F.3d 435, 444 (4th Cir. 2012).
[140] *Hemi Group, LLC v. City of New York,* 559 U.S. 1, 9, 130 S.Ct. 983, 989 (2010).

claims that Plaintiffs own. Rather, they are owned by the Litigation Trust, and Plaintiffs have no standing to assert them.[141]

56. With no specific allegations of injury and causation, the Plaintiffs lack standing and their claims must be dismissed. Further, the claims are owned by the Litigation Trust, and the Litigation Trustee is the only person with the standing to bring the claims. The RICO claims must be dismissed under Fed. R. Civ. P. 12(b)(6) and (1).

### iv.  Plaintiffs' Section 1962(d) RICO conspiracy claims should be dismissed.

#### a.  There are no specific allegations of an agreement to commit predicate acts.

57. The Plaintiffs' Complaint fails to make any specific allegations to show an agreement reached between the defendants to engage in a pattern of racketeering activity. As pointed out above, a RICO claim must not only be pleaded to meet the requirements of Fed. R. Civ. P. 8(a) and *Iqbal/Twombly*, it must meet the requirements of Fed. R. Civ. P. 9(b) and show the who, what, where, when, and how. "[B]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement."[142] The Plaintiffs have pleaded no specific allegations of what the agreement was, who entered the agreement, where it was entered, when it was entered, or how it was entered.

58. Paragraph 211 of the Plaintiffs' Complaint contains the most conclusory allegation of conspiracy imaginable: "RICO Defendants conspired and agreed, either directly or indirectly, to commit a substantive offense under 18 U.S.C. § 1962(c) as described above." Such a vague

---

[141] *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 744 (5th Cir. 1989).; *See also Joffroin v. Tufaro*, 606 F.3d 235, 238 (5th Cir. 2010) (found no shareholder standing where plaintiff's "claims are for monies diverted from the [company's] treasury").

[142] *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007), citing *Crowe v. Henry,* 43 F.3d 198, 203, 206 (5th Cir.1995) (quoting *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1140 (5th Cir.1992)).

allegation cannot support a RICO conspiracy claim. This Court should dismiss the Plaintiffs' RICO conspiracy claim for failure to state a claim.

### b. The Plaintiffs have failed to plead injury and causation necessary to establish standing.

59. A plaintiff may recover in an action for civil conspiracy under 18 U.S.C. § 1962(d) only upon establishing injury caused by a predicate act that is itself tortious.[143]  As discussed above, the Plaintiffs only generally allege in paragraph 214 of the Complaint that "RICO Defendants' conspiracy to engage in racketeering activity through the predicate acts set forth in Count I were the substantial and proximate cause of damage to Plaintiffs." Plaintiffs further complain, again in a conclusory manner, that they "were deprived of the opportunity to have bankruptcy proceedings determined on the merits free from the influence of interested parties," . . . that their "financial recovery was reduced because the bankruptcy estate . . . was diminished by the fees improperly awarded to Jackson Walker and Freeman" and "by Freeman's misuse, waste, and exorbitant fees." There are no specific allegations of what conduct constituting a predicate act directly and proximately caused what damage. These allegations are insufficient, and the claim must be dismissed for failure to state a claim.

### v. The Plaintiffs' common law fraud claim should be dismissed, because there are no allegations of any false representation made directly by either of the Freeman Defendants.

60. The Plaintiffs' fraud claim should be dismissed for failing to make allegations sufficient to meet the requirements of Fed. R. Civ. P. 9(b). As stated above, Rule 9(b) requires, at a minimum, "the who, what, when, where, and how to be laid out with respect to a fraud claim."[144] To satisfy Rule 9(b)s pleading requirements, a plaintiff must "specify the statements contended to be

---

[143] *Walters v. McMahen*, 684 F.3d 435, 443 (4th Cir. 2012), citing *Beck v. Prupis,* 529 U.S. 494, 501-02 n.6, 120 S.Ct. 1608 (2000).
[144] *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[145] The Fifth Circuit has warned that "long-winded, even prolix" complaints can be devoid of particularity and "such a garrulous style is not an uncommon mask for an absence of detail."[146] The "who, what, when, and where must be laid out *before* access to the discovery process is granted."[147]

61. The Plaintiffs allege generally that Freeman "knowingly declar[ed] that Jackson Walker was not an interested party and had no conflicts with bankruptcy judges of the Southern District of Texas in cases or mediations before Jones and/or fail[ed] to disclose the relationship in the declarations of disinterestedness", but Plaintiffs admit that Jackson Walker's partner Ms. Peguero signed the declaration regarding disinterestedness, not Freeman. There is no allegation of what specific representation Freeman made that was false, when she made such a representation, how she made such a representation or where she made it. Plaintiffs complain that Jackson Walker filed a supplemental declaration – again made by Ms. Peguero, and the Plan – again filed by Jackson Walker, not Freeman. Without a specific allegation of a false representation, the Complaint fails to state a fraud claim against Freeman.

62. Finally, Plaintiffs allege that Freeman "has filed numerous documents as Wind Down Trustee" but never "disclosed that she was only appointed to that position because her longtime intimate, live-in partner who led mediation, in collaboration with Jackson Walker, arranged for it under the Plan." This is not an allegation of an affirmative false representation, and the Plaintiffs have not pleaded fraud by omission under Texas law.

---

[145] *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004), *quoting Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 177–78 (5th Cir.1997), *cert. denied,* 522 U.S. 966, 118 S.Ct. 412 (1997)).
[146] *Id., quoting Williams,* 112 F.3d at 178.
[147] *Id., quoting ABC Arbitrage Plaintiffs Group v. Tchuruk,* 291 F.3d 336, 349 (5th Cir.2002)

63. Fraud by omission is a subcategory of fraud. The elements of fraud by omission are (1) the defendant failed to disclose material facts to the plaintiff that the defendant had a duty to disclose; (2) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts; (3) the defendant was deliberately silent when she had a duty to speak; (4) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (5) the plaintiff relied on the defendant's nondisclosure; and (6) the plaintiff was injured as a result of acting without that knowledge.[148] In order to plead a fraud by omission claim, the defendant must have had a duty to disclose the information to the plaintiff.[149] A failure to disclose information does not generally constitute fraud unless there is a duty to disclose the information.[150] The duty to disclose may arise: (1) when the parties have a confidential or fiduciary relationship, (2) when one party voluntarily discloses information, which gives rise to the duty to disclose the whole truth, (3) when one party makes a representation, which gives rise to the duty to disclose new information that the party is aware makes the earlier representation misleading or untrue, or (4) when one party makes a partial disclosure and conveys a false impression, which gives rise to the duty to speak.[151]

64. Freeman was not the party who sought her appointment as trustee of the Wind Down Trust – the GWG Debtors were. Jackson Walker proposed the Plan that sought approval of the Wind Down Trust and the appointment of Freeman as the Trustee of the Wind Down Trust. Freeman had no duty to make the disclosure. Further, at the time of the Plan's proposal, Freeman was not the Trustee, and thus she had no fiduciary duty to the Plaintiffs and no duty to make a

---

[148] *Frankoff v. Norman*, 448 S.W.3d 75, 84 (Tex. App. – Houston [14th Dist.] 2014, no pet.).
[149] *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 385 (Tex. App. – Houston [14th Dist.] 2007, no pet.).
[150] *Id. citing Bradford v. Vento,* 48 S.W.3d 749, 755 (Tex. 2001).
[151] *Id. citing See Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex. 1998).

disclosure of information. Without a duty to disclose, there can be no fraud by omission claim. There is no specific allegation in the Complaint to support a duty to disclose on Freeman's part prior to being approved as the Trustee.

65. After Freeman was appointed as Trustee of the Wind Down Trust, she did have fiduciary obligations to the beneficiaries of the trust, but those obligations were expressly limited by the language of the Wind Down Trust Agreement. Freeman's powers were "exercisable solely in a fiduciary capacity *consistent with, and in furtherance of, the purpose of the Wind Down Trust and not otherwise.*"[152] "The sole purpose of the Wind Down Trust" was to "liquidate the Wind Down Trust Assets with a view towards maximizing the value of such assets for the benefit of Wind Down Trust Beneficiaries, and promptly distributing such liquidation proceeds in accordance with the terms of this Agreement…"[153] The effect of these provisions limited Freeman's fiduciary duties to actions in liquidating the assets of the trust and making the distributions. The Wind Down Trust Agreement did not impose a broader fiduciary duty that would encompass disclosure of her personal relationship with Jones.

66.  Plaintiffs' Complaint also fails to allege specific facts in support of the element that by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting. Finally, Plaintiffs fail to allege specific facts to support the element that the plaintiffs were injured as a result of acting without that knowledge. Plaintiffs only allegation is the conclusory allegation that "Freeman being appointed and receiving fees as Wind Down Trustee, which has reduced the value of the Wind Down Trust and caused loss from waste and devaluation of assets of the Wind Down Trust."[154] Plaintiffs do not explain how Freeman's receipt of fees was

---

[152] App'x Ex. 4, p. 149, Sec. 1.4.
[153] App'x Ex. 4, p. 148, Sec. 1.2.
[154] Plaintiffs' Original Complaint, p. 108 ¶ 226.

a compensable injury – any trustee would have been compensated for their work under the trust agreement. Plaintiffs offer no specific allegation as to how the nondisclosure caused "loss from waste and devaluation of the Wind Down Trust." To the extent that the reference is to Freeman's sale of the Ben shares, those sales were conducted with the express approval by orders of the bankruptcy court.[155] Under the Wind Down Trust Agreement, an action taken by the trustee pursuant to an order of the bankruptcy court is conclusively deemed "not to constitute gross negligence or willful misconduct."[156]

67. The Plaintiffs' fraud claim is also barred by the Wind Down Trust's exculpation clause. Section 8.2 of the Wind Down Trust provided that Freeman had no liability in her individual capacity, except for the liability imposed in sections 8.4 and 8.5 of the Wind Down Trust Agreement.[157] Section 8.4 of the Wind Down Trust Agreement expressly exculpates Freeman from causes of action arising out of or related to the discharge of her powers and duties as Trustee of the Wind Down Trust.[158] The only exception to this exculpation is for actions or omissions to act that are determined by Final Order of the Bankruptcy Court to have arisen out of intentional fraud, criminal conduct, gross negligence or willful misconduct.[159] Freeman's conduct as Trustee of the Wind Down Trust was pursuant to the bankruptcy court's orders and as such cannot have arisen out of intentional fraud, criminal conduct, gross negligence or willful misconduct.

68. Plaintiffs' fraud claim makes only the same, repetitive conclusory allegations about nondisclosure of the Jones/Freeman relationship. These conclusory allegations do not meet the

---

[155] App'x Ex. 5 and 6.
[156] App'x Ex. 4, p. 181, Sec. 8.4.
[157] App'x Ex. 4, p. 179, Sec. 8.2.
[158] App'x Ex. 4, p. 181, Sec. 8.4.
[159] App'x Ex. 4, p. 181, Sec. 8.4.

heightened pleading requirements of Rule 9(b). This Court should dismiss the Plaintiffs' common law fraud claim.

### vi. The Plaintiffs' breach of fiduciary duty claim should be dismissed, because Freeman did not owe Plaintiffs a fiduciary duty encompassing disclosure of personal relationships and because Plaintiffs have no pleaded how the business judgment rule does not apply.

69. The Plaintiffs' breach of fiduciary duty claim should be dismissed, because she did not owe a fiduciary duty to the Plaintiffs prior to her appointment as Trustee of the Wind Down Trust. As discussed above, Freeman's fiduciary duty was restricted to performance of her duties under the Wind Down Trust Agreement. She owed no general fiduciary duty to disclose personal matters that were unrelated to her liquidation and distribution duties.

70. In addition, the Plaintiffs have failed to plead that the business judgment rule does not apply to the alleged breaches of trust. The business judgment rule in Texas generally protects persons who owe fiduciary duties from liability for acts that are within the honest exercise of their business judgment and discretion.[160] The rule protects persons with a duty from being held liable based on actions that are negligent, unwise, inexpedient, or imprudent if the actions were within the exercise of their discretion and sound business judgment.[161] The Plaintiffs bear the burden of pleading this and proving it.[162] Federal district courts applying Texas law have also concluded that overcoming the business judgment rule was an element of a plaintiff's case.[163] The Wind Down Trust expressly applies the business judgment rule to the Trustee's actions. The Plaintiffs have

---

[160] *Sneed v. Webre*, 465 S.W.3d 169, 173 (Tex. 2015).
[161] *Sneed*, 465 S.W.3d at 178; *See Matter of Est. of Poe*, 591 S.W.3d 607, 639 (Tex. App. – El Paso 2019), *aff'd in part, rev'd in part*, 648 S.W.3d 277 (Tex. 2022).
[162] *Matter of Est. of Poe*, 591 S.W.3d at 641.
[163] *FDIC v. Benson*, 867 F.Supp. 512 (S.D. Tex. 1994); *F.D.I.C. v. Brown*, 812 F.Supp. 722, 724 (S.D. Tex. 1992); *F.D.I.C. v. Schreiner*, 892 F.Supp. 869, 881 (W.D. Tex. 1995).

failed to plead that the business judgment rule does not apply to Freeman's conduct complained of. This Court should dismiss the breach of fiduciary duty claim.

### vii. The Plaintiffs' aiding and abetting breach of fiduciary duty claim should be dismissed, because the Complaint fails to allege specific facts to support elements of the claim.

71. It is uncertain whether an aiding and abetting breach of fiduciary duty claim exists in the State of Texas.[164] Nevertheless, to the extent such a claim is found to exist, the elements of that claim are: (1) the primary actor committed a tort; (2) the defendant knew that the primary actor's conduct constituted a tort; (3) the defendant intended to assist the primary actor; (4) the defendant gave the primary actor assistance or encouragement; and (5) the defendant's conduct was a substantial factor in causing the tort.[165]

72. The Plaintiffs' conclusory allegations that all of the Defendants were "aware of the fiduciary duties owed by each of the other Defendants to the bondholders and, subsequently, beneficiaries of the Wind Down Trust, including Plaintiffs. . . Despite this knowledge, each Defendant was aided and abetted by the other Defendants in the breach of their fiduciary duties owed to the bondholders and, subsequently, beneficiaries of the Wind Down Trust, including Plaintiffs" are not sufficient to meet the pleading requirements.[166] Moreover, there is no allegation of who the primary actor was, that each of the Defendants intended to assist the primary actor, how each particular Defendant gave the primary actor assistance or encouragement, or how each Defendant's conduct was a substantial factor in causing the tort. This Court should dismiss this cause of action.

---

[164] *Reynolds v. Sanchez Oil & Gas Corp.*, No. 01-18-00940-CV, 2023 WL 8262764, at *9 (Tex. App. – Houston [1st Dist.] Nov. 30, 2023, no pet.).
[165] *Id., citing Immobiliere Jeuness Establissement v. Amegy Bank Nat'l Ass'n*, 525 S.W.3d 875, 882 (Tex. App.—Houston [14th Dist.] 2017, no pet.).
[166] Plaintiffs' Original Complaint, p. 120, ¶ 257.

### viii. The Plaintiffs' negligent misrepresentation claim should be dismissed, because the Complaint fails to allege any affirmative misrepresentation of specific false information made by the Freeman Defendants.

73. The Plaintiffs' negligent misrepresentation claim should be dismissed. It suffers not only from the same infirmities that the fraud claim suffers from – but more. There must be allegations of an affirmative misrepresentation made by the defendant. The Plaintiffs' Complaint does not contain one allegation of an affirmative misrepresentation made by the Freeman Defendants to the Plaintiffs. The Plaintiffs allege that the Freeman "provided misleading and false information *and/or omitted information* regarding past or existing material facts relating to the intimate relationship between Freeman and Jones."[167] The Plaintiffs bury their reference of the elements of negligent misrepresentation in a footnote. There is no element for omission of information.

74. A critical element of a negligent misrepresentation claim is that the defendant supplied false information for the guidance of others in their business. The term "false information," as used in the elements of a negligent misrepresentation claim, means a misstatement of existing fact.[168] The Plaintiffs regurgitate the same repetitive, conclusory allegations regarding the failure to disclose the Jones/Freeman relationship and the representation by Jackson Walker that it was a disinterested person for purposes of employment as counsel for the Debtors. However, there is no allegation of any particular misstatement of an existing fact by the Freeman Defendants. This Court should dismiss this claim.

---

[167] Plaintiffs' Original Complaint, p. 121-22, ¶ 261.
[168] *K. Griff Investigations, Inc. v. Cronin*, 633 S.W.3d 81, 99 (Tex. App. – Houston [14th Dist.] 2021, no pet.) *citing Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

### ix. The Plaintiffs' professional negligence claim should be dismissed, because the claim is barred by attorney immunity and the judicial-proceedings privilege.

75. This Court should dismiss the professional negligence claim as it relates to Freeman's limited work at Jackson Walker on this case. Plaintiffs' professional negligence claim, as well as all of its other tort claims, are barred by both the attorney immunity defense[169] and the judicial proceedings privilege. Attorney immunity protects an attorney against a non-client's claim when the claim is based on conduct that (1) constitutes the provision of "legal" services involving the unique office, professional skill, training, and authority of an attorney and (2) the attorney engages in to fulfill the attorney's duties in representing the client within an adversarial context in which the client and the non-client do not share the same interests and therefore the non-client's reliance on the attorney's conduct is not justifiable.[170] A Rule 12(b)(6) motion may be granted on a successful affirmative defense if that defense appears on the face of the complaint.[171]

76. The immunity extends to "when attorneys act in the uniquely lawyerly capacity of one who possesses 'the office, professional training, skill, and authority of an attorney,'" and when the actions complained of are "the kind of conduct in which an attorney engages when discharging his duties to his client." "Even when a non-client plaintiff claims an attorney has engaged in acts that were 'fraudulent,' 'conspiratorial,' or otherwise 'wrongful,,' as long as the acts were committed while representing a client, the attorney is nevertheless still entitled to immunity."[172]

77. The claim is also barred by the judicial-proceedings privilege, which encompasses statements made by judges, jurors, parties, or witnesses and attaches to all portions of proceedings,

---

[169] *Haynes and Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 78 (Tex. 2021).
[170] *Id.*
[171] *Kelly v. Nichamoff*, 868 F.3d 371, 375 (5th Cir. 2017).
[172] *1st & Trinity Super Majority, LLC v. Milligan*, 657 S.W.3d 349, 368–69 (Tex. App.—El Paso 2022, no pet.) (quoting *Youngkin v. Hines*, 546 S.W.3d 675 681–82 (Tex. 2018).

"including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case."[173] The privilege "prohibits any tort litigation based on the content of the" communications the Complaint puts at issue.[174] Because the Plaintiffs' claim is based on purported omissions or misleading statements within court filings, court appearances, or in "the due course of a judicial proceeding" the statements are absolutely protected under the judicial proceedings privilege and must be dismissed for failing to state a claim upon which relief can be granted.

78. The professional negligence claim should also be dismissed with respect to Freeman's conduct as Trustee of the Wind Down Trust. Freeman was not acting as an attorney in her duties as Trustee and certainly was not acting as an attorney for the Plaintiffs.

79. Finally, as discussed at length above, the exculpatory clauses in the Wind Down Trust Agreement bar the Plaintiffs from bringing the claim against Freeman. The claim should be dismissed.

> **x.  The Plaintiffs' common law civil conspiracy claim should be dismissed, because the Complaint fails to allege specific facts to show an agreement or the meeting of the minds.**

80. The Plaintiffs' conspiracy claim should be dismissed for failure to state a claim. The elements of civil conspiracy as: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result."[175] There are no specific allegations of when the Defendants entered the alleged agreement, where the agreement was entered, or how the agreement was

---

[173] *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 46 (Tex. 2021).
[174] *Id.* (*quoting Collins v. Zolnier*, No. 09-17-00418-CV, 2019 WL 2292333, at *3 (Tex. App.—Beaumont May 30, 2019, pet. denied)).
[175] *Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019), *quoting Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).

entered. Further, civil conspiracy requires an underlying tort that has caused damages.[176] The first portion of the Plaintiffs' claim seems loosely to be describing a conspiracy to commit fraud, but if this is the case, the allegations are woefully insufficient to meet the heightened pleading requirements of Rule 9(b). The second portion of the Plaintiffs' claim identifies the conspiracy as one to breach fiduciary duties. Since the conspiracy must be tied to a tort, if the underlying tort is subject to dismissal, the conspiracy claim must fail as well. With respect to both conspiracy to commit fraud and conspiracy to breach a fiduciary duty, the Plaintiffs failed to plead any facts to support how the Defendants supposedly reached a meeting of minds on the object or course of action. The Plaintiffs' conspiracy claim should be dismissed for failure to state a claim.

### xi. The Plaintiffs are barred from seeking punitive or exemplary damages against Freeman, because the Wind Down Trust Agreement bars recovery of those damages.

81. The Plaintiffs plead for punitive or exemplary damages in their RICO, fraud, breach of fiduciary duty, negligent misrepresentation, professional negligence, and conspiracy claims. The allegations against Freeman relate to her conduct as Trustee of the Wind Down Trust. As discussed above, the Wind Down Trust Agreement contains an absolute prohibition against liability for punitive, exemplary, consequential, special or other damages for a breach of the agreement "or any other matter relating to this Agreement under any circumstances."[177] The Plaintiffs knew this provision, as well as the releases and exculpatory clauses, were in the Wind Down Trust Agreement and the Plaintiffs supported approval of the agreement through their co-sponsorship of the Plan. The bondholders voted for confirmation of the Plan that was confirmed with the Agreement as an attachment.[178] The Plan was supported by the Bondholder Committee and L Bond Management,

---

[176] *Agar Corp., Inc.*, 580 S.W.3d at 142, *citing Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).
[177] App'x Ex. 4, p. 181, Sec. 8.5.
[178] App'x Ex. 4, p. 8, k. Tabulation.

LLC.[179] L Bond Management, LLC was the managing agent for the LT Exchange Trusts that are the Plaintiffs in this case. The Plaintiffs have already agreed by voting in favor of the Plan and support it that the claims for these types of damages cannot be sought or recovered. Thus, the claims for those damages should be dismissed.

## IV.

## CONCLUSION AND PRAYER

82. The Bandas Law Firm has simply found another group of plaintiffs through which to try its same arguments already rejected by this Court. That conduct at this point should be sanctioned. The Plaintiffs do not have standing to assert any of the claims they have asserted, and The Bandas Law Firm knows as much.

83. But in this case, the Plaintiffs' conduct is also sanctionable. Jones was not the Judge in this case and had no control over the proceedings. The Plaintiffs, who are in all likelihood controlled by Murray Holland, know full well that the alleged damages they sustained were caused by the gross misconduct and mismanagement of Heppner and Holland after they orchestrated a takeover of GWG through BEN. Their misconduct led to a major SEC investigation that by their own admission caused GWG to file a bankruptcy and led to the financial downfall of GWG in that bankruptcy. Finally, the Plaintiffs are fully aware that Freeman's actions as Trustee of the Wind Down Trust have all been appropriate and pursuant to bankruptcy court orders for the sale of the BENF shares. The Plaintiffs make vague, conclusory allegations of a RICO enterprise that are frankly an insult to the purpose of RICO. To suggest they were in a "John Gotti style" racketeering enterprise involving Jackson Walker and Porter Hedges, two long established and respected Houston law firms, is absurd.

---

[179] App'x Ex. 4, p. 52, Introduction; *See also* p. 64, Definition of LBM as L Bond Management, LLC.

84. As this Court noted in the last sentence of its Memorandum Opinion in *Van Deelan*, "this could, and should, have been avoided." Nevertheless, the Plaintiffs have no standing to assert the claims they are asserting, and their Complaint is devoid of any specific allegations to support the causes of action. This Court should dismiss the Plaintiffs' claims.

WHEREFORE, PREMISES CONSIDERED, Defendants ELIZABETH CAROL FREEMAN AND THE LAW OFFICE OF LIZ FREEMAN, PLLC respectfully request that this Court grant this motion and dismiss the Plaintiffs' claims with prejudice.

Respectfully submitted,

**THE PROBUS LAW FIRM**

By:*/s/ Matthew B. Probus*
      Matthew B. Probus (Attorney in Charge)
      Texas Bar No. 16341200
      Fed. I.D. No, 10915
      Michael M. Probus
      Texas Bar No. 16341500
      Fed. I.D. No. 21725

10497 Town and Country Way, Suite 930
Houston, Texas 77024
Tel. (713) 258-2700
Fax (713) 258-2701
matthewprobus@theprobuslawfirm.com

*ATTORNEYS FOR DEFENDANTS,*
*ELIZABETH CAROL FREEMAN AND*
*THE LAW OFFICE OF LIZ FREEMAN, PLLC*

## Certificate of Service

I hereby certify that on August 26, 2025, a true and correct copy of the foregoing instrument has been served upon all parties registered to receive notices by PACER via the Court's ECF/PACER system.

*/s/ Matthew B. Probus*
Matthew B. Probus