IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Gary Peterson, Chris Nakashima, John English, Jaquetta English, LT-1 Exchange Trust, LT-2 Exchange Trust, LT-3 Exchange Trust, LT-4 Exchange Trust, LT-5 Exchange Trust, LT-6 Exchange Trust, LT-7 Exchange Trust, LT-8 Exchange Trust, LT-9 Exchange Trust, LT-12 Exchange Trust, LT-14 Exchange Trust, LT-15 Exchange Trust, LT-17 Exchange Trust, LT-18 Exchange Trust, LT-19 Exchange Trust, LT-20 Exchange Trust, on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>David R. Jones, Elizabeth Carol Freeman, The Law Office of Liz Freeman, PLLC, Jackson Walker, LLP, and Porter Hedges, LLP,<br><br>Defendants. | Civil Action No. 4:25-cv-02761 |

**DEFENDANT DAVID R. JONES'**
**MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

STANDARD OF REVIEW ..................................................................................2

PROCEDURAL HISTORY..................................................................................3

RELEVANT INCONTROVERTIBLE FACTS ....................................................4

ARGUMENT .......................................................................................................6

    I.     Former Judge Jones Is Entitled to Absolute Judicial Immunity or Quasi-Judicial Immunity. ..........................................................................6

          A.    Jones Has Absolute Judicial Immunity Under the Appointment Order. ........................................................................7

          B.    Jones Is Entitled to Absolute Judicial Immunity as a Court-Appointed Mediator. ................................................7

          C.    Neither Exception to Absolute Immunity Applies....................10

    II.    Plaintiffs Lack Standing for the Same Reasons This Court Articulated in *Van Deelen*. .........................................................................21

    III.   Plaintiffs Fail to Plead Causation for Any Claim or Otherwise Plead Valid Causes of Action ................................................................23

To the Honorable Alia Moses, Chief United States District Judge:

Defendant David R. Jones ("Jones") moves to dismiss with prejudice the Original Complaint (the "Complaint") of Gary Peterson, Chris Nakashima, John English, Jaquetta English, LT-1 Exchange Trust, LT-2 Exchange Trust, LT-3 Exchange Trust, LT-4 Exchange Trust, LT-5 Exchange Trust, LT-6 Exchange Trust, LT-7 Exchange Trust, LT-8 Exchange Trust, LT-9 Exchange Trust, LT-12 Exchange Trust, LT-14 Exchange Trust, LT-15 Exchange Trust, LT-17 Exchange Trust, LT-18 Exchange Trust, LT-19 Exchange Trust, LT-20 Exchange Trust, on their own behalf and on behalf of all others similarly situated (the "Plaintiffs").

<u>**INTRODUCTION**</u>

1.      The relevant facts of this case are undisputed. Jones served only as a court-appointed judicial mediator in the GWG bankruptcy cases. The GWG cases were assigned to Judge Isgur in accordance with the random assignment process maintained and operated by the District Court Clerk of Court. Jones awarded no fees, entered no orders in the cases and played no role in the confirmation of GWG's consensual plan that was affirmatively approved by over 99% of GWG's bondholders. There can be no genuine dispute that Jones is entitled to absolute immunity from civil lawsuits arising from his role as a judicial mediator in the GWG bankruptcy cases under applicable law. Likewise, Judge Isgur's final and non-appealable order makes it clear that Jones is entitled to all privileges and immunities as a judicial mediator enjoyed by a sitting bankruptcy judge. This case should be immediately dismissed with prejudice.

2.      "As early as 1872, the [Supreme] Court recognized that it was 'a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, should be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (internal alteration omitted) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1872)). As Judge

Learned Hand explained in *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949), *cert. denied*, 339 U.S. 949 (1950), "it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties."

3.      Thus, to protect the judicial system as a whole, the absolute immunity doctrine was created, which "bestows immunity from suit as well as assessment of damages," *Moore v. City of Dall., Tex*., No. 23-10566, 2024 WL 913368, at *2 (5th Cir. Mar. 4, 2024) (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991)). The same absolute immunity extends to mediators and arbitrators. *See, e.g.*, *Guardian Flight, L.L.C. v. Med. Evaluators of Texas ASO, L.L.C.*, 140 F.4th 613 (5th Cir. 2025); *Wagshal v. Foster*, 28 F.3d 1249 (D.C. Cir. 1994). The Fifth Circuit has commanded that absolute immunity be applied unflaggingly even in the most extreme cases, stating, "[e]ven though there may be an occasional diabolical or venal judicial act, the independence of the judiciary must not be sacrificed one microscopic portion of a millimeter" because "the opening of any inroads weakening judicial immunity could have the gravest consequences to our system of justice." *McAlester v. Brown*, 469 F.2d 1280, 1283 (5th Cir. 1972).

4.      Pursuant to Federal Rule of Civil Procedure 12(b)(6), the application of the doctrine of absolute immunity thus requires the dismissal with prejudice of this civil action against Jones, whom Plaintiffs have sued for acting as a judicial mediator in court proceedings as ordered by the Bankruptcy Court.

### STANDARD OF REVIEW

5.      "A complaint that fails to state a facially plausible claim must be dismissed." *Moore v. City of Dall., Tex.*, No. 23-10566, 2024 WL 913368, at *2 (5th Cir. Mar. 4, 2024). "'Facial plausibility' means 'factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And although, in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, well-pled facts must be liberally construed in favor of the plaintiff, a court must disregard "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id*. Thus, dismissal under Rule 12(b)(6) is appropriate when "it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Harry v. Lauderdale Cnty*., 212 F. App'x 344, 346 (5th Cir. 2007).

6.       "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages," *Mireles v. Waco*, 502 U.S. 9, 11 (1991), and "is a threshold question 'to be resolved as early in the proceedings as possible.'" *Hulsey v. Owens*, 63 F.3d 354, 356 (5th Cir. 1995) (quoting *Boyd v. Biggers,* 31 F.3d 279, 284 (5th Cir.1994)). Thus, judicial and other forms of absolute immunity are appropriately decided under Rule 12(b)(6), which requires dismissal of a case for failure to state a claim "if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Ballard v. Wall*, 413 F.3d 510, 514–15 (5th Cir. 2005).

## PROCEDURAL HISTORY

7.       On June 12, 2025, Plaintiffs filed the Complaint against Jones and the other defendants in this case. Docket No. 1 ("Compl."). The complaint is largely duplicative of other proceedings pending before this Court and contains identical factual misstatements. *See Deelen v. Jones*, No. 23-cv-03729 (S.D. Tex. filed Oct. 4, 2023); *Bouchard v. Jones*, No. 24-cv-00693 (S.D. Tex. Feb. 26, 2024).

## RELEVANT INCONTROVERTIBLE FACTS

8.      GWG Holdings, Inc. and several affiliates filed chapter 11 cases on April 20, 2022. Bankruptcy Docket No. 1.[1] A second group of affiliates filed chapter 11 cases on October 31, 2022. The debtors' cases (collectively, "GWG") were randomly assigned to Judge Isgur and jointly administered. Bankruptcy Docket Nos. 18, 970.

9.      On May 9, 2022, the United States Trustee (the "UST") appointed an Official Bondholders' Committee (the "Bondholders' Committee"). Bankruptcy Docket No. 214. The UST reconstituted the Bondholders' Committee on June 17, 2022. Bankruptcy Docket No. 418.

10.      On June 20, 2022, the Debtors requested the appointment of Jeffrey S. Stein as its chief restructuring officer (the "CRO") and Anthony R. Horton as an independent board member (the "Independent Board Member"). Bankruptcy Docket No. 430. After multiple objections were resolved, the request was approved by Judge Isgur in his Order entered July 18, 2022. Bankruptcy Docket No. 594.

11.      One of the parties that participated throughout the bankruptcy cases was L Bond Management ("LBM"). LBM is a special purpose Delaware LLC holding a durable power of attorney authorizing it to act as the agent for twenty-four trusts in the bankruptcy cases, including the trust plaintiffs in this litigation. Bankruptcy Docket No. 560.

---

[1] "In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *see also Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020) (affirming the district court's grant of a motion to dismiss under Rule 12(b)(6) and taking "judicial notice of the previous judgments and opinions, matters of public record that were attached to the motion to dismiss"); *Brown v. Lippard*, 350 F. App'x 879, 882 n.2 (5th Cir. 2009) (citing *Marine Elec. Co. v. United Jersey Bank*, 959 F.2d 1194 (3d Cir. 1992)) (noting that a court may take judicial notice of a bankruptcy court's docket entries). Notably, Plaintiffs expressly ask this Court to take judicial notice of many filings from the docket of the Bankruptcy litigation. *See* Compl. ¶ 49 n.57. Unless otherwise noted, docket entries in *In re GWG Holdings, Inc*, Ch. 11 Case No. 22-90032 (Bankr. S.D. Tex. Apr. 20, 2022) will be referred to as the "Bankruptcy Docket No. __."

12.     The bankruptcy cases were contentious from the beginning. On November 14, 2022, the CRO, the Independent Director, and David Chavenson (the "Investigations Committee") and the Debtors requested an emergency status conference with the Court regarding certain inappropriate actions taken by certain GWG board members. Bankruptcy Docket No. 1055. The Bankruptcy Court promptly suspended the board's authority pending further order. Bankruptcy Docket Nos. 1058, 1061. Prior to the Bankruptcy Court conducting further hearings, Murray Holland and the other involved board members resigned. Bankruptcy Docket No. 1127. The resignations left the CRO and the Independent Director as the remaining board members.

13.     The Debtors filed their original plan on December 1, 2022. Bankruptcy Docket No. 1134. The Debtors filed their first amended plan on February 10, 2023. Bankruptcy Docket No. 1421. Neither plan had sufficient support from the Debtors' creditor base.

14.     On November 30, 2022, the Debtors, the CRO and the Independent Director requested the appointment of former Judge Jones as a judicial mediator. Bankruptcy Docket No. 1128. The Bankruptcy Court granted the request by order entered January 5, 2023 (the "Appointment Order"). Bankruptcy Docket No. 1323. A copy of the Appointment Order is attached as **Exhibit 1**.

15.     The Appointment Order specifies that, as the mediator, Judge Jones "will be acting in his official capacity as a United States Bankruptcy Judge ***and is entitled to all of the privileges and immunities of a United States Bankruptcy Judge.***" Ex. 1 at 2 (emphasis added). It further specifies that "[t]he results of the Mediation are non-binding upon any of the Mediation Parties, except solely to the extent that a Mediation Party agrees in writing to be bound by a settlement reached at the mediation." Ex. 1 at 3. No party objected to the Appointment Order.

5

16.    After multiple days of mediation, former Judge Jones assisted the parties in reaching resolution on a number of issues including the outline of a proposed amended plan under which the Debtors, the Bondholders' Committee and LBM (as agent for the trust Plaintiffs) would be co-proponents. Bankruptcy Docket No. 1518. Without violating the Appointment Order, the Complex Case Procedures for the Southern District of Texas, and rules regarding mediation which prohibit disclosing the discussions that occurred during mediation, Jones did not select any person for any role under the proposed second amended plan. All selections were made by creditor groups attending the mediation. The United States Trustee has been previously advised regarding the selection process of the two trustees under the second amended plan.

17.    The parties filed a second amended plan on March 22, 2023. Bankruptcy Docket No. 1563. Modifications were made to the second amended plan on March 27, April 19, April 20, and June 14, 2023. Bankruptcy Docket Nos. 1583, 1662, 1678, 1924.

18.    Bondholders overwhelmingly supported confirmation of the proposed plan with over 99% affirmative votes both in number and claim amount. Bankruptcy Docket No. 1893. By order entered June 20, 2023, the Bankruptcy Court confirmed the Debtors' second amended plan. Bankruptcy Docket No. 1952. The Bankruptcy Court's confirmation order is final and non-appealable.

<u>**ARGUMENT**</u>

## I.    Former Judge Jones Is Entitled to Absolute Judicial Immunity or Quasi-Judicial Immunity.

19.    Plaintiffs' claims against Jones are barred by clear, longstanding, and binding precedent on absolute judicial and quasi-judicial immunity. The doctrine of absolute immunity is critical to protect the integrity of the judicial system, and the fact that Jones was acting as a judicial mediator here changes nothing. The order appointing Jones as a mediator, the Local Bankruptcy

Rules, and binding case law all establish that Jones is entitled to the same absolute immunity from suit whether he was acting as a mediator or a judge. And precedent in this circuit and nationwide make it abundantly clear that neither of the two exceptions to absolute immunity applies here.

### A.    Jones Has Absolute Judicial Immunity Under the Appointment Order.

20.    When Judge Isgur duly appointed Judge Jones as the mediator for the GWG bankruptcy, he specified that Jones "will be acting *in his official capacity as a United States Bankruptcy Judge and is entitled to all of the privileges and immunities of a United States Bankruptcy Judge.*" Ex. 1 at 2 (emphasis added). Such orders are common in bankruptcy proceedings. *See, e.g.*, *Matter of Sargeant Farms, Inc.*, 224 B.R. 842, 848 (Bankr. M.D. Fla. 1998) (appointing bankruptcy mediator and providing that he would have immunity). Judges have absolute immunity from civil suits seeking damages. *Mireles v. Waco*, 592 U.S. 9, 11 (1991). This immunity "applies even when the judge is accused of acting maliciously and corruptly." *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967); *see also, e.g.*, *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 348 (1872) ("If civil actions could be maintained . . . because the losing party should see fit to allege in his complaint that the acts of the judge were done with partiality, or maliciously, or corruptly, the protection essential to judicial independence would be entirely swept away."); *Stump v. Sparkman*, 435 U.S. 349, 363 (1978); *Adams v. McIlhany*, 764 F.2d 294, 297–98 (5th Cir. 1985).

### B.    Jones Is Entitled to Absolute Judicial Immunity as a Court-Appointed Mediator.

21.    Even if Judge Isgur's Appointment Order had not explicitly and unconditionally provided for immunity, "[c]ourts have extended [the same] absolute immunity to a wide range of persons playing a role in the judicial process. . . . [including] law clerks, probation officers, a court-appointed committee monitoring the unauthorized practice of law, a psychiatrist who interviewed a criminal defendant to assist a trial judge, persons performing binding arbitration, and a

psychologist performing dispute resolution services in connection with a lawsuit over custody and visitation rights." *Wagshal v. Foster*, 28 F.3d 1249, 1252 (D.C. Cir. 1994) (citations omitted) (collecting cases). Unsurprisingly, then, "courts of appeals[, including the Fifth Circuit,] have uniformly extended judicial and quasi-judicial immunity to arbitrators" and similar entities. *Guardian Flight, L.L.C. v. Med. Evaluators of Texas ASO, L.L.C.*, 140 F.4th 613, 622–23 (5th Cir. 2025) (finding absolute immunity applied to entities acting as arbitrators even though relevant statutory scheme did not call them "arbitrators" or the process "arbitration"); *see also, e.g.*, *Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155, 1158–59 (10th Cir. 2007) (collecting cases recognizing absolute immunity for arbitrators); *Wagshal*, 28 F.3d 1249, 1254 (applying absolute immunity to mediator), *Todd v. Landrum*, 2012 WL 5187836, at *2 (E.D. Cal. Oct. 17, 2012) (same); *Mills v. Killebrew*, 765 F.2d 69, 71–72 (6th Cir. 1985) (same).

22.     *Wagshal* is instructive. There, the D.C. Circuit found that a case evaluator working to facilitate nonbinding mediation between the parties was entitled to absolute quasi-judicial immunity. *Wagshal*, 28 F.3d at 1251–54 & n.2. The court, distilling the factors first articulated in *Butz v. Economou*, 438 U.S. 478, 512 (1978), looked at:

> (1) whether the functions of the official in question are comparable to those of a judge;
>
> (2) whether the nature of the controversy is intense enough that future harassment or intimidation by litigants is a realistic prospect; and
>
> (3) whether the system contains safeguards which are adequate to justify dispensing with private damage suits to control unconstitutional conduct.

*Id.* at 1252.[2] For the first factor, the *Wagshal* court reasoned that the "tasks [of] identifying factual and legal issues, scheduling discovery and motions with the parties, and coordinating settlement

---

[2] Although the Fifth Circuit found immunity for arbitrators to be clear-cut without specifically analyzing the *Butz* factors, it has used them for closer cases. *See, e.g.*, *Beck v. Tex. State Bd. of*

efforts" "obviously involve substantial discretion" and "appear precisely the same as those judges perform going about the business of adjudication and case management." *Id.* at 1252. The court noted that "the general process of encouraging settlement is a natural, almost inevitable, concomitant of adjudication," and "intensive involvement in settlement is now by no means uncommon among federal district judges." *Id.* at 1252–53. For the second factor, likelihood of harassment, the court found a great need for mediator immunity: "[The mediator] must often be the bearer of unpleasant news—that a claim or defense may be far weaker than the party supposed. Especially as the losing party will be blocked by judicial immunity from suing the judge, there may be great temptation to sue the messenger [instead]." *Id.* at 1253. Finally, for the third factor, alternate safeguards against misconduct, the court found the ability to seek relief from the presiding judge sufficed. *Id.*; *see also, e.g.*, *Adams v. McIlhany*, 764 F.2d 294, 298 (5th Cir. 1985) (damages against judges unnecessary because of "alternative remedies, such as appeal and impeachment"). The same analysis applies to Jones' work mediating bankruptcies under the Bankruptcy Court's alternative dispute resolution program. The immunity of mediators in the bankruptcy context is critical for the functioning of bankruptcy courts, which could not function without the availability of sitting judges or magistrates, retired judges, and other professionals making themselves available to serve as mediators.

23.    Moreover, the Court's Local Rules effectively bar private suits against court-appointed arbitrators and mediators. Local Rule 16.4 covers all forms of alternative dispute resolution ("ADR"), including mediation, "in civil cases pending before district, magistrate, and bankruptcy judges." L.R. 16.4.A. Local Rule 16.4.I. provides that ADR "providers are subject to

---

*Dental Examiners*, 204 F.3d 629, 634 (5th Cir. 2000) (applying *Butz* factors in finding quasi-judicial immunity applied to Board of Dental Examiners).

disqualification pursuant to standards consistent with those set forth in 28 U.S.C. § 455," the same statute governing conflicts and recusal for judges. L.R. 16.4.I(1). "Issues concerning potential ADR provider conflicts shall be raised with the judge presiding in the case relating to the ADR proceeding"—not via a separate, private suit for damages. L.R. 16.4.I(2). If a recusal violation comes to light after a case has been closed and the ordinary time for appeal has passed, the only way to raise the issue is by filing a motion under Rule 60(b) in the underlying bankruptcy case, followed by an appeal—which the Plaintiffs here have never done. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 862–64 (1988) (finding late-discovered recusal violations could be remedied by Rule 60(b)(6) motion, subject to harmless error review and an evaluation of various other factors); *Makere v. Early*, No. 21-cv-00096, 2022 WL 20509771, at \*4 (N.D. Fla. June 6, 2022) (collecting cases finding no private cause of action to collaterally attack 28 U.S.C. § 455 violations).

### C.    Neither Exception to Absolute Immunity Applies.

24.    "[T]here are only two exceptions to [absolute] judicial [or quasi-judicial] immunity: (1) lawsuits challenging actions taken outside the judge's judicial [or quasi-judicial] capacity; and (2) lawsuits challenging actions taken in the 'complete absence of all jurisdiction.'" *Kemp ex rel. Kemp v. Perkins*, 324 F. App'x 409, 411 (5th Cir. 2009) (citing *Davis v. Tarrant Cnty. Tex.*, 565 F.3d 214, 221 (5th Cir. 2009)); *see also Wagshal v. Foster*, 28 F.3d 1249, 1253–54 (D.C. Cir. 1994) (analyzing exceptions as applied to case evaluator/mediator). As explained below, neither of these exceptions applies.

a. **The Alleged Harms All Stem from at Least One Judicial Act, Including Typical Mediation Tasks or Recusal Decisions.**

25.     Fundamentally, the non-judicial act[3] exception to absolute immunity does not apply here because Jones's work as a mediator—unquestionably a judicial act—is a "but for" cause of all of Plaintiffs' alleged harms. *Holloway v. Walker*, 765 F.2d 517, 522–24 (5th Cir. 1985) (absolute immunity applies when "[b]ut for those obviously 'judicial acts,' none of the harm . . . alleged . . . would have come about"). Plaintiffs have alleged two direct sources of harm: (a) Judge Isgur's orders awarding fees to other Defendants and (b) approving the final bankruptcy plan proposed collectively by the Debtors, the Bondholder Committee, and LBM (as agent for the Plaintiff Trusts). Plaintiffs' sole theory of causation is that, through Jones' alleged conflicted *work as a mediator*, he somehow negatively "influenced" the mediation participants to agree to the contents of the ensuing orders. *See, e.g.*, Compl. ¶¶ 101, 178(i)–(l). Plaintiffs fail to allege any act atypical of mediation, or performed outside the mediation, whereby this "influence" was allegedly exerted. They appear to simply contend Judge Isgur trusted Jones enough to rubber-stamp any proposal *coming out of the mediation*. Compl. ¶ 101.

26.     While Plaintiffs now claim to have been disadvantaged or defrauded by how the mediation was conducted—including how long the mediation lasted and how well Jones listened to the parties, Compl. ¶ 101—because all the "particular act[s] in question" occurred as part of the judicially mandated mediation, it is irrelevant whether these acts are alleged to have been tainted by an undisclosed romantic relationship. *Mireles v. Waco*, 592 U.S. 9, 12–13 (1991). Here, all of Jones's alleged act(s) were "the *type* of act" or "function normally performed by a judge" or quasi-

---

[3] For ease of reference, the remainder of this motion will use "non-judicial act" to refer to acts that are neither judicial nor quasi-judicial in nature. Likewise, it will use "judicial acts" to refer to acts that are either judicial or quasi-judicial.

judicial actor. *See Stump v. Sparkman*, 435 U.S. 349, 362 (1978) (emphasis added) (finding judge was immune for order to have child sterilized—even though the order in question was a grave abuse of authority and a violation of due process—because "approv[ing] petitions relating to the affairs of minors" was the type of act that judges are "not infrequently are called upon [to do] in their official capacity"). Conducting mediation under the Bankruptcy Code clearly constitutes a "function normally performed by" judges and mediators. Jones therefore has absolute immunity for how he conducted those mediation sessions.[4]

27.     The Complaint attempts to distract from this fatal flaw by pointing to what Plaintiffs (incorrectly) claim were "non-judicial" acts that preceded the ultimate judicial acts that allegedly harmed the Plaintiffs. Compl. ¶ 102, 224, 283. But whether a *non*-judicial act was *also* a cause of Plaintiffs' harm is immaterial because judicial immunity can be abrogated only when a plaintiff's harm is *solely caused* by non-judicial acts.[5]

28.     In fact, the Fifth Circuit's decision in *Holloway* explicitly distinguished former Ninth Circuit caselaw on this exact point. The plaintiff in *Holloway* had argued that, because

---

[4] Allowing the claims against Jones to proceed based on Plaintiffs' vague allegations that he somehow improperly pressured the parties to mediation would have significant harmful consequences on the ability of bankruptcy courts to identify mediators. Most mediations involve what could be perceived as "pressure" for all sides to make concessions and compromises. Any aggrieved participant could therefore seek to civilly sue the mediator, claiming the "pressure" was allegedly the result of some later-discovered bias or conflict. The fundamental point of absolute immunity is to prevent this. And the immunity applies equally regardless of whether the aggrieved party's allegations of bias or misconduct are supported or unsupported, plausible or implausible. *See McAlester v. Brown*, 469 F.2d 1280, 1283 (5th Cir. 1972).

[5] Even if some of Plaintiffs' harm stemmed solely from administerial functions not subject to absolute immunity, Jones would still retain the qualified immunity applicable to any government official. *See Mylett v. Mullican*, 992 F.2d 1347, 1353 (5th Cir. 1993) (finding that, although record was insufficiently clear to establish whether civil service commission official's act was quasi-judicial and thus entitled to absolute immunity, official was at a minimum immune from damages suit under qualified immunity); *Mullenix v. Luna*, 577 U.S. 7, 11–19 (2015) (discussing standard for qualified immunity).

"conspiring and taking a bribe are not 'judicial acts,'" a judge could be held directly liable for these acts even if the harm was actualized through a judge's orders. *Holloway*, 765 F.2d at 522. The plaintiff's argument was based on the Ninth Circuit's decision in *Rankin*, in which that court "'concluded that a judge's private prior agreement to decide in favor of one party is not a judicial act,' and, accordingly, denied immunity for damages resulting from a decision predicated on such a prior agreement." *Id*. (quoting *Rankin v. Howard,* 633 F.2d 844, 847 (9th Cir.1980), *overruled by Ashelman v. Pope*, 793 F.2d 1072 (9th Cir. 1986) (en banc)) (cleaned up). The Fifth Circuit rejected this argument as "inconsistent with the fundamental policies underlying judicial immunity" and "the Supreme Court and our own en banc decision." *Id*. The Fifth Circuit concluded, "where the alleged harm, though resulting from a bribe or conspiracy, was inflicted by acts to which absolute immunity would apply, the complaint is insufficient to avoid judicial immunity." *Id.* at 523; *see also id.* at 524 (holding immunity applied because "[b]ut for those obviously 'judicial acts,' none of the harm [plaintiff] is alleged to have caused would have come about"). Plaintiffs' bare allegations that Jones (along with certain unidentified others) conspired to rig case assignments or mediator appointments in multiple cases does not overcome his immunity from this suit—because all of Plaintiffs' harms were actualized by judicial acts, just as in *Holloway*.

29.     Even ignoring this binding caselaw, Jones would still be entitled to immunity because Plaintiffs have failed to identify *any* act by Jones which can properly be categorized as non-judicial. Everything Plaintiffs identify in the Complaint essentially boils down to recusal and related decisions about disclosures and case assignment. Although Plaintiffs' complaint casts these decisions as mere "administrative" functions for which judges and mediators allegedly can be sued, Compl. ¶ 102, 188, 283, Plaintiffs are wrong.

13

30.     As part of their official judicial function in each case, judges and mediators must evaluate whether presiding over the matter presents a conflict of interest or creates an "appearance of impropriety." *See United States v. Jordan*, 49 F.3d 152, 155, 158 (5th Cir. 1995) (noting this is "fundamental to the judiciary," but ultimately holding that recusal violations are subject to "harmless error" review). As noted above, Local Rule 16.4.I(1) provides that ADR "providers are subject to disqualification pursuant to standards consistent with those set forth in 28 U.S.C. § 455," a statute that otherwise applies only to recusal decisions by "[a]ny justice, judge, or magistrate judge of the United States." This decision cannot be delegated to administrative staff. *See* 28 U.S.C. § 455 (providing judge is to "disqualify himself" if the statue is triggered); *In re City of Houston*, 745 F.2d 925, 927 (5th Cir. 1984) (recusal decisions are committed to the discretion of the judge). That attorneys and other court officers may have similar disclosure obligations does not render Jones's decisions under L.R. 16.4 and § 455 any *less* judicial in nature. They are acts of the type that judges commonly perform, and that Jones was required to perform by virtue of the Appointment Order. That Jones allegedly violated these obligations for personal gain does not change this.

31.     Moreover, the Fifth Circuit and other courts have repeatedly held alleged violations of § 455 cannot be the basis of a lawsuit for civil damages. *See Lewis v. City of Waxahachie*, 465 F. App'x 383, 384–86 (5th Cir. 2012) (dismissing claims as "without arguable merit" and "frivolous" because "[a]ll the acts by [the judges] of which [the plaintiff] complained . . . [including] refusing to voluntarily recuse themselves [under § 455] . . . were taken in the course of the criminal proceedings against [the plaintiff]; thus, the [district court] judges had at least some subject-matter jurisdiction."); *Price v. Porter*, No. 09-cv-00176, 2009 WL 1210509, at *4 n.5 (W.D. La. May 1, 2009) ("Courts unanimously have found that a failure to recuse oneself

is a judicial act for purposes of absolute judicial immunity."), *aff'd*, 351 F. App'x 925, 927 (5th Cir. 2009); *Kemp ex rel. Kemp v. Perkins*, 324 F. App'x 409, 413 (5th Cir. 2009) (disqualification decisions "are not the types of administrative or ministerial conduct for which judicial immunity is unavailable"); *Hinkle v. Johnston*, 263 F.3d 163 (5th Cir. 2001) (table decision) (dismissing as "without arguable merit and [a]s frivolous" damages claim based on argument "that the judges were biased and should have recused themselves," as such "arguments amount to no more than arguing that the judges' actions were improper"); *Wagshal v. Foster*, 28 F.3d at 1253–54 (finding "frivolous" argument that case evaluator/mediator's recusal-related actions were not judicial acts).[6]

32.    These holdings are mandated by how the Supreme Court has long treated faulty determinations of whether a court has subject matter jurisdiction for a case or act. In *Bradley v. Fisher*, the Supreme Court held that "[whether] acts would be in excess of [the judge's] jurisdiction . . . are particulars for his *judicial* consideration," acknowledging that such determinations are themselves judicial acts. *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 352 (1872) (emphasis added). "The same principle of exemption from liability" applies to these pre-suit determinations, "and for the same reasons," as to "errors committed in the ordinary prosecution of a suit where there is jurisdiction of both subject and person." *Id.* While recusal and case assignment issues[7] do not affect

---

[6] *See also, e.g.*, *Amrhein v. United States*, No. 16-cv-00223, 2017 WL 9251674, at *9 (E.D. Tex. June 23, 2017) (dismissing damages claims against state judges based on failure to recuse), *report and recommendation adopted*, 2017 WL 3886761 (E.D. Tex. Sept. 6, 2017), *aff'd*, 740 F. App'x 65 (5th Cir. 2018); *Blakely v. City of Laurel*, No. 14-cv-00082, 2015 WL 13091648, at *5 (S.D. Miss. Sept. 17, 2015) (citing *Lewis*) (upholding judicial immunity for municipal court judge), *aff'd*, 644 F. App'x 319 (5th Cir. 2016).

[7] Plaintiffs' innuendo that Jones somehow influenced case assignment is both factually unsupported and implausible. At all relevant times, complex Chapter 11 cases in the district have been **randomly assigned** by the District Clerk's office using a random number generator. *See* General Order 2018-1 Regarding Complex Case Assignments (S.D.Tex. Jan. 29, 2018), https://www.txs.uscourts.gov/sites/txs/files/Order%20re%20Complex%20Case%20Assignments.

a court's subject matter jurisdiction in the relevant sense, *see infra* Subsection I.C.b., they do relate to "the *manner* in which the jurisdiction shall be exercised," involve "some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine," and provide ripe ground for any dissatisfied litigant to allege "malicious or corrupt motives . . . . "whether the motives had or had not any real existence." *Id.* at 352–54 (emphasis added). Thus, the same immunity applies here.

33.     Again, Plaintiffs' unsupportable allegations about corruption, conspiracy, and self-interest do not change the analysis. Mediators and judges are entitled to immunity even when their violation of a recusal obligation was allegedly intentional or malicious. *See Aubrey v. D Mag. Partners, L.P.*, No. 19-CV-00056, 2019 WL 2549458, at *4 (N.D. Tex. June 20, 2019) (citing *Kemp*) ("The Fifth Circuit has held that judicial immunity is available for a judge's recusal, and thus allegations of malicious or corrupt intentions behind this judicial act cannot overcome immunity."); *Bonner v. Mitchell*, No. 23-cv-00872, 2023 WL 6307972, at *4 & n.7 (W.D. La. Sept. 7, 2023) (citing *Lewis*, *Price*, *Kemp*, *Hinkle*, and *Amhrein*) ("[D]eciding whether to recuse in the presence of a conflict of interest [is an] act[] normally performed by a judge."), *report and recommendation adopted*, 2023 WL 6317615 (W.D. La. Sept. 27, 2023).[8]

---

pdf; *see also* Letter from Marvin Isgur to William L. Osteen, Jr., Chair of the Comm. on the Admin. of the Bankr. Sys. of the Jud. Conf. of the U.S. (Aug. 25, 2025), https://www.txs.uscourts.gov/sites/txs/files/Osteen%20Letter%20on%20Letterhead.pdf. Steering the assignment of cases would require the cooperation of Judge Isgur, other judges, and members of the clerk's office. Plaintiffs have not alleged any such conspiracy—not even in a conclusory manner.

[8] Federal courts nationwide are in agreement. *See, e.g.*, *Acres Bonusing, Inc v. Marston*, 17 F.4th 901, 915–16 (9th Cir. 2021) (judge's "initial decision not to recuse, his rulings on procedural motions, . . . and his eventual decision to recuse" all subject to judicial immunity); *Teitel v. Capell Howard, P.C.*, No. 17-cv-00017, 2018 WL 525296, at *4 (M.D. Ala. Jan. 23, 2018) (citing *Henderson v. Shineski*, 562 U.S. 428, 435–36 (2011)) (judge immune from claims stemming from alleged violation of § 455); *Broughton v. United States Bankr. Ct., E. Dist. of N. Carolina*, 17-cv-00113, 2017 WL 2955762, at *1 (E.D.N.C. July 11, 2017) (judge's acts after disqualifying himself

      b.      **Jones Did Not Act in the Clear Absence of All Jurisdiction Because Bankruptcy Court Mediators' Jurisdiction Over Mediations Extends to the Above Types of Acts.**

34.     The only other exception to judicial immunity—acting in the clear absence of all jurisdiction—is likewise inapplicable. Plaintiffs' contention that "Jones acted in the absence of jurisdiction by presiding over this case when circumstances required his dismissal," Compl. ¶ 102, reflects a fundamental misunderstanding of the jurisdiction exception to absolute immunity, which has never been so case specific. For judicial immunity purposes, "the term 'jurisdiction' is to be broadly construed," such that "[w]here a judge does not clearly lack all subject-matter jurisdiction, he does not clearly lack *all* jurisdiction." *Holloway*, 765 F.2d at 523. It is practically unheard of for a court to reject absolute immunity based on the complete absence of the judicial officer's jurisdiction because even if certain specific acts are allegedly undertaken improperly, wrongly, or even for an intentionally corrupt purpose, they are still part of the *types* of cases or controversies that fall under the subject matter jurisdiction of the *type* of court in question.. Here, Jones retains immunity because his actions in mediating the GWG bankruptcy and making recusal decisions were well within the subject-matter jurisdiction of a bankruptcy court, a bankruptcy court-appointed mediator generally, and the bounds of the specific Appointment Order at issue here.

35.     In defining the scope of the subject-matter jurisdiction exception, courts have traditionally looked to the Supreme Court's holding in *Bradley v. Fisher*, 80 U.S. 335 (1871). There, the Supreme Court outlined "[a] distinction . . . between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter." *Id*. at 351. To explain this distinction, the Supreme Court posited that "if a probate judge, with jurisdiction over only wills and estates, should

---

under § 455 still subject to judicial immunity because "[t]hat statute, however, is not jurisdictional in nature"); *Makere v. Early*, No. 21-cv-00096, 2022 WL 20509771, at *4 (N.D. Fla. June 6, 2022) (no private cause of action for recusal decisions).

try a criminal case," he would lack immunity. *Stump v. Sparkman*, 435 U.S. 349, 357 n.7 (1978) (citing *Bradley*, 80 U.S. at 352). However, "if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune." *Id.* The Supreme Court reasoned that "some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction." *Bradley*, 80 U.S. at 352. It further noted that because "the allegation of malicious or corrupt motives could always be made," a bright-line rule was necessary to prevent "vexatious litigation." *Id.* at 354. Thus, the Supreme Court concluded, immunity must apply *even if "the validity of [the judge's] judgments may depend"* "upon the correctness of his [jurisdictional] determination." *Id.* at 352.

36.     Consistent with *Bradley*, the Supreme Court and Fifth Circuit have repeatedly found that to apply immunity, "the proper inquiry is *not* whether the judge *actually had jurisdiction*, or even whether the court exceeded its jurisdictional authority." *E.g.*, *Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995). Instead, the relevant question is whether courts of that type have "some subject-matter jurisdiction" over the area in which the judge was acting—i.e., whether it can generally perform acts of that type. *E.g.*, *Adams v. McIlhany*, 764 F.2d 294, 298 (5th Cir. 1985). Accordingly, judges retain absolute immunity even in the face of violations of the U.S. Constitution, statutes, binding caselaw, or orders from a higher court divesting the lower court of jurisdiction or subsequently ruling that jurisdiction did not exist.[9] *See, e.g.*, *Holloway v. Walker*, 765 F.2d 517, 524 (5th Cir. 1985) (upholding judicial immunity because a state judge's court had

---

[9] This is what makes judicial immunity "absolute," rather than "qualified."

"general subject-matter jurisdiction," even though a state appellate court had found previous writ of mandamus had rendered judge "without jurisdiction" to enter the orders at issue).[10]

37.    Similarly, arbitrators and mediators retain immunity when they are acting in the areas they normally act in, even if there are disputes about whether the arbitrator exceeded their authority. *See, e.g.*, *Pinnacle Mins. Corp. v. Whitehead*, 357 F. Supp. 3d 1053, 1059 (D. Nev. 2019) (second alteration original) ("Even accepting Plaintiff's argument that [defendant arbitrator] 'act[ed] outside of his jurisdiction [by ordering the release of funds before judicial confirmation of the arbitral award],' at most Plaintiff's argument is one seeped in a technicality between 'in excess of jurisdiction' and 'in complete absence of all jurisdiction,' verging closer to the former."); *Todd v. Landrum*, 2012 WL 5187836, at *1, *3 n.3 (E.D. Cal. Oct. 17, 2012) (finding mediator was not acting in clear absence of jurisdiction and retained immunity even if he erred in performing own untrained, evidence-less assessment of plaintiff-parent's mental health because plaintiff's mental health was relevant to duty mediator was charged with "to assess the needs and interests of the [plaintiff's] child involved in the controversy"); *Wagshal*, 28 F.3d at 1254 (finding that "[w]hatever merit" plaintiff's argument that the rules of civil procedure did not authorize appointment of a case evaluator might have, "it does not come within a country mile of showing

---

[10] *See also Mullis v. U.S. Bankr. Ct. for Dist. of Nevada*, 828 F.2d 1385, 1388–89 (9th Cir. 1987) (bankruptcy judge immune for typical bankruptcy court actions taken after appeal allegedly divested court of jurisdiction, because at most acts would have been taken "in excess of jurisdiction," not a complete lack of "subject matter jurisdiction"); *Adams v. McIlhany*, 764 F.2d 294, 298–99 (5th Cir. 1985) ("For the purposes of defining 'jurisdiction' in this . . . immunity case, it is sufficient that [the judge's] court was a court of general jurisdiction," even though judge's actions were "unconstitutional" and violated "longstanding Texas precedent"); *Stump*, 435 U.S. at 357–60 ("We cannot agree that there was a 'clear absence of all jurisdiction' . . . . [to approve the sterilization of a minor because] [a]s an Indiana Circuit Court Judge, [the judge] had 'original exclusive jurisdiction in all cases at law and in equity whatsoever.'").

complete absence of jurisdiction" because case evaluator was "discharging [his] duties . . . under color of authority" pursuant to court's order of appointment).

38.    Recusal violations are no different. The Fifth Circuit and district courts within it have specifically held that recusal violations do not divest a court of all subject matter jurisdiction for purposes of absolute immunity. *See Teitel v. Capell Howard, P.C.*, No. 17-cv-00017, 2018 WL 525296, at \*4 (M.D. Ala. Jan. 23, 2018) (citing *Henderson v. Shineski*, 562 U.S. 428, 435–36 (2011)) ("[Section] 455 makes no mention that its application deprives the court of subject matter jurisdiction[,] . . . . [and t]he Supreme Court has made clear that a statute does not limit the jurisdictional authority of the district courts unless Congress clearly indicates its intention to do so."); *Roberts v. Wal-Mart Store Stores*, No. 15-CV-00119, 2022 WL 141677, at \*2 (W.D. La. Jan. 14, 2022) (§ 455 is not a jurisdictional bar to the entry of orders or judgments, and does not make a judgment "void" for purposes of post-judgment motions), *aff'd sub nom. Roberts v. Wal-Mart Louisiana, L.L.C.*, 54 F.4th 852, 854 (5th Cir. 2022); *Stump*, 435 U.S. at 359 ("grave procedural errors" categorically insufficient to abrogate immunity); *Lewis v. City of Waxahachie*, 465 F. App'x 383, 384–86 (5th Cir. 2012) (alleged recusal violations would not deprive court of subject-matter jurisdiction for judicial immunity purposes); *accord Wagshal*, 28 F.3d at 1253–54 (finding "frivolous" argument that case evaluator/mediator was not immune for statements made after written statement of recusal).

39.    That a recusal violation does not divest a court of all subject matter jurisdiction makes especial sense when one considers that such violations do not even automatically render subsequent actions or orders void. *See, e.g.*, *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 862 (1988) ("As in other areas of the law, there is surely room for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance."); *Patterson v. Mobil*

*Oil Corp.*, 335 F.3d 476, 485 (5th Cir. 2003) (reaffirming harmless error rule and explaining how it applies to violations of both § 455(a) and § 455(b)). Plaintiffs' own case supports this principle. *See* Compl. ¶ 125 (citing *CEATS, Inc. v. Cont'l Airlines, Inc.*, 755 F.3d 1356, 1362 (Fed. Cir. 2014) (finding mediator violated § 455 by failing to recuse but relying on *Liljeberg* to nevertheless deny plaintiff's Rule 60(b)(6) motion to void judgment conflicted mediator allegedly influenced)).

40.    There can be no dispute that Judge Jones performed the types of actions—holding meetings, structuring discussions, making suggestions or recommendations—contemplated by this District's Alternative Dispute Resolution Program generally and by the Appointment Order specifically, the latter of which has never been overturned and facially vested Judge Jones with jurisdiction. These same actions were also typical of Judge Jones' role as a bankruptcy judge. This was a bankruptcy judge serving as a court-appointed bankruptcy mediator pursuant to a bankruptcy court order requiring mediation. Thus, any suggestion Jones lacked all jurisdiction in the relevant sense is plainly wrong and against the binding precedent of this circuit.

## II.    Plaintiffs Lack Standing for the Same Reasons This Court Articulated in *Van Deelen.*

41.    Alternatively, Plaintiffs' claims should be dismissed for lack of standing. Their position is not materially different from the plaintiffs in *Van Deelen* and *Bouchard*, and they therefore lack Article III and prudential standing for the same reasons this Court recently identified. *See Van Deelen v. Jones*, No. 4:23-cv-03729, 2024 WL 3852349 (S.D. Tex. Aug. 16, 2024); *see also* Jackson Walker Mot. to Dismiss (ECF No. 11) ¶¶ 53–72, 85–86; Freeman's Mot. to Dismiss (ECF No. 10) ¶¶ 20–34.

42.    The harm Plaintiffs have alleged is derivative of the GWG Bankruptcy Estate. Plaintiffs allege only two types of harm: (1) that the GWG bankruptcy estate was diminished by various fee orders approving excessive fees, and (2) that the value of the GWG bankruptcy estate

was reduced by the final approved bankruptcy plan, which Plaintiffs assert in conclusory fashion (and without regard for the facts) needlessly liquidated rather than restructured the company. *See, e.g.*, Compl. ¶ 139 (describing Plaintiffs' damages as "losses and fees wrongfully taken from the bankruptcy estate and/or Wind Down Trust"). These are purely derivative harms.

43.     The unpublished, out-of-circuit cases defendant cites, Compl. ¶ 140, do not support their argument that these harms are direct. In *In re Bernard L. Madoff Inv. Sec., LLC*, 2013 WL 5511027, at *8–10 (S.D.N.Y. Sept. 30, 2013), the court found that the claims asserted *were in fact derivative*, with plaintiff improperly attempting to repackage their fraudulent conveyance claims as securities fraud claims with vague and "conclusory" statements about defendant's supposed control over wrongdoing. Similarly, in *Medkser v. Feingold*, 307 Fed. Appx. 262, 265 (11th Cir. 2008), the only claims the court found to be direct were those for fraudulent inducement of securities purchases via statements made to and relied on by plaintiffs and not necessarily other creditors. The court found that other claims based on self-dealing and mismanagement were derivative. *Id.* Finally, Plaintiffs' unsupported argument that their losses should be treated as "direct (and non-derivative of the estate) because they are part of a larger fraudulent scheme outside any single bankruptcy," Compl. ¶ 141, is meritless. Alleged harm to participants in other unidentified bankruptcies does not make Plaintiffs' alleged harm in *this* case any less dependent on the value of GWG, which is derivative harm.[11]

---

[11] Plaintiffs' alternative request to appoint them or Murray Holland (who is currently under suit for breaches of his fiduciary duty to GWG, *see* Jackson Walker Mot. to Dismiss (ECF No. 11) ¶¶ 1–36; Freeman's Mot. to Dismiss (ECF No. 10) ¶¶ 15, 33; Bankruptcy Docket No. 2739 ¶¶ 1–20, 41–45), as representatives of the estate for the purpose of bringing these claims should be rejected. While Plaintiffs allege that this relief is justified because the Litigation Trustee is "hopelessly conflicted," Compl. ¶ 143, their only rationale is that he is not bringing the claims Plaintiffs want. But it is the function of the Litigation Trustee to determine which claims to pursue based on applicable duties and obligations of the Trustee. It was clearly appropriate and within the Trustee's discretion to determine that a suit against Jones was unlikely to succeed due to his

**III.     Plaintiffs Fail to Plead Causation for Any Claim or Otherwise Plead Valid Causes of Action**

44.     Because Jones is entitled to threshold consideration and application of judicial immunity, he has not included in this Motion a full discussion of additional Rule 12 dismissal grounds. *See, e.g.*, *Holloway v. Walker*, 765 F.2d 517, 521 (5th Cir. 1985) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)) ("Orders denying absolute immunity are automatically appealable."); *see also, e.g.*, *McCullough v. Finley*, 907 F.3d 1324, 1330 (11th Cir. 2018) ("[A] defendant may immediately appeal a denial of absolute judicial immunity."). As explained in the briefing of other Defendants, however, Plaintiffs' Complaint contains numerous other fatal flaws. *See* Jackson Walker Mot. to Dismiss (ECF No. 11) ¶¶ 73–97, 105–129; Freeman Defendants' Mot. to Dismiss (ECF No. 10) ¶¶ 35–81.[12]

45.     These flaws include, for example, the complete failure to plead causation for any claim under either Rule 8 or Rule 9(b) (the latter of which applies to all of Plaintiffs' claims because they are all grounded in fraud). The Complaint is devoid of any specific facts about Jones' alleged actions as a mediator, or facts about how he allegedly exerted improper influence over the parties to reach agreements at mediation. The Complaint is likewise devoid of any specific allegation of misconduct that caused the Plaintiffs (through their agent LBM), the Bondholder Committee, and the Debtor—not Jones—to jointly propose orders that the bondholders overwhelmingly approved and Judge Isgur entered. The only allegation of misconduct is Jones'

---

absolute immunity defense and numerous other substantive issues with the claims. If the Litigation Trustee's judgement could be second guessed or overturned merely based on assertions by disappointed parties, the appointment of a Litigation Trustee would be meaningless. Moreover, Plaintiffs allowed the deadline to seek replacement of the Litigation Trustee to lapse despite knowing of the Freeman-Jones relationship beforehand. *See* Bankruptcy Dkt. No. 2739 ¶¶ 30–32.

[12] In the event judicial immunity is denied, Jones hereby incorporates co-Defendants' briefing on the topics relating to the insufficiency of the allegations under Rule 12(b)(6) and 12(b)(1).

non-disclosure of a romantic relationship under § 455, which, as explained above, does not give rise to a cause of action. Ultimately, the remedy for a party aggrieved by an alleged disclosure violation is *not* filing a civil lawsuit against the judge or mediator. It is instead to seek relief from the orders under the existing procedural vehicles under the Federal Rules of Civil Procedure and appeal.

<div align="center">

**CONCLUSION**

</div>

46.    Former Judge Jones is entitled to judicial or quasi-judicial immunity from all the claims asserted against him in this action. For all the foregoing reasons, he respectfully asks this Court to dismiss the claims asserted against him with prejudice.

September 15, 2025

<div style="margin-left:40%">

By: */s/ David Boies*
David Boies (*pro hac vice* forthcoming)
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
dboies@bsfllp.com
Telephone: (914) 749-8200

Tyler Ulrich (*pro hac vice* forthcoming)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, FL 33131
tulrich@bsfllp.com
Telephone: (305) 539-8400

***Counsel for Defendant, David R. Jones***

</div>

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned attorney, do hereby certify, that the foregoing instrument was served to all parties of record by CM/ECF on September 15, 2025.


<div align="right">

*/s/   David Boies*

David Boies

</div>

## **CERTIFICATE OF CONFERENCE**

Because this motion is dispositive, no conference is required under Local Rule CV-7.