**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Gary Peterson, Chris Nakashima, John English, Jaquetta English, LT-1 Exchange Trust, LT-2 Exchange Trust, LT-3 Exchange Trust, LT-4 Exchange Trust, LT-5 Exchange Trust, LT-6 Exchange Trust, LT-7 Exchange Trust, LT-8 Exchange Trust, LT-9 Exchange Trust, LT-12 Exchange Trust, LT-14 Exchange Trust, LT-15 Exchange Trust, LT-17 Exchange Trust, LT-18 Exchange Trust, LT-19 Exchange Trust, LT-20 Exchange Trust, on their own behalf and on behalf of all others similarly situated, | § § § § § § § § § § § § § § § § § § | |
| Plaintiffs, | § § | Civil Action No. 4:25-cv-02761 |
| v. | § § | |
| David R. Jones, Elizabeth Carol Freeman, The Law Office of Liz Freeman, PLLC, Jackson Walker, LLP, and Porter Hedges, LLP, | § § § § § | |
| Defendants. | § | |

**DEFENDANT PORTER HEDGES, LLP'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(1) AND (6)**

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ..................................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................................... 4

  A.   GWG, and the Seller Trusts who Constitute the Exchange Trust Plaintiffs in This Case ........................................................................................... 5

  B.   GWG's Descent to Bankruptcy ................................................................... 6

  C.   The United States Trustee Appoints the Official Bondholder Committee and Porter Hedges is Retained and Approved as its Co-Counsel ........................ 6

  D.   LBM is Formed to Act as an Agent to the Seller Trusts—Many of Which are the Same Exchange Trust Plaintiffs Here ........................................................ 7

  E.   The Bondholder Committee Investigates and Seeks to Pursue Causes of Action Against the Same Exchange Trust Plaintiffs Here, and Others ................ 9

  F.   The Bondholder Committee, GWG, LBM and Others Mediate, Ultimately Proposing a Consensual Chapter 11 Plan for the Bankruptcy Court's Approval ..................................................................................................... 10

  G.   Judge Isgur Confirms the Chapter 11 Plan and Approves Porter Hedges' Final Fee Application ................................................................................... 11

  H.   Ms. Freeman Assumes her Role as Wind Down Trustee ................................... 12

III. STANDARD OF REVIEW ................................................................................... 14

IV.  ARGUMENTS & AUTHORITIES ....................................................................... 16

  A.   Plaintiffs' Claims Against Porter Hedges Fail for Threshold Reasons, Common to all Claims, That Plaintiffs Cannot Remedy ..................................... 16

    i.   Plaintiffs lack standing, requiring dismissal under Rules 12(b)(1) and 12(b)(6) ......................................................................................... 16

      a.   Plaintiffs lack standing to assert direct claims against Porter Hedges ........................................................................................ 16

      b.   Plaintiffs lack Article III standing because they fail to allege particularized injury for non-estate claims, necessitating dismissal under Rule 12(b)(1) ................................ 18

      c.   Plaintiffs also lack prudential standing, requiring dismissal under Rule 12(b)(6) .................................................................... 22

    ii.  The Complaint fails to allege that Porter Hedges was the but for or proximate cause of any harm and thus, it must be dismissed .................. 24

    iii. The Complaint's failure to adequately plead detrimental reliance also mandates dismissal of all of Plaintiffs' claims against Porter Hedges under Rule 12(b)(6) ........................................................... 26

iv.     Plaintiffs fail to allege facts sufficient to impute any knowledge of
        the Jones-Freeman relationship to Porter Hedges, so all claims
        against Porter Hedges must be dismissed .................................................. 28

v.      Plaintiffs' claims must also be dismissed against Porter Hedges
        because they are barred by attorney immunity and the judicial
        proceedings privilege ............................................................................. 32

B.      Each of Plaintiffs' Claims Must be Dismissed Under Rule 12(b)(6) for
        Additional Deficiencies ...................................................................................... 33

i.      Because Plaintiffs were not Porter Hedges' clients, Porter Hedges
        had no duty to them; thus, Counts IV, V, VI, VII and IX must be
        dismissed ................................................................................................ 33

        a.      Plaintiffs' aiding and abetting breach of fiduciary duty
                claim (Count V) also fails .......................................................... 34

        b.      Plaintiffs' professional negligence claim (Count VII) fails
                because Porter Hedges was not their attorney ............................ 35

ii.     The Complaint separately fails to state a claim for negligent
        misrepresentation (Count VI) against Porter Hedges ............................. 36

iii.    Porter Hedges was not unjustly enriched, and that claim (Count
        IX) also fails ........................................................................................... 37

iv.     Plaintiffs offer no supporting allegations or theories in support of
        their respondeat superior and/or agency liability claim .......................... 38

v.      Even assuming, arguendo, that Porter Hedges was Plaintiffs'
        attorney, the anti-fracturing rule bars Plaintiffs from repackaging
        professional negligence claims into other tort claims ............................. 38

V.  CONCLUSION ............................................................................................................... 40

## TABLE OF AUTHORITIES

**Cases**

*Am. Guar. and Liab. Ins. Co. v. U.S. Fire Ins. Co.*,
   255 F. Supp. 3d 677 (S.D. Tex. 2017) ................................................................ 31

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................... 15

*Barcelo v. Elliott*,
   923 S.W.2d 575 (Tex. 1996) .............................................................................. 36

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................... 15, 24

*Blasko v. Miller*,
   678 F. Supp. 3d 832 (N.D. Tex. 2023) ............................................................... 33

*Border Demolition & Envtl., Inc. v. Pineda*,
   535 S.W.3d 140 (Tex. App.—El Paso 2017, no pet.) ......................................... 39

*Carney v. Adams*,
   592 U.S. 53 (2020) ............................................................................................. 16

*City of Galveston v. Shu*,
   607 S.W.2d 942 (Tex. App.—Houston [1st Dist.] 1980, no writ) ....................... 31

*Collins v. Sydow (In re NC12, Inc.)*,
   478 B.R. 820 (Bankr. S.D. Tex. 2012) ............................................................... 19

*Collins v. Zolnier*,
   2019 WL 2292333 (Tex. App.—Beaumont May 30, 2019, pet. denied) ............. 33

*Den Norske Stats Oljeselskap As v. HeereMac Vof*,
   241 F.3d 420 (5th Cir. 2001) ............................................................................. 15

*DiStefano v. Stern (In re JFD Enterprises, Inc.)*,
   223 B.R. 610 (Bankr. D. Mass. 1998) ................................................................ 17

*Doctors Hosp. at Renaissance, Ltd. v. Andrade*,
   493 S.W.3d 545 (Tex. 2016) .............................................................................. 30

*Earl v. Boeing Co.*,
   53 F.4th 897 (5th Cir. 2022) .............................................................................. 18

*Elledge v. Friberg–Cooper Water Supply Corp.*,
   240 S.W.3d 869 (Tex. 2007) .............................................................................. 37

*FDA v. All. for Hippocratic Med., et al., (Alliance)*,
   602 U.S. 367 (2024) ........................................................................................... 18

*Fed. Land Bank Ass'n v. Sloane*,
   825 S.W.2d 439 (Tex. 1991) .............................................................................. 36

*Flynn v. Bank of Mineral Wells*,
   53 Tex. Civ. App. 481, 118 S.W. 848 (1909, no writ) ....................................... 31

*Forshee v. Moulton,*
   694 S.W.3d 803 (Tex. App.—Houston [14th Dist.] 2024, no pet.)..........................................40

*FW/PBS, Inc. v. City of Dallas,*
   493 U.S. 215 (1990)..........................................................................................................14

*G & H Towing Co. v. Magee,*
   347 S.W.3d 293 (Tex. 2011)............................................................................................38

*George v. SI Grp., Inc.,*
   36 F.4th 611 (5th Cir. 2022) ....................................................................................15, 16

*Glen v. Am. Airlines, Inc.,*
   7 F. 4th 331 (5th Cir. 2021) .............................................................................................24

*Grossman v. Belridge Grp. (In re Lothian Oil, Inc.),*
   531 F. App'x 428 (5th Cir. 2013) ....................................................................................22

*GTE Southwest, Inc. v. Bruce,*
   998 S.W.2d 605 (Tex. 1999)............................................................................................38

*Hancock v. Chicago Title Ins. Co.,*
   635 F. Supp. 2d 539 (N.D. Tex. 2009) ......................................................................37, 38

*Hanson v. Veterans Admin.,*
   800 F.2d 1381 (5th Cir.1986) ....................................................................................18, 26

*Harris v. Pyramid Gom (In re Capco Energy, Inc.),*
   2012 WL 253148 (Bankr. S.D. Tex. Jan. 25, 2012) .........................................................14

*HECI Expl. Co. v. Neel,*
   982 S.W.2d 881 (Tex. 1998)............................................................................................37

*Highland Cap. Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.),*
   522 F.3d 575 (5th Cir. 2008) ....................................................................................19, 20

*Home Builders Ass'n, Inc. v. City of Madison,*
   143 F.3d 1006 (5th Cir. 1998) .........................................................................................14

*Howe v. Vaughan (In re Howe),*
   913 F.2d 1138 (5th Cir. 1990) .........................................................................................21

*In re Anderson,*
   330 B.R. 180 (Bankr. S.D. Tex. 2005) .......................................................................29, 30

*In re Bradley,*
   495 B.R. 747 (Bankr. S.D. Tex. 2013) .......................................................................28, 29

*In re Buffalo Coal Co.,*
   2008 Bankr. LEXIS 1259 (Bankr. N.D.W. Va. Apr. 30, 2008) ........................................17

*In re Caesars Entm't Operating Co.,*
   561 B.R. 420 (Bankr. N.D. Ill. 2015) ..............................................................................27

*In re Corrugated Container Antitrust Litigation,*
   659 F.2d 1341 (5th Cir. 1981) .........................................................................................29

*In re DePugh*,
   409 B.R. 125 (Bankr. S.D. Tex. 2009) ................................................................ 29

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*,
   888 F.3d 753 (5th Cir. 2018) ................................................................................ 34

*In re Granite Partners, LP*,
   219 B.R. 22 (Bankr. S.D.N.Y. 1998) .................................................................. 27

*In re GWG Holdings, Inc.*,
   Adv. Pro. No. 24-03090 (S.D. Tex.) ...................................................................... 5

*In re GWG Holdings, Inc.*,
   No. 22-90032 (U.S. Bankr. Tex.) ............................................................................ 5

*In re Harbor Fin. Grp., Inc.*,
   303 B.R. 124 (Bankr. N.D. Tex. 2003) ................................................................ 22

*In re Parsley*,
   384 B.R. 138 (Bankr. S.D. Tex. 2008) ................................................................ 29

*In re Universal Bldg. Prods.*,
   486 B.R. 650 (Bankr. D. Del. 2010) .................................................................... 27

*Indus. Clearinghouse, Inc., et al. v. Jeffrey MIMS (In re Coastal Plains, Inc.)*,
   338 B.R. 703 (N.D. Tex. 2006) ............................................................................ 22

*Infinity Emergency Mgmt. Grp., LLC v. Neighbors Health Sys. (In re Neighbors Legacy
   Holdings, Inc.)*,
   645 B.R. 864 (Bank. S.D. Tex. 2022) .................................................................. 15

*Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*,
   912 F.3d 759 (5th Cir. 2019) ........................................................................ 32, 33

*K. Griff Investigations, Inc. v. Cronin*,
   633 S.W.3d 81 (Tex. App. – Houston [14th Dist.] 2021, no pet.) ......................... 36

*Kreit v. Quinn (In re Cleveland Imaging & Surgical Hosp., L.L.C.)*,
   26 F.4th 285 (5th Cir. 2022) ................................................................................ 20

*La Sara Grain Co. v. First National Bank of Mercedes*,
   673 S.W.2d 558 (Tex. 1984) ................................................................................ 30

*La. World Exposition, Inc. v. Fed. Ins. Co. (In re La. World Exposition, Inc.)*,
   832 F.2d 1391 (5th Cir. 1987) .............................................................................. 20

*Landry's Inc. v. Animal Legal Def. Fund*,
   631 S.W.3d 40 (Tex. 2021) .................................................................................. 33

*Long v. Lopez*,
   115 S.W.3d 221 (Tex. App.—Fort Worth 2003, no pet.) ...................................... 32

*Matter of Levy*,
   54 B.R. 805 (Bankr. S.D.N.Y. 1985) .................................................................. 17

*Matter of S.I. Acquisition, Inc.*,
   817 F.2d 1142 (5th Cir. 1987) .............................................................................. 23

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Ints.*,
  991 S.W.2d 787 (Tex. 1999) ................................................................................. 36

*McVey v. Johnson (In re SBMC Healthcare, LLC)*,
  519 B.R. 172 (Bankr. S.D. Tex. 2014) .................................................................. 20

*Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*,
  800 F. App'x 239 (5th Cir. 2020) ......................................................................... 34

*Millcreek Assocs., L.P. v. Bear, Stearns & Co.*,
  205 F. Supp. 2d 664 (W.D. Tex. 2002) ................................................................ 24

*Miller Glob. Properties, LLC v. Marriott Int'l , Inc.*,
  418 S.W.3d 342 (Tex. App. 2013) ........................................................................ 26

*MLN Co. v. Clear the Air, LLC (In re Clear the Air, LLC)*,
  631 B.R. 286 (Bankr. S.D. Tex. 2021) .................................................................. 19

*Moore v. Bryant*,
  853 F.3d 245 (5th Cir. 2017) ............................................................................... 14

*Morton S. Bouchard, III, et al. v. David R. Jones, et al.*,
  Civil Action No. 4:24-cv-0693 (S.D. Tex.) ......................................................... 16

*Murthy v. Missouri*,
  603 U.S. 43 (2024) ............................................................................................... 16

*Newport Acquisition Co. No. 1, L.L.C. v. Schiro (In re C-Power Prods., Inc.)*,
  230 B.R. 800 (Bankr. N.D. Tex. 1998) ................................................................ 19

*Okla. State Treasurer v. Linn Operating, Inc. (In re Linn Energy, L.L.C.)*,
  927 F.3d 862 (5th Cir. 2019) ............................................................................... 21

*Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc.)*,
  200 F.3d 382 (5th Cir. 2000) ............................................................................... 22

*Pitts v. Rivas*,
  709 S.W.3d 517 (Tex. 2025) ................................................................................ 39

*Ramirez v. J.C. Penny Corp. Inc.*,
  2015 WL 5766498 (E.D. Tex. Sept. 29, 2015) .................................................... 16

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001) ............................................................................... 15

*Republic Supply Co. v. Shoaf*,
  815 F.2d 1046 (5th Cir. 1987) ............................................................................. 21

*Reynolds v. Sanchez Oil and Gas Corp.*,
  2023 WL 8262764 (Tex. App.—Houston [1st Dist.] Nov. 30, 2023, no pet.) ........ 34

*Richardson v. Monaco (In re Summit Metals, Inc.)*,
  477 B.R. 484 (2012) ............................................................................................ 17

*Schultze v. Chandler*,
  765 F.3d 945 (9th Cir. 2014), *as amended* (Aug. 1, 2014) .................................. 17

*Sec. Inv. Prot. Corp. v. Cheshier & Fuller LLP (In re Sunpoint Sec., Inc.)*,
    377 B.R. 513 (Bankr. E.D. Tex. 2007) ................................................................. 35

*St. Paul Fire & Marine Ins. Co. v. Labuzan*,
    579 F.3d 533 (5th Cir. 2009) ................................................................................ 22

*Stevens v. Lowder*,
    643 F.2d 1078 (5th Cir. 1981) .............................................................................. 23

*Tamburine v. Ctr. Sav. Ass'n*,
    583 S.W.2d 942 (Tex. App.—Tyler 1979, writ *ref'd n.r.e.*) ................................. 31

*TechnoMarine SA v. Giftports, Inc.*,
    758 F.3d 493 (2d Cir. 2014) ................................................................................. 15

*Thomas v. N.A. Chase Manhattan Bank*,
    1 F.3d 320 (5th Cir. 1993) .................................................................................... 30

*Tittle v. Enron Corp. (In re Enron Corp.)*,
    2006 WL 1662596 (S.D. Tex. June 7, 2006) ......................................................... 26

*Turk v. Pershing LLC*,
    2023 WL 36080 (N.D. Tex. Jan. 3, 2023) .............................................................. 34

*United States v. Dental Health Programs, Inc.*,
    2020 WL 3064712 (N.D. Tex. June 8, 2020) ......................................................... 36

*Valdery v. Louisiana Workforce Comm'n*,
    2015 WL 5307390 (E.D. La. Sept. 10, 2015) ........................................................ 15

*Van Deelan v. Jones et al.*,
    Civil Action No. 4:23-cv-3729 (S.D. Tex.) ........................................................... 16

*Van Deelen v. Jones*,
    2024 WL 3852349 (S.D. Tex. Aug. 16, 2024) ....................................................... 23

*Varco LP v. Bohnsack*,
    2009 WL 10698303 (S.D. Tex. Oct. 1, 2009) ........................................................ 36

*Waldron v. Adams & Reese, LLP (In re Am. Int'l Refinery, Inc.)*,
    676 F.3d 455 (5th Cir. 2012) ................................................................................ 28

*Walker v. Beaumont Indep. Sch. Dist.*,
    938 F.3d 724 (5th Cir. 2019) .......................................................................... 15, 16

*West v. WRH Energy Partners, LLC, et al. (In re Noram Resources, Inc.)*,
    2011 WL 6936361 (S.D. Tex. 2011) ..................................................................... 21

*Won Pak v. Harris*,
    313 S.W.3d 454 (Tex. App.—Dallas 2010, pet. denied) ....................................... 40

*Wooley v. Haynes & Boone, L.L.P. (In re SI Restructuring, Inc.)*,
    714 F.3d 860 (5th Cir. 2013) ................................................................................ 20

**Statutes**

11 U.S. Code § 1102 ................................................................................................... 20

**Other Authorities**

7 Collier on Bankruptcy (16th ed.) .......................................................................... 17

Delaware Limited Liability Company Act, 6 Del. C. § 18-101, *et seq.*, Certificate of Formation,
    L BOND MANAGEMENT LLC (April 11, 2022) .................................................. 7

**Rules**

Fed. R. Bankr. P. 9024 ................................................................................... 22, 38

Fed. R. Civ. P. 12(b)(1) ................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6) ................................................................................. *passim*

**Constitutional Provisions**

U.S. Const., Art. III, § 2 ....................................................................................... 14

# I.    <u>INTRODUCTION</u>[1]

1.      Plaintiffs bring claims similar to those previously asserted, and dismissed, by other plaintiffs in this Court.  Plaintiffs assert RICO and tort claims based on an alleged conspiracy between Defendants Freeman, Jones, and Jackson Walker and seek to recover for alleged damages to the GWG bankruptcy estate and a return of fees paid to the defendant law firms.  The Court well knows these types of allegations, as evidenced by its opinion in the *Van Deelen v. Jones* case where it not only dismissed the claims for lack of standing but also cautioned the Bandas Law Firm to "diligently review the facts and the relevant law in all future filings."

2.      Plaintiffs' 134-page Complaint alleges a scheme between Freeman, Jones, and Jackson Walker to inappropriately enrich themselves "across more than thirty mega-bankruptcies" and asserts nine different causes of action, including RICO violations, fraud, conspiracy, and other torts.[2]  Importantly, the claims against Porter Hedges are limited to breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligent representation, professional negligence, and unjust enrichment.  Porter Hedges is not alleged to have been part of the conspiracy and its alleged liability arises from a single bankruptcy that was not even in Jones' court.

3.      Porter Hedges is seldom mentioned in the Complaint.  Instead, Plaintiffs' claims against Porter Hedges arise solely out of its co-counsel representation of the Official Committee of Bondholders in the GWG bankruptcy cases.  Plaintiffs improperly seek to recover from Porter Hedges the approximately $2 million in fees it earned and also for the alleged diminution in value

---

[1] Capitalized terms used but not defined in this Introduction shall have the meanings ascribed to them in the Complaint, or as set forth later herein, as applicable.  All other capitalized terms used but not otherwise defined in this Motion to Dismiss shall have the meanings ascribed to them in the Complaint.  Unless otherwise indicated, all citations and internal quotation marks are omitted.

[2] Porter Hedges is not adopting the veracity of those allegations and characterizes them solely for the purposes of its Motion to Dismiss.

to their bonds caused by the appointments of Jones and Freeman as the mediator and wind down trustee.  Plaintiffs' claims against Porter Hedges are dead on arrival.

4.      *First*, Plaintiffs lack standing to bring the claims asserted against Porter Hedges. Plaintiffs attempt to avoid the case-dispositive standing issues from the *Van Deelen* case by purporting to sue Porter Hedges directly on the theory that an attorney-client relationship existed between Porter Hedges and Plaintiffs.  Fatal to Plaintiffs' claim is the fact that Porter Hedges never represented Plaintiffs.  While Plaintiffs were holders of GWG L Bonds, they were never clients of Porter Hedges.  Porter Hedges represented the Bondholder Committee *and only the Bondholder Committee*.[3]  While that fact is clear, it is equally clear that a law firm representing a statutory committee in a Chapter 11 case has a duty to the committee *and only the committee*.  The duty does not even run to the committee members and certainly not to remote committee constituents, like Plaintiffs.

5.      Porter Hedges' retention as co-counsel to the Committee was approved by Judge Isgur, months prior to any involvement of Jones.  There can be no dispute that Porter Hedges never represented any of the Plaintiffs.  In fact, the Exchange Trust Plaintiffs were actively and aggressively represented by their own counsel in the GWG bankruptcy case, often at odds with the positions taken by the Bondholder Committee represented by Porter Hedges.  Specifically, the Exchange Trust Plaintiffs, controlled by Murray Holland and other insiders, through its agent LBM, lodged initial objections to the Bondholder Committee's desire to make public its pursuit of litigation against the Exchange Trust Plaintiffs for their questionable pre-bankruptcy conduct. Given that Plaintiffs never had an attorney-client relationship with Porter Hedges, their claims

---

[3] Prior to the Bondholder Committee's formation, Porter Hedges represented two individual members of the Bondholder Committee (neither of which were Plaintiffs).  Upon being retained as co-counsel to the Bondholder Committee, Porter Hedges withdrew from its representation of these individuals.  Nonetheless, the Plaintiff Bondholders were never members of the Bondholder Committee nor were they ever represented by Porter Hedges.

suffer the same fatal standing deficiencies as the claims asserted against Freeman, Jones, and Jackson Walker.

6.      Plaintiffs lack standing to recover for diminution of the bankruptcy estate or to recover for attorney fees paid out of the bankruptcy estate.  Unique to the claim on Porter Hedges' fees is that they were approved by Judge Isgur in March of 2024, months after Jones resigned and the relationship between Freeman and Jones had been widely publicized.  No one, including any of the Plaintiffs, appeared at the hearing to object.  Instead, Judge Isgur entered a final order approving Porter Hedges' fees.  While Plaintiffs lack the standing to now challenge the Porter Hedges fees even in Judge Isgur's court, they certainly cannot attempt to circumvent his final order by initiating this new lawsuit.  Given the insurmountable standing issues, the claims against Porter Hedges should be dismissed without evaluating the sufficiency of the allegations under Rule 12(b)(6).

7.      In any event, the Complaint is further deficient in that it utterly fails to allege sufficient facts to satisfy the relevant pleading standard for actionable conduct or causation. Plaintiffs do not allege that Porter Hedges was part of the racketeering, fraud, or conspiracy alleged in the Complaint.  Instead, the theory of liability against Porter Hedges is much narrower. Plaintiffs' entire liability theory rests on the fact that ***prior to Jones taking the bench in 2011***, both Freeman and Jones worked at Porter Hedges and that Freeman's ex-husband of almost 15 years ago was and remains a current Porter Hedges partner.  That is the extent of the allegations against Porter Hedges.  Not only do Plaintiffs' allegations fall well short of the applicable pleading standard, but they also improperly attempt to impute the knowledge of Freeman's ex-husband across the entire law firm.

8.      Plaintiffs' claims also should be dismissed based on attorney immunity and the judicial proceedings privilege, as well as the release provided to Porter Hedges under the GWG

plan of reorganization. Finally, Plaintiffs fall woefully short of alleging sufficient facts to provide any inference, let alone a plausible one, that Porter Hedges proximately caused any of Plaintiffs' damages. Instead, Plaintiffs ignore that Porter Hedges represented the Bondholder Committee for the limited time of May 10, 2022 through June 20, 2023. Notably the Complaint is devoid of any allegations of harm that occurred during this time period, especially any proximately caused by an act of Porter Hedges. Instead, Plaintiffs' alleged damages occurred either prior to Porter Hedges' retention or after the Bondholder Committee was dissolved and Freeman became Wind Down Trustee.

9.      Plaintiffs ask this Court to infer, with no factual basis, that Porter Hedges, a competitor to Jackson Walker whose client (the Bondholder Committee) was adverse to the GWG debtors represented by Jackson Walker, would intentionally assist Freeman, Jones, and Jackson Walker in an alleged scheme in which Porter Hedges received no pecuniary gain or other advantage. The request simply fails to pass the smell test, much less the standards set forth under Rule 12. The claims against Porter Hedges should be dismissed.

## II.      FACTUAL BACKGROUND

10.      The lengthy and complex pre-bankruptcy history of GWG Holdings, Inc. ("GWG"), its related SEC investigation, and the allegations pertaining to the relationship between Defendants Freeman, Jones, and Jackson Walker are largely irrelevant to the limited claims against Porter Hedges. Likewise, the allegations concerning the actions Freeman took as the Wind Down Trustee have little bearing on the claims against Porter Hedges as the Chapter 11 plan of reorganization (the "Plan") appointing her as Wind Down Trustee simultaneously contemplated the dissolution of the statutory committee of unsecured bondholders Porter Hedges represented. There are, however, some important aspects of GWG's pre-bankruptcy transfers and the contentious nature of the GWG bankruptcy that illuminate Plaintiffs' motivation for asserting

4

claims against Porter Hedges and seeking an order appointing Murray Holland as a special litigation trustee. The relevant facts are as follows.

**A. GWG, and the Seller Trusts who Constitute the Exchange Trust Plaintiffs in This Case.**

11. GWG began as a financial services firm that financed life insurance settlement portfolios by primarily selling retail L Bonds through broker-dealers to individual investors across the United States.[4] GWG was profitable until around January 2018 when it entered into business with The Beneficient Company L.P. ("BEN").[5] BEN, an entity founded by Brad Heppner, specialized in lending against alternative assets, a type of asset "that is generally illiquid."[6] BEN's business was struggling and needed liquidity given the intensive capital needed to fund operations.[7]

12. In 2017, BEN and MHT Financial, LLC, an entity led by Murray Holland, entered into an agreement to provide liquidity to third-party sellers by placing assets into an "exchange trust" that would swap those assets for BEN common units (the "Seller Trusts").[8] The various Plaintiff Exchange Trusts in this case represent these same Seller Trusts and, notably, Holland has direct ties to these Seller Trusts.[9]

---

[4] Compl. at ¶¶ 68–71; *In re GWG Holdings, Inc.*, No. 22-90032 (U.S. Bankr. Tex.) (the "GWG Bankruptcy Cases"), ECF No. 1698 at 55.

[5] Compl. at ¶ 72; GWG Bankruptcy Cases, ECF No. 1698 at 55.

[6] Compl. at ¶ 72; GWG Bankruptcy Cases, ECF No. 1698 at 57.

[7] *In re GWG Holdings, Inc.*, Adv. Pro. No. 24-03090 (S.D. Tex.) (the "GWG AP"), ECF No. 1 at 10 ¶ 6.

[8] GWG Bankruptcy Cases, ECF No. 1698 at 57.

[9] *Id.*; *see also id.* at ECF Nos. 1250-1, 1698 at 69, 89 (It is in the disclosure statement GWG filed in connection with approval of its chapter 11 plan where LBM reveals Murray Holland's "indirect pecuniary interest in the assets of the Seller Trust" which hold "approximately $272 million of the $367 million outstanding Seller Trust L Bonds.").

**B. GWG's Descent to Bankruptcy.**

13.    By April 2019, BEN and Heppner, along with their allies, took control of GWG's board—installing Holland as GWG's President and CEO.[10]  With this change in control, GWG started to accelerate funds from GWG to BEN, and consequently, to Holland's Seller Trusts.[11]

14.    In the years leading up to GWG's bankruptcy, GWG engaged in a series of complex transactions with BEN, which ultimately depleted GWG's value.[12]  GWG's bankruptcy filings were immediately triggered by a fall 2020 SEC investigation into GWG's activities, including GWG's sale of L Bonds and its relationship to BEN.[13]  On April 20, 2022, GWG and certain of its affiliates were forced to commence their chapter 11 cases.[14]

**C. The United States Trustee Appoints the Official Bondholder Committee and Porter Hedges is Retained and Approved as its Co-Counsel.**

15.    On May 9, 2022, following GWG's bankruptcy filings, the United States Trustee formed a seven-member official committee of L Bondholders (the "Bondholder Committee" or "Committee") as a statutory committee under the U.S. Bankruptcy Code.[15]  The Bondholder Committee was appointed to represent the interests of holders of L Bonds (the "L Bondholders" or "bondholders").[16]  Importantly, none of the Plaintiffs were among the seven members of the Committee.

---

[10] Compl. at ¶ 72; *see also* GWG AP, ECF No. 1 at 1 ¶ 1.

[11] *Id.*

[12] Compl. at ¶ 72; GWG Bankruptcy Cases, ECF No. 1698 at 57–58.

[13] Compl. at ¶¶ 76–88; GWG Bankruptcy Cases, ECF No. 1698 at 79, 80, 82–83.

[14] Compl. at ¶ 93; GWG Bankruptcy Cases, ECF No. 1.

[15] Compl. at ¶ 99; GWG Bankruptcy Cases, ECF No. 214.

[16] GWG Bankruptcy Cases, ECF No. 214.

16.    The Committee selected Akin Gump Strauss Hauer & Feld LLP and Porter Hedges as its co-counsel.[17]  On June 8, 2022, the Committee filed its application to approve its retention of Porter Hedges,[18] and on July 5, 2022, Judge Isgur—the bankruptcy judge overseeing GWG's bankruptcy (the "Bankruptcy Court")—entered an order approving Porter Hedges' retention.[19]

### D.  LBM is Formed to Act as an Agent to the Seller Trusts—Many of Which are the Same Exchange Trust Plaintiffs Here.

17.    Shortly before GWG's chapter 11 cases even began, a new entity, L Bond Management, LLC ("LBM") was formed on April 11, 2022.[20]  LBM describes itself as "a special purpose Delaware LLC holding a durable power of attorney authorizing it to act as the agent for twenty-four trusts who collectively hold outstanding L Bonds with a face-value of $366.9 million" and whose "sole interest in the Chapter 11 Cases is to maximize Bondholder recoveries on behalf of what is likely the largest Bondholder block" in the bankruptcy cases.[21]  These twenty-four trusts constitute the Seller Trusts, many of whom are the same Plaintiff Exchange Trusts among the Plaintiffs who filed this Complaint.[22]

18.    Though LBM held itself out as purporting to maximize bondholder recoveries for L Bondholders, LBM had separate counsel in GWG's bankruptcy—Okin Adams Bartlett Curry LLP ("Okin").[23]  Thus, throughout the chapter 11 case, Okin—as counsel for LBM—was an active

---

[17] *Id.* at ECF Nos. 507, 508.

[18] *Id.* at ECF No. 370.

[19] Compl. at ¶ 99; GWG Bankruptcy Cases, ECF No. 508.

[20] *See* Delaware Limited Liability Company Act, 6 Del. C. § 18-101, *et seq.*, Certificate of Formation, L BOND MANAGEMENT LLC (April 11, 2022).

[21] GWG Bankruptcy Cases, ECF No. 560.

[22] *Id.* at ECF No. 1250-1.

[23] *Id.* at ECF No. 188.

participant working *alongside, separate, and at many times at odds with* counsel for the Bondholder Committee.

19.    Indeed, while LBM expressed interest in joining the Committee, it was denied membership for reasons they suggest were "due to vague concerns over LBM's independence."[24] As evidenced by LBM's own disclosures, concerns over LBM's independence were warranted given Holland's ties to the Seller Trusts.[25]  LBM nonetheless found countless opportunities to try and extract value for its represented party:

- On May 10, 2022, LBM filed a limited objection to the unopposed motion for relief from the automatic stay to appoint lead plaintiffs in a securities class action suit filed on behalf of Thomas Horton and Frank Moore, two members of the Bondholder Committee.[26]  LBM objected to the lead plaintiffs' claim of agency in the chapter 11 case "as lead plaintiff of a yet-to-be certified putative class" and noted heightened concerned given that the movants, not LBM, were appointed to the Bondholder Committee by the United State Trustee;[27]

- On July 15, 2022, LBM filed its response to the Bondholder Committee's objection to GWG's motion to designate Jeffrey Stein as the Chief Restructuring Officer for the company during its pending bankruptcy cases.[28]  In that response, LBM suggested the Committee was a "threat to the Debtors' effort to maximize value for all stakeholders;"[29]

- On May 24, 2023, LBM filed a proposed litigation trust agreement and shortly thereafter, on May 26, 2023, filed an emergency motion to consider conflicting litigation trust agreements.[30]

---

[24] *Id.*

[25] *Id.* at ECF No. 1698 at 69, 89.

[26] *Id.* at ECF No. 218.

[27] *Id.*

[28] *Id.* at ECF No. 560.

[29] *Id.*

[30] *Id.* at ECF Nos. 1816, 1832.

20.    As reflected in the Complaint, LBM's actions in the bankruptcy case were driven by the desire to avoid claims being asserted against the former GWG and BEN insiders, including Holland, proceedings which the Complaint now calls "misguided and distracting."[31]

### E. The Bondholder Committee Investigates and Seeks to Pursue Causes of Action Against the Same Exchange Trust Plaintiffs Here, and Others.

21.    GWG's bankruptcy cases were contentious from the start.  During an emergency hearing in November 2022, Stein (GWG's Chief Restructuring Officer), alongside GWG's investigation committee, informed Judge Isgur that GWG had filed a false and misleading 8-K with the SEC.[32]  This, followed by Judge Isgur's request that members of the GWG board appear and show cause, resulted in the resignations of GWG's then-current board members, including Holland.[33]

22.    Contemporaneously with and following these events, the Bondholder Committee pushed for an aggressive approach in investigating claims and causes of action against BEN and former GWG and BEN directors and officers, resulting in a motion for the Committee to be granted standing to pursue a proposed complaint.[34]  The Committee's December 15, 2022 proposed complaint alleged that the foregoing entities and individuals, ***including the same Seller Trusts who constitute the Plaintiff Exchange Trusts in this case***, breached their fiduciary duties to GWG and engaged in actual and constructive fraudulent transfers between GWG and BEN.[35]  GWG's bankruptcy was also plagued with disputes as to the legitimacy of LBM's claims.[36]  On December

---

[31] Compl. at ¶144.

[32] GWG Bankruptcy Cases, ECF No. 1250 at 8.

[33] *Id.* at ECF No. 1698 at 111.

[34] *Id.* at ECF No. 1250.

[35] *Id.*

[36] *Id.* at ECF Nos. 1055, 1127, 1250, 1663.

15, 2022, the Committee expressed concerns over LBM suggesting "they have been motivated by something other than a simple desire to maximize recoveries for [L] Bondholders."[37]

### F. The Bondholder Committee, GWG, LBM and Others Mediate, Ultimately Proposing a Consensual Chapter 11 Plan for the Bankruptcy Court's Approval.

23.     On January 5, 2023, Judge Isgur appointed the now-former Judge Jones as mediator to address certain important case issues that remained unresolved.[38]   Both the Bondholder Committee and LBM, through their separate counsel, participated in the mediation, alongside GWG and other case constituents, which commenced on January 29, 2023.[39]

24.     The result of the mediation was the parties' agreement for a consensual chapter 11 Plan of reorganization.[40]   The Plan was proposed and subsequently modified for final submission on June 14, 2023.[41]   The Plan included a settlement whereby LBM's claims were partially subordinated to the claims of other L Bondholders in exchange for releases.[42]   The Plan further proposed a full liquidation of GWG's assets, and the creation of a Wind Down Trust and a Litigation Trust.[43]   Over 99% of L Bondholders voted in favor of the Plan.[44]   Despite the incontrovertible fact that nearly 100% of the L Bondholders voted in favor of the liquidating Plan, Plaintiffs allege in the Complaint that the "dismayed parties left the [mediation] that afternoon knowing" there would not be a reorganization but instead be a liquidation.[45]   Had Plaintiffs truthfully believed the Plan was not in their best interests, they could have voted against the Plan

---

[37] *Id.* at ECF No. 1253.

[38] Compl. at ¶ 98.

[39] *Id.* at ¶ 100; GWG Bankruptcy Cases, ECF No. 1323.

[40] GWG Bankruptcy Cases, ECF No. 1421.

[41] Compl. at ¶¶ 100–01; GWG Bankruptcy Cases, ECF Nos. 1563, 1924.

[42] GWG Bankruptcy Cases, ECF No. 1698 at 32.

[43] *Id.* at ECF No. 1952 at 20–21, 48.

[44] *Id.* at ECF No. 1893.

[45] Compl. at ¶ 101.

or objected at the plan confirmation hearing that occurred approximately five months after the mediation.  Instead, the LBM (which, again, included the Exchange Trust Plaintiffs) was a "Co-Proponent" of the Plan and praised Judge Jones for his efforts in arriving at the Plan.[46]

25.    As a result of the Plan and its related settlement, the Committee's motion to be granted standing to pursue a proposed complaint was never prosecuted. Those claims, however, were funneled to, and preserved in connection with, the Litigation Trust under the Plan.[47]  The transferred claims did not include estate claims that could be brought against the Seller Trusts, because those claims were released pursuant to the settlement with LBM.[48]

### G. Judge Isgur Confirms the Chapter 11 Plan and Approves Porter Hedges' Final Fee Application.

26.    On June 20, 2023, Judge Isgur approved the Plan (the "<u>Confirmation Order</u>").[49]  On the Plan's "Effective Date," (August 1, 2023), the Committee was dissolved, and remained in existence only for the limited purpose to (i) enable it to submit Committee counsel's final fee application (including Porter Hedges' work performed in connection with the GWG bankruptcy) to the Bankruptcy Court for approval, and (ii) adjudicate any appeals of the Confirmation Order or any prosecution, appeal or defense of any causes of action or proceedings with respect to which the Bondholder Committee was a party as of the Effective Date.[50]  As a result of the Committee's dissolution under the Plan, GWG's estate causes of action passed to the Litigation Trust as provided in the Plan.[51]

---

[46] GWG Bankruptcy Cases, ECF No. 2010 at 44:23–45:3 ("Matthew Okin on behalf of L Bond Management.  We were the third proponent of the Plan and . . . we are glad that we finally got here and it was definitely because of the hard work of Judge Jones not giving up on us and getting it done.").

[47] *Id.* at ECF No. 1952 at 190.

[48] *Id.* at ECF No. 1698 at 32.

[49] *Id.* at ECF No. 1952.

[50] Compl. at ¶ 146, n.149; GWG Bankruptcy Cases, ECF No. 1952 at 82.

[51] Compl. at ¶ 104; GWG Bankruptcy Cases, ECF No. 1952 at 21, 190, § Q; GWG AP, ECF No. 1.

27.     On August 21, 2023, Porter Hedges submitted its final fee application for work it performed as Committee co-counsel from May 10, 2022 through June 20, 2023.[52]  Two months later, in October 2023, the Jones-Freeman relationship was exposed.[53]  Nonetheless, no parties—not even LBM—appeared at the hearing to object to Porter Hedges' final fee application. Accordingly, the Bankruptcy Court, after conducting an in-person hearing, entered a final order on March 4, 2024, approving Porter Hedges' fees.[54]

**H.  Ms. Freeman Assumes her Role as Wind Down Trustee.**

28.     Following the Bankruptcy Court's entry of the Confirmation Order and the occurrence of the Plan's Effective Date, defendant Elizabeth Freeman ("<u>Freeman</u>") became the appointed Wind Down Trustee.[55]  In her role as Wind Down Trustee, Freeman took various actions ultimately approved by Judge Isgur, including selling off 90% of BEN's stock.[56]  Some of these actions occurred after the Jones-Freeman relationship was public, including the Bankruptcy Court's approval of a settlement on November 17, 2023, allowing Freeman to implement additional sales related to BEN stock.[57]

29.     Plaintiffs attribute many of Freeman's actions to their alleged harms in this case, including (i) "a fire sale of GWG's assets;"[58] (ii) a "rapid[] and reckless[] unloading [of] massive amounts of BEN stock in batches [which] had the effect of both tanking the stock price" and "devalu[ing] the remaining shares held by GWG,"[59] and (iii) Freeman's "refus[al] to talk with

---

[52] GWG Bankruptcy Cases, ECF No. 2146.

[53] Compl. at ¶ 113.

[54] GWG Bankruptcy Cases, ECF No. 2396.

[55] Compl. at ¶ 104.

[56] *Id.* at ¶ 106.

[57] GWG Bankruptcy Cases, ECF No. 2305.

[58] Compl. at § XVI.

[59] *Id.* at ¶ 107.

market professionals or BEN management to strategize how to liquidate."[60]  Plaintiffs do not allege

that Porter Hedges gave Freeman any advice regarding any of these actions or that Porter Hedges

was even remotely involved in any of these events.  Pursuant to the Plan, the Bondholder

Committee had been dissolved when Freeman took these actions.[61]  In fact, Porter Hedges final

fee application reflects it was for services rendered through June 20, 2023.[62]

     30.    Aside from the alleged harms related to the SEC investigation that occurred before

the bankruptcy and before Porter Hedges' role as Bondholder Committee co-counsel, all other

alleged harms occurred after:  Judge Isgur confirmed the Plan, GWG's release of Porter Hedges

as a committee professional became effective, Judge Isgur approved Porter Hedges' final fee

application, and the Jones-Freeman relationship became public.[63]

     31.    The sole basis for Plaintiffs' claims against Porter Hedges rests on the fact that

Freeman and Jones worked at Porter Hedges prior to Jones taking the bench ***in 2011***, with Freeman

following as his clerk.[64]  Plaintiffs allege that because prior to 2011 Freeman was previously

married to a Porter Hedges partner, Porter Hedges was aware in 2022 that Freeman and Jones were

still in a relationship.[65]  Notably, Plaintiffs allege that the earliest Jones and Freeman lived together

was 2013 or 2014[66] (over two years after they left Porter Hedges) and Judge Richman's order

observed that Jones and Freeman had cohabitated "since approximately 2017" (approximately six

years after they left Porter Hedges).[67]  Freeman's former husband never performed any work in

---

[60] *Id.* at ¶ 108.

[61] *Id.* at ¶ 147.

[62] GWG Bankruptcy Cases, ECF No. 2396.

[63] Compl. at ¶¶ 106–12.

[64] *Id.* at ¶ 18.

[65] *Id.*

[66] *Id.*

[67] *Id.* at ¶ 115.

the GWG cases[68] and Plaintiffs do not make a single factual allegation that any of the Porter Hedges attorneys working on the GWG case were even aware of the relationship between Jones and Freeman during the time Porter Hedges served as co-counsel to the Bondholder Committee.

### III.    STANDARD OF REVIEW

32.    Federal courts are courts of limited jurisdiction requiring a party to have standing in order to sue.[69]  The standing requirement under Article III of the U.S. Constitution confines federal courts to "adjudicating actual cases and controversies" where three elements are satisfied: (1) "the plaintiff must have suffered an injury in fact" that is "concrete" and "actual or imminent;" (2) "the injury has to be fairly traceable . . . and not the result of the independent action of some third party not before the court;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[70]  Federal courts have "an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines."[71]  Without standing, "the Court must dismiss the claims for lack of subject matter jurisdiction."[72]

33.    Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a claim is "properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim.[73]  In deciding a Rule 12(b)(1) dismissal motion, a court may rely on:  "(1) the complaint alone, presuming the allegations to be true; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts and the court's

---

[68] GWG Bankruptcy Cases, ECF No. 2146.

[69] *See* U.S. Const., Art. III, § 2.

[70] *Id*.; *see also Moore v. Bryant*, 853 F.3d 245 (5th Cir. 2017).

[71] *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

[72] *Harris v. Pyramid Gom (In re Capco Energy, Inc.)*, 2012 WL 253148, at *2 (Bankr. S.D. Tex. Jan. 25, 2012).

[73] *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998); *see also* Fed. R. Civ. P. 12(b)(1).

resolution of disputed facts."[74] When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.[75]

34.    To survive dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."[76] This means that Plaintiffs must plead sufficient "factual content" to "allow[] the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged"—here, that Porter Hedges owed Plaintiffs a duty under applicable law, and proximately caused Plaintiffs' injuries, neither of which Plaintiffs (as non-clients of Portner Hedges) reasonably allege.[77] Plausibility in the Rule 12(b)(6) context requires more than a mere "possibility" of misconduct.[78] While the Court "must accept all well-pleaded facts as true," it is "not bound to accept as true legal conclusions couched as a factual allegation" or "naked assertion[s] devoid of further factual enhancement."[79] Mere "labels and conclusions" are insufficient; nor can a complaint rely on a "formulaic recitation of the elements of a cause of action."[80]

35.    In evaluating a motion to dismiss under Rule 12(b)(6), the Court may consider (i) the complaint's well pleaded factual allegations, (ii) documents referenced in the complaint,

---

[74] *Valdery v. Louisiana Workforce Comm'n*, 2015 WL 5307390 at *1 (E.D. La. Sept. 10, 2015) (citing *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001)).

[75] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[76] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) ("[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

[77] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[78] *Infinity Emergency Mgmt. Grp., LLC v. Neighbors Health Sys. (In re Neighbors Legacy Holdings, Inc.)*, 645 B.R. 864, 878 (Bank. S.D. Tex. 2022) ("Plausibility at the Rule 12(b)(6) stage, does not mean possibility."); *see also Twombly*, 550 U.S. at 557.

[79] *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

[80] *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).

and (iii) matters of public record (including SEC filings) subject to judicial notice under the federal rules.[81]

## IV.    ARGUMENTS & AUTHORITIES

### A. Plaintiffs' Claims Against Porter Hedges Fail for Threshold Reasons, Common to all Claims, That Plaintiffs Cannot Remedy.

#### *i.   Plaintiffs lack standing, requiring dismissal under Rules 12(b)(1) and 12(b)(6).*

36.    A court's consideration of its jurisdiction to hear a case must "begin—and end—with standing."[82] Plaintiffs' bear the "burden of establishing" standing,[83] which includes both constitutional and prudential components. Because Plaintiffs have not met this burden for the reasons set forth below, the Complaint as against Porter Hedges must be dismissed with prejudice for this reason alone.

#### a.   Plaintiffs lack standing to assert direct claims against Porter Hedges.

37.    In an obvious attempt to avoid the standing issues this Court has previously addressed in the *Van Deelen*[84] and *Bouchard*[85] cases, Plaintiffs purport to bring claims "against Porter Hedges ***directly*** for its action taken while serving as co-counsel for the Bondholder Committee."[86] Plaintiffs, as individual bondholders, have no direct claims against the Bondholder

---

[81] *George*, 36 F.4th at 619; *see also Walker*, 938 F.3d at 735 ("When a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents. In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."); *Ramirez v. J.C. Penny Corp. Inc.*, 2015 WL 5766498 at *1 (E.D. Tex. Sept. 29, 2015) (considering SEC filings on motion to dismiss).

[82] *Murthy v. Missouri*, 603 U.S. 43, 56 (2024).

[83] *Carney v. Adams*, 592 U.S. 53, 59–60 (2020).

[84] *Van Deelan v. Jones et al.*, Civil Action No. 4:23-cv-3729 (S.D. Tex.).

[85] *Morton S. Bouchard, III, et al. v. David R. Jones, et al.*, Civil Action No. 4:24-cv-0693 (S.D. Tex.).

[86] Compl. at ¶ 230 (emphasis added); *see also id*. at ¶¶ 274 (Count VII), 140 (alleging Porter Hedges owed a "duty to the bondholders that is not derivative of the bankruptcy").

Committee's counsel.[87]   The Bondholder Committee was a statutory committee appointed by the United States Trustee pursuant to 11 U.S.C. § 1102(a)(1).[88]   Porter Hedges was approved by Judge Isgur to serve as co-counsel to the Bondholder Committee.[89]   Porter Hedges **never represented any of the bondholder Plaintiffs.**   The Complaint does not allege that Porter Hedges represented the Plaintiffs and only alleges (accurately) that Porter Hedges represented the Bondholder Committee.[90]   Plaintiffs impermissibly leap to the conclusion that as a result of its representation of the Bondholder Committee, "Porter Hedges owed a fiduciary duty to the Bondholder Committee, **as well as the approximately 27,000 bondholders represented by the Committee."**[91] Plaintiffs' contention is inaccurate and runs contrary to well-established law.[92]

38.     It is undisputed that counsel to a statutory committee in a Chapter 11 case represents the committee and only the committee.[93]   Likewise, a committee's counsel owes a fiduciary duty only to the committee, not to individual committee members, much less the committee's constituents like the bondholder Plaintiffs.[94]   Plaintiffs' Complaint is devoid of any allegations to

---

[87] *See Richardson v. Monaco (In re Summit Metals, Inc.)*, 477 B.R. 484, 502 (2012) (holding committee counsel owes no duty to any individual member); *DiStefano v. Stern (In re JFD Enterprises, Inc.)*, 223 B.R. 610 (Bankr. D. Mass. 1998); *Schultze v. Chandler*, 765 F.3d 945 (9th Cir. 2014), *as amended* (Aug. 1, 2014); *Matter of Levy*, 54 B.R. 805 (Bankr. S.D.N.Y. 1985).  Plaintiffs may attempt to conflate the fiduciary duty of a statutory committee in a Chapter 11 case with that of a committee's legal counsel.  Porter Hedges does not dispute that the Bondholder Committee, appointed by the United States Trustee's office, had a fiduciary duty to the entire class of bondholders, Porter Hedges, as co-counsel to the Committee, does not however have such a broad duty.  Porter Hedges' duty runs solely the Committee.

[88] GWG Bankruptcy Cases, ECF No. 214.

[89] *Id.* at ECF No. 508.

[90] Compl. at ¶ 99.

[91] *Id.* at ¶ 246 (emphasis added).

[92] *See supra* at n.87; *see also infra* at n.93.

[93] 7 Collier on Bankruptcy 1103.03[7] (16th ed.); *see also Schultze*, 765 at 950 ("[A] professional retained by a committee represent the committee and only the committee, and the professional's fiduciary duty runs solely to the committee."); *In re Buffalo Coal Co.*, 2008 Bankr. LEXIS 1259, at *15 (Bankr. N.D.W. Va. Apr. 30, 2008) (quoting Collier:  "The professional's fiduciary duty runs solely to the committee. The professional does not represent the members of the committee in their roles as members of the committee . . . .").

[94] *Id.*

support any direct claims against Porter Hedges; and for good reason since not only is the record

clear that Porter Hedges represented only the Bondholder Committee, but it is equally clear that

the Exchange Trust Plaintiffs were actively represented by their own counsel throughout the

mediation, establishment of the Wind Down Trust, and plan confirmation process.[95]  Given that

Plaintiffs are not the Committee, which no longer exists, Plaintiffs lack direct standing to assert

their claims directly against Porter Hedges.  As a result, the claims against Porter Hedges must be

dismissed for lack of standing.

> **b.  <u>Plaintiffs lack Article III standing because they fail to allege particularized injury for non-estate claims, necessitating dismissal under Rule 12(b)(1).</u>**

39.     To establish constitutional standing under Article III, a plaintiff simply cannot

plead allegations as a "generalized grievance."[96]  Instead, a plaintiff must plead particularized

injuries that affect them "in a personal and individual way."[97]  Such injuries cannot be

speculative.[98]  If the line of causation between an injury and the defendant's alleged wrongdoing

is "too attenuated," then a plaintiff lacks standing and its complaint must be dismissed.[99]

40.     Plaintiffs lack Article III standing to bring any of the claims against Porter Hedges

because all of the claims hinge on allegations of generalized harm to GWG's bankruptcy estate—

not particularized injuries sustained by Plaintiffs.[100]  It is well established that upon a debtor's

filing of a bankruptcy case, the estate is created consisting of "all legal or equitable interests of the

---

[95] *See supra* at ¶¶ 17–20.

[96] *FDA v. All. for Hippocratic Med., et al., (Alliance)*, 602 U.S. 367, 381 (2024).

[97] *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1385 (5th Cir.1986) (internal citations omitted).

[98] *Earl v. Boeing Co.*, 53 F.4th 897, 902 (5th Cir. 2022).

[99] *Hanson*, 800 F.2d at 1385.

[100] Compl. at ¶¶ 134–39, 252–53, 258, 269–70, 280, 293.

debtor in property as of the commencement of the case."[101]  For claims belonging to the GWG estate that allege harm to the estate as a whole, like the tort and equitable remedy claims at issue here, the Litigation Trust—**not** Plaintiffs (nor even the Bondholder Committee)—has exclusive standing to assert the claim.[102]

41.     The Plan itself confirms that the Bondholder Committee, the constituency Porter Hedges represented in GWG's bankruptcy, was disbanded upon the "Effective Date" of the Plan, *i.e.*, August 1, 2023, such that only the Litigation Trustee on behalf of the Litigation Trust may bring the types of estate causes of action the Plaintiffs assert here.[103]  Plaintiffs do not dispute that the Bondholder Committee has been dissolved.[104] Plaintiffs instead attempt to obfuscate the generalized harm their claims assert (*i.e.*, Porter Hedges' alleged non-disclosure of the Jones-Freeman relationship and receipt of $2 million in fees it earned as the Court-appointed co-counsel for the Bondholder Committee, which purportedly lessened their recoveries as bondholders) in an attempt to maintain direct standing.[105] But those attempts fail because "Plaintiffs . . . lo[ss] [of] at least 96% of the value of their bonds," if true, is a harm suffered by GWG's estate as a whole.[106]

42.     In addition, Plaintiffs' attempt to assert derivative standing also fails.[107] When "a cause of action alleges only indirect harm to a creditor (*i.e.*, an injury which derives from harm to

---

[101] *Highland Cap. Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 584 (5th Cir. 2008).

[102] *See Collins v. Sydow (In re NC12, Inc.)*, 478 B.R. 820, 836 (Bankr. S.D. Tex. 2012) (dismissing claim for lack of subject matter jurisdiction because "[t]he breach of fiduciary duty claim is property of the estate."); *see also Newport Acquisition Co. No. 1, L.L.C. v. Schiro (In re C-Power Prods., Inc.)*, 230 B.R. 800, 803 (Bankr. N.D. Tex. 1998) (finding "[a] post-petition legal malpractice claim . . . becomes property of the bankruptcy estate."); *MLN Co. v. Clear the Air, LLC (In re Clear the Air, LLC)*, 631 B.R. 286, 294–95 (Bankr. S.D. Tex. 2021).

[103] GWG Bankruptcy Cases, ECF No. 1952 at 70, § I.A.162.

[104] Compl. at ¶ 147.

[105] *Id.* at ¶ 139.

[106] *Id.*

[107] *Id.* at ¶¶ 142–47.

the debtor), . . . then the cause of action belongs to the estate," and is derivative in nature.[108]

Throughout the Complaint, Plaintiffs tie their alleged injuries to those of the estate and the "chain reaction" that led to decreased asset values for bondholders.[109]  But in the Fifth Circuit, derivative standing is a right that belongs only to creditor ***committees***[110] that can establish (i) the estate claims are colorable; (ii) the debtor unjustifiably has refused to pursue the claims; ***and*** (iii) the committee is granted leave to initiate the action on behalf of estate.[111]  Once again, Plaintiffs are not the Committee—the statutorily-created creditor constituency that Porter Hedges formerly represented in GWG's bankruptcy.[112]  And where, as here, none of the factors necessary to establish derivative standing are present, derivative standing cannot be granted and does not exist.

43.    Indeed, putting aside the fact that Plaintiffs ***are not*** and ***do not*** comprise the Bondholder Committee itself, nor represent the Litigation Trustee, Plaintiffs could not satisfy the remaining elements to establish derivative standing.  Nor would Plaintiffs be permitted to do so given that the Plan contains a broad release by the GWG debtors extinguishing "any and all claims and causes of action" the GWG debtors or their estates might have had against "Released Parties," including Porter Hedges as "any other Professional retained by . . . the Bondholder Committee"

---

[108] *In re Seven Seas*, 522 F.3d at 584; *see also McVey v. Johnson (In re SBMC Healthcare, LLC)*, 519 B.R. 172, 179 (Bankr. S.D. Tex. 2014) ("[i]f a shareholder's claim would require a demonstration of harm to the corporation in order to succeed, it is a derivative claim.").

[109] *See* Compl. at ¶¶ 18 ("GWG sustained billions of dollars in losses"), 91 ("the investigation cost approximately $46 million of [GWG] funds"), 106 ("Freeman commenced irreparable damage to GWG"), 107 (Freeman "had set a chain reaction in motion that had no exit ramps until she dumped every last Ben share GWG held."), 110 ("Defendants have drained the GWG estate completely."), 139 ("These bonds were rendered nearly worthless by Defendants' misconduct in liquidating GWG.").

[110] *See Kreit v. Quinn (In re Cleveland Imaging & Surgical Hosp., L.L.C.)*, 26 F.4th 285, 297 (5th Cir. 2022) (noting Fifth Circuit precedent supported the notion that only creditors' committees, not individual creditors, may assert derivative standing).

[111] *See La. World Exposition, Inc. v. Fed. Ins. Co. (In re La. World Exposition, Inc.)*, 832 F.2d 1391, 1397 (5th Cir. 1987); *Wooley v. Haynes & Boone, L.L.P. (In re SI Restructuring, Inc.)*, 714 F.3d 860, 863–64 (5th Cir. 2013). Though futile, Plaintiffs have not separately moved or sought a proper request for derivative standing.  *See* Compl. at ¶ 146.

[112] *See* 11 U.S. Code § 1102.

arising out of or relating to the GWG bankruptcy.[113]  The sole, narrow carveout from these estate releases include claims sounding in "actual fraud, willful misconduct, intentional breach of fiduciary duty, or gross negligence."[114]  Those limited exceptions plainly do not apply to Plaintiffs' claims against Porter Hedges, none of which are fraud-based or assert an *intentional* tort.[115]

44.    Instead, derivative standing is a narrow doctrine, and only exists where the debtor itself could bring the claim.  But once the Plan was confirmed through the Confirmation Order, the GWG debtors and their estate fiduciaries lost standing to assert such claims.[116]  It is also both relevant and telling that Porter Hedges' final fee application seeking approval for its fees in connection with work done in the GWG bankruptcy on behalf of the Bondholder Committee was filed on behalf of the Committee, without objection by Plaintiffs.[117]  Both Porter Hedges' final fee application, as with the Plan itself, was approved by Judge Isgur—not Judge Jones.[118]  Notably, Judge Isgur approved Porter Hedges' final fee application on March 4, 2024, **well after** the relationship between Jones and Freeman became public in October 2023.[119]

---

[113] GWG Bankruptcy Cases, ECF No. 1952, Art. VIII, C; *see id.* at ¶ 162; *see also Okla. State Treasurer v. Linn Operating, Inc. (In re Linn Energy, L.L.C.)*, 927 F.3d 862, 867 (5th Cir. 2019) (holding a confirmation order was a final order that may not be attacked by parties who failed to object when given an opportunity to do so); *Howe v. Vaughan (In re Howe)*, 913 F.2d 1138, 1143 (5th Cir. 1990) (remarking that "[t]he law in this circuit is well settled that a plan is binding upon all parties once it is confirmed and all questions that could have been raised pertaining to such plan are res judicata"); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1053 (5th Cir. 1987) (barring a cause of action for enforcement of a guaranty by relying on the *res judicata* effect of a confirmation order).

[114] GWG Bankruptcy Cases, ECF No. 1952, Art. VIII, C.

[115] Plaintiffs allege that "[t]o the extent Jackson Walker, Freeman, Porter Hedges, or any other defendant or potential defendant may claim to be protected by exculpation, release, injunction, or other bars to liability," that "the same should be and are void because of the permeating fraud perpetrated by Defendants in the enactment of such provisions."  Compl. ¶ 149.  Notably, however, Plaintiffs do not allege that Porter Hedges, specifically, engaged in any fraud based behavior.  Nor did Plaintiffs object to or challenge the Confirmation Order, the time for doing so in connection with has long passed.  *See* GWG Bankruptcy Cases, ECF No. 2416.

[116] GWG Bankruptcy Cases, ECF No. 1952, Art. VIII § C.

[117] *See id.* at ECF No. 2396.  Porter Hedges agreed to certain fee reductions in negotiations with Ms. Freeman as Wind Down Trustee.

[118] *See id.* at ECF No. 1952, Art. VIII, C; *see also id.* at ECF No. 2396.

[119] Once Judge Isgur approved the fee application, claims became barred by *res judicata*.  *See West v. WRH Energy Partners, LLC, et al. (In re Noram Resources, Inc.)*, 2011 WL 6936361 (S.D. Tex. 2011) (holding Sale Order had

45.     Because Plaintiffs fail to demonstrate that they have suffered an individualized harm sufficient to show Article III standing, and because Plaintiffs otherwise lack derivative standing to bring the types of estate claims pled here, the Complaint must be dismissed.

### c.   Plaintiffs also lack prudential standing, requiring dismissal under Rule 12(b)(6).

46.     Separate and apart from Article III standing, a party litigating in federal court must also establish that it has prudential standing to do so.  This judicial limitation on standing examines (1) "whether a plaintiff's grievance arguably falls within the zone of interests protected by the statutory provision invoked in the suit," (2) "whether the complaint raises abstract questions or a generalized grievance more properly addressed by the legislative branch," and (3) "whether the plaintiff is asserting his or her own legal rights and interests of third parties."[120]  Where these three elements are not met, dismissal for lack of prudential standing under Rule 12(b)(6) is appropriate.[121]

47.     Where, as discussed above, the claims at issue involve a creditor's recovery (or lack thereof) in a bankruptcy case due to diminishment of the bankruptcy estate, those claims are derivative claims.  This matters because as previously discussed, those claims belong to the bankruptcy estate and a creditor lacks prudential standing to bring them.[122]  As upheld by this

---

res judicata effect because parties previously had opportunity to litigate claims.); see also Indus. Clearinghouse, Inc., et al. v. Jeffrey MIMS (In re Coastal Plains, Inc.), 338 B.R. 703 (N.D. Tex. 2006) (applying res judicata to claims involving final fee application order); Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc.), 200 F.3d 382 (5th Cir. 2000) (same).  Moreover, in order for a party to seek relief from judgment or order, Fed R. Bankr. P. 9024 requires mistake, newly discovered evidence, fraud, or other justifying circumstance, none of which are applicable here.  See In re Harbor Fin. Grp., Inc., 303 B.R. 124, 132 (Bankr. N.D. Tex. 2003) (denying motion for reconsideration of claims under Fed. R. Bankr. P. 9024).  Even if Plaintiffs had pleaded newly discovered evidence or other justifying circumstances, the proper vehicle would be a motion for reconsideration of Judge Isgur's order under Rule 9024.

[120] St. Paul Fire & Marine Ins. Co. v. Labuzan, 579 F.3d 533, 539 (5th Cir. 2009).

[121] Id.

[122] Grossman v. Belridge Grp. (In re Lothian Oil, Inc.), 531 F. App'x 428, 439 (5th Cir. 2013) (creditor had no standing to pursue suit against third parties who allegedly deprived debtor of assets); Matter of S.I. Acquisition, Inc., 817 F.2d

Court in *Van Deelen v. Jones* and emphasized in Jackson Walker's motion to dismiss in the present case,[123] "[e]ven if the Plaintiff was a [] creditor with a prioritized interest in the bankruptcy estate, prudential concerns would defeat standing," apply equally to Porter Hedges.[124]

48.     Indeed, Plaintiffs were creditors of GWG or the bankruptcy estate, a fact Plaintiffs concede.[125] As creditors, Plaintiffs hold different bonds GWG issued that are now alleged to have diminished in value—a fact common in many bankruptcy cases.[126] Plaintiffs assert these bonds lost significant value due the "fire sale" of BEN stock.[127] That fact pertains to Ms. Freeman's conduct as the Wind Down Trustee—not Porter Hedges' legal work as former co-counsel to the Bondholder Committee (***not*** Plaintiffs). Porter Hedges was compensated for legal work performed between May 10, 2022 Through June 20, 2023.[128] Yet Plaintiffs assert damages by virtue of Porter Hedges' fee awards.[129] If payment of those fees are to constitute damages, that harm belongs to the bankruptcy estate—not Plaintiffs.

49.     Because Plaintiffs have not satisfied their burden in showing they have prudential standing, the Complaint must be dismissed.

---

1142, 1153 (5th Cir. 1987) (permitting creditor's claims to directly proceed "undercut[s] the general bankruptcy policy of ensuring that all similarly-situated creditors are treated fairly."); *Stevens v. Lowder*, 643 F.2d 1078, 1050 (5th Cir. 1981) (holding that plaintiffs lacked an independent cause of action because claims "only" arose from loss of stock value "as a result of injury to the corporation.").

[123] ECF No. 11.

[124] *Van Deelen v. Jones*, 2024 WL 3852349, at *8, n.17 (S.D. Tex. Aug. 16, 2024).

[125] Compl. at ¶¶ 20, 109–10, 128, 139, 181, 214, 232, 253, 270, *et al.*

[126] *Id.* at ¶¶ 20–23.

[127] *Id.* at ¶¶ 106, 109.

[128] GWG Bankruptcy Cases, ECF No. 2146.

[129] *See, e.g.*, Compl. at ¶ 302.

### ii. The Complaint fails to allege that Porter Hedges was the but for or proximate cause of any harm and thus, it must be dismissed.

50.     Aside from their failure to demonstrate standing, Plaintiffs do not and cannot show that Porter Hedges caused, let alone proximately caused, any alleged harm in connection with the tort and equitable remedy claims Plaintiffs have lodged against it.[130]  Causation is a required element common to all of the claims the Complaint asserts against Porter Hedges.[131]  In order to show causation, the "plaintiff must allege that his injury is connect[ed] with the conduct about which he complains."[132]  Notably, the Complaint is devoid in alleging any action by Porter Hedges, specifically, that plausibly led to a loss in value for Plaintiffs or other GWG bondholders.  In fact, Plaintiffs inconsistently allege that Porter Hedges committed any wrongdoing at all.[133]

51.     Instead, the Complaint is teeming with alternative causes of harm that directly lessened bondholder recovery—such as GWG's, Heppner's, and Holland's own misconduct and mismanagement, and the SEC's subsequent investigation of GWG which "left GWG a distressed entity," and the bankruptcy filing itself.[134]  These superseding, alternative causes of harm Plaintiffs allege destroy their allegations of any harm caused, including proximate harm, as to all of the claims they assert against Porter Hedges.[135]  In reality, Porter Hedges had nothing to do with the events leading up to GWG's bankruptcy, as evidenced by the Complaint's factual allegations to the contrary.[136]  And during GWG's bankruptcy cases up through Plan confirmation, Porter

---

[130] *Twombly*, 550 U.S. at 570.

[131] *See infra* at n.144.

[132] *Glen v. Am. Airlines, Inc.*, 7 F. 4th 331, 335 (5th Cir. 2021).

[133] *See* Compl. at § XXII (Failing to name Porter Hedges as one of the parties that "failed to satisfy their obligations to disclose the Jones-Freeman relationship").

[134] *Id.* at §§ X, XVI; ¶¶ 76–88, 91–92, 106–08.

[135] *See Millcreek Assocs., L.P. v. Bear, Stearns & Co.*, 205 F. Supp. 2d 664, 682 (W.D. Tex. 2002) (holding Plaintiffs identification of a superseding cause for his loss of investment "defeat[s] the element of proximate cause.").

[136] Compl. at ¶¶ 101, 106–07, 143–44 (alleging that a host of other intervening causes by actors other than Porter Hedges alleged reduced the value of GWG's bankruptcy estate).

Hedges did what it was hired by the Committee (not Plaintiffs) to do—extract as much value as it could from the estate to benefit the Committee.[137]

52.     That Porter Hedges properly carried out its duties to the Committee is demonstrated by the Confirmation Order and Porter Hedges' final fee application, both of which Judge Isgur approved.[138]  Notably, the Plan was confirmed with overwhelming support, including with the support of the Exchange Trust Plaintiffs through LBM and its counsel.[139]  It was only at the time the Plan was confirmed that Freeman was appointed the Wind Down Trustee, the same time at which the Bondholder Committee was dissolved.[140]

53.     Plaintiffs fail to allege any facts that Porter Hedges, as co-counsel to the Bondholder Committee, was involved in any of Freeman's acts as Wind Down Trustee.  In fact, Plaintiffs do not even allege that Porter Hedges was involved in the decision to appoint Freeman as the Wind Down Trustee.[141]  Plaintiffs have utterly failed to plead facts supporting even the slightest of inferences that Porter Hedges caused Plaintiffs any damage, much less met the relevant pleading standard.

54.     To be sure, the only "harm" Plaintiffs seemingly endeavor to tie to Porter Hedges is its alleged failure to disclose the Jones-Freeman relationship Plaintiffs assert Porter Hedges knew about, and that Plaintiffs' financial recovery in the GWG bankruptcy was somehow lessened because of fees Judge Isgur improperly awarded to Porter Hedges.[142]  But Plaintiffs fail to show that Porter Hedges had any duty to disclose conflicts of other parties.  Plaintiffs also do not explain

---

[137] GWG Bankruptcy Cases, ECF No. 370 ¶ 11.

[138] *Id.* at ECF Nos. 1952, 2010.

[139] *Id.* at ECF No. 1698 at 32.

[140] *See supra* at ¶¶ 28–31.

[141] Compl. at ¶¶ 103–05 (alleging "***Jones, Freeman and Jackson Walker*** arrange for Freeman to serve in the lucrative position of Wind Down Trustee" (emphasis added)).

[142] *Id.* at ¶¶ 109–10, 139, 147, 250, 267, 270, 296.

how the fees earned by Porter Hedges were improper, and provide no allegations as to how Porter Hedges' knowledge of Jones' and Freeman's relationship would have changed the ultimate fees awarded to Porter Hedges for services rendered.  In any event and as stated previously, Porter Hedges' fees were approved by Judge Isgur's final order.  Plaintiffs' attempt to attack that order in this lawsuit is both procedurally improper and barred by *res judicata*.[143]  Plaintiffs' causation theory that non-disclosure of the Jones-Freeman relationship somehow caused bonds to lose value is "too attenuated" to be fairly traceable to any action or inaction of Porter Hedges.[144]  Accordingly, the Complaint must be dismissed as to all claims against Porter Hedges for failure to adequately plead causation.

### iii.  The Complaint's failure to adequately plead detrimental reliance also mandates dismissal of all of Plaintiffs' claims against Porter Hedges under Rule 12(b)(6).

55.    Plaintiffs' tort claims against Porter Hedges hinge on their purported reliance on Porter Hedges' alleged false misrepresentations or omissions in its bankruptcy disclosure filings.[145]  But importantly, the Complaint lacks facts that set forth when, how, or what Plaintiffs relied upon in the public filings that they now complain of.  Instead, the Complaint asserts, in a conclusory fashion, that Plaintiffs "relied on their good-faith representation of the Bondholder Committee . . . that they were unaware of any disqualifying conflict between the mediator and

---

[143] *See supra* at n.119; *see also infra* at ¶ 76.

[144] *Hanson*, 800 F.2d at 1385 (holding a plaintiff lacks Article III standing when the line of causation between injury and alleged wrongdoing is "too attenuated.").

[145] Compl. at ¶¶ 247, 249–50 (Count IV, breach of fiduciary duty: Plaintiffs relied on Porter Hedges' "implicit representation" and "failure to disclose the conflict"), 258 (Count V, aiding and abetting breach of fiduciary duty: Plaintiffs contend they suffered damages due to "a direct and proximate result of Defendants' wrongful acts and omissions, including concealing the intimate, live-in relationship between Jones and Freeman"), 269 (Count VI, negligent misrepresentation: Plaintiffs state they "justifiably relied" on defendants alleged misrepresentations and omissions), 276 (Count VII, professional negligence: similar); *see also, e.g.*, *Tittle v. Enron Corp. (In re Enron Corp.)*, 2006 WL 1662596, at *17 (S.D. Tex. June 7, 2006) (stating breach of fiduciary duty claims require a plaintiff to have "detrimentally relied on the misrepresentation."); *Miller Glob. Properties, LLC v. Marriott Int'l, Inc.*, 418 S.W.3d 342, 351 (Tex. App. 2013) (holding failure to show reliance was "fatal" to professional negligence claim "[b]ecause reliance is a critical component to the causation element").

Freeman,"[146] and in reliance on these representations, "were deprived of the opportunity to object to . . . Porter Hedges' fees for representation of the Bondholder Committee."[147]  Plaintiffs' allegation is simply false.  Porter Hedges' fees were not approved until March 2024, months after Jones had resigned from the bench in light of the public revelations surrounding his relationship with Freeman.[148]  Thus, Plaintiffs were not "deprived of the opportunity to object," they simply chose not to.  Nor do Plaintiffs plead or assert that Porter Hedges had a duty—as Committee co-counsel—to disclose any prior connection that it may have had with Jones or Freeman separately, merely by virtue of the fact that they were both formerly employed at the firm.[149]  Instead, it is well established that Porter Hedges' duty to disclose its connections to other parties-in-interest under Fed. R. Bankr. 2014, including that it was a "disinterested" party under 11 U.S.C. § 101(14), pertains only to its own conflicts—*not* the conflicts of other parties.[150]  The Complaint equally contains no allegations that Porter Hedges was personally interested in GWG's bankruptcy cases. Plaintiffs also do not plead that Porter Hedges had any financial interest in hiring Defendant Jones as mediator or Freeman as the Wind Down Trustee; nor are there any accusations that Porter

---

[146] Compl. at ¶ 249.

[147] *Id.* at ¶ 276.

[148] *See supra* at ¶ 27.

[149] *Cf.* Compl. at ¶ 18; Compl. at ¶ 249.

[149] Compl. at ¶ 276.

[149] *Cf.* Compl. at ¶ 18.

[150] *See In re Granite Partners, LP*, 219 B.R. 22 (Bankr. S.D.N.Y. 1998) ("The professional must disclose all facts that bear on its disinterestedness"); *see also In re Universal Bldg. Prods.*, 486 B.R. 650 (Bankr. D. Del. 2010) ("Section 1103 specifically provides only that committee counsel shall not hold or represent an interest adverse to the committee."); *In re Caesars Entm't Operating Co.*, 561 B.R. 420 (Bankr. N.D. Ill. 2015) (declining to find representation was not disinterested because "the Committee offered no evidence that the existing representations or [counsel's] interest in additional ones would influence [counsel's] representation of the debtors; the Committee simply left the inference out there to be drawn.").

Hedges benefitted beyond the fees it was rightfully owed.[151]  Simply put, Porter Hedges did not have any conflicts to disclose.

56.     For these reasons, Plaintiffs' claims against Porter Hedges must also be dismissed for failure to adequately plead that Plaintiffs relied on Porter Hedges' alleged misrepresentations or omissions.

### iv.  Plaintiffs fail to allege facts sufficient to impute any knowledge of the Jones-Freeman relationship to Porter Hedges, so all claims against Porter Hedges must be dismissed.

57.     All of Plaintiffs' claims against Porter Hedges assume that Porter Hedges had knowledge of Freeman's relationship with Jones but failed to disclose such knowledge.  Because Plaintiffs fail to allege facts sufficient to impute such knowledge to Porter Hedges, all of Plaintiffs' claims against Porter Hedges fail.

58.     Plaintiffs allege that Freeman's ex-husband, Nicholas Simms, a partner at Porter Hedges, "knew of the relationship between Freeman and Jones at all times relevant to this Complaint [and thus] Simms' knowledge of the continuing relationship is imputed to Porter Hedges."[152]  Plaintiffs do not cite any authority supporting the imputation of Simms' alleged knowledge to Porter Hedges.  Elsewhere in the Complaint, however, Plaintiffs cite a series of cases to support the similar theory that "[a]s an attorney and partner in Jackson Walker, Freeman's 'knowledge and actions are said to be imputed to all members of a firm.'"[153]  None of the cases

---

[151] *See Waldron v. Adams & Reese, LLP (In re Am. Int'l Refinery, Inc.)*, 676 F.3d 455, 462 (5th Cir. 2012) ("The standards for finding a conflict are strict and attorneys engaged in the conduct of a bankruptcy case should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration.").

[152] Compl. at ¶ 18.

[153] *Id.* at ¶ 54 (quoting *In re Bradley*, 495 B.R. 747, 791 (Bankr. S.D. Tex. 2013)).

Plaintiffs cite support the imputation of Simms' alleged knowledge of the Jones-Freeman relationship to Porter Hedges.

59.    In the case Plaintiffs rely upon—*In re Bradley*—the court imputed the knowledge and bad-faith conduct of an appearance attorney to the managing partners of the attorney's firm for purposes of sanctioning the managing partners for the attorney's violations of local bankruptcy rules.[154]    In support of imputation, the *Bradley* court cited two cases similarly concerning imputation of an attorney's misconduct to his supervising attorney or law firm for the purposes of issuing sanctions.[155]    Here, there is no allegation that Simms participated in or was even aware of any misconduct.    Nothing in these cases suggests that imputation of an attorney's knowledge to his partners is appropriate when there is no allegation of misconduct by that attorney.

60.    Plaintiffs also cite to the Fifth Circuit's decision in *In re Corrugated Container Antitrust Litigation*.[156]    This case concerns imputation of lawyers' knowledge to their partners for purposes of disqualifying a law firm from representing a party adverse to its current client.    The Fifth Circuit does not cite or apply any principle of imputation applying outside of the context of disqualification.[157]    Disqualification as a means of protecting a current client from adverse use of its confidential information implicates its own particular policy concerns and is not at issue here.[158]

61.    The one case Plaintiffs cite in the Complaint that concerns imputation principles arguably applicable here is *In re Anderson*.[159]    In *Anderson*, the court held that notice of a hearing

---

[154] 495 B.R. at 791.

[155] *See id.* (citing *In re DePugh*, 409 B.R. 125, 141, 143 (Bankr. S.D. Tex. 2009) (imputing appearance attorney's violations of bankruptcy rules to attorney-in-charge) and *In re Parsley*, 384 B.R. 138, 182 (Bankr. S.D. Tex. 2008) (imputing an associate attorney's "bad faith conduct" to law firm)).

[156] 659 F.2d 1341, 1346 (5th Cir. 1981) ("knowledge is imputed to partners of the lawyer disqualified, even if the partnership is later dissolved); Compl. at 27 n.67.

[157] *See* 659 F.2d at 1346.

[158] *See id.*

[159] 330 B.R. 180, 187 (Bankr. S.D. Tex. 2005); Compl. at 27 n.67.

sent to an attorney active in a bankruptcy proceeding was imputed to another attorney at the same firm representing a different creditor in the same proceeding.[160]  In support of imputation, the court stated:  "'It is a basic tenet of the law of agency that the knowledge of an agent, or for that matter a partner or joint venturer is imputed to the principal.'"[161]  The Fifth Circuit, however, has highlighted a crucial limitation of this theory of imputation:  "The principle of imputed knowledge rests upon the duty of the agent to disclose to his principal all material facts coming to his knowledge **with reference to the scope of the agency** and upon the presumption that the agent has discharged his duty."[162]

62.     The limitation articulated by the Fifth Circuit in *Thomas* reflects black-letter law in Texas concerning the imputation of knowledge of an agent (here, partner) to its principal (here, law firm).  Mere notice to or knowledge of an agent, without more, is insufficient to impute the agent's knowledge to the principal.  Under Texas law, the notice or knowledge must be acquired **in connection with the agent's activity and scope of authority as an agent**.  The Texas Supreme Court acknowledged this limitation in *La Sara Grain Co. v. First National Bank of Mercedes* when it held that the "bank, a corporation, is bound by the knowledge of one of its agents **if that knowledge came to him in the course of the agent's employment**."[163]

63.     Courts in Texas routinely acknowledge that imputation of an agent's knowledge to the principal is limited to knowledge acquired in connection with the agent's activity within the

---

[160] 330 B.R. at 187.

[161] *Id*. (quoting *Thomas v. N.A. Chase Manhattan Bank*, 1 F.3d 320, 325 (5th Cir. 1993)).

[162] *Thomas*, 1 F.3d at 325 (emphasis added).

[163] 673 S.W.2d 558, 563 (Tex. 1984) (emphasis added); *see also Doctors Hosp. at Renaissance, Ltd. v. Andrade*, 493 S.W.3d 545, 549 (Tex. 2016) ("Further, even if limited partners are agents of the limited partnership as described in section 152.301, their agency is still limited to the partnership's business. As such, Dr. Lozano would be acting as an agent of Renaissance **only if he were engaging in its business**, which does not include the provision of medical care.") (emphasis added).

scope of his or her authority.[164]  And Texas courts have applied this limitation of the doctrine of imputation to partners in partnerships for over 100 years.  In *Flynn v. Bank of Mineral Wells*, the court held that a bank employee's knowledge that a check drawn on the bank had been cancelled could not be imputed to the bank that cashed the check, even though the first bank's employee was a partner in the second bank.[165]  The court cited the general rule that "notice to a member of a partnership firm of any fact pertaining to the business of the firm was binding on the firm," but then based its holding on the limitation of that rule, reasoning that "imputing the notice or knowledge of a copartner ***acquired in transactions outside of the partnership business***, and which were had for his individual benefit, to the other, would be to convert the rule into an instrumentality of injustice."[166]

64.     Here, the sum total of Plaintiffs' allegations concerning Simms is that (1) Simms is a partner at Porter Hedges and (2) Simms "knew of the relationship between Freeman and Jones at all times relevant to this Complaint."[167]  Crucially, Plaintiffs fail to allege that Simms acquired this (alleged) knowledge ***in connection with his activity and scope of authority as a partner at Porter Hedges***.  Indeed, Plaintiffs fail to allege any facts at all concerning the circumstances under which Simms allegedly acquired this knowledge and how such alleged knowledge relates to his authority as a partner.

---

[164] *See, e.g., Am. Guar. and Liab. Ins. Co. v. U.S. Fire Ins. Co.*, 255 F. Supp. 3d 677, 692 (S.D. Tex. 2017) ("Knowledge is imputed to a corporation when the agent is acting in the scope of his or her authority and the knowledge relates to matters within the scope of that authority."); *City of Galveston v. Shu*, 607 S.W.2d 942, 945 (Tex. App.—Houston [1st Dist.] 1980, no writ) ("Before notice to an agent or representative will be imputed to his principal or superior, it must have come to him at a time when he was engaged in the business of his principal under circumstances imposing upon him the reasonable duty of making the facts known to his superior."); *Tamburine v. Ctr. Sav. Ass'n*, 583 S.W.2d 942, 949 (Tex. App.—Tyler 1979, writ *ref'd n.r.e.*) ("Before notice or knowledge of an agent is imputed to his principal it must first be shown that the authority of such agent extended to the very matter about which and concerning which such knowledge or notice was acquired.").

[165] 53 Tex. Civ. App. 481, 485–86, 118 S.W. 848, 850–51 (1909, no writ).

[166] *Id.* (emphasis added).

[167] Compl. at ¶ 18.

65.     With respect to a partner in a law firm, "[t]he extent of authority of a partner is determined essentially by the same principles as those measuring the scope of the authority of an agent."[168]  Because Plaintiffs fail to allege any facts to the effect that Simms acquired his alleged knowledge of the Jones-Freeman relationship in connection with "the business entrusted to his care" as a partner at Porter Hedges (*i.e.*, that Simms learned this information while working on the GWG bankruptcy), Plaintiffs fail to allege facts sufficient to impute such knowledge to Porter Hedges under Texas law.  All Plaintiffs' claims against Porter Hedges fail for this additional reason, and the Complaint must be dismissed.

### v.  Plaintiffs' claims must also be dismissed against Porter Hedges because they are barred by attorney immunity and the judicial proceedings privilege.

66.     All of Plaintiffs' claims against Porter Hedges, *i.e.*, Counts IV-VII and IX, must be dismissed for failure to state a claim for the additional reason that the attorney immunity defense and judicial proceedings privilege bar such claims.  In Texas, the attorney immunity doctrine is meant to protect attorneys from liability for their professional conduct.  Specifically, the defense guards against claims brought by non-clients "for conduct performed as part of the discharge of the lawyer's duties to his client."[169]  Attorneys seeking dismissal based on attorney immunity need only establish "that the alleged conduct was within the scope of the attorney's legal representation of the client" for the court to grant those attorneys immunity, which can be done at the motion to dismiss stage of litigation.[170]

67.     Here, all of the relevant allegations in the Complaint for the claims Plaintiffs assert against Porter Hedges relate to Porter Hedges' disclosures or fees earned in connection with its

---

[168] *Long v. Lopez*, 115 S.W.3d 221, 226 (Tex. App.—Fort Worth 2003, no pet.) ("Generally, an agent's authority is presumed to be coextensive with **the business entrusted to his care**.") (emphasis added); *id.*

[169] *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 764 (5th Cir. 2019).

[170] *Id.* at 763.

engagement as Committee co-counsel.[171]   Although Porter Hedges' disclosures in the GWG bankruptcy were at all times proper, the disclosures were plainly made in the scope and course of Porter Hedges' employment as co-counsel to the Bondholder Committee in the GWG bankruptcy cases.[172]  Thus, the attorney immunity defense bars Plaintiffs' claims against Porter Hedges.

68.     Plaintiffs' claims are also barred by the judicial-proceedings privilege, which encompasses statements made by judges, jurors, parties, counsel, or witnesses and attaches to all portions of proceedings, "including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case."[173]  The privilege "prohibits any tort litigation based on the content of" the communications put at issue by Plaintiffs in the Complaint.[174]   In the Complaint, Plaintiffs' claims are predicated on Porter Hedges' alleged improper disclosures, which were filed in the GWG bankruptcy cases.[175]  Accordingly, such statements are wholly protected under the judicial proceedings privilege and cannot serve as the basis for Plaintiffs' claims against Porter Hedges.  Thus, all of Plaintiffs' claims must be dismissed.

**B. Each of Plaintiffs' Claims Must be Dismissed Under Rule 12(b)(6) for Additional Deficiencies.**

### *i.  Because Plaintiffs were not Porter Hedges' clients, Porter Hedges had no duty to them; thus, Counts IV, V, VI, VII and IX must be dismissed.*

69.     As discussed, *supra*, Plaintiffs were not Porter Hedges' clients and had no attorney-client relationship with the firm.  It is undisputed that Porter Hedges served as co-counsel to the Bondholder Committee, and as a result owed only a duty to it, not Committee members

---

[171] Compl. at  ¶¶ 108 (Count IV), 120 (Count V), 121 (Count VI), 126 (Count VII), 133 (Count IX).

[172] *Ironshore Eur. DAC*, 912 F.3d at 768.

[173] *Landry's Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 46 (Tex. 2021); *see also Blasko v. Miller*, 678 F. Supp. 3d 832, 849 (N.D. Tex. 2023).

[174] *Id.* (quoting *Collins v. Zolnier*, 2019 WL 2292333, at *3 (Tex. App.—Beaumont May 30, 2019, pet. denied)).

[175] GWG Bankruptcy Cases, ECF No. 370-1.

individually or L Bondholders like Plaintiffs more broadly.[176]  Because applicable law provides Porter Hedges owed no legal or fiduciary duty to non-clients like Plaintiffs here, Plaintiffs' claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and professional negligence all fail.

### a.   Plaintiffs' aiding and abetting breach of fiduciary duty claim (Count V) also fails.

70.    Count V of the Complaint, which alleges Porter Hedges aided and abetted breach of fiduciary duty, also fails for additional reasons.[177]  Plaintiffs fail to state a claim for aiding and abetting breach of fiduciary duty as no explicit cause of action exists under Texas common law.[178] Indeed, the Fifth Circuit has held that this claim is unrecognizable by federal courts as the Texas Supreme Court "has yet to expressly adopt such claim."[179]

71.    Plaintiffs' claim is still inadequately pled even if the Court were to entertain it. Elements of aiding and abetting a breach of fiduciary duty require the Plaintiffs show that:  (1) the primary actor committed a tort; (2) the defendant knew that the primary actor's conduct constituted a tort; (3) the defendant intended to assist the primary actor; (4) the defendant gave the primary actor assistance or encouragement; and (5) the defendant's conduct was a substantial factor in causing the tort.[180]  Aside from Porter Hedges owing no fiduciary duty to Plaintiffs, nowhere in

---

[176] Compl. ¶ 18; *see also* GWG Bankruptcy Cases, ECF No. 214.

[177] *See* Compl. ¶¶ 255–59.

[178] *See Reynolds v. Sanchez Oil and Gas Corp.*, 2023 WL 8262764, *9 (Tex. App.—Houston [1st Dist.] Nov. 30, 2023, no pet.) ("Texas law does not currently recognize a cause of action for aiding and abetting a tort, including a breach of fiduciary duty.").

[179] *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*, 800 F. App'x 239, 250 (5th Cir. 2020) (citing to *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781–82 (5th Cir. 2018)) (dismissing aiding and abetting claim because the court could not "recognize a claim that the Texas Supreme Court has yet to expressly adopt."); *see also Turk v. Pershing LLC*, 2023 WL 36080, at *2 (N.D. Tex. Jan. 3, 2023) (dismissing aiding and abetting breach of fiduciary duty claim because "a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by state courts.").

[180] *Reynolds*, 2023 WL 8262764, at *9.

the Complaint do Plaintiffs identify a primary actor in this alleged scheme.  Given, however, that Porter Hedges did not owe Plaintiffs a fiduciary duty and the vast majority of Plaintiffs' allegations target defendants other than Porter Hedges, Porter Hedges cannot be the primary actor.  Further, unless the Court concludes that the Complaint alleges sufficient facts to establish that the other named Defendants owed Plaintiffs a fiduciary duty, it follows there can be no breach for Porter Hedges to aid and abet.[181]  Plaintiffs fail to allege sufficient facts to establish that Porter Hedges intended to assist any of the other defendants or in fact gave the unnamed primary actor assistance or encouragement.  On the face of the Complaint, it is also clear that Plaintiffs have failed to allege facts sufficient to show that Porter Hedges was a substantial factor in causing the tort.  In fact, there is not a single mention of the Porter Hedges name under Count V of the Complaint, much less allegations sufficient to meet the pleading standard.  Accordingly, so too should this claim be dismissed.

### b.  Plaintiffs' professional negligence claim (Count VII) fails because Porter Hedges was not their attorney.

72.    Like their breach of fiduciary duty claim, Plaintiffs attempt to bring a claim for professional negligence "against Porter Hedges directly for its action taken while serving as co-counsel for [the] Bondholder Committee."[182]   To state a claim for professional negligence, Plaintiffs would need to show (1) the existence of a legal duty owed by the professional to the plaintiff, (2) a breach of that duty, (3) that the breach proximately caused the plaintiff's injuries, and (4) resulting damages.[183]  As established, Plaintiffs were not Porter Hedges' clients.  Instead, Porter Hedges served as co-counsel to the Bondholder Committee.  As a result, Porter Hedges

---

[181] The issue of whether any of the other defendants owed Plaintiffs a fiduciary duty is raised in the motions to dismiss filed by Freeman, Jones, and Jackson Walker.  *See* ECF Nos. 14, 21, 22.

[182] Compl. at ¶ 274.

[183] *Sec. Inv. Prot. Corp. v. Cheshier & Fuller LLP (In re Sunpoint Sec., Inc.)*, 377 B.R. 513 (Bankr. E.D. Tex. 2007).

"owed no professional duty to a third party or non-client."[184]   Accordingly, Count VII must be dismissed.[185]

### ii. The Complaint separately fails to state a claim for negligent misrepresentation (Count VI) against Porter Hedges.

73.     A negligent misrepresentation claim requires that Plaintiffs show that (1) Porter Hedges made a representation in the course of its business, (2) such representation contains false information for the guidance of others in their business, (3) Porter Hedges did not exercise reasonable care or competence in obtaining or communicating the representation, (4) Plaintiffs justifiably relied on the representation, and (5) such asserted false representation proximately caused Plaintiffs' injuries.[186]

74.     Yet common to these elements is that Plaintiffs identify an affirmative misrepresentation; omissions are not enough.[187]   Nowhere in the 134-page Complaint do Plaintiffs plausibly allege that Porter Hedges made any false statement.   As set forth above, Porter Hedges did not make any false disclosures in GWG's bankruptcy cases.[188]   Absent naming a false fact represented by Porter Hedges, and because Plaintiffs equally failed to allege that they justifiably relied on any such misrepresentation nor that Porter Hedges was the proximate cause, as discussed earlier, Plaintiffs' negligent misrepresentation claim must be dismissed.[189]

---

[184] *Varco LP v. Bohnsack*, 2009 WL 10698303, at *5 (S.D. Tex. Oct. 1, 2009); *see also Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex. 1996).

[185] For the reasons discussed *supra* at ¶¶ 50–54, Plaintiffs likewise fail to establish sufficient facts to establish the elements of breach, proximate causation, or damages to which they have standing to assert.

[186] *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Ints.*, 991 S.W.2d 787, 791 (Tex. 1999).

[187] *K. Griff Investigations, Inc. v. Cronin*, 633 S.W.3d 81, 99 (Tex. App. – Houston [14th Dist.] 2021, no pet.) (citing *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (The term "false information" . . . means a misstatement of existing fact.)).

[188] GWG Bankruptcy Cases, ECF No. 370-1.

[189] *United States v. Dental Health Programs, Inc.*, 2020 WL 3064712, at *6 (N.D. Tex. June 8, 2020) (dismissing claims because "[Plaintiff] does [not] identify the particular false statements with respect to those certifications that form the basis of her claim").

### *iii.* *Porter Hedges was not unjustly enriched, and that claim (Count IX) also fails.*

75.     Like the rest of their Complaint, Plaintiffs' unjust enrichment allegations focus on the other Defendants and only make passing mention of Porter Hedges.[190]  The threadbare allegations Plaintiffs make is that Porter Hedges "acquiesced to the knowing concealment of conflicts for the purpose of ensuring non-opposition to the award of its fees,"[191] and that "Porter Hedges was paid over $2 million in fees and expenses" for serving as co-counsel to the Bondholder Committee.[192]  Plaintiffs then state—without any other allegations to provide reasoning or justification—"Porter Hedges should be required to return fees that it recouped."[193]  Whether or not unjust enrichment is a viable cause of action in Texas, Plaintiffs have not met the requisite pleading standard to require Porter Hedges to return the fees it properly earned.[194]  Plaintiffs do not allege that Porter Hedges did not provide the legal services rendered or that Plaintiffs would have somehow received any portion of the fees paid to Porter Hedges.

76.     In any event, the issue of whether Porter Hedges is entitled to its fees for serving as co-counsel to the Bondholder Committee has already been decided by order of the Bankruptcy Court "on a final basis."[195]  As set forth above, Judge Isgur entered the order allowing compensation and reimbursement to Porter Hedges months after Jones had resigned.[196]  Despite these events being widely publicized months earlier, Plaintiffs did not object.  Given that unjust

---

[190] *See* Compl. at ¶¶ 292–98.

[191] *Id.* at ¶ 294.

[192] *Id.* at ¶ 296.

[193] *Id.* at ¶ 297.

[194] *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 560–61 (N.D. Tex. 2009) ("The Supreme Court of Texas and other courts still occasionally refer to an 'unjust enrichment claim.' These opinions do not, however, characterize unjust enrichment as a separate cause of action from money had and received; they consider it to be a general theory of recovery for an equitable action seeking restitution.") (citing *Elledge v. Friberg–Cooper Water Supply Corp.*, 240 S.W.3d 869 (Tex. 2007)); *HECI Expl. Co. v. Neel*, 982 S.W.2d 881 (Tex. 1998).

[195] GWG Bankruptcy Cases, ECF No. 2396.

[196] *See supra* at ¶ 27.

enrichment is an equitable claim, Plaintiffs cannot sit silently when the issue was properly before Judge Isgur and then wait over a year to seek equitable disgorgement.[197]  Moreover, Plaintiffs have not alleged any basis under Fed. R. Bankr. P. 9024 or Rule 60 to support vacating Judge Isgur's final order approving Porter Hedges' fees.  Accordingly, Count IX must be dismissed.

### iv.  Plaintiffs offer no supporting allegations or theories in support of their respondeat superior and/or agency liability claim.

77.    In a last ditch effort, Plaintiffs lodge an unnumbered count in their Complaint asserting "respondeat superior and/or agency liability" against Porter Hedges.[198]  A critical element in establishing a claim for vicarious liability is that a plaintiff prove that he was injured because of a tort.[199]  Because Plaintiffs offer no factual allegations or theories in support of its respondeat superior or agency liability theories, this additional claim must also be dismissed.

### v.  Even assuming, arguendo, that Porter Hedges was Plaintiffs' attorney, the anti-fracturing rule bars Plaintiffs from repackaging professional negligence claims into other tort claims.

78.    Plaintiffs bring claims against Porter Hedges for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligent misrepresentation, professional negligence, and unjust enrichment, all of which are based on Porter Hedges' alleged failure to disclose the Jones-Freeman relationship.  As explained above, Porter Hedges denies it had any duty to Plaintiffs, let alone an attorney-client relationship with them, that would otherwise support a professional negligence claim.  However, if the Court determines that Plaintiffs have adequately pled the existence of an attorney-client relationship between Porter Hedges and Plaintiffs (which they have

---

[197] See Hancock, 635 F. Supp. 2d at 560–61.

[198] Compl. at ¶¶ 299–301.

[199] See G & H Towing Co. v. Magee, 347 S.W.3d 293, 296 (Tex. 2011); GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 617–18 (Tex. 1999).

not), then at minimum, the Court should dismiss all other claims against Porter Hedges under the anti-fracturing rule.

79.    Under the anti-fracturing rule, "plaintiffs in professional negligence cases may not convert what are really negligence claims into other claims such as fraud, breach of contract, or breach of fiduciary duty in order to gain litigation advantage."[200]  "[I]f the crux or gravamen of the plaintiff's claim is a complaint about the quality of professional services provided by the defendant, then the claim will be treated as one for professional negligence even if the petition also attempts to repackage the allegations under the banner of additional claims."[201]

80.    The basis of Plaintiffs' professional negligence claim is that Porter Hedges "fail[ed] to inform the Court, the Bondholder Committee, and bondholders, including Plaintiffs, that Jackson Walker partner, Freeman, was involved in an intimate relationship with Jones . . . ."[202] This alleged failure to disclose is also the basis of all of Plaintiffs' other claims against Porter Hedges.[203]  Texas courts consistently hold that an attorney's failure "to inform the client of all material facts in a case" sounds in professional negligence.[204]  Where a plaintiff bases professional negligence and other claims on an "identical list of alleged acts and omissions," the court properly dismisses the other claims.[205]

81.    Regarding breach of fiduciary duty in particular, "Texas courts have generally held that a fiduciary duty claim focuses on whether an attorney obtained an improper benefit from

---

[200] *Pitts v. Rivas*, 709 S.W.3d 517, 523 (Tex. 2025).

[201] *Id.* at 524.

[202] Compl. at ¶ 277a; *see also id.* at ¶¶ 276, 277b-e.

[203] *See id.* at ¶¶ 246–47, 249–50, 253 (breach of fiduciary duty), 258 (aiding and abetting breach of fiduciary duty), 261, 263–67, 269–70 (negligent misrepresentation), 297–98 (unjust enrichment).

[204] *Border Demolition & Envtl., Inc. v. Pineda*, 535 S.W.3d 140, 160 (Tex. App.—El Paso 2017, no pet.).

[205] *See id.* at 161.

representing the client . . . ."[206]   The only possible "improper benefit" Plaintiffs allege Porter Hedges obtained in connection with its alleged failure to disclose is "ensuring non-opposition to the award of its fees for serving" as co-counsel for the Bondholder Committee.[207]   But allegations that an attorney favored his or her interest in fees at the expense of the client is insufficient to form a basis for a fiduciary duty claim.[208]

82.    Accordingly, solely to the extent the Court finds that Plaintiffs have properly pled that they had an attorney-client relationship with Porter Hedges, then all of Plaintiffs' claims sound in professional negligence, and the Court should dismiss all other claims against Porter Hedges under the anti-fracturing rule.

## V.    <u>CONCLUSION</u>

For these reasons, Defendant Porter Hedges, LLP respectfully requests that this Court grant this motion and dismiss the Plaintiffs' claims with prejudice.

*[Remainder of Page Intentionally Left Blank]*

---

[206] *Forshee v. Moulton*, 694 S.W.3d 803, 809–10 (Tex. App.—Houston [14th Dist.] 2024, no pet.).

[207] Compl. at ¶ 294.

[208] *Won Pak v. Harris*, 313 S.W.3d 454, 458 (Tex. App.—Dallas 2010, pet. denied) ("To the extent that appellants argue Harris favored his own pecuniary interest in obtaining his legal fee over appellants' interests, we conclude that this interest, without more, is insufficient to allege the type of dishonesty or intentional deception necessary to convert a negligence claim into one for breach of fiduciary duty."); *see also Forshee*, 694 S.W.3d at 811 ("Because the heart of Forshee's complaint associated with the alleged conflicts is that Moulton failed to provide adequate legal representation by not properly informing, advising, or communicating with Forshee, we conclude that her 'conflict of interest' allegations sound in negligence only.").

Dated:  September 25, 2025            Respectfully submitted,
         Dallas, Texas

**O'MELVENY & MYERS, LLP**

By: */s/ Scott P. Drake*
Scott P. Drake (SBT 24026812)
Louis R. Strubeck, Jr. (SBT 19425600)
2801 North Harwood Street
Suite 1600
Dallas, Texas 75201-2692
Telephone: (972) 360-1900
Email: sdrake@omm.com
Email: lstrubeckjr@omm.com

Anna C. Cosby (pro hac vice pending)
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
Telephone: (212) 326-2000
Email: acosby@omm.com

SCOTT DOUGLASS & McCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas  78701
512.495.6300
512.495.6399 Fax

Stephen E. McConnico
State Bar No.  13450300
smcconnico@scottdoug.com
Bryan D. Lauer
State Bar No. 24068274
blauer@scottdoug.com

*Counsel for Porter Hedges, LLP*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing pleading, was served this 25th day of September, 2025 via the Court's ECF system upon all counsel of record that are registered ECF users.

*/s/ Scott P. Drake*
Scott P. Drake