IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Gary Peterson, Chris Nakashima, John English, Jaquetta English, LT-1 Exchange Trust, LT-2 Exchange Trust, LT-3 Exchange Trust, LT-4 Exchange Trust, LT-5 Exchange Trust, LT-6 Exchange Trust, LT-7 Exchange Trust, LT-8 Exchange Trust, LT-9 Exchange Trust, LT-12 Exchange Trust, LT-14 Exchange Trust, LT-15 Exchange Trust, LT-17 Exchange Trust, LT-18 Exchange Trust, LT-19 Exchange Trust, LT-20 Exchange Trust, on their own behalf and on behalf of all others similarly situated, | § § § § § § § § § § § § § § § § § | |
| Plaintiffs, | § § | Civil Action No. 4:25-cv-2761 |
| VS. | § § | Jury Demanded |
| David R. Jones, Elizabeth Carol Freeman, The Law Office of Liz Freeman, PLLC, Jackson Walker, LLP, and Porter Hedges, LLC, | § § § § | |
| Defendants, | § § | |

**DEFENDANTS', THE LAW OFFICE OF LIZ FREEMAN, PLLC
AND ELIZABETH CAROL FREEMAN, REPLY TO PLAINTIFFS' RESPONSE
TO AMENDED MOTION TO DISMISS**
**[Ref. Dkt. No. 10 and 27]**

TO THE HONORABLE CHIEF U.S. DISTRICT JUDGE ALIA MOSES:

COMES NOW, THE LAW OFFICE OF LIZ FREEMAN, PLLC ( "Freeman PLLC") and ELIZABETH CAROL FREEMAN ("Freeman") (Freeman PLLC and Freeman collectively referred to as the "Freeman Defendants"), and make this their Defendants', The Law Office of Liz Freeman, PLLC and Elizabeth Carol Freeman, Reply to Plaintiffs' Response to Amended Motion to Dismiss, and would show as follows:

1

I.

**INTRODUCTION**

1. In this reply, the Freeman Defendants seek to provide the Court with a reliable guide through the Freeman Defendants' Amended Motion to Dismiss, Plaintiffs' Response, and the underlying pleading allegations. The Freeman Defendants address the fundamental issues raised by the parties respective motion and response, with special care to address the practical, logical, and distinguishing issues presented. This Court itself has already addressed the key legal issues in dispute in this case in its earlier decision rendered in *Van Deelen v. Jones,* 2024 WL 3852349, (S.D. Tex. 2024).

2. It is easiest to see the claims against the Freeman Defendants in two general buckets: pre-Wind Down Trust claims based on Freeman's work during the bankruptcy case and post-Wind Down Trust claims based on Freeman's work as Trustee of the Wind Down Trust. The Plaintiffs' claims in both buckets fail. The Freeman Defendants will not reargue every point. However, a number of points bears visiting in reply.

3. The pre-Wind Down Trust claims should be dismissed under Rule 12(b)(1) for lack of jurisdiction, because the Plaintiffs have no Article III or prudential standing to assert those claims. The claims should also be dismissed under Rules 12(b)(6) and 9(b) for failure to allege sufficient facts to state a claim under *Iqbal* and *Twombly* and the heightened pleading requirements of Rule 9(b). This applies with force to the failure to plead facts to establish causation of damages.

4. The post-Wind Down Trust claims should be dismissed as being barred by the exculpatory provisions contained in the Wind Down Trust Agreement. There are no facts alleged that would show how the claims survive those exculpatory provisions. Further, there are no allegations of why the business judgment rule does not apply to the Freeman Defendants' actions

taken in the administration of the Wind Down Trust. Finally, there are insufficient allegations to show the necessary causation of damages.

II.

**REPLY ARGUMENT POINTS**

**A. The Plaintiffs lack Article III and prudential standing for any of their pre-Wind Down Trust claims.**

5. This Court's well-reasoned and correctly decided opinion in *Van Deelen v. Jones,* 2024 WL 3852349, (S.D. Tex. 2024) remains the key guidepost for considering whether Plaintiffs' Complaint alleges facts sufficient to demonstrate the existence of a case or controversy under Article III of the Constitution or prudential standing. Plaintiffs understandably attempt to describe the present case and the *Van Deelen* case as "entirely different" on the grounds that the plaintiff in the *Van Deelen* case was an equity holder of the debtor in bankruptcy, whereas in the present case, Plaintiffs are bondholders, or creditors, of GWG, the debtor in bankruptcy.

6. This Court's opinion in *Van Deelen* makes it clear that Van Deelen's claims of reduced recovery of his interest in the bankruptcy proceeding would have failed to demonstrate standing *even if* Van Deelen were a creditor of the bankruptcy estate as Plaintiffs are in this case. *Van Deelen,* 2024 WL 3852349, *8, n. 17. In *Van Deelen*, this Court wrote:

> Even if the Plaintiff was a McDermott creditor with a prioritized interest in the bankruptcy estate, prudential concerns would defeat standing. Beyond Article III standing, a plaintiff must satisfy various prudential standing requirements to bring suit. Generally, these principles present a Rule 12(b)(6) issue, rather than a jurisdictional defect. *See Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990). Here, limits on shareholder standing bar the Plaintiff from redressing harms committed against the McDermott bankruptcy estate. *See Matter of Educators Grp. Health Tr.*, 25 F.3d 1281, 1284 (5th Cir. 1994). "If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim." *Id.* Courts have long rejected attempts **by creditors and** [emphasis added] shareholders to bring derivative claims owned by the bankruptcy estate. *See Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 306 (5th Cir. 2001). Even accepting that the Defendants defrauded McDermott of millions of dollars in attorneys' fees, the

3

Plaintiff has not shown that this injury is his to redress, rather than the bankruptcy estate's. Thus, to the extent the Plaintiff has alleged a harm against McDermott, he fails to show why he is the one to redress it.

7. Surprisingly, Plaintiffs rely on Second Circuit case of *Alix v. McKinsey & Co.*, 23 F.4th 196, 204 (2d Cir. 2022) in support of their contention that Constitutional and prudential standing could be found where the alleged misconduct targeted the federal judiciary. This Court, is, of course, familiar with the case of *Alix v. McKinsey* because this Court cited and relied upon the *Alix* decision in the *Van Deelen* opinion. Several factors demonstrate that the *Alix* case does not support finding standing on the part of Plaintiffs to assert their pleaded claims against Freeman in this case: First, *Alix* does not address the existence of Constitutional or prudential standing at all—it addresses the sufficiency of pleading proximate cause. Second, this Court did not cite *Alix* in its *Van Deelen* opinion to support the existence of standing—it cited *Alix* in its discussion of Kirkland's motion for sanctions against counsel for Van Deelen and concluded that *Alix* provided some support for finding that counsel for Van Deelen had not alleged standing in bad faith. ("The claims advanced in the Amended Complaint are legally insufficient but not altogether frivolous. Still, the Court admonishes Mr. Clore and Mr. West to diligently review the facts and the relevant law in all future filings." *Van Deelen,* 2024 WL 3852349, *18.) Third, this Court made it clear that "to the extent *Alix* informs this case, it would not remedy the standing defects the Court outlined above." *Van Deelen,* 2024 WL 3852349, *18, n. 28. Fourth, the Fifth Circuit Court of Appeals has never cited *Alix* as persuasive authority in any context.

8. To the extent Plaintiffs seek to remedy their lack of standing to assert derivative claims on behalf of GWG through the appointment of a special administrator to assert claims on behalf of GWG and the Litigation Trust, such claims could not survive. The Litigation Trustee alone has standing to assert any such claims. The Litigation Trustee conducted his investigation and filed a

4

motion seeking the approval of the settlement of GWG's claims against Jackson Walker. This motion is now pending in a separate cause before this Court. Upon the extinguishment of GWG's claims, there would be no derivative claims for Plaintiffs in this case to pursue.

**B. The Plaintiffs' post-Wind Down Trust claims are barred by the exculpatory provisions in the Wind Down Trust Agreement.**

9. The Plaintiffs must accept all the provisions in the Wind Down Trust Agreement, including the exculpatory provisions which bar their claims. Section 8.2 of the Wind Down Trust provided that Freeman has no liability in her individual capacity for any of her actions or omissions taken in good faith in connection with the Wind Down Trust Assets or the affairs of the Wind Down Trust. The only exception is any action or omission determined by a final order of the Bankruptcy Court to be due to gross negligence, intentional fraud, criminal conduct or willful misconduct in the conduct of administering the Wind Down Trust.

> 8.2 <u>Liability to Third Persons</u>. The Wind Down Trustee shall not be subject to any personal liability whatsoever, in tort, contract or otherwise, to any person in connection with the Wind Down Trust Assets or the affairs of the Wind Down Trust and shall not be liable with respect to any action taken or omitted to be taken in good faith, except for actions and omissions determined by a final order of the Bankruptcy Court to be due to their respective gross negligence, intentional fraud, criminal conduct or willful misconduct, and all such persons shall look solely to the Wind Down Trust Assets for satisfaction of claims of any nature arising in connection with affairs of the Wind Down Trust. Other than as set forth in the Plan or in the Confirmation Order, nothing in this <u>Section 8.2</u> shall be deemed to release any Wind Down Trust Beneficiary from any actions or omissions occurring prior to the Effective Date.

Further, Section 8.4 of the Wind Down Trust Agreement specifically exculpates Freeman from causes of action brought by the Plaintiffs. That section reads:

> 8.4 <u>Exculpation</u>. From and after the Effective Date, the Wind Down Trust, the Wind Down Trustee and the Trust Professionals shall be and hereby are exculpated by the Wind Down Trust Beneficiaries from any and all claims, causes of action and other assertions of liability arising out of or related to the discharge of their respective powers and duties conferred by the Plan, this Agreement or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law or otherwise, except for actions or omissions to act that are determined by Final Order of the Bankruptcy Court to have arisen out of their own respective intentional fraud, criminal conduct, gross negligence or willful misconduct. No Wind Down Trust Beneficiary shall have or be permitted to pursue any claim or cause of action against the Wind Down Trustee, the Wind Down Trust, the employees, professionals or representatives of either the Wind Down Trustee or

34

753518146

> the Wind Down Trust (including the Trust Professionals), for making payments in accordance with, or for implementing, the provisions of the Plan, the Confirmation Order or this Agreement. Any action taken or omitted to be taken with the express approval of the Bankruptcy Court shall conclusively be deemed not to constitute gross negligence or willful misconduct.

The only claims that survive this exculpatory provision are those that arise out of Freeman's intentional fraud, criminal conduct, gross negligence or willful misconduct. Finally, Section 8.5 of the Wind Down Trust provides:

> 8.5 **Limitation of Liability**. The Wind Down Trustee and the Trust Professionals will not be liable for punitive, exemplary, consequential, special or other damages for a breach of this Agreement or any other matter relating to this Agreement under any circumstances.

The Plaintiffs have not alleged any facts that would allow for their claims given these exculpatory provisions. The Plaintiffs argue that "To the extent Freeman argues no one can bring claims against her because she drafted a plan that prevents it, this is the epitome of the fox guarding the hen house." (Plaintiffs' Response, Doc. No. 27, pp. 15-16, ¶ 39). The Plaintiffs cannot escape the impact of these provisions by making unfounded allegations that somehow Freeman played a hand in drafting these provisions with Jackson Walker. The Wind Down Trust Agreement was drafted by the Debtors' lead counsel, Mayor Brown, with input from the Plan co-sponsors, LBM (the agent of the Trust Plaintiffs) and the Bondholders' Committee.

    10. Beyond this, Freeman is no fox in a hen house. Freeman did not draft the plan or the Wind Down Trust Agreement. Both of those documents were drafted by Mayor Brown with input from Jackson Walker. Freeman did not draft the documents. The Plaintiffs were co-sponsors of the Plan and Wind Down Trust Agreement. Additionally, those documents were presented to the creditors for objection and voting. The Plaintiffs were creditors, the Plaintiffs did not object to the plan or the Wind Down Trust, and the bondholders overwhelmingly voted for the plan. Finally, Judge Isgur scrutinized the plan with the Wind Down Trust Agreement and entered an order confirming the plan with the trust. The exculpatory provisions are not crafted for Freeman but are

standard provisions. Without such provisions, no one would possibly agree to serve as trustee of the trust.

11. The Plaintiffs' standing to bring their claims is rooted in the Wind Down Trust Agreement and Freeman's duties as Trustee under that agreement. The Plaintiffs cannot sue Freeman for breach of fiduciary duties as a trustee but then ignore the provisions of the very trust they are suing as beneficiaries of. The exculpatory provisions are a part of the Wind Down Trust Agreement that gives rise to the Plaintiffs' claims and cannot be ignored.

### C. Freeman as an attorney and partner at Jackson Walker had no duty to make disclosures independent of Jackson Walker's disclosures.

12. The Plaintiffs allege that the Freeman had a duty to disclose her relationship with former Judge Jones. Since Jones was not the judge handling the GWG case, the earliest any disclosure obligation could possibly have arisen is the date that the Debtors proposed Jones as a mediator in the case. However, the disclosure requirement was Jackson Walker's obligation, not Freeman's. Without commenting on whether Jackson Walker or Jones had a duty to make this disclosure in connection with the Debtors' proffer of Jones as mediator, Freeman had no independent duty to disclose the relationship. Freeman was not the person in charge of drafting the disclosure that Jackson Walker filed. Freeman was not the person who signed the disclosure that was filed in the case. Freeman was not the person who filed the disclosure.

13. This raises the question of whether individual attorneys at a firm representing a debtor have independent obligations to make separate Rule 2014 disclosures. There is no provision of the Bankruptcy Code or Bankruptcy Rule 2014 that requires individual attorneys at a law firm to make separate and independent disclosures. Each of the individual attorneys, even partners at the firm, are not the attorney for the debtor – the law firm is the attorney for the debtor. Bankruptcy Rule 2014 did not require every attorney at Jackson Walker, even attorneys outside of the bankruptcy

section, to make separate and independent disclosures of disinterestedness. Jackson Walker as counsel for the Debtors has the obligation to gather information from its attorneys and database to make its firm's disclosure under Rule 2014. To the extent that Freeman (or any other attorney) failed to provide information to Jackson Walker about Freeman's relationship with Jones, any resulting claim would be Jackson Walker's to pursue against such individual attorney at the firm.

14. Further, Rule 2014 did not apply to the Freeman Defendants with respect to the Debtors' application to employ Jones as the mediator, because she was not the person applying to hire Jones as mediator. Any disclosure obligation would have fallen on Jackson Walker as counsel for the Debtors making the application or Jones himself as the proposed mediator.

**D. Freeman as Trustee of the Wind Down Trust had no duty to disclose her relationship with Jones.**

15. Of course, a trustee owes fiduciary duties to trust beneficiaries. The Wind Down Trust reflects that Freeman owes fiduciary duties to the beneficiaries of the Wind Down Trust with respect to her duties in administering the trust. However, Jones has no role in the Wind Down Trust. The relationship that Freeman had with Jones had nothing to do with Freeman's work in administering the Wind Down Trust. Freeman as Trustee of the Wind Down Trust had no duty to disclose to the beneficiaries of the Wind Down Trust that she was in a personal relationship with Jones.

16. Plaintiffs cite *Trevino v. Brookhill Capital Resources, Inc.*, 782 S.W.2d 279, 281 (Tex. App.—Houston [1st Dist.] 1989, writ denied), *Gibson v. Ellis*, 126 S.W.3d 324, 330 (Tex. App.—Dallas 2004, no pet.), and *Walker v. E & L Transfer, LLC*, 2018 U.S. Dist. LEXIS 246392, *3 (S.D. Tex. Jan. 28, 2019) for the proposition that an attorney breaches their fiduciary duty by failing to disclose conflicts of interest. Those cases have nothing to do with the breach of fiduciary duty

claim the Plaintiffs have pleaded with respect to Freeman's conduct as Trustee of the Wind Down Trust.

17. The Plaintiffs misrepresent what *Trevino v. Brookhill Capital Resources, Inc.* stands for. *Trevino* involved an escrow agent (First Equitable Title Company, Inc. "FETCO") that breached its fiduciary duty to Brookhill (one of the parties to the escrow agreement) by paying Brookhill's attorney's fees to Daniel K. Trevino, an attorney who was the chairman of the board of FETCO, without disclosing the payment to Brookhill or obtaining Brookhill's consent. *Trevino*, 782 S.W.2d at 282. In discussing FETCO's fiduciary duty as an escrow agent, the Court of Appeals noted "An escrow agent owes a fiduciary duty to both parties to a contract" and "This fiduciary duty consists of "(1) the duty of loyalty; (2) the duty to make full disclosure; and (3) the duty to exercise a high degree of care to conserve the money and pay it only to those persons entitled to receive it." *Trevino*, 782 S.W.2d at 281. Freeman is not an escrow agent, does not owe a fiduciary duty to multiple parties under an escrow agreement, and is not alleged to have made a payment to a related person out of the Wind Down Trust assets without disclosing the payment or obtaining the beneficiaries' consent. The *Trevino* case is not applicable to this case.

18. The *Gibson v. Ellis* case is even more irrelevant to the case at bar. In *Gibson v. Ellis*, Gibson, a personal injury client sued his attorney Ellis, for breaching his fiduciary duty by paying medical bills out of Gibson's settlement. 126 S.W.3d at 330. Gibson alleged that Ellis "told him the bills were subject to letters of protection and were community debts." 126 S.W.3d at 330. In discussing Gibson's breach of fiduciary duty claim, the Court of Appeals writes:

> An attorney breaches his fiduciary duty when he benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interest to his own, retaining the client's funds, engaging in self-dealing, improperly using client confidences, failing to disclose conflicts of interest, or making misrepresentations to achieve these ends.

9

126 S.W.3d at 330.

Freeman was not representing the Plaintiffs as an attorney at any time and she did not owe the Plaintiffs the fiduciary duties that attorneys owe to their clients. *Gibson* simply has no bearing on this case at hand, despite the misleading quote offered by the Plaintiffs.

19. In *Walker v. E & L Transfer, LLC*, another case the Plaintiffs cite, Judge Al Bennett dealt with a breach of fiduciary duty claim brought by two clients against their attorney for failing to disclose a prior representation of other clients, which prior representation posed an actual conflict of interest. No. 4:15-CV-02428, 2019 WL 13191607, at *1 (S.D. Tex. Jan. 28, 2019). Again, this case has nothing to do whatsoever with the present case.

20. So what was Freeman's duty of disclosure to the Plaintiffs as beneficiaries of the Wind Down Trust? As Trustee of the Wind Down Trust, Freeman had, and continues to have, the duty to "fully disclose material facts regarding the administration of the trust." *Huie v. DeSchazo*, 922 S.W.2d 920, 925 (Tex. 1996)(rejecting beneficiary's contention that trustee had duty to disclose his communications with his counsel). A trustee must disclose only material facts that might affect the beneficiaries' rights. *Austin Tr. Co. as Tr. of Bob & Elizabeth Lanier Descendants Trusts for Robert Clayton Lanier, Jr. v. Houren*, 664 S.W.3d 35, 45 (Tex. 2023). Material facts affecting the beneficiaries' rights are facts relating to the administration of the assets in the trust. Freeman's relationship with Jones was not a material fact regarding the administration of the Wind Down Trust and did not in any way affect the Plaintiffs' rights as beneficiaries.

21. If the duty of disclosure were extended to personal information about a trustee, there would be no end to what a trustee would have to disclose: who they are married to, where they go to church, where their children go to college, what medical conditions they have, etc. Such personal

10

information is not material to administration of a trust. Freeman had no duty to disclose her relationship with Jones to the Plaintiffs as beneficiaries of the Wind Down Trust.

**E. The Plaintiffs have not pleaded facts to show why the business judgment rule does not preclude their claims against the Freeman Defendants for work as Trustee of the Wind Down Trust.**

22. The Plaintiffs bear the burden of pleading that the business judgment rule does not apply. *Matter of Est. of Poe*, 591 S.W.3d 607, 639 (Tex. App. – El Paso 2019), *aff'd in part, rev'd in part,* 648 S.W.3d 277 (Tex. 2022). The Plaintiffs have not raised a single allegation to show it does not apply to Freeman's conduct as Trustee of the Wind Down Trust.

23. The business judgment rule exists to protect fiduciaries from liability for acts that are within the honest exercise of their business judgment and discretion. *Sneed v. Webre*, 465 S.W.3d 169, 173 (Tex. 2015). The rule protects fiduciaries from being held liable based on actions that are "negligent, unwise, inexpedient, or imprudent if the actions were 'within the exercise of their discretion and judgment in the development or prosecution of the enterprise in which their interests are involved.'" *Sneed*, 465 S.W.3d at 178, *quoting Cates v. Sparkman*, 11 S.W. 846, 849 (1889); *See also*, *Matter of Est. of Poe*, 591 S.W.3d 607, 639 (Tex. App. 2019), *aff'd in part, rev'd in part,* 648 S.W.3d 277 (Tex. 2022).

24. Although the business judgment rule is a defense available to a defendant, it is also a presumption that the plaintiff bears the burden of overcoming by pleading and proof. *Poe*, 591 S.W.3d at 639, *citing Gantler v. Stephens*, 965 A.2d 695, 706 (Del. 2009). Federal district courts in Texas have also held that the plaintiff bears this burden. *FDIC v. Benson*, 867 F.Supp. 512 (S.D. Tex. 1994) (Judge Melinda Harmon); *F.D.I.C. v. Brown*, 812 F.Supp. 722, 724 (S.D. Tex. 1992) (Judge Sim Lake); *F.D.I.C. v. Schreiner*, 892 F.Supp. 869, 881 (W.D. Tex. 1995) (Judge Dorwin

Suttle). The Plaintiffs have pleaded no facts that would serve to overcome the business judgment rule with respect to Freeman's conduct in administering the Wind Down Trust.

### F. The Plaintiffs' RICO, conspiracy, and fraud claims cannot survive dismissal under Rule 9(b).

25. The Plaintiffs' allegations in their complaint amount to "everyone knew of the Jones/Freeman relationship and they were all working together to hide the relationship and make money at the expense of the creditors." This is not nearly enough to provide the "who what where why how" needed to survive dismissal under Rule 9(b).

26. The Plaintiffs contend that with respect to their conspiracy and RICO conspiracy claims the existence of an agreement can be inferred from the circumstances. The Plaintiffs cite *U.S. v. Jones*, 873 F.3d 482, 489 (5th Cir. 2017) and *United States v. Elliott*, 571 F.2d 880, 903 (5th Cir. 1978) in support of this concept. Those cases do stand for that proposition. However, there are no specific facts alleged in the Plaintiffs' complaint that would allow such an inference in this case. There is the same allegation of "they all conspired to hide the relationship" repeated over and over in various ways. This stands in stark contrast to the cases the Plaintiffs rely on for their leap of faith.

27. Both the *Jones* and *Elliott* cases were tried to a jury, the defendants were convicted, and the Court of Appeals affirmed because there was sufficient evidence in the record to support the inference. The Fifth Circuit in *Jones* dealt with a jury's conviction of ROD, a criminal gang that operated in New Orleans's Eighth Ward, whose members "conspired to distribute crack cocaine, possess firearms, and commit a variety of violent crimes for the group's benefit." *United States v. Jones*, 873 F.3d at 488. The Fifth Circuit in *Elliott* dealt with a large criminal enterprise involved in thefts, fencing stolen property, illegally trafficking of narcotics, and obstruction of justice. The indictment listed 25 overt acts, beginning with the burning of a nursing home and

marihuana transactions in the spring of 1976. *Elliott*, 571 F.2d at 895–96. The trial lasted 12 days and implicated six defendants and 37 unindicted co-conspirators in more than 20 different criminal endeavors. *Elliott*, 571 F.2d at 884. There is no comparison between the evidence that the jury found sufficient to convict on in *Jones* and *Elliott* and the vague, conclusory allegations made by the Plaintiffs in their complaint.

## G. The Plaintiffs have not pleaded sufficient facts to show causation of damages.

28. The damages Plaintiffs allege they suffered—the diminution in the value of their bonds as creditors—were caused by the grave financial distress of GWG prior to initiating bankruptcy relief and prior to any involvement of Freeman or any other defendant in this case. Plaintiffs object to Freeman's reference in her Amended Motion to Dismiss to the financial ruin of GWG by Bradley Heppner and Murray Holland, and they assert instead that Freeman's Amended Motion to Dismiss must be considered in light of Plaintiff's asserted cause for the bankruptcy of GWG—the contention that GWG required bankruptcy relief because of an SEC investigation. Plaintiffs' preferred explanation of why GWG required bankruptcy relief does not support the required element of causation any more than Freeman's characterization.

29. Freeman had nothing to do with the SEC investigation that Plaintiffs claim was the cause of GWG's financial insolvency. Plaintiffs engage in the highest form of wishful thinking by asserting that upon entering bankruptcy GWG was "postured to make a full recovery under Chapter 11 restructuring." In support of this conclusion, Plaintiffs refer to paragraphs 96 and 97 of their Original Complaint, where they allege that in 2022, GWG prepared a plan of reorganization that purported to provide all GWG investors and bondholders with 100% of their value. The key defect of this bare allegation is that it does not include any credible factual allegation that the 2022 reorganization plan prepared by GWG would have actually been approved

and confirmed by the bankruptcy court in the absence of any involvement on the part of Freeman. In fact, the central circumstance of Plaintiffs' claims against Freeman is the mediation of GWG's bankruptcy case, which was required because GWG had **not** been able to successfully propose a plan of reorganization that would be approved. Plaintiffs provide no factual allegations sufficient under the applicable pleading standards that **but for** Freeman's non-disclosure of a relationship with Judge Jones, GWG would have successfully proposed a plan of reorganization that met the requirements of the bankruptcy code and would have been confirmed. The simple truth is that GWG was never going to successfully reorganize regardless of whether Freeman had any role in the case.

### H. The Plaintiffs cannot bring their claims under derivative standing and Holland certainly should never be appointed as an administrator.

30. The Plaintiffs cannot be allowed derivative standing to pursue the claims that only the Liquidating Trustee has the power to bring, because the Liquidating Trustee has actively pursued the claims and has settled them (subject to court approval). The Plaintiffs cite *In re Clean the Air, LLC* for the proposition that "a creditor may bring suit on behalf of the bankruptcy estate," but the Plaintiffs cite this case out of context. 631 B.R. 286, 295 (Bankr. S.D. Tex. 2021). In *Clean the Air*, Judge Eduardo Rodriguez recognizing the general rule in *Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 247 (5th Cir. 1988) that "if a claim belongs to the estate, the trustee has exclusive standing to assert it." *Id.* Judge Rodriguez then went on to state that "creditors like Plaintiff have a qualified right to initiate suit on behalf of the bankruptcy estate ***if certain conditions are met***." *Id.* Finally, Judge Rodriguez explained that the Fifth Circuit held in *Louisiana World Exposition* that a creditor who seeks to bring suit on behalf of the bankruptcy estate must meet certain conditions, which include: (1) the debtor-in-possession ***unjustifiably refused to pursue the claim***, and (2) the creditor received leave from the bankruptcy court before pursuing

14

the claims. *Id. citing Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d at 295. The Plaintiffs have not met these requirements.

31. First, the Liquidating Trustee has not only not unjustifiably refused to pursue the claims - he pursued the claims and settled them. The Liquidating Trustee conducted a long and careful analysis of the possible claims he could bring on behalf of the Litigation Trust against the defendants. After conducting his analysis, the Liquidating Trustee engaged in careful, arm's length negotiations with the defendants. The Liquidating Trustee was eventually able to reach a settlement of the claims and has filed a motion seeking approval of that settlement. (See *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, Civil Action No. 4:23-cv-4787, Doc. No. 100). In the motion to approve the settlement, the Litigation Trustee explains what the claims were, the investigation he conducted, the economics involved in deciding whether to file a complaint and litigate the claims, the negotiations with the defendants, the terms and structure of the settlement, and why the settlement is in the best interests of the creditors. If approved, the derivative claims will be released and there will be no derivative claims for the Plaintiffs to pursue.

32. Second, the Plaintiffs have put the cart before the horse by alleging derivative claims before seeking bankruptcy court approval to do so. The Plaintiffs' counsel knew the requirements that the Fifth Circuit has placed on creditors seeking to bring derivative claims. The Plaintiffs' counsel was also fully aware of this Court's prior decision in *Van Deelan* and the warnings against bringing such claims in the future. The Plaintiffs' counsel ignored these and brought the claims anyway without any prior approval. This Court should deny the Plaintiffs' request for leave to bring the claims that the Litigation Trustee has exclusive power and authority to bring.

## IV.

## **CONCLUSION AND PRAYER**

33. Freeman asserted in the first sentence of her motion to dismiss that this is all "déja vu all over again" and she stands by that statement. This Court in *Van Deelan* has already dismissed claims just like the Plaintiffs' claims for lack of standing. This Court pointed out in its opinion in *Van Deelan* that there is nothing different about the plaintiffs being creditors as opposed to shareholders. The Plaintiffs have no direct injury, the Litigation Trustee has the sole authority to bring the claims, and the Litigation Trustee has done just that resulting in a settlement of the claims. This Court should dismiss all of the pre-Wind Down Trust claims against the Freeman Defendants.

34. The post-Wind Down Trust claims should also be dismissed for a number of reasons, foremost of which is the fact that they are barred by the exculpatory provisions in the Wind Down Trust Agreement. In addition to those provisions, Freeman's actions as Trustee are subject to the business judgment rule. The Plaintiffs bear the burden of pleading why that rule does not apply, and the Plaintiffs have wholly failed to plead any facts in that regard. The Plaintiffs have also failed to allege facts to show how nondisclosure of the relationship caused the Plaintiffs any damages with respect to Freeman's conduct in administering the Wind Down Trust assets.

35. Freeman had no obligation to disclose her personal relationship to the Plaintiffs in her role as Trustee of the Wind Down Trust. Her disclosure obligation is limited to material information to her administration of the trust assets that could impact the rights of the trust beneficiaries.

36. The Plaintiffs' complaint is overall an impermissible "shotgun pleading" that fails to give the defendants adequate notice of the claims against them and the grounds upon which each

claim rests. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).[1] Federal Courts in Texas have adopted dismissal based on shotgun pleadings that "mudd[y] the[ ] [c]omplaint with complicated, irrelevant, extraneous, or confusing facts," or "leave[ ] [the] complaint devoid of essential allegations." *Westlake Corp. v. Chemcorp 1 LLC*, No. CV H-24-99, 2024 WL 3029019, *5 (S.D. Tex. June 17, 2024), *citing Martinez v. Nueces Cnty., Tex.*, No. 2:13-CV-178, 2013 WL 6190519, at *3 (S.D. Tex. Nov. 26, 2013) and *7 Santini Brothers Trucking Inc. v. City Ocean Int'l Inc.*, 2024 WL 2836274, at *2 (S.D. Tex. June 4, 2024); *see also Valadez v. City of San Antonio*, No. SA21CV0002JKPRBF, 2022 WL 1608016, at *5 (W.D. Tex. May 20, 2022); *In re Ozcelebi*, 635 B.R. 467, 472 (Bankr. S.D. Tex. 2021). Shotgun pleadings fail to meet the pleading requirements of Rule 8(a) and Rule 9(b), leaving the claims in them subject to dismissal for failure to state a claim.

This Court correctly decided the *Van Deelen* case, and more recent developments on this Court's docket with several motions to approve settlements among various parties and Jackson Walker demonstrate that parties with actual standing to assert legal claims have thoroughly developed those claims. Plaintiffs in the present case do not meet the legal requirements this Court recognized in *Van Deelen*, and Plaintiffs' attempts to assert derivative claims in a civil suit separate from the actual party that does have standing—GWG—does not serve any worthy benefit. This Court should dismiss the Plaintiffs' claims against the Freeman Defendants pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

---

[1] The Eleventh Circuit has identified four categories of impermissible "shotgun pleadings:" (1) a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint, (2) a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action, (3) not separating into a different count each cause of action or claim for relief, and (4) asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d at 1321-23.

Respectfully submitted,

**THE PROBUS LAW FIRM**

By:*/s/ Matthew B. Probus*
    Matthew B. Probus (Attorney in Charge)
    Texas Bar No. 16341200
    Fed. I.D. No, 10915
    Michael M. Probus
    Texas Bar No. 16341500
    Fed. I.D. No. 21725

10497 Town and Country Way, Suite 930
Houston, Texas 77024
Tel. (713) 258-2700
Fax (713) 258-2701
matthewprobus@theprobuslawfirm.com

*ATTORNEYS FOR DEFENDANTS,*
*ELIZABETH CAROL FREEMAN AND*
*THE LAW OFFICE OF LIZ FREEMAN, PLLC*

**Certificate of Service**

    I hereby certify that on October 15, 2025, a true and correct copy of the foregoing instrument has been served upon all parties registered to receive notices by PACER via the Court's ECF/PACER system.

    */s/ Matthew B. Probus*
    Matthew B. Probus