IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Gary Peterson, Chris Nakashima, John English, Jaquetta English, LT-1 Exchange Trust, LT-2 Exchange Trust, LT-3 Exchange Trust, LT-4 Exchange Trust, LT-5 Exchange Trust, LT-6 Exchange Trust, LT-7 Exchange Trust, LT-8 Exchange Trust, LT-9 Exchange Trust, LT-12 Exchange Trust, LT-14 Exchange Trust, LT-15 Exchange Trust, LT-17 Exchange Trust, LT-18 Exchange Trust, LT-19 Exchange Trust, LT-20 Exchange Trust, on their own behalf and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> David R. Jones, Elizabeth Carol Freeman, The Law Office of Liz Freeman, PLLC, Jackson Walker LLP, and Porter Hedges, LLP, <br><br> Defendants. | Civil Action No. 4:25-cv-02761 |

**DEFENDANT JACKSON WALKER LLP'S REPLY
IN SUPPORT OF JACKSON WALKER'S AMENDED MOTION TO DISMISS**

## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. LEGAL ANALYSIS............................................................................................................ 1

    A. Plaintiffs concede they have not moved for derivative standing or class action certification and therefore their arguments on such issues should be ignored. ........................................................................................................ 1

    B. The Response does not solve the Plaintiffs' Article III and prudential standing failings. .................................................................................................. 2

    C. Plaintiffs' Response does not remedy that the Complaint's conspiracy and aiding and abetting claims fail to state a claim for which relief can be granted. ............................................................................................................ 5

    D. The balance of the Response casts aspersions against Jackson Walker to deflect the Complaint's legal shortcomings......................................................... 7

III. CONCLUSION................................................................................................................. 10

**I.     INTRODUCTION**

1.     Plaintiffs' Response attempts reframing their case through a creative interpretation of the Complaint's allegations. But when one closely examines the Complaints' prose, they will see that it stands in contrast to what the Response contends it contains. Plaintiffs <u>expressly</u> seek damages arising from a diminished financial recovery because of the loss of value in their L Bonds which the Complaint (repeatedly) attributes to fees paid from the bankruptcy estate to Jackson Walker. Each claim is infected by such allegations. As this Court and the Fifth Circuit have both held—such alleged harm is a derivative claim belonging solely to the bankruptcy estate. Because of that, regardless of what the Response portends, Plaintiffs cannot establish Article III or prudential standing. That means this Complaint is doomed for dismissal.

2.     The Complaint fails to withstand Jackson Walker's dismissal motion on other grounds such as Rule 9(b) because the pleading's inability, despite the Response's repeated use of the word "reliance", to detail when, where, or, how Plaintiffs saw and read the purported misrepresentations upon which all of the claims are based. Additionally, the Plaintiffs advance Texas tort claims, such as aiding and abetting a breach of fiduciary duty, which are unrecognized by the Texas Supreme Court. The balance of the Response resorts to name calling, designed to shift this Court's attention away from the legal infirmities of the Complaint.

**II.    LEGAL ANALYSIS**

    **A.     Plaintiffs concede they have not moved for derivative standing or class action certification and therefore their arguments on such issues should be ignored.**

3.     Jackson Walker's Motion to Dismiss addressed the Complaint's contentions on derivative standing and class action matters as Plaintiffs' intentions were unclear. Jackson Walker believed that such requests were procedurally improper and otherwise legally deficient.

4. Plaintiffs' Response now admits that they "will file" a motion for derivative standing in "due course."[1] This means contentions in paragraphs 142–149, 229–237, and 274–281[2] of the Complaint and paragraphs 49–64 of the Response are irrelevant and the arguments are not ripe. The same goes for Plaintiffs' class action arguments as the Response concedes Plaintiffs have not filed a motion for class certification and that issue is not presently before the Court.[3] Thus, the arguments contained in paragraphs 150–163 of the Complaint and 105–110 of the Response are irrelevant to the Court's consideration of Jackson Walker's dismissal arguments.

> **B.  The Response does not solve the Plaintiffs' Article III and prudential standing failings.**

5. The crux of Plaintiffs' standing arguments sits in paragraphs 31, 44, and 45 of the Response. In that prose, Plaintiffs contend they suffered particularized injuries because they collectively held L Bonds, "which are now Wind Down Trust interests" and as "described in the Complaint, Jackson Walker, Jones, and Freeman's participation in an alleged conspiracy and fraud wiped out their value entirely."[4] But the Complaint simultaneously alleges injuries from a purported scheme to hide the Jones-Freeman relationship so Jackson Walker could obtain fees from the bankruptcy estates, resulting in the estates having less money available to pay L Bondholders. But this is a derivative injury (which Jackson Walker disputes) belonging to the GWG bankruptcy estates.[5] This is not a particularized injury belonging to Plaintiffs.

---

[1] Doc. No. 28 at ¶ 49.

[2] The Complaint states that Plaintiffs "intend" to bring breach of fiduciary duty and professional negligence claims against Jackson Walker "on behalf of the GWG estate or successor entity, either through special appointment or derivative standing." Doc. No. 1 at ¶ 230.

[3] Doc. No. 28 at ¶ 105 ("The motion to strike is premature and should be denied because 'the Defendant here has not answered, discovery has not commenced, and no motion for class certification has been filed.'").

[4] Doc. No. 28 at ¶ 31.

[5] *See e.g.*, *In re Lockwood Holdings Inc.*, No. 4:21-cv-00456, 2024 WL 727762, *6 (S.D. Tex. 2024) (citing to *Matter of Buccaneer Resources, LLC*, 912 F.3d 291, 293–94 (5th Cir. 2019); *In re Radnor Holdings Corp.*, 564 B.R. 467, 484 (D. Del. 2017); *In re Lothian Oil, Inc.*, 531 F. App'x 428, 439 (5th Cir. 2013) (creditor had no standing to pursue suit against third parties who allegedly fraudulently transferred the debtor's assets).

6. When creditors pursue claims stemming from bankruptcy proceedings—as Plaintiffs have alleged throughout their Complaint—the Fifth Circuit has held that the plaintiff "must show this direct injury is not dependent on injury to the [bankruptcy] estate."[6] "Whatever label is put on [the plaintiff's] claim, what matters is the nature of the injury he is seeking compensation for."[7] Plaintiffs lack any personal stake in the claims—they cannot show an injury in fact for Article III standing nor can they establish that the Complaint asserts their own legal rights and interests for prudential standing.[8] Put to these tests, the Complaint utterly fails to establish prudential or Article III standing.

7. Here, the pleading repeatedly advances a derivative theory of harm (despite Plaintiffs now admitting they have not sought derivative standing) for each claim against Jackson Walker. The claims detail a purported scheme in which a judge (Judge Isgur) improperly approved and awarded Jackson Walker fees from the GWG bankruptcy estates. Such contentions appear in

---

[6] *Matter of Buccaneer Resources, L.L.C.*, 912 F.3d 291, 293–94 (5th Cir. 2019); *In re Lockwood Holdings Inc.*, No. 4:21-cv-00456, 2024 WL 727762 (S.D. Tex. Feb. 22, 2024).

[7] *Id*. at 295.

[8] *Thomas v. N. Am. Chase Manhattan Bank*, 994 F.2d 236, 243 (5th Cir. 1993); *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 277 (5th Cir. 1997).

Complaint paragraphs 9, 111, 139,[9] 178(l), 178(d), 181,[10] 183,[11] 190(a)–(b), 195(a)–(b), 214,[12] 225,[13] 251(p), 253,[14] 258,[15] 270, 286,[16] 288, 289,[17] 291(d), 293, 302(i).[18]

       8.      The Response alleges that dismissal for standing is inappropriate because Plaintiffs may have direct claims against the Wind Down Trustee, including purported direct claims against Jackson Walker for conspiracy to breach Ms. Freeman's fiduciary duty.[19] But that does not, and cannot, save the pleading from dismissal due to a lack of prudential or Article III standing. This is because in every claim—including the conspiracy claims—the Complaint pleads a theory of harm

---

[9] "Jackson Walker took more than $2 million in attorneys' fees—again without disclosing the Jones-Freeman relationship that put them in the position to collect the fees in the first place. . . .".

[10] "Additionally, as a foreseeable result of RICO Defendants' conduct, Plaintiffs' financial recovery as bankruptcy creditors was reduced because the bankruptcy estate (and Wind Down Trust assets in this case) available to pay creditors, including Plaintiffs, was diminished by the fees improperly awarded to Jackson Walker." (RICO claim).

[11] "and funds were being awarded/approved to RICO Defendants Jackson Walker . . .".

[12] "Plaintiffs' financial recovery was reduced because <u>the bankruptcy estate available to pay creditors, including Plaintiffs, was diminished by the fees improperly awarded to Jackson Walker</u> and Freeman as debtor's counsel and Freeman as Wind Down Trustee." (RICO conspiracy claim) (emphasis added).

[13] "All Plaintiffs, relied on the false representation, and thereby suffered injury when, among other things, <u>Jackson Walker and Freeman were appointed and awarded attorneys' fees from the bankruptcy estate</u>, Jones was appointed mediator, and Freeman was appointed Wind Down Trustee, all without disclosure of the intimate relationship." (Common law fraud claim) (emphasis added).

[14] "As a direct and proximate result of Defendants' breaches of their fiduciary duties . . . Jackson Walker, Freeman, and Freeman PLLC were awarded attorneys' fees on behalf of the debtor and Freeman collected (and continues to collect) fees as Wind Down Trustee . . . As a foreseeable result of Defendants' conduct, <u>Plaintiffs' financial recovery was drastically reduced because the bankruptcy estate available to pay bondholders/creditors, including Plaintiffs, was diminished by the fees improperly awarded to Jackson Walker and Freeman as debtor's counsel</u>, and by Freeman as Wind Down Trustee." (Breach of fiduciary duty claim) (emphasis added).

[15] "<u>Plaintiffs' financial recovery was drastically reduced because the bankruptcy estate available to pay bondholders/creditors, including Plaintiffs was diminished by the fees improperly awarded to Jackson Walker</u> and Freeman as debtors' counsel and collected by Freeman as Wind Down Trustee." (Aiding and abetting breach of fiduciary duty claim) (emphasis added).

[16] "Conspiracy Defendants had a meeting of the mind on the object of the conspiracy—collecting millions in attorneys' fees." (Civil conspiracy claim).

[17] "The bondholders/creditors, Plaintiffs, and other interested parties to the GWG bankruptcy suffered damages as a proximate result of the foregoing civil conspiracy, including but not limited to the improper appointment and award of attorneys' fees to . . . Jackson Walker." (Civil conspiracy claim).

[18] Seeking disgorgement of "profits and forfeiture of fees obtained" by Jackson Walker.

[19] [Doc. No. 28](Doc. No. 28) at ¶ 45.

encompassing the loss of value in L Bonds due to the award of fees from the bankruptcy estates to Jackson Walker.

9.  "[S]tanding is not dispensed in gross. That is, plaintiffs must demonstrate standing for each claim that they press against each defendant and for each form of relief that they seek."[20] This Complaint cannot do that and because of this, the Court should dismiss each count for lack of Article III or prudential standing.

### C. Plaintiffs' Response does not remedy that the Complaint's conspiracy and aiding and abetting claims fail to state a claim for which relief can be granted.

10.  Plaintiffs' arguments regarding conspiracy and aiding and abetting claims fail for a second set of reasons when considered through the prism of Rule 12(b)(6).

11.  The Response argues Plaintiffs have raised direct claims against Jackson Walker because the Complaint describes conduct linked to alleged direct claims Plaintiffs have lodged against Ms. Freeman for her Wind Down Trustee conduct.[21]

12.  The Complaint, however, details claims that contend: (1) Jackson Walker was involved in a RICO conspiracy;[22] (2) Jackson Walker aided and abetted Ms. Freeman's breach of fiduciary duty as the Wind Down Trustee;[23] (3) Jackson Walker conspired with Ms. Freeman to breach her fiduciary duty as the Wind Down Trustee;[24] and, (4) Jackson Walker and other Defendants "agreed to collect profit" and had a "meeting of the minds on the object of the conspiracy—collecting millions in attorneys' fees."[25]

---

[20] *Murthy v. Missouri*, 603 U.S. 43, 45 (2024) (cleaned up).
[21] Doc. No. 28 at ¶¶ 45, 46.
[22] *Id*. at Count II.
[23] Doc. No. 1 at ¶ 25
[24] *Id*. at ¶¶ 288–89.
[25] *Id*. at ¶ 286.

13. As for the RICO conspiracy claim, Plaintiffs cannot establish standing—Article III or RICO—for the underlying RICO claim. RICO standing (proof of financial injury directly caused by the alleged predicate acts) is considered under Rule 12(b)(6).[26] Plaintiffs cannot prove that they suffered concrete financial loss because injuries described in the Complaint, and upon which the RICO claims hinge, occurred to the bankruptcy estates, not to Plaintiffs. Thus, Plaintiffs lack RICO standing.

14. As the underlying RICO claim fails (for several reasons), so does the conspiracy claim upon which it is based.[27] Similarly, since the RICO claim fails to establish an enterprise or necessary predicate acts,[28] the conspiracy claim also fails. Thus, this claim should be dismissed under Rule 12(b)(1) or Rule 12(b)(6).

15. For the aiding and abetting breach of fiduciary duty claim, the Fifth Circuit has held that this is an unrecognizable tort by federal courts as the Texas Supreme Court "'has yet to expressly adopt'" such a claim.[29] Thus, this claim fails because Texas does not recognize aiding and abetting breach of fiduciary duty.

16. The "common law civil conspiracy" claim appears to allege a fraud conspiracy and a conspiracy to breach Ms. Freeman's fiduciary duties.[30] Plaintiffs' Response argues that these claims as to Ms. Freeman's Wind Down Trustee work are direct and thus impervious to Jackson

---

[26] *HCB Fin. Corp. v. McPherson*, 8 F. 4th 335, 344 (5th Cir. 2021); *Lewis v. Danos*, 83 F. 4th 948, 956–57 (5th Cir. 2023).

[27] *Davis–Lynch, Inc. v. Moreno,* 667 F.3d 539, 552 (5th Cir. 2012) (explaining how a RICO conspiracy claim requires "an injury from an act that is independently wrongful under RICO.")

[28] *Calcasieu Marine Nat. Bank v. Grant*, 943 F.2d 1453, 1461 (5th Cir. 1991); *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 203 (5th Cir. 2015) ("Since North Cypress failed to properly plead a claim under §§ 1962(a), (b), or (c), it correspondingly failed to properly plead a claim under § 1962(d)").

[29] *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*, 800 F. App'x 239, 250 (5th Cir. 2020) (citing to *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781–82 (5th Cir. 2018); *see also Reynolds v. Sanchez Oil and Gas Corp.*, No. 01-18-00940-CV, 2023 WL 8262764, *9 (Tex. App.—Houston [1st Dist.] Nov. 30, 2023, no pet.).

[30] Doc. No. 1 at ¶¶ 281–93.

Walker's standing arguments.[31] Not so.[32] That point aside, Plaintiffs' Response does not establish how other superseding alternative alleged causes of harm—even if considered under the Complaint's lens—did not directly lessen Plaintiffs' bondholder recovery.

17. Consider, for example, Complaint paragraphs 76–93,[33] which detail how the SEC investigation led to GWG's devaluation and demise. With the Complaint's own words, this constitutes an alternative cause of harm directly lessening bondholder recovery. The Response also does not address how conduct of an independent actor outside of the alleged conspiracy—Judge Isgur—who issued orders approving the BEN stock sale[34] (without objection by the Plaintiffs) does not constitute a superseding cause defeating "the element of proximate cause."[35] The lack of proximate cause here means that these conspiracy claims, even if solely based on Ms. Freeman's Wind Down Trustee conduct, cannot withstand a Rule 12(b)(6) motion.

**D.    The balance of the Response casts aspersions against Jackson Walker to deflect the Complaint's legal shortcomings.**

18. Unable to advance substantive legal arguments saving their Complaint from dismissal, Plaintiffs' Response resorts to name calling—contending that Jackson Walker lied to this Court in its pleadings and in past court appearances unrelated to this lawsuit. Not true. Indeed, Plaintiffs' mischaracterizations are premised entirely on either a misunderstanding of the underlying record or an intentional verbal sleight of hand: equating a lawyer's in court appearance with a lawyer's mere attendance at a proceeding. It is not the first time counsel has done this.[36]

---

[31] Doc. No. 28 at ¶ 45.
[32] *See supra* Section II.B and n.23–24.
[33] *See e.g.*, Doc. No. 1 at ¶ 92 "The saga of the SEC investigation left GWG a distressed entity . . . .".
[34] Doc. No. 1887 at p. 32, Sec. 6.2; Doc. No. 1957, 2305, *In re: GWG Holdings, Inc.,* Case No. 22-90032.
[35] *Millcreek Assocs., L.P. v. Bear, Stearns & Co.,* 205 F. Supp. 2d 664 (W.D. Tex. 2002).
[36] Doc. No. 79 at ¶ 11, *Van Deelen v. Jones*, Case No. 4:23-cv-03729 (S.D. Tex.).

Plaintiffs' counsel relied on the same wordplay at the March 4, 2025 hearing in the *Bouchard v. Jones* matter.

19. The March 4, 2025, exchanges detailed in the Response highlight the nuances that Plaintiffs' counsel now seeks to exploit. The conversation between Ms. Brevorka and the Court involved a discussion about Ms. Freeman's **appearances** before Judge Jones. An appearance as in a lawyer announcing on the record that they are in court, before a judge, representing a party. Mr. West's subsequent discussion with the Court involved an exchange about Ms. Freeman's **attendance** at a February 2021 hearing before Judge Jones and billing for it. The transcript and appearance sheets show Ms. Freeman did not appear before Judge Jones at that February hearing.[37]

20. During the March 4, 2025, hearing before this Court, the above distinction was made clear in an exchange between this Court and former Judge Jones's counsel:

> THE COURT: Or for Ms. Freeman to disclose her relationship with him.
>
> MR. BOIES: **Or at least to -- you know, she didn't appear in front of him.**
>
> THE COURT: **But she did work on cases that were before him.**
>
> MR. BOIES: **But she did work on cases that he was involved in.**
>
> THE COURT: That's 455(b).

21. Other courts have noted that making an appearance in a proceeding consists of a more formalized action, not merely attending a hearing in the gallery (virtually or otherwise),[38] contrary to opposing counsel's conflation of terms.

---

[37] Doc. No. 591 at pp. 1–3, Case No. 20-34682, *In Re Bouchard Transportation Co., Inc., et. al.* (Bankr. S.D. Tex.); *Id*. at Doc. No. 566.

[38] *In re Zorrilla*, 115 B.R. 894, 897 (Bankr. W.D. Tex. 1990).

22.     The Response's contentions also cite Ms. Freeman's work on the Bouchard Transportation Company bankruptcy, including work from 2020 and February 2021, before Michael Van Deelen brought forth anonymous accusations about Ms. Freeman and former Judge Jones's relationship. Until that point, Jackson Walker was unaware of any past or present romantic relationship between the two and has maintained this fact throughout the almost two years of legal proceedings involving the relationship.[39]

23.     As Jackson Walker has detailed in briefing, former Judge Jones's rule prohibited former clerks from appearing before him for a period of time that mirrored their clerkship term.[40] That meant under former Judge Jones's rule, Ms. Freeman could not *appear* before him until 2023, but she was not prohibited from working on cases otherwise pending before him.[41] After Mr. Van Deelen's initial accusation about the couple's relationship in March 2021, Ms. Freeman admitted the existence of a past romantic relationship but did not disclose any ongoing romantic relationship.[42] Jackson Walker's management determined that Ms. Freeman could no longer work on any matters pending before Judge Jones.[43] Jackson Walker expected Ms. Freeman, as an equity partner at the time, to self-police her conduct in accordance with Jackson Walker's instructions and her duties owed to the firm.

24.     Plaintiffs' counsel is, however, correct in one respect: Jackson Walker's dismissal motion did mistakenly state that Ms. Freeman did not bill "*or work*" on the GWG matter until November 2022.[44] The bolded phrase was an error. As the Response details and billing records

---

[39] Doc. No. 1603 at ¶¶ 33-35, Case No. 21-90054, *In re Strike, LLC, et al.* (Bankr. S.D. Tex.) .
[40] Doc. No. 1603 at ¶¶ 26, 27, Case No. 21-90054, *In re Strike, LLC, et al.* (Bankr. S.D. Tex.).
[41] *Id*.
[42] *Id*. at ¶¶ 39, 44–48.
[43] *Id*. at ¶ 37.
[44] Ms. Freeman's last day with Jackson Walker occurred November 30, 2022. Doc. No. 1602 at ¶ 62, Case No. 21-90054.

show, the lead Jackson Walker partner on the GWG matter did consult with Ms. Freeman at times about the GWG cases pending before Judge Isgur (and prior to former Judge Jones's appointment as a mediator), a case which Ms. Freeman was not otherwise prohibited or restricted from working. It is correct that Ms. Freeman did not bill on the GWG cases, however, until November 2022. Notwithstanding her lack of billing up until that time, Ms. Freeman did consult with her colleague at times. But this did not violate Jackson Walker's prohibitions placed upon her, or create an ethical conflict, as the matter was pending before Judge Isgur. Nor does such work contradict Jackson Walker's statements in past filings or equate to a "pattern of dishonesty."

25. Putting the name calling aside, however, the Response fails to save the Complaint from dismissal as it provides this Court with no path forward by which Plaintiffs can obtain standing (Article III or prudential) or meet Rule 12(b)'s pleading standards, among other issues. This mandates dismissal.

### III. CONCLUSION

26. When guided by the Complaint's prose, it is clear that every claim involves allegations of harm based on the alleged loss of value in Plaintiffs' L Bonds due to attorneys' fees awarded to Jackson Walker (and others) from the bankruptcy estate. Those are derivative harms for which Plaintiffs lack prudential and Article III standing. Additionally, the Complaint advances claims unrecognized by the Texas Supreme Court and claims for which Plaintiffs cannot establish proximate cause. Because of these flaws and the other legal issues raised in Jackson Walker's Motion to Dismiss, Jackson Walker respectfully requests that this Complaint be dismissed with prejudice.

Respectfully submitted,

| **NORTON ROSE FULBRIGHT US LLP** | **Rusty Hardin & Associates, LLP** |
|---|---|
| | /s/ Russell Hardin, Jr. |
| Jason L. Boland (SBT 24040542) | Russell Hardin, Jr. (SBT 08972800) |
| William R. Greendyke (SBT 08390450) | Leah M. Graham (SBT 24073454) |
| Julie Harrison (SBT 24092434) | Jennifer E. Brevorka (SBT 24082727) |
| Maria Mokrzycka (SBT 24119994) | Emily Smith (SBT 24083876) |
| 1550 Lamar, Suite 2000 | 5 Houston Center |
| Houston, Texas 77010 | 1401 McKinney, Suite 2250 |
| Telephone: (713) 651-5151 | Houston, Texas 77010 |
| Email: jason.boland@nortonrosefulbright.com | Telephone: (713) 652-9000 |
| Email:william.greendyke@nortonrosefulbright.com | Email: rhardin@rustyhardin.com |
| Email: julie.harrison@nortonrosefulbright.com | Email: lgraham@rustyhardin.com |
| Email: maria.mokrzycka@nortonrosefulbright.com | Email: jbrevorka@rustyhardin.com |
| | Email: esmith@rustyhardin.com |

-and-

*Co-Counsel for Jackson Walker LLP*

Paul Trahan (SBT 24003075)
Emily D. Wolf (SBT 24106595)
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201
Fax: (512) 536-4598
Email: paul.trahan@nortonrosefulbright.com
Email: emily.wolf@nortonrosefulbright.com

*Counsel for Jackson Walker LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing *via* electronic mail to all counsel of record.

       /s/ Russell Hardin, Jr.
       Russell Hardin, Jr.