**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Gary Peterson, Chris Nakashima, John English, Jaquetta English, LT-1 Exchange Trust, LT-2 Exchange Trust, LT-3 Exchange Trust, LT-4 Exchange Trust, LT-5 Exchange Trust, LT-6 Exchange Trust, LT-7 Exchange Trust, LT-8 Exchange Trust, LT-9 Exchange Trust, LT-12 Exchange Trust, LT-14 Exchange Trust, LT-15 Exchange Trust, LT-17 Exchange Trust, LT-18 Exchange Trust, LT-19 Exchange Trust, LT-20 Exchange Trust, on their own behalf and on behalf of all others similarly situated, | § § § § § § § § § § § § | |
| Plaintiffs, | § § | Civil Action No. 4:25-cv-02761 |
| v. | § § | |
| David R. Jones, Elizabeth Carol Freeman, The Law Office of Liz Freeman, PLLC, Jackson Walker, LLP, and Porter Hedges, LLP, | § § § § | |
| Defendants. | § § § § | |

**DEFENDANT PORTER HEDGES, LLP'S REPLY IN SUPPORT OF MOTION TO**
**DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND (6)**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ..................................................................................................... 4

    A.    Committee Counsel Does Not Owe Fiduciary Duties to Individual Creditors, Thus Plaintiffs Lack Standing and All Claims in the Complaint Against Porter Hedges Must be Dismissed............................................................. 4

        a.    The Bankruptcy Code, Collier on Bankruptcy, and modern precedent bely Plaintiffs' assertions that Porter Hedges owed any duty to them. ................................................................................... 4

        b.    Plaintiffs equally fail to establish prudential standing. ........................... 11

    B.    Plaintiffs Fail to Plead Causation or Detrimental Reliance, Requiring Dismissal of the Complaint Against Porter Hedges. ........................................... 12

    C.    Plaintiffs Fail to Allege Facts Sufficient to Impute Knowledge of the Jones-Freeman Relationship to Porter Hedges. ................................................... 13

    D.    Judicial Privilege And Attorney Immunity Apply Here To Protect The Administration of Justice, Requiring Dismissal of All Claims Against Porter Hedges. ..................................................................................................... 15

    E.    Plaintiffs' Additional Arguments in Support of Counts V and VI Lack Merit. .................................................................................................................. 18

        a.    Count V must be dismissed because Plaintiffs have not alleged that Porter Hedges actively participated in the alleged breach of fiduciary duty. ..................................................................................... 18

        b.    Count VI also fails because Porter Hedges had no duty to speak. ........... 19

    F.    Plaintiffs Fail to Plead Facts Sufficient to Avoid the Anti-Fracturing Rule. ....... 20

III.    CONCLUSION ................................................................................................ 22

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alpert v. Crain, Caton & James, P.C.*,
178 S.W.3d 398 (Tex. Ct. App. 2005) ............................................................. 15, 16

*Am. Guar. and Liab. Ins. Co. v. U.S. Fire Ins. Co.*,
255 F. Supp. 3d 677 (S.D. Tex. 2017) ................................................................ 14

*Artesanias Hacienda Real S.A. de C.V. v. North Mill Cap., LLC (In re Wilton Armetale, Inc.)*,
968 F.3d 273 (3d Cir. 2020) ................................................................................ 9

*Bird v. W.C.W.*,
868 S.W.2d 767 (Tex. 1994) .............................................................................. 18

*Border Demolition & Envtl., Inc. v. Pineda*,
535 S.W.3d 140 (Tex. App.—El Paso 2017, no pet.) .......................................... 20

*Boyd v. Boyd*,
67 S.W.3d 398 (Tex. Ct. App. 2002) .................................................................. 20

*Cantey Hanger, LLP v. Byrd*,
467 S.W.3d 477 (Tex. 2015) ..................................................................... 15, 16, 17

*Centennial Bank v. Holmes*,
717 F. Supp. 3d 542 (N.D. Tex. 2024) ............................................................... 19

*City of Galveston v. Shu*,
607 S.W.2d 942 (Tex. App.—Houston [1st Dist.] 1980, no writ) ......................... 14

*Collins v. Zolnier*,
2019 WL 2292333 (Tex. Ct. App. May 30, 2019) ............................................... 17

*Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*,
262 F.3d 96 (2d Cir. 2001) .................................................................................. 7

*DiStefano v. Stern (In re J.F.D. Enters., Inc.)*,
223 B.R. 610 (Bankr. D. Mass. 1998) ............................................................... 6, 7

*Encompass Holdings, Inc v. Daly*,
2011 U.S. Dist. LEXIS 82671 (N.D. Cal. July 28, 2011) ...................................... 6

*Fireman's Fund Indemnity Co. v. Boyle General Tire Co.*,
392 S.W.2d 352 (Tex. 1965) .............................................................................. 14

*Glueck v. Jonathan Logan, Inc.*,
653 F.2d 746 (2d Cir. 1981) ............................................................................... 8

*Griffin v. Rowden*,
702 S.W.2d 692 (Tex. Ct. App. 1985) ................................................................ 17

*In re Anderson*,
330 B.R. 180 (Bankr. S.D. Tex. 2005) ............................................................... 13

*In re Anthony*,
481 B.R. 602 (D. Neb. 2012) ............................................................................. 5

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Buffalo Coal Co.*,
    2008 Bankr. LEXIS 1259 (Bankr. N.D.W.Va. Apr. 30, 2008) ........................................... 6, 13

*In re Circle K Corp.*,
    199 B.R. 92 (Bankr. S.D.N.Y. 1996) ................................................................................. 7, 8

*In re D.H. Overmyer Telecasting Co., Inc.*,
    47 B.R. 823 (Bankr. N.D. Ohio 1985) ............................................................................... 4, 5

*In re Dunning Bros. Co.*,
    410 B.R. 877 (Bankr. E.D. Cal. 2009) ..................................................................................... 5

*In re EBP, Inc.*,
    171 B.R. 601 (Bankr. N.D. Ohio 1994) ............................................................................. 4, 5

*In re Gen. Homes Corp.*,
    181 B.R. 870 (Bankr. S.D. Tex. 1994) .............................................................................. 4, 5

*In re Greystone Holdings*, *L.L.C.*,
    305 B.R. 456 (Bankr. N.D. Ohio 2003) ................................................................................. 6

*In re Harbor Fin. Grp., Inc.*,
    303 B.R. 124 (Bankr. N.D. Tex. 2003) .............................................................................. 11

*In re JMP-Newcor Int'l, Inc.*,
    1998 WL 30674 (N.D. Ill. Jan. 23, 1998) ......................................................................... 4, 5

*In re Mesta Mach. Co.*,
    67 B.R. 151 (Bankr. W.D. Pa. 1986) ................................................................................ 4, 5

*In re Refco Inc.*,
    336 B.R. 187 (Bankr. S.D.N.Y. 2006) .................................................................................. 9

*In re Shannon*,
    100 B.R. 913 (S.D. Ohio 1989) ............................................................................................. 5

*In re Sonicblue Inc.*,
    2007 WL 926871 (Bankr. N.D. Cal. Mar. 26, 2007) ........................................................ 4, 5

*In re Universal Bldg. Prods.*,
    486 B.R. 650 (Bankr. D. Del. 2010) .................................................................................. 13

*Indus. Clearinghouse, Inc., et al. v. Jeffrey MIMS (In re Coastal Plains, Inc.)*,
    338 B.R. 703 (N.D. Tex. 2006) .......................................................................................... 11

*James v. Brown*,
    637 S.W.2d 914 (Tex. 1982) ............................................................................................... 17

*La Sara Grain Co. v. First Nat'l Bank of Mercedes*,
    673 S.W.2d 558 (Tex. 1984) ............................................................................................... 14

*Landry's Inc. v. Animal Legal Defense Fund*,
    631 S.W.3d 40 (Tex. 2021) ................................................................................................. 17

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Latham v. Castillo,*
  972 S.W.2d 66 (Tex. 1998) ................................................................... 21

*Laub v. Pesikoff,*
  979 S.W.2d 686 (Tex. Ct. App. 1998) ................................................... 17

*Marshall v. Kusch,*
  84 S.W.3d 781 (Tex. Ct. App. 2002) ..................................................... 19

*Matter of Celotex Corp.,*
  123 B.R. 917 (Bankr. M.D. Fla. 1991) ............................................... 4, 5

*Matter of Levy,*
  54 B.R. 805 (Bankr. S.D.N.Y. 1985) .................................................. 4, 5

*Mitchell v. Chapman,*
  10 S.W.3d 810 (Tex. Ct. App. 2000) ..................................................... 15

*North Star Hotels Corp. v. Mid-City Hotel Assocs.,*
  118 F.R.D. 109 (D. Minn. 1987) .............................................................. 8

*Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc.),*
  200 F.3d 382 (5th Cir. 2000) ................................................................. 11

*Pan Am Corp. v. Delta Air Lines, Inc.,*
  175 B.R. 438 (S.D.N.Y. 1994) ................................................................. 9

*Pitts v. Rivas,*
  709 S.W.3d 517 (Tex. 2025) .................................................................. 20

*PW Enters. v. N.D. Racing Comm'n (In re Racing Servs., Inc.),*
  540 F.3d 892 (8th Cir. 2008) ................................................................... 9

*Shell Oil Co. v. Witt,*
  464 S.W.3d 650 (Tex. 2015) .................................................................. 17

*Shultze v. Chandler,*
  765 F.3d 945 (9th Cir. 2014) ................................................................... 6

*Smart World Techs., LLC v. Juno Online Servs.(In re Smart World Techs.), LLC,*
  423 F.3d 166 (2d Cir. 2005) ................................................................... 9

*Smith v. Nat'l Resort Communities, Inc.,*
  585 S.W.2d 655 (Tex. 1979) .................................................................. 20

*Storms v. Tuck,*
  579 S.W.2d 447 (Tex. 1979) .................................................................. 20

*Straehla v. AL Global Servs., LLC,*
  619 S.W.3d 795 (Tex. Ct. App. 2020) ................................................... 18

*Tamburine v. Ctr. Sav. Ass'n,*
  583 S.W.2d 942 (Tex. App.—Tyler 1979, writ *ref'd n.r.e.*) ................... 15

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Tenn. Valley Steel Corp. v. B.T. Comm. Corp (In re Tenn. Valley Steel Corp.),*
  183 B.R. 795 (Bankr. E.D. Tenn. 1995) ................................................................ 7

*Terry v. Tex. Partners Bank (In re Chris Pettit & Assocs., P.C.),*
  670 B.R. 602 (Bankr. W.D. Tex. 2025) ........................................................... 18, 19

*Thomas v. N.A. Chase Manhattan Bank,*
  1 F.3d 320 (5th Cir. 1993) ............................................................................ 13, 15

*United States v. Cammarata,*
  145 F.4th 345 (3d Cir. 2025) ............................................................................... 9

*Van Deelen v. Jones,*
  2024 WL 3852349 (S.D. Tex. Aug. 16, 2024) ..................................................... 11

*West v. WRH Energy Partners, LLC, et al  (In re Noram Resources, Inc.),*
  2011 WL 6936361 (S.D. Tex. 2011) ................................................................... 11

*Wilkinson v. USAA Fed. Sav. Bank. Tr. Servs.,*
  2014 WL 3002400 (Tex. Ct. App. July 1, 2014) ................................................. 17

*Won Pak v. Harris,*
  313 S.W.3d 454 (Tex. App.—Dallas 2010, pet. denied) ...................................... 21

*Wooters v. Unitech Int'l, Inc.,*
  513 S.W.3d 754 (Tex. Ct. App. 2017) ................................................................ 18

**Statutes**

11 U.S.C. § 1103 ......................................................................................................... 4

11 U.S.C. § 1103(a) .............................................................................................. 15, 16

11 U.S.C. § 1103(b) ................................................................................................... 7

11 U.S.C. § 1109(b) ............................................................................................... 7, 9

11 U.S.C. § 303(a) .................................................................................................... 16

53 Tex. Civ. App. 481, 118 S.W. 848 (1909, no writ) .............................................. 14

**Rules**

Fed. R. Civ. P. 23(a)(4) .............................................................................................. 9

Fed. R. Bankr. P. 9024 ............................................................................................. 11

**Other Authorities**

1 Collier on Bankruptcy, *History of Collier on Bankruptcy* (Richard Levin & Henry J. Sommer
  eds., 16th ed.) .................................................................................................. 6

5 Collier on Bankruptcy ¶ 1103.01[3] (15th ed.) .................................................... 6

7 Collier on Bankruptcy ¶ 1103.03[7] (15th ed. rev. 1996) .............................. 6, 13

# I.  **INTRODUCTION**[1]

1.      Plaintiffs seldom mention Porter Hedges in the Complaint.  Indeed, Plaintiffs' claims against Porter Hedges stem solely from Porter Hedges' representation of a statutorily appointed committee of creditors that no Plaintiffs were members of in a single case before Bankruptcy Judge Isgur (not Judge Jones).  Yet Plaintiffs improperly double down on their misguided allegations against Porter Hedges through their Response.  Plaintiffs do so in an attempt to lump Porter Hedges in with Defendants Jackson Walker, Jones, and Ms. Freeman based on misguided arguments that Porter Hedges—whose sole, attenuated connection to Plaintiffs' claim is that Ms. Freeman's former husband is an attorney of the firm—had a duty to Plaintiffs to disclose the Jones-Freeman relationship when Plaintiffs have failed to sufficiently plead the existence of such duty or that any purported knowledge was imputed on the firm.  Plaintiffs' Response goes to great lengths to try and avoid dismissal under Rule 12 largely with accusations that Porter Hedges has misstated the facts and the law, and by repeating lengthy allegations against the other Defendants.  As set forth herein, and in Porter Hedges' Motion to Dismiss, both the facts and law cited by Porter Hedges necessitate dismissal.

2.      Plaintiffs lack standing to sue Porter Hedges and have failed to plead sufficient facts against Porter Hedges to survive dismissal.  The law is well settled that:  1)  Porter Hedges did not owe any duties to Plaintiffs; 2) any knowledge Ms. Freeman's ex-husband may have had about any relationship between Jones and Freeman unrelated to the scope of his authority cannot be imputed on the Porter Hedges bankruptcy lawyers who represented the Committee; 3) Plaintiffs cannot use their tort-based claims to collaterally attack Judge Isgur's order approving Porter

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Complaint or *Defendant Porter Hedges, LLP's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6)*, ECF No. 23 (the "Mot. to Dismiss"), as applicable.

Hedges' fees; and 4) Plaintiffs' claims are barred by attorney immunity, the judicial proceedings privilege, and the anti-fracturing rule.

3.     Plaintiffs have likewise failed to plead sufficient facts to survive the relevant pleading standard under Rule 12.  Plaintiffs have failed to allege any affirmative representation Porter Hedges made or establish that Porter Hedges caused any of Plaintiffs' alleged injuries. Tellingly, the "Statement of Facts Relevant to Claims Against Porter Hedges" Plaintiffs rely on in their Response only references Porter Hedges by name a mere 10 times, primarily concerning the fact that Porter Hedges represented the Bondholder Committee or that Ms. Freeman was married to a Porter Hedges attorney long before any of the events giving rise to their claims had occurred. Instead, the same fact background focuses on the alleged conspiracy between the other Defendants. Porter Hedges is not alleged to have participated in the alleged conspiracy nor do Plaintiffs allege Porter Hedges received any pecuniary gain beyond its fees from its alleged conduct.  Importantly, Porter Hedges was retained as Committee counsel prior to any involvement of Jones, the Bondholder Committee was disbanded by the same order that appointed Freeman as Wind Down Trustee, and Porter Hedges' disclosures regarding any potential conflicts ***that Porter Hedges may have had*** were truthful, accurate, and in compliance with the applicable bankruptcy rules.

4.     All of Plaintiffs' claims fail for the threshold reason that Porter Hedges, as counsel to the Bondholder Committee (the "Committee") and ***only*** the Committee, owed no duty to Plaintiffs.  This remains true despite Plaintiffs' attempts to confuse the Court with citations to a handful of decades-old bankruptcy court decisions that run contrary to the Bankruptcy Code's statutory text and the leading bankruptcy treatise's analysis of the duties that Committee counsel owe to the Committee—not the creditor body at large.  Because those decisions are plainly incorrect (and superseded by more recent authority), there can be no real dispute that Porter Hedges, in its capacity as former Bondholder Committee counsel, never owed any duty to

2

Plaintiffs. Even if it did, Plaintiffs' claims still fail in light of their failure to adequately plead causation and detrimental reliance. To be sure, *none* of the purported harms Plaintiffs suffered can be tied directly to Porter Hedges' alleged conduct or omissions in a manner sufficient to support the presence of any direct (as opposed to estate) claims. Thus, Plaintiffs lack standing to bring them, and the Complaint must be dismissed.

5.     The Complaint must also be dismissed for the simple reason that the judicial privilege and attorney immunity doctrine bar such claims. Where, as here, the defense applies to conduct attorneys engage in discharging their professional duties, Plaintiffs' claims against Porter Hedges cannot survive. Despite this, Plaintiffs couch their claims as ones sounding in "fraud" that are "not acts of lawyerly advocacy."[2] Yet, unlike the claims Plaintiffs bring against the other Defendants, Plaintiffs have not plead RICO, conspiracy, or other fraud-based conspiracy claims against Porter Hedges.

6.     There are other reasons why the Complaint fails to state a claim against Porter Hedges. These include, *inter alia*, Plaintiffs' failure to show that Porter Hedges owed any duty to speak or that Porter Hedges knowingly participated in any breach of duty. Instead, the sum of Plaintiffs' threadbare allegations against Porter Hedges is that a Porter Hedges partner Plaintiffs do not allege was involved in this bankruptcy knew about the Jones-Freeman relationship, and no Porter Hedges attorney actually involved in the bankruptcy informed Plaintiffs of the relationship. Those facts, even if accepted as true, hardly constitute allegations of deception or self-dealing that permit a claim for breach of fiduciary duty.

7.     What is more, the Complaint is conspicuously mum as to the connection between Murray Holland, the Exchange Trust Plaintiffs in this case, and their influence in GWG's

---

[2] *Plaintiffs' Response to Defendant Porter Hedges, LLP's Motion to Dismiss*, ECF No. 30 ("Response") at ¶ 62.

bankruptcy cases as part of LBM. As set forth in the Motion to Dismiss based on public filings in GWG's bankruptcy cases, LBM praised Judge Jones' efforts in connection with the GWG mediation and was a co-proponent of the GWG bankruptcy plan in exchange for releases that benefitted the Exchange Trust Plaintiffs. It is those same plaintiffs who were targets of the Bondholder Committee's standing motion and proposed complaint. Accordingly, the Exchange Trust Plaintiffs' motivation in targeting Porter Hedges is suspect.

8.    Because Plaintiffs lack standing to assert their claims against Porter Hedges and their claims are otherwise defective as a matter of law, the Complaint must be dismissed.

## II.    ARGUMENT

**A.    Committee Counsel Does Not Owe Fiduciary Duties to Individual Creditors, Thus Plaintiffs Lack Standing and All Claims in the Complaint Against Porter Hedges Must be Dismissed.**

### a. *The Bankruptcy Code, Collier on Bankruptcy, and modern precedent bely Plaintiffs' assertions that Porter Hedges owed any duty to them.*

9.    Plaintiffs' claims against Porter Hedges fail as a matter of law because despite the dated authorities Plaintiffs cite (which are flatly contradicted by the Bankruptcy Code, the leading bankruptcy treatise (Collier on Bankruptcy), and courts applying the prevailing view), Porter Hedges did not owe Plaintiffs fiduciary duties as counsel for the Committee.[3] Section 1103 of the Bankruptcy Code delineates the role of an official creditors' committee, not its professionals.[4] As set forth in the Motion to Dismiss, courts and authoritative commentary have made clear that professionals engaged under section 1103 represent the committee itself and not the creditor body

---

[3] *See* Response at ¶ 35 (citing *In re Gen. Homes Corp.*, 181 B.R. 870 (Bankr. S.D. Tex. 1994); *In re D.H. Overmyer Telecasting Co., Inc.*, 47 B.R. 823 (Bankr. N.D. Ohio 1985); *In re EBP, Inc.*, 171 B.R. 601 (Bankr. N.D. Ohio 1994); *In re JMP-Newcor Int'l, Inc.*, 1998 WL 30674 (N.D. Ill. Jan. 23, 1998); *Matter of Celotex Corp.*, 123 B.R. 917 (Bankr. M.D. Fla. 1991); *In re Mesta Mach. Co.*, 67 B.R. 151 (Bankr. W.D. Pa. 1986); *In re Sonicblue Inc.*, 2007 WL 926871 (Bankr. N.D. Cal. Mar. 26, 2007); *Matter of Levy*, 54 B.R. 805 (Bankr. S.D.N.Y. 1985)).

[4] *See* 11 U.S.C. § 1103.

at large or any individual creditor.[5]  While some courts have referred to committee counsel as owing fiduciary duties to individual creditors, those cases are wildly out of step with the modern precedent, as discussed below.[6]  Because Porter Hedges did not represent Plaintiffs, Plaintiffs lack standing and their claims must be dismissed.

10.    Indeed, Plaintiffs rely on *General Homes* among a few other much older bankruptcy court decisions in support of their conclusion that Porter Hedges owed them fiduciary duties as committee counsel.[7]  But *General Homes* is a 1994 bankruptcy court decision that plainly misinterprets and misapplies the law.[8]  The court in *General Homes* relied on a single section of the fifteenth edition of Collier on Bankruptcy, the leading bankruptcy law treatise,[9] to support its conclusion that the committee's counsel had "a fiduciary relation to all unsecured creditors, not just Committee members."[10]  That edition, in fact, states only that committee **members** "should function as fiduciaries representing the common interest of the class of creditors . . . represented

---

[5] Mot. to Dismiss at ¶ 38; *see also infra* at ¶¶ 12–15.

[6] *See infra* at ¶¶ 10–15.

[7] *See* Response at ¶ 35 (citing *In re Gen. Homes Corp.*, 181 B.R. 870 (Bankr. S.D. Tex. 1994); *In re D.H. Overmyer Telecasting Co., Inc.*, 47 B.R. 823 (Bankr. N.D. Ohio 1985); *In re EBP, Inc.*, 171 B.R. 601 (Bankr. N.D. Ohio 1994); *In re JMP-Newcor Int'l, Inc.*, 1998 WL 30674 (N.D. Ill. Jan. 23, 1998); *Matter of Celotex Corp.*, 123 B.R. 917 (Bankr. M.D. Fla. 1991); *In re Mesta Mach. Co.*, 67 B.R. 151 (Bankr. W.D. Pa. 1986); *In re Sonicblue Inc.*, 2007 WL 926871 (Bankr. N.D. Cal. Mar. 26, 2007); *Matter of Levy*, 54 B.R. 805 (Bankr. S.D.N.Y. 1985)).

[8] *Id.*

[9] While treatises are not law, Collier on Bankruptcy is widely viewed as a persuasive and authoritative guidance on bankruptcy practice.  Several courts have described Collier on Bankruptcy as the seminal, indispensable bankruptcy treatise and have cited it as persuasive authority.  *See In re Dunning Bros. Co.*, 410 B.R. 877, 881 (Bankr. E.D. Cal. 2009) ("The indispensable guide through the thicket of Bankruptcy Act, glosses, and rules is the Collier treatise's 14th edition. Its analysis and extensive case citations document the odysseys of various bankruptcy concepts and procedures over eighty years."); *In re Shannon*, 100 B.R. 913, 992–93 n. 46–47 (S.D. Ohio 1989) (citing Collier on Bankruptcy as "the seminal treatise" and "thoughtful, persuasive commentary"); *see also In re Anthony*, 481 B.R. 602, 619 (D. Neb. 2012) (referring to a different treatise on banking: "And while treatises are not 'law,' they are often helpful in explaining the law, even to experienced practitioners. Anthony herself relies upon secondary sources in support of other aspects of her argument. In particular, the treatise criticized by Anthony here is venerable and respected, and has been cited repeatedly in case law, including one of the cases upon which Anthony placed great (if mistaken) reliance.").

[10] *Off. Unsecured Creditors' Comm. of Gen. Homes Corp. v. Am. Sav. & Loan Assoc. of Fla. (In re Gen. Homes Corp.)*, 181 B.R. 870, 882 (Bankr. S.D. Tex. 1994) (citing 5 Collier on Bankruptcy ¶ 1103.01[3] (15th ed.)).

by their committee."[11]  It says ***nothing*** about the fiduciary duties of committee counsel.  Notably, the "Fifteenth Edition Revised" of Collier on Bankruptcy, published in 1996 to reflect "major legislative changes to the Bankruptcy Code in 1984, 1986 and 1994,"[12] clarified this position, stating:

> ***The professionals represent the committee itself and not the entire class represented by the committee***.  Some cases have alluded to the concept that a committee professional has a broader duty than simply a duty to the committee.  ***Such statements are misplaced***.  The committee itself represents the members of the class and the professionals follow the instructions of the committee.  The professionals should not be placed in a position whe[re] they are expected or encouraged to second guess the committee as to how best to further the interests of the committee's constituency."[13]

11.    This understanding has been endorsed repeatedly.  Decisions issued after the Fifteenth Edition Revised was published adopted this view,[14] and the sixteenth (and latest) Collier edition leaves that view unchanged.[15]  The Ninth Circuit has likewise embraced this view.[16]  This approach not only aligns with how similar matters are handled outside of bankruptcy where an

---

[11] 5 Collier on Bankruptcy ¶ 1103.01[3] (15th ed.) (emphasis added).  For the Court's convenience, excerpts of the chapter on 1103 from the fifteenth edition of Collier on Bankruptcy, August 1996 update is attached hereto as **Exhibit A**.

[12] 1 Collier on Bankruptcy, *History of Collier on Bankruptcy* (Richard Levin & Henry J. Sommer eds., 16th ed.) (emphases added).

[13] *DiStefano v. Stern (In re J.F.D. Enters., Inc.)*, 223 B.R. 610, 623–24 (Bankr. D. Mass. 1998) (quoting 7 Collier on Bankruptcy ¶ 1103.03[7] (15th ed. rev. 1996)) (holding that "only the committee itself and (perhaps) individual committee members have standing to sue committee counsel; other parties in the case, even unsecured creditors, do not.").

[14] *See, e.g.*, *id.*; *Encompass Holdings, Inc v. Daly*, 2011 U.S. Dist. LEXIS 82671, at *5–6 (N.D. Cal. July 28, 2011) ("I am persuaded that the view expressed in 7 Collier on Bankruptcy ¶ 1103.03[7] should apply . . . ."); *In re Buffalo Coal Co.*, 2008 Bankr. LEXIS 1259, at *13 (Bankr. N.D.W.Va. Apr. 30, 2008) ("It is axiomatic that representation of a committee is not the same as representing the individual members of that committee.") (citing 7 Collier on Bankruptcy P 1103,03 [7] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2008)); *In re Greystone Holdings, L.L.C.*, 305 B.R. 456, 460 (Bankr. N.D. Ohio 2003) ("Therefore, the professionals that a committee retains owe a fiduciary duty to the committee.").

[15] 7 Collier on Bankruptcy ¶ 1103.03[7] (16th ed.).

[16] *See Shultze v. Chandler*, 765 F.3d 945, 950 (9th Cir. 2014) (quoting 7 Collier on Bankruptcy 1103.03[7] (16th ed.)).

attorney generally only owes a fiduciary duty to and is liable to his or her client,[17] but also with the Bankruptcy Code itself.

12.    Bankruptcy Code section 1103(a) authorizes a statutory committee to retain counsel of its choosing, while section 1103(b) prohibits that counsel from representing any other entity with an adverse interest to the committee during counsel's retention by the committee.  At the same time, Congress made clear that counsel's representation of individual creditors within the committee's class does not *per se* create an adverse interest.[18]  That carve-out preserves the committee's ability to retain qualified counsel without transforming the professional's client from the committee into the entire class.[19]  The Bankruptcy Code also anticipates that committees and their counsel may take positions adverse even to other creditors within the same class.  For example, section 1109(b) confers qualified rights upon a creditors' committee to, in appropriate circumstances, sue creditors on behalf of the bankruptcy estate and object to and seek equitable subordination of creditors' claims.[20]  These features reinforce the point:  the committee is the client, and its professionals owe their duties to the committee, which acts for the class.[21]

13.    Consistent with the statutory framework of Bankruptcy Code section 1103 and contemporary case law discussed above, Porter Hedges owed fiduciary duties exclusively to the

---

[17] *J.F.D. Enters.*, 223 B.R. at 623–24.

[18] 11 U.S.C. § 1103(b).

[19] *See In re Circle K Corp.*, 199 B.R. 92, 100 (Bankr. S.D.N.Y. 1996) ("Neither the committee nor its lawyers could function if each constituent was a client.").

[20] *See* 11 U.S.C. § 1109(b) ("A . . . creditors' committee . . . may raise and may appear and be heard on any issue in a case under this chapter."); *Tenn. Valley Steel Corp. v. B.T. Comm. Corp (In re Tenn. Valley Steel Corp.)*, 183 B.R. 795, 809 (Bankr. E.D. Tenn. 1995) (finding that creditors' committee had a qualified right to bring suit to equitably subordinate creditors); *Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*, 262 F.3d 96, 100 (2d Cir. 2001) ("[W]e hold that a creditors' committee may sue on behalf of the debtors, with the approval and supervision of a bankruptcy court, not only where the debtor in possession unreasonably fails to bring suit on its claims, but also where the trustee or debtor in possession consents.").

[21] *See Circle K Corp.*, 199 B.R. at 99 ("The committee owes fiduciary duties to *the class* of creditors that it represents (*i.e.*, its constituency).").

Committee itself, not to the creditors. Even if Plaintiffs were considered "vicarious clients" through their membership in the class of creditors represented by the Committee, this status **_does not_** create an attorney-client relationship in the traditional sense, nor does it extend fiduciary duties from committee counsel to them.[22] "[M]ere status as a constituent did not make the [Plaintiffs] client[s]—in the traditional sense—of the [Committee]'s lawyers . . . ."[23] And in non-bankruptcy contexts, courts have allowed simultaneous representation of adverse interests "in situations where an adverse party is merely a 'vicarious client' by virtue of his membership in an organization which a law firm represents . . . ."[24] This principle pairs well with Section 1103(b)'s express allowance for counsel to represent both a committee and individual creditors. Congress anticipated and permitted some overlap between committee legal representation and individual creditor legal representation, and this overlap does not alter the basic structure of the relationship: the committee remains the client, and individual creditors do not, by virtue of their membership in the class, become clients of committee counsel. Plaintiffs have not shown that they ever became clients of the Committee's lawyers in the traditional sense, or that Porter Hedges owed them any fiduciary duties because of Porter Hedges' role as Committee counsel.

14.      Plaintiffs spend time trying to analogize between statutory creditors' committees and classes in a class action, but they fail to recognize substantial differences.[25] Put simply, the analogy Plaintiffs attempt to draw is fundamentally flawed. Members of a class in class action litigation lose their ability to bring claims against the defendant on their own behalf once a class

---

[22] *See id.* (citing *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746 (2d Cir. 1981)).  Nor does this give any merit to Plaintiffs' unnumbered count for respondeat superior due to, *inter alia*, Plaintiffs' failure to plead causation and that Plaintiffs were damaged as a result.  *See also* Mot. to Dismiss at ¶ 38; *infra* at n. 31.

[23] *See Circle K Corp.*, 199 B.R. at 99 (citing *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746 (2d Cir. 1981)).

[24] *North Star Hotels Corp. v. Mid-City Hotel Assocs.*, 118 F.R.D. 109, 112 (D. Minn. 1987).

[25] Response at ¶ 37.

8

is certified.[26]  They abdicate all rights to the class representatives and class counsel who then incur

fiduciary duties to the members of the class whose litigative rights they have assumed.[27]  Class

counsel's obligations to the class as a whole arise specifically under Rule 23(a)(4).[28]  Notably,

there is no equivalent for statutory committees under the Bankruptcy Code.  Unlike class members,

individual creditors in a bankruptcy case do not surrender their independent rights or remedies by

virtue of the committee's appointment.[29]  In the *GWG* case, the Exchange Trust Plaintiffs, through

L Bond Management ("LBM"), hired their own counsel and at times took positions at odds with

the Bondholder Committee, which further highlights the difference between a statutory bankruptcy

committee and a class action.  The committee serves as a representative body to advance the

collective interests of the creditor class, but its actions neither extinguish nor subsume the rights

of individual creditors nor do they bind individual creditors.[30]  In bankruptcy, the autonomy of

each creditor is preserved notwithstanding the appointment of a statutory committee, which is in

stark contrast to the binding and exclusive nature of class action representation.  As a result, the

fiduciary obligations and consequences that attach in the class action context simply do not apply

to statutory committees or their counsel in bankruptcy proceedings.

---

[26] *United States v. Cammarata*, 145 F.4th 345, 373 (3d Cir. 2025).

[27] *Id.*

[28] *See* Fed. R. Civ. P. 23(a)(4).

[29] *See* 11 U.S.C. § 1109(b); *Smart World Techs., LLC v. Juno Online Servs. (In re Smart World Techs.), LLC*, 423 F.3d 166,176 (2d Cir. 2005) (stating that "creditors have an implied, qualified right to bring suit on behalf of the estate under 11 U.S.C. §§ 1103(c)(5) and 1109(b)."); *PW Enters. v. N.D. Racing Comm'n (In re Racing Servs., Inc.)*, 540 F.3d 892, 899–900 (8th Cir. 2008) (holding that creditors can request derivative standing to bring avoidance actions); *Artesanias Hacienda Real S.A. de C.V. v. North Mill Cap., LLC (In re Wilton Armetale, Inc.)*, 968 F.3d 273, 282 (3d Cir. 2020) ("Individual creditors have the statutory authority to bring only personal claims.").

[30] *See In re Refco Inc.*, 336 B.R. 187, 195, 197 (Bankr. S.D.N.Y. 2006) ("'The function of an official creditors committee is to aid, assist and monitor the debtor to ensure that the unsecured creditors' views are heard and their interests promoted and protected.' . . . [A] committee's assent to a plan or a transaction does not bind its members, let alone its constituents") (quoting *Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 514 (S.D.N.Y. 1994)).

15.    Because Porter Hedges owed fiduciary duties only to the Committee itself and not to individual creditors or the creditor body at large, Plaintiffs' claims premised on the existence of such duties, which include all of the Counts that Plaintiffs bring against Porter Hedges (*i.e.*, Counts IV, V, VI, VII, IX and the unnumbered Count for respondeat superior) must be dismissed as a matter of law.[31]

### a.    *Plaintiffs lack Article III standing, and the Complaint must be dismissed.*

16.    As a result of Plaintiffs' failure to show that Porter Hedges owed them a duty, Plaintiffs' attempts to manufacture Article III standing through its Response and the Complaint must fail.  None of the so-called "particularized" injuries Plaintiffs rely upon change this result. Instead, the only purported injury Plaintiffs recite in their Response is that they suffered "economic harm and monetary loss," including "a loss of at least 96% of the value of their bonds."[32]  These types of alleged generalized injuries are woefully insufficient to establish that (i) Plaintiffs claims are non-estate claims (which, for the reasons stated in the Motion to Dismiss are not) and (ii) that Plaintiffs otherwise have Article III standing to assert them.  Because Plaintiffs' claims instead allege harm suffered by the GWG estate as a whole, Plaintiffs lack standing to assert them, and the Complaint must be dismissed.

17.    Further, Plaintiffs failed to object to Porter Hedges' fee application ***after*** the Jones-Freeman relationship became public in October 2023 when they could have properly raised such an objection.  Plaintiffs' argument that any objection to Porter Hedges' fee application would have

---

[31] Plaintiffs' responses in support of its unjust enrichment and respondeat superior claims are equally unavailing for the reasons that Porter Hedges owed no duty to Plaintiffs sufficient to plead those claims and/or recovery count.  *See* Response at ¶¶ 73–75.  Those claims also fail for all of the reasons Porter Hedges stated in its Motion to Dismiss and repeats here:  Plaintiffs have wholly failed to plead causation and damages in connection with any tort claim.  Thus, those claims must be dismissed.  *See* Mot. to Dismiss at ¶¶ 75–77.

[32] Response at ¶ 41; Compl. at ¶¶ 19, 278–80.

been untimely is incorrect,[33] and as stated in the Motion to Dismiss, irrelevant.  Once Judge Isgur

approved the fee application on March 4, 2024, claims became barred by *res judicata*.[34]  The only

mechanism that would allow Plaintiffs to seek relief from judgment or order would be an exception

under Rule 9024, none of which are applicable here.[35]  And even if Plaintiffs had pleaded newly

discovered evidence or other justifying circumstances, which they did not, the proper vehicle to

challenge Judge Isgur's order would be a motion for reconsideration.

### b. *Plaintiffs equally fail to establish prudential standing.*

18.    Plaintiffs' arguments in support of their assertion that they maintain prudential

standing to bring the Complaint also fall short.[36]  Even assuming the Court disagrees with guiding

principles of bankruptcy law and finds Porter Hedges owed a duty to Plaintiffs, it would not

transform Plaintiffs' alleged injuries from generalized ones that belong to the bankruptcy estate,

to particularized, direct ones.  This is true irrespective of whether the Court accepts Plaintiffs'

contentions that their bonds lost significant value by virtue of Porter Hedges' fee awards.[37]

Tellingly, Plaintiffs do not acknowledge nor respond to Porter Hedges' reference to the *Van Deelen*

suit where similar claims were dismissed by this Court, noting "prudential concerns would defeat

standing."[38]  Because Plaintiffs lack prudential standing, the Complaint must be dismissed.

---

[33] Response at ¶ 53.  Plaintiffs could have objected at the final fee application hearing if they felt prejudiced.  They did not.  *See* GWG Bankruptcy Cases, ECF No. 2342 (stipulation continuing hearing on final fee application to March 4, 2024 where "all rights of the Parties with respect to the Final Fee Application" were preserved).

[34] *See* Mot. to Dismiss at ¶ 44 n. 119 (citing *West v. WRH Energy Partners, LLC, et al. (In re Noram Resources, Inc.)*, 2011 WL 6936361 (S.D. Tex. 2011) (holding Sale Order had *res judicata* effect because parties previously had opportunity to litigate claims.)); *see also Indus. Clearinghouse, Inc., et al. v. Jeffrey MIMS (In re Coastal Plains, Inc.)*, 338 B.R. 703 (N.D. Tex. 2006) (applying *res judicata* to claims involving final fee application order); *Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc.)*, 200 F.3d 382 (5th Cir. 2000) (same).

[35] *See In re Harbor Fin. Grp., Inc.*, 303 B.R. 124, 132 (Bankr. N.D. Tex. 2003) (identifying exceptions and denying motion for reconsideration of claims under Fed. R. Bankr. P. 9024).

[36] Response at ¶ 44.

[37] Mot. to Dismiss at ¶ 46–49; Compl. at ¶¶ 20–23, 106, 109–10, 128, 139, 181, 214, 232, 253, 270, 302, *et al.*

[38] *Van Deelen v. Jones*, 2024 WL 3852349, at *8, n.17 (S.D. Tex. Aug. 16, 2024).

**B.    Plaintiffs Fail to Plead Causation or Detrimental Reliance, Requiring Dismissal of the Complaint Against Porter Hedges.**

19.    Plaintiffs' arguments regarding their failure to adequately plead causation and detrimental reliance against Porter Hedges do not cure or redress their deficiencies in the Complaint.[39] As Porter Hedges stated in its Motion to Dismiss, causation is an element common to all of the claims Plaintiffs bring against Porter Hedges, whereas Plaintiffs' factual allegations all hinge on Plaintiffs' purported reliance on Porter Hedges' statements or omissions in its bankruptcy disclosure filings.[40]

20.    Yet Plaintiffs' references to the Complaint in the Response on the issue of causation, once again, depend on certain other legal elements not present here. That is, Plaintiffs' factual allegations require the presence of a duty Porter Hedges owed to Plaintiffs or otherwise allege harm caused by GWG's bankruptcy filing itself or the actions of Ms. Freeman as Wind Down Trustee.[41] But as stated above and as addressed in its Motion to Dismiss, Porter Hedges owed no duty to Plaintiffs. Nor is the generalized harm Plaintiffs purportedly suffered a harm that is attributable to Porter Hedges' conduct as Committee counsel.[42]

21.    For similar reasons and the additional reasons set forth *infra,* Plaintiffs' arguments in support of the detrimental reliance theories also fail.[43] Porter Hedges was not Plaintiffs' counsel

---

[39] Response at ¶¶ 45–53.

[40] Mot. to Dismiss at ¶¶ 50, 55. Porter Hedges recognizes that detrimental reliance is not a technical element of a breach of fiduciary duty claim, however, Plaintiffs' breach of fiduciary duty claim, as pled in the Complaint, alleges reliance in Count IV. Compl. at ¶ 250.

[41] Response at ¶ 45.

[42] What is more, Plaintiffs gratuitously note that "[t]he Complaint does not plead misconduct by GWG, Heppner, or Holland . . ." but fails to acknowledge the publicly available fact that the Exchange Trust Plaintiffs are the same Seller Trusts controlled by Murray Holland and other GWG insiders. *See* Mot. to Dismiss at ¶¶ 5, 12, 13, 19.

[43] Response at ¶¶ 48–53.

and owed no duty to them.[44]  In light of this, Porter Hedges owed no duty to speak and in any event, had no duty to disclose the conflicts of others, *i.e.*, Defendants Jones, Jackson Walker, or Freeman.[45]  For these additional reasons, all of Plaintiffs' claims against Porter Hedges fail as a matter of law and must be dismissed.

### C.    Plaintiffs Fail to Allege Facts Sufficient to Impute Knowledge of the Jones-Freeman Relationship to Porter Hedges.

22.    Plaintiffs allege that Porter Hedges partner Nicholas Simms knew of the Jones-Freeman relationship and this knowledge should be imputed to Porter Hedges.[46]  But in Texas, imputation requires more than mere knowledge—at the very least, such knowledge must have some connection to the **scope of the agent's authority**.[47]

23.    ***Plaintiffs do not dispute this.***  Plaintiffs concede that "knowledge is imputed to Porter Hedges **as long as the knowledge relates to matters within the scope of Mr. Simms['] agency or employment.**"[48]  And Plaintiffs do not dispute the Complaint alleges nothing whatsoever concerning how Mr. Simms' alleged knowledge of the Jones-Freeman relationship "relates to matters within the scope of [his] agency or employment."[49]  These deficiencies alone warrant dismissal of Plaintiffs' claims for failure to allege facts sufficient to impute Simms' knowledge to Porter Hedges under what Plaintiffs concede is applicable Texas law.

---

[44] *See, e.g., In re Buffalo Coal Co.*, 2008 Bankr. LEXIS 1259, at *13 ("It is axiomatic that representation of a committee is not the same as representing the individual members of that committee.") (citing 7 Collier on Bankruptcy P 1103,03 [7] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2008)).

[45] *See In re Universal Bldg. Prods.*, 486 B.R. 650 (Bankr. D. Del. 2010) ("Section 1103 specifically provides only that committee counsel shall not hold or represent an interest adverse to the committee.").

[46] Compl. at ¶ 18.

[47] *See In re Anderson*, 330 B.R. 180, 187 (Bankr. S.D. Tex. 2005) (citing to *Thomas v. N.A. Chase Manhattan Bank*, 1 F.3d 320, 325 (5th Cir. 1993) (acknowledging that imputation is limited to "facts coming to [the agent's] knowledge with reference to the scope of the agency")).

[48] Response at ¶ 56 (emphasis added).

[49] *See* Response at ¶ 60.

24.     Additionally, Plaintiffs contend that while Texas imputation law also once required that the agent's knowledge be acquired while the agent was transacting the principal's business (the "*Taylor* rule"), subsequent authority discarded this requirement.[50]  In support, Plaintiffs cite *Fireman's Fund Indemnity Co. v. Boyle General Tire Co.*, where the Texas Supreme Court applied an exception to the *Taylor* rule abandoning any consideration of the "time, place, or manner" in which the agent acquires knowledge.[51]

25.     But *Fireman's Fund* never abrogates the *Taylor* rule.  Instead, it merely references an exception in the context of the facts of that case.[52]  This is confirmed by subsequent cases, in which, consistent with the *Taylor* rule, Texas courts continue to characterize the law of imputation as requiring that the "knowledge c[o]me to him in the course of the agent's employment."[53]

26.     Plaintiffs also rely on *Fireman's Fund* to disregard *Flynn v. Bank of Mineral Wells*, which held that "imputing knowledge of a copartner acquired in transactions outside of the partnership business" would be "an instrumentality of injustice."[54]  But the *Flynn* court did not rely on (or even cite) *Taylor* as the basis for its holding, and so to whatever extent *Fireman's Fund* modified the *Taylor* rule, it is not applicable to *Flynn*, which has never been overruled and is the only case Plaintiffs discuss that specifically concerns imputation of a partner's knowledge to the partnership.

---

[50] Response at ¶¶ 54–59.

[51] 392 S.W.2d 352, 356–57 (Tex. 1965).

[52] *See id.*

[53] *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 563 (Tex. 1984); *City of Galveston v. Shu*, 607 S.W.2d 942, 945 (Tex. App.—Houston [1st Dist.] 1980, no writ)  ("Before notice to an agent or representative will be imputed to his principal or superior, it must have come to him at a time when he was engaged in the business of his principal . . . .); *see also Am. Guar. and Liab. Ins. Co. v. U.S. Fire Ins. Co.*, 255 F. Supp. 3d 677, 692 (S.D. Tex. 2017) ("Knowledge is imputed to a corporation when the agent is acting in the scope of his or her authority and the knowledge relates to matters within the scope of that authority.").

[54] 53 Tex. Civ. App. 481, 485–86, 118 S.W. 848, 850–51 (1909, no writ) .

27.     In any case, even if Texas imputation law no longer requires that the agent's knowledge be acquired while conducting the principal's business, Texas law still requires that the **agent's knowledge at least relate to the scope of the agent's authority**—which, again, Plaintiffs concede.[55] Because Plaintiffs admittedly fail to plead any facts concerning either the scope of Mr. Simms' authority or the circumstances in which he allegedly learned of the Jones-Freeman relationship, such alleged knowledge cannot be imputed to Porter Hedges, and Plaintiffs' claims against Porter Hedges must all be dismissed.

### D.    Judicial Privilege And Attorney Immunity Apply Here To Protect The Administration of Justice, Requiring Dismissal of All Claims Against Porter Hedges.

28.     Despite Plaintiffs' assertions otherwise, the judicial proceedings privilege and the attorney immunity doctrine also bar Plaintiffs' claims against Porter Hedges.[56] The attorney-immunity defense applies to protect attorneys from third party suits for actions taken in connection with representing a client in litigation.[57] Plaintiffs were not Porter Hedges' clients; only the Committee was and Plaintiffs were not members of the Committee.[58] The purpose of the defense is "to ensure 'loyal, faithful, and aggressive representation by attorneys employed as advocates.'"[59] To that end, "[a]n attorney is given latitude to 'pursue legal rights that he deems necessary and

---

[55] Response at ¶ 56; *see Thomas*, 1 F.3d at 325; *Tamburine v. Ctr. Sav. Ass'n*, 583 S.W.2d 942, 949 (Tex. App.—Tyler 1979, writ *ref'd n.r.e.*) ("Before notice or knowledge of an agent is imputed to his principal it must first be shown that the authority of such agent extended to the very matter about which and concerning which such knowledge or notice was acquired.").

[56] *See* Response at ¶¶ 61–65; Mot. to Dismiss at ¶¶ 66–68.

[57] *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) ("[T]here is consensus among the courts of appeals that, as a general rule, attorneys are immune from civil liability to non-clients 'for actions taken in connection with representing a client in litigation.'") (quoting *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. Ct. App. 2005)).

[58] Mot. to Dismiss at ¶¶ 4–5; *see* 11 U.S.C. § 1103(a) ("At a scheduled meeting of a committee appointed under section 1102 of this title, at which a majority of the members of such committee are present, and with the court's approval, such *committee* may select and authorize the employment *by such committee* of one or more attorneys, accountants, or other agents, to represent or perform services *for such committee*.").

[59] *Cantey Hanger*, 467 S.W.3d at 481 (quoting *Mitchell v. Chapman*, 10 S.W.3d 810, 812 (Tex. Ct. App. 2000)).

proper' precisely to avoid the inevitable conflict that would arise if he were 'forced constantly to balance his own potential exposure against his client's best interest.'"[60]  As Plaintiffs point out, the defense applies to conduct attorneys engage in when discharging their professional duties, but Plaintiffs have failed to assert how the disclosures made by Porter Hedges and fees earned in the GWG bankruptcy were not the kind of conduct required by Porter Hedges as counsel to the Committee, or how the fees were improper.[61]  The Bankruptcy Code authorizes the Committee to select and retain counsel with the bankruptcy court's approval; here, Porter Hedges' retention application was fully within its duties as Committee counsel to obtain the requisite court approval for its employment.[62]  And to be compensated by the bankruptcy estate for its work, Porter Hedges was required to submit fee applications to the bankruptcy court for approval, which it did.[63]  Filing retention applications and fee applications are unquestionably the kind of conduct made to facilitate legal services to Porter Hedges' client, the Committee.[64]  If Plaintiffs truly believed that Porter Hedges had any knowledge of Judge Jones and Liz Freeman's relationship during the GWG bankruptcy, the Plaintiffs had "other mechanisms . . . to . . . remedy such conduct, such as [seeking] sanctions, contempt, and attorney disciplinary proceedings" and objecting to Porter Hedges' final fee application (which was heard and approved by the bankruptcy court without objection from any party well after Judge Jones and Liz Freeman's relationship came to light).[65]  They did nothing.

---

[60] *Id.* at 483 (quoting *Alpert*, 178 S.W.3d at 405).

[61] Mot. to Dismiss at ¶¶ 52–54; Response at ¶¶ 61–65.

[62] *See* 11 U.S.C. § 1103(a) ("At a scheduled meeting of a committee appointed under section 1102 of this title, at which a majority of the members of such committee are present, and *with the court's approval*, such committee may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee.").

[63] 11 U.S.C. § 303(a).

[64] *See Alpert*, 178 S.W.3d at 408 ("[T]he complained-of actions involve the filing of lawsuits and pleadings, the providing of legal advice upon which the client acted, and awareness of settlement negotiations—in sum, acts taken and communications made to facilitate the rendition of legal services to [the client.]").

[65] *Cantey Hanger*, 467 S.W.3d at 483; Mot. to Dismiss at ¶ 27.

Rather, Plaintiffs seek to justify their failure in objecting to Porter Hedges' final fee application based on their misguided understanding that such objection would be untimely, despite acknowledging that the final fee application hearing was not held until March 2024—***more than six months*** after Porter Hedges' final fee application was filed, and ***months*** after the Jones-Freeman relationship became public.[66]  This improper end-run-around of Judge Isgur's final order allowing for Porter Hedges' fees cannot stand and certainly is not a basis for bringing a stand-alone civil action rather than seeking reconsideration under Rule 60 in Judge Isgur's court.[67]

29.     Plaintiffs next attempt to limit the judicial privilege to only libel and slander claims.[68]  They are wrong.  Texas courts have extended the judicial privilege to tort claims other than libel and slander, including medical negligence, fraud, tortious interference, and breach of fiduciary duty.[69]  In so doing, the courts have acknowledged that the purpose of the privilege is "to ensure '[t]he proper administration of justice' through 'full and free disclosure of information . . . by participants in judicial proceedings.'"[70]  This policy is furthered by finding the

---

[66] Response at ¶ 53.

[67] As stated in the Motion to Dismiss, Plaintiffs lack any basis under Rule 60 to challenge the order approving Porter Hedges' fees given the hearing was held in March 2024.  *See* Mot. to Dismiss at ¶¶ 6, 27, 44, 55.

[68] Response at ¶ 64.

[69] *See e.g.*, *Landry's Inc. v. Animal Legal Defense Fund*, 631 S.W.3d 40, 46 (Tex. 2021) ("Although commonly applied in defamation cases, the privilege prohibits 'any tort litigation based on the content of the communication' at issue." (quoting *Collins v. Zolnier*, 2019 WL 2292333, at *3 (Tex. Ct. App. May 30, 2019)); *Wilkinson v. USAA Fed. Sav. Bank. Tr. Servs.*, 2014 WL 3002400, at *7–8 (Tex. Ct. App. July 1, 2014) ("Further, the evidence indicates that all of Wilkinson's tort claims and damages essentially flow from her allegation that USAA and WKHB through their participation and false statements in the underlying case prevented Wilkinson from recovering her alleged interest in the underlying judgment. . . . Because the essence of each of Wilkinson's claims for defamation, fraud, and breach of fiduciary duty is that she suffered injury as a result of USAA's and WKHB's communication of allegedly false statements during a judicial proceeding, we conclude that the absolute privilege bars all of her tort claims.") (citing *Laub v. Pesikoff*, 979 S.W.2d 686, 691 (Tex. Ct. App. 1998)); *Griffin v. Rowden*, 702 S.W.2d 692, 694–95 (Tex. Ct. App. 1985).

[70] *Shell Oil Co. v. Witt*, 464 S.W.3d 650, 654 (Tex. 2015) (quoting *James v. Brown*, 637 S.W.2d 914, 916–17 (Tex. 1982)); *accord Laub*, 979 S.W.2d at 691 ("[T]o avoid the circumvention of the policy behind the privilege, the privilege should be extended beyond defamation when the essence of a claim is damages that flow from communications made in the course of a judicial proceeding.") (citing *Bird v. W.C.W.*, 868 S.W.2d 767, 771 (Tex. 1994)).

judicial privilege applies here.  Committee counsel in a bankruptcy proceeding should not need to weigh advocating for the Committee's interests in a bankruptcy case with the risk that its factual statements before the bankruptcy court will be used against them by disgruntled creditors.  Without this immunity, the primary goals of the Bankruptcy Code—to maximize the value of the estate for the benefit of creditors and equality of treatment of creditors—will be irreparably harmed.  Thus, the judicial privilege applies to bar the Plaintiffs' tort claims against Porter Hedges.  Accordingly, Counts IV, V, VI, VII, IX and the unnumbered Count for respondeat superior, must be dismissed.

### E.   Plaintiffs' Additional Arguments in Support of Counts V and VI Lack Merit.

#### a.   Count V must be dismissed because Plaintiffs have not alleged that Porter Hedges actively participated in the alleged breach of fiduciary duty.

30.    Despite the fact that Porter Hedges owed no duty to Plaintiffs and judicial privilege and the attorney immunity doctrine otherwise bar Plaintiffs' claims, Plaintiffs contend their aiding and abetting breach of fiduciary duty claim survives as one for "knowing participation."[71]  But even assuming, *arguendo*, that Plaintiffs properly assert a claim for "knowing participation" rather than "aiding and abetting," knowing participation requires that the defendant "knowingly participated" in the alleged breach.[72]  "Knowing means *knowing*."[73]  Thus, Plaintiffs must prove that Porter Hedges took part in the actions which constituted a breach of fiduciary duty.[74]  They have not.  It is insufficient for Plaintiffs to allege that Porter Hedges knew of the Jones-Freeman relationship and that the other Defendants had fiduciary duties; instead, Plaintiffs must establish

---

[71] Response at ¶¶ 67, 75.

[72] *Straehla v. AL Global Servs., LLC*, 619 S.W.3d 795, 804 (Tex. Ct. App. 2020).

[73] *Terry v. Tex. Partners Bank (In re Chris Pettit & Assocs., P.C.)*, 670 B.R. 602, 628 (Bankr. W.D. Tex. 2025).

[74] *See Straehla*, 619 S.W.3d at 810–11 (finding knowing participation where the defendants had substantial and direct communications with wrongdoer, disregarding company procedures and warnings from other executives, and acting under circumstances suggesting improper motives—including threats and personal relationships); *see cf. Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 763–64 (Tex. Ct. App. 2017) (applying "knowing participation" element of conspiracy to breach fiduciary duties and finding that the evidence did not establish that the defendant had participated in the wrongdoer's theft of trade secrets or solicitation and did not have knowledge of the plaintiff's actions).

that Porter Hedges knowingly permitted or specifically aided in the breach of fiduciary duties.[75]

"After all, a knowing-participation claim is premised on the defendant's 'contribution to a breach of fiduciary duty' and 'must involve the knowing participation in such a breach.'"[76]  And a defendant's own alleged breach is not sufficient to establish a defendant's participation in another defendant's breach.[77]  Plaintiffs fail to allege that Porter Hedges aided in the other Defendants' alleged breaches of fiduciary duty.  This failure is highlighted by the fact that Plaintiffs allege a conspiracy between Jones, Freeman, and Jackson Walker, but make no allegations that Porter Hedges was part of the alleged scheme.  Thus, Count V for aiding and abetting breach of fiduciary duty against Porter Hedges must be dismissed.

### b.  Count VI also fails because Porter Hedges had no duty to speak.

31.    In directing this Court to Texas authorities providing that an omission may constitute misstatement of fact to support a negligent misrepresentation claim, Plaintiffs once again misstate their relationship to Porter Hedges and obfuscate the gating issues.[78]  If there is no duty to speak, an omission does not give rise to a claim for negligent misrepresentation.[79]  Porter Hedges had no duty to speak with respect to the Plaintiffs.  As discussed *supra* and in the Motion to

---

[75] *Chris Petitt & Assocs.*, 670 B.R. at 628 ("Trustee has not offered anything but conclusory assertions to show that Defendant had knowledge of Pettit's scheme. Merely alleging that Defendant 'should have known' based on 'red flags' that Pettit was operating a scheme does not establish that Defendant knowingly permitted Pettit to engage in suspicious transactions."); *Centennial Bank v. Holmes*, 717 F. Supp. 3d 542, 573 (N.D. Tex. 2024) ("Centennial's allegations are distinguishable from the standard knowing-participation case where a defendant takes a specific action that aids the breach itself.").

[76] *Centennial Bank*, 717 F. Supp. 3d at 574.

[77] *Id.* at 574 ("While these allegations are sufficient to state a claim that these defendants breached their own fiduciary duties, they do not allow the court to reasonably infer that these defendants' actions contributed to another's breach as required to survive a motion to dismiss for a knowing-participation claim.").

[78] Response at ¶¶ 71–72.

[79] *See Marshall v. Kusch*, 84 S.W.3d 781, 786 (Tex. Ct. App. 2002) ("As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information"); *see also Smith v. Nat'l Resort Communities, Inc.*, 585 S.W.2d 655, 658 (Tex. 1979) ("[I]n the absence of a duty of disclosure, a purchaser is entitled to rescind the transaction if an undisclosed fact is basic and one which the seller knows his purchaser would regard as material. A corollary principle is that where there is a duty to speak, silence may be as misleading as a positive misrepresentation of existing facts"); Mot. to Dismiss at ¶ 74.

Dismiss, Porter Hedges owed no fiduciary duties to Plaintiffs, did not have an attorney-client relationship with the Plaintiffs, and did not have any duty to disclose other parties' conflicts.[80] Plaintiffs do not allege that anyone from Porter Hedges who represented the Bondholder Committee knew of any relationship between Judge Jones and Freeman, and—as discussed *infra*—any knowledge of Mr. Simms cannot be imputed on Porter Hedges.[81]  Because Porter Hedges had no duty to speak or disclose information it did not have to parties with whom it did not have a fiduciary relationship, Count VI must be dismissed.

### F.   Plaintiffs Fail to Plead Facts Sufficient to Avoid the Anti-Fracturing Rule.

32.   Under the Texas anti-fracturing rule, "if the crux or gravamen of the plaintiff's claim is a complaint about the quality of professional services provided by the defendant, then the claim will be treated as one for professional negligence even if the petition also attempts to repackage the allegations under the banner of additional claims."[82]  Plaintiffs do not dispute that the "crux or gravamen" of their claims is that Porter Hedges "fail[ed] to inform the Court, the Bondholder Committee, and bondholders, including Plaintiffs, that . . . Freeman was involved in an intimate relationship with Jones."[83]  Under Texas law, an attorney's failure "to inform the client of all material facts in a case" sounds in professional negligence.[84]  Accordingly, because the "crux or gravamen" of Plaintiffs' claims sounds in professional negligence, the Court should dismiss all Plaintiffs' other claims against Porter Hedges.

---

[80] Mot. to Dismiss at ¶¶ 4–5, 54; *Boyd v. Boyd*, 67 S.W.3d 398, 405 (Tex. Ct. App. 2002) ("A duty to speak arises from a fiduciary or confidential relationship or where a person is, 'by force of circumstances,' under a duty to speak.").

[81] *Storms v. Tuck*, 579 S.W.2d 447, 452 (Tex. 1979) ("The duty to speak does not arise until the silent party is himself aware of the facts.").

[82] *Pitts v. Rivas*, 709 S.W.3d 517, 524 (Tex. 2025).

[83] Compl. at ¶ 277a; *see also id.* at 276, 277b-e.

[84] *Border Demolition & Envtl., Inc. v. Pineda*, 535 S.W.3d 140, 160 (Tex. App.—El Paso 2017, no pet.).

33.     Plaintiffs attempt to avoid this logic on the grounds that Texas law "does not bar parallel claims grounded in deception or other form of ***fraudulent intent***."[85]   Plaintiffs breezily contend the Complaint alleges "voluminous facts" that Porter Hedges "engaged in deceptive and fraudulent conduct," but the only example given is that "Porter Hedges affirmatively misrepresented that it did not know of any disqualifying conflicts."[86]   The Complaint never alleges that this alleged misrepresentation was intentional or knowing, or even that it involved something more than negligence.[87]   In fact, the Complaint never alleges anything specific about Porter Hedges' intent at all, whether "fraudulent" or otherwise.

34.     The only specific claim Plaintiffs attempt to shield from the anti-fracturing rule is breach of fiduciary duty.[88]   Plaintiffs rightly observe that a fiduciary duty claim avoiding the anti-fracturing rule "focuses on whether the attorney obtained an improper benefit from representing the client."[89]   But the only "improper benefit" Plaintiffs allege Porter Hedges obtained is "ensuring non-opposition to the award of its fees" for serving as co-counsel for the Bondholder Committee.[90]   Under Texas law, an allegation that an attorney favored his or her interest in fees at the expense of the client "is insufficient to allege the type of dishonesty or intentional deception necessary to convert a negligence claim into one for breach of fiduciary duty."[91]

35.     The sum of Plaintiffs' allegations against Porter Hedges is that a Porter Hedges partner Plaintiffs do not allege was involved in this bankruptcy knew about the Jones-Freeman

---

[85] Response at ¶ 76 (emphasis added).

[86] *Id.* at ¶ 80.

[87] *See Latham v. Castillo*, 972 S.W.2d 66, 69 (Tex. 1998) (There is a "difference between negligent conduct and deceptive conduct.").

[88] Response at ¶¶ 78–79.

[89] *Id.* at ¶ 79.

[90] Compl. at ¶ 294.

[91] *Won Pak v. Harris*, 313 S.W.3d 454, 458 (Tex. App.—Dallas 2010, pet. denied).

relationship, and no Porter Hedges attorney actually involved in the bankruptcy informed Plaintiffs of the relationship.  This hardly constitutes an allegation of deception or self-dealing sufficient to justify a separate claim for breach of fiduciary duty.  Accordingly, if the Court determines Plaintiffs have adequately pled a legal malpractice claim, the Court should dismiss all Plaintiffs' other claims against Porter Hedges.

### III.    <u>CONCLUSION</u>

For these reasons, Defendant Porter Hedges, LLP respectfully requests that this Court (i) overrule Plaintiffs' Response and (ii) grant the Motion to Dismiss and dismiss the Plaintiffs' claims with prejudice.

*[Remainder of Page Intentionally Left Blank]*

Dated:  October 16, 2025
        Dallas, Texas

Respectfully submitted,

**O'MELVENY & MYERS, LLP**

By: */s/ Scott P. Drake*

Scott P. Drake (SBT 24026812)
Louis R. Strubeck, Jr. (SBT 19425600)
2801 North Harwood Street
Suite 1600
Dallas, Texas 75201-2692
Telephone: (972) 360-1900
Email: sdrake@omm.com
Email: lstrubeckjr@omm.com

Anna C. Cosby (admitted *pro hac vice*)
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
Telephone: (212) 326-2000
Email: acosby@omm.com

**SCOTT DOUGLASS & McCONNICO LLP**
303 Colorado Street, Suite 2400
Austin, Texas 78701
512.495.6300
512.495.6399

Stephen E. McConnico
State Bar No. 13450300
smcconnico@scottdoug.com
Bryan D. Lauer
State Bar No. 24068274
blauer@scottdough.com

*Counsel for Porter Hedges, LLP*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and accurate copy of the foregoing pleading, was served this 16th day of October, 2025 via the Court's ECF system upon all counsel of record that are registered ECF users.

                                   */s/ Scott P. Drake*
                                   Scott P. Drake