IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Gary Peterson, Chris Nakashima, John English, Jaquetta English, LT-1 Exchange Trust, LT-2 Exchange Trust, LT-3 Exchange Trust, LT-4 Exchange Trust, LT-5 Exchange Trust, LT-6 Exchange Trust, LT-7 Exchange Trust, LT-8 Exchange Trust, LT-9 Exchange Trust, LT-12 Exchange Trust, LT-14 Exchange Trust, LT-15 Exchange Trust, LT-17 Exchange Trust, LT-18 Exchange Trust, LT-19 Exchange Trust, LT-20 Exchange Trust, on their own behalf and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> David R. Jones, Elizabeth Carol Freeman, The Law Office of Liz Freeman, PLLC, Jackson Walker, LLP, and Porter Hedges, LLP, <br><br> Defendants. | Civil Action No. 4:25-cv-02761 |

**DEFENDANT DAVID R. JONES'**
**REPLY IN SUPPORT OF HIS MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................4

    I.    Judicial Immunity Applies Because the Alleged Harm Was Caused By Judicial Acts. ................................................................................................4

        A.    Plaintiffs' Focus on Recusal-Related Determinations Is a Red Herring Because Non-Recusal Could Not Cause Harm Independent of the Mediation. ...............................................................4

        B.    Recusal-Related Decisions Are Judicial Acts. ...........................................7

    II.    Judicial Immunity Applies Because Bankruptcy Mediators Have Subject Matter Jurisdiction Over Bankruptcy Mediations. ....................................................11

        A.    Plaintiffs' Focus on Jurisdiction to Enter Orders Is a Red Herring Argument Explicitly Foreclosed by Supreme Court Precedent. ...............11

        B.    Regardless, the Caselaw Is Clear that Recusal Violations Do Not Automatically Divest a Court of Jurisdiction in Any Sense. .....................12

    III.    The Supreme Court Has Explicitly Rejected the Argument that Due-Process Violations Are a Reason to Abrogate Judicial Immunity. ......................................14

    IV.    Plaintiffs Are Interestholders, and Their Claims Would Be Just As Derivative Even If They Were Creditors. ................................................................16

    V.    Plaintiffs Have Not Alleged a Plausible Theory of Causation. ............................17

    VI.    The Court Should Deny Plaintiff's Request For Leave to Amend the Complaint ..............................................................................................................19

## INTRODUCTION

1.    Plaintiffs' allegations of a wide-ranging conspiracy for Jones to enrich himself and alleged co-conspirators in a racketeering scheme by causing a chain of events that would have included directing fellow judges to approve a change in procedures for complex bankruptcies, rigging the entire case assignment system so he could pick the cases he received, causing himself to be appointed by Judge Isgur as a mediator in the GWG bankruptcy, directing mediation participants and their counsel to agree to terms against their interest, forcing them to submit a plan to Judge Isgur for approval, and orchestrating widespread support from the sophisticated parties and their bankruptcy counsel are, at best, a deliberate ignorance of actual events and common sense.

2.    Jones' motion to dismiss was solely about judicial immunity. But Plaintiffs' Response fails to address or even mention the Fifth Circuit's dispositive precedent in *Holloway v. Walker*, 765 F.2d 517, 522–25 (5th Cir. 1985), which explicitly rejected Plaintiffs' central argument. The law in the Fifth Circuit is clear: Plaintiffs cannot sue Jones for harm actualized by judicial acts, regardless of Plaintiffs' allegation that Jones' failure to disclose a romantic relationship was a non-judicial act. Moreover, even if the issue were, as Plaintiffs claim, whether non-judicial acts were involved, their argument would still fail. Courts have uniformly held that recusal and related disclosure decisions are judicial acts. Therefore, judicial or quasi-judicial immunity applies. Mot. ¶¶ 25–28.

3.    Plaintiffs also spend much of their response arguing that a failure to recuse under § 455(b) deprives a judge of immunity because it renders any further involvement ultra vires. But ever since *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335 (1871) was decided over 150 years ago, numerous cases from the Supreme Court and the Fifth Circuit have held that it is immaterial whether a judge had actual jurisdiction to perform the specific acts claimed to be tortious or

unlawful; all that matters is whether the subject matter jurisdiction of the court or mediator generally covers the type of case in question. Mot. ¶¶ 34–37. Plaintiffs nowhere acknowledge or attempt to distinguish *Bradley* or its progeny. Instead, they effectively ask the Court to ignore precedent in a single paragraph without any legal citation at all, then spend the rest of their jurisdiction argument ignoring binding caselaw that holds 28 U.S.C. § 455(b) is *not* jurisdictional and recusal violations do *not* automatically void orders.

4.      Throughout their response, Plaintiffs imply the need for judicial immunity does not exist here, because the actions that allegedly "corrupted the bankruptcy process" were "acknowledged" by Jones. Resp. ¶ 65. They theorize that forcing Jones to defend the litigation in discovery is not inconsistent with protecting other judges from the risk of being unjustly sued by disappointed litigants. This argument is fundamentally wrong and should be rejected for two reasons.

5.      ***First***, binding caselaw does not allow consideration of whether a plaintiff's civil claims of judicial misconduct are substantiated, partly substantiated, or unsubstantiated, or how egregious the allegations are. On a motion to dismiss, all factual allegations in the complaint must be accepted as true—whether they are asserted by a serial pro se litigant, or a sophisticated corporation represented by counsel. The judicial immunity analysis does not turn on whether or not the Court believes the allegations can be substantiated.

6.      ***Second***, far from alleging "acknowledged" or substantiated misconduct, the Plaintiffs' complaint simply illustrates the ease with which, absent judicial immunity, a litigant could force a judge into protracted litigation and discovery merely by preparing a complaint full of speculative, unfounded, or demonstrably false allegations about a judge's motives and actions. Other than Jones' non-disclosure of a romantic relationship—for which Jones has already paid

severe and ongoing consequences—Plaintiffs' theory of corruption and racketeering is based on misstating and exaggerating facts about how Jones was appointed as mediator, what occurred during mediation, who had owned or received interests in properties or financial assets, his role in the outcome of the bankruptcy, the timeline of events, and other issues.[1]

7.    In short, as it relates to the application of judicial immunity, this case is not unique. It is a case of a litigant imputing malicious motives on a judge based almost entirely on speculation and allegations not rooted in facts. Even accepting all of Plaintiffs' pleadings, they still fail to overcome judicial immunity, and run headlong into binding and unanimous nationwide authority that Plaintiffs fail to address. Every court to explicitly address the issue of recusal violations (including the Fifth Circuit) has held they do not abrogate judicial immunity because they are

---

[1] Although Rule 12(b)(6) prevents a defendant from defeating a complaint by disproving the accuracy of its factual allegations, here Plaintiffs have grossly misstated the record to support their argument that "[t]his is a unique case where Plaintiffs do not need to speculate about wrongdoing by Jones." For example, Plaintiffs claim Jones effectuated his alleged scheme by "directing all complex cases be assigned to either himself or his mentor and friend, Judge Marvin Isgur." But Jones did not direct this. He proposed a procedure that the entire Court had to independently consider and vote on, as reflected in court records. *See* General Order 2018-1 Regarding Complex Case Assignments (S.D. Tex. Jan. 29, 2018), https://www.txs.uscourts.gov/sites/txs/files/Order%20re%20Complex%20Case%20Assignments. pdf. Plaintiffs also fail to address the fact that cases were randomly assigned by the clerk's office. *See* Mot. ¶¶ 1, 32 n.7. Plaintiffs also assert that Jones participated in racketeering by "threatening the parties at mediation that Judge Isgur would accept only his recommendation regardless of what the parties wanted." Resp. 34. In fact, counsel for LBM (Plaintiffs' proxy at the mediation) stated in open court they were thankful for Judge Jones for his "hard work …[and] not giving up on us" even "after a lot of pushing back and forth" between the parties under his supervision. Bankruptcy Docket No. 2010 at 44:23–46:15. Likewise, Plaintiffs assert mediation lasted only four hours when, in fact, it occurred over multiple full days. *See* n. 15, *infra*. Plaintiffs also assert that Jones selected Freeman as the trustee of the Wind-Down Trust. The Bondholder's Committee selected Freeman, and LBM approved the choice. Plaintiffs also assert that "[i]n 2016, Jones purchased a house on Ridge Lane in Coldspring, Texas, where Freeman had lived from 2007 until she relocated to Jones's residence." In fact, relevant deed records demonstrate that Freeman has never had any interest in the Ridge Lane property. Likewise, the new allegations that Freeman's parents live in the property are specious. As Counsel has noted in a prior lawsuit, Freeman's parents live in a separate property about a mile away—a property in which Jones has never had any interest.

judicial acts and do not implicate a court's subject matter jurisdiction. Mot. ¶¶ 31, 33, 38. Plaintiffs fail to address these cases too.[2] Jones' motion to dismiss should be granted, and the claims against him dismissed with prejudice.

<u>**ARGUMENT**</u>

**I.    Judicial Immunity Applies Because the Alleged Harm Was Caused By Judicial Acts.**

**A.    Plaintiffs' Focus on Recusal-Related Determinations Is a Red Herring Because Non-Recusal Could Not Cause Harm Independent of the Mediation.**

8.    If any judicial act was a "but for" cause of the alleged harm, judicial immunity applies.[3] Under *Holloway v. Walker*, 765 F.2d 517, 522–25 (5th Cir. 1985), it does not matter if non-judicial acts were *also* causes, nor whether non-judicial acts were the ultimate cause, nor whether non-judicial acts allegedly set into motion the alleged harm. If a judicial act is somewhere in the chain of causation, the complaint must be dismissed. Mot. ¶¶ 25–28. Plaintiffs fail to address *Holloway* because it is dispositive of this case.

9.    Here, Jones' work as a mediator was unquestionably judicial acts.[4] Plaintiffs have offered no explanation—let alone a logical or plausible one—how Plaintiffs' alleged harms could have occurred without these judicial acts. In fact, Plaintiffs effectively concede that none of the acts they complain about would be relevant but for the mediation. *See* Resp. ¶ 39 ("Jones' secret

---

[2] In 38 pages of briefing, Plaintiffs cite remarkably few cases dealing with absolute judicial or quasi-judicial immunity at all. Many cases they do cite do not support the propositions for which they are cited. Nowhere have Plaintiffs cited *any* case in *any* jurisdiction finding a judge lost immunity due to a failure to recuse.

[3] As in Jones's original Motion, Jones will use "judicial act" to refer to acts that are either judicial or quasi-judicial in nature. Plaintiffs have not contested that mediators, as quasi-judicial actors, are as a general matter entitled to the same absolute immunity as judges, and certainly here given Judge Isgur's Appointment Order.

[4] Plaintiffs implicitly concede that *some* of Judge Jones's conduct was judicial when they claim (wrongly) that "*much* of Jones's conduct that forms the basis for Plaintiff's claims…was non judicial." Resp. ¶ 33 (emphasis added) (pointing only to the relationship, nondisclosure of it, and failure to recuse as being supposedly nonjudicial).

relationship and non-disclosures became relevant to Plaintiff because Plaintiff was involved in a case in which Jones was the mediator.").

10.    Rather than confronting precedent, Plaintiffs provide an out-of-context and inapplicable quote that "if the 'acts involve both judicial and nonjudicial conduct, the unprotected behavior must be separated from the shielded and judges are liable for the acts that were not judicial.'" *See* Resp. ¶ 33 (quoting *Brewer v. Blackwell*, 692 F.2d 387, 397 (5th Cir. 1982)). But *Brewer* (and the other cases Plaintiffs cite along with it) dealt with situations where the judge was clearly acting as another type of government official, such as a police officer, in a way that caused harm before and regardless of any judicial acts. *See id.* at 397–98 (defendant's arrest of plaintiff was non-judicial act, and later holding of "trial" was a judicial act but exempt from immunity because defendant was a justice of the peace, and justices of the peace lacked subject matter jurisdiction over criminal matters); *Crowe v. Lucas*, 595 F.2d 985, 990 (5th Cir.1979) (court concluded that defendant was acting in his role as a city council member, not his role as a judge, in ordering arrest of defendant at city council meeting because maintaining order at such meetings was normally the function of city council members), *abrogated in part by Bogan v. Scott-Harris*, 523 U.S. 44 (1998) (holding local legislators also entitled to absolute immunity); *Lopez v. Vanderwater*, 620 F.2d 1229, 1231–32, 1234–35 (7th Cir. 1980) (finding defendant judge-landlord was not immune for wrongfully detaining ousted tenant at gunpoint, but was immune for resulting arraigning, convicting, and sentencing of tenant); *Krueger v. Miller*, 489 F. Supp. 321, 325–27 & n.9 (E.D. Tenn.1978) (finding judge not immune for, while drunk, going to home of young woman he met socially, impersonating a sheriff, and purporting to arrest her), *aff'd mem.*, 617 F.2d 603 (6th Cir.1980); *Harris v. Harvey*, 605 F.2d 330, 336 (7th Cir. 1979) (finding defendant-judge not immune for conducting racially motivated smear campaign, including by making defamatory

statements to news media and pressuring plaintiff's employer into suspending him). In such cases, at least some of plaintiffs' alleged harms were actualized at the moment of arrest. *See, e.g.*, *Chacon v. Copeland*, 103 F. Supp. 3d 827, 836–39 (W.D. Tex. 2015) (physical and emotional damages available for baseless arrest of person reporting crime); *Soto v. Monge*, 735 F. Supp. 3d 792, 804 (W.D. Tex. 2024) (emotional damages available for false arrest and malicious prosecution for public intoxication based on officer's fabricated report).[5] Even in these situations, however, the defendant is immune for any subsequent harm that, while precipitated, facilitated, or set into motion by the non-judicial act, also involved judicial acts. *See, e.g.*, *Malina v. Gonzales*, 994 F.2d 1121, 1124–25 (5th Cir. 1993) (finding that while a judge committed non-judicial acts when he pulled over and arrested defendant for honking at him while driving, plaintiff could not assert a claim for damages for the resulting contempt citation and jail sentence by the judge).

11. Here, no cognizable harm to Plaintiffs or the estate could occur merely from Jones having an undisclosed relationship or alleged bias, without more. Rather, any harm could only come about if the relationship or alleged bias negatively affected Jones' conduct in the mediation—i.e. judicial acts—and ultimately Judge Isgur's orders. Thus, because no harm was

---

[5] Plaintiffs' cases regarding juror qualification and employment discrimination are inapposite for the same reason. *See* Resp. ¶¶ 34–35, 40 (citing *Ex parte Commonwealth of Virginia,* 100 U.S. 339 (1879); *Forrester v. White*, 484 U.S. 219 (1988); *Cronovich v. Dunn*, 573 F. Supp. 1330, 1335 (E.D. Mich. 1983)). The alleged harms in those cases—i.e., denial of one's right to serve on a jury or loss of employment—likewise flowed directly from the non-judicial acts of juror selection or hiring decisions, respectively. The alleged harms would have occurred even without any judicial acts. Notably, the Supreme Court has previously held that the first stage of juror qualification was nonjudicial because, unlike Jones's judicial functions alleged here, it was not traditionally done by judges. *See Ex parte Commonwealth of Virginia*, 100 U.S. 339, 348 (1879) ("The duty of selecting jurors . . . . is often given to county commissioners, or supervisors, or assessors. In former times, the selection was made by the sheriff."). The Fifth Circuit has since interpreted these decisions narrowly, as discussed further *infra*. *See, e.g.*, *Jones v. King*, 148 F.4th 296, 303 (5th Cir. 2025).

actualized without judicial acts, Jones retains immunity, regardless of whether his recusal-related decisions were judicial acts (which they were).

### B.    Regardless, Recusal-Related Decisions Are Judicial Acts.

12.    As explained above, it is dispositive that Jones' conduction of the mediation *itself* was a judicial act. Nevertheless, for the sake of argument, Jones will address Plaintiffs' misguided arguments that Jones' failure to recuse himself and related non-disclosure decisions were not judicial acts.[6]

13.    To begin with, Plaintiffs' argument ignores the litany of cases in the Fifth Circuit and nationwide that have directly and universally ruled that recusal and related disclosure decisions are, in fact, judicial acts and not mere "administrative" or "ministerial" conduct. *See* Mot. ¶ 31 & n.6 (collecting and analyzing cases). Although the Supreme Court has not had the opportunity to directly address whether a recusal decision under federal statutes is a judicial act—presumably because there has never been any split of authority on the issue—the Court's cases strongly indicate that any determination by a judge about whether the judge can preside over a case is part of "judicial consideration," i.e., judicial acts subject to judicial immunity. *See* Mot. ¶ 32 (citing *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 352 (1872)). Plaintiffs' counsel has had many opportunities to address these cases, and yet they have never bothered to do so. Nor have they provided any case ruling to the contrary.

---

[6] Plaintiffs seem to suggest that, even standing alone, Jones's romantic relationship, or his failure to affirmatively disclose this relationship to news media or colleagues, should be treated as an actionable non-judicial act that could give rise to civil liability. *See* Resp. ¶ 33 ("[M]aintenance and concealment of an intimate relationship . . . is not a normal function of a United States Bankruptcy Judge."); ¶ 39 ("Jones also failed to disclose the relationship to colleagues and to the media."). This is facially absurd. Judges and mediators have no general disclosure duty to their colleagues, the media, or the public at large concerning personal affairs. Plaintiffs elsewhere acknowledge this. *See* Resp. ¶ 39 ("Jones's secret relationship and non-disclosures became relevant to Plaintiff because Plaintiff was involved in a case in which Jones was the mediator.").

14.    There is no separate exclusion for judicial acts that are "ministerial" or "non-discretionary" in nature, as Plaintiffs now appear to argue. "There are two—and only two—circumstances in which immunity yields: when a judge acts outside her judicial capacity, or when she acts in the clear absence of all jurisdiction." *Jones v. King*, 148 F.4th 296, 300 (5th Cir. 2025). An act's judicial character does not depend on "whether a particular discretion was exercised on a particular day." *Id.* at 303.

15.    *Jones v. King* is instructive. There, the defendant judge had conducted a sham juror qualification proceeding for the sole purpose of a "vengeful scheme to punish [plaintiffs] as 'personal and political adversaries'" by "arrest[ing] and accus[ing] [them] of falsely claiming eligibility by not actually residing in [the] County" when the judge knew they were in fact residents. *Id.* at 298–300. The lower court had accepted the plaintiffs' argument that a juror qualification proceeding was merely "administrative" and "ministerial" "because the statutory criteria are fixed, [such that] there's no room for discretion: a 'prospective juror either satisfies the statutory criteria, or he does not.'" *Id.* at 302–03. The Fifth Circuit, however, reversed, explaining that "the relevant inquiry is the nature and function of the act, not the act itself." *Id.* at 303. The court noted that, as a general matter, qualification hearings involve the possibility of dismissing jurors for discretionary excuses in addition to the mandatory criteria. *Id.* at 302–03. Even though the qualification hearing in question involved *only* the mandatory criteria, that was "beside the point" because the focus was on the nature of qualification proceedings in general, which were "normal judicial function[s]" under the first *McAlester* factor. *Id.* at 300–03. The court further found that, on balance, the rest of the *McAlester* factors "reinforce[d] this conclusion. . . . [because the] proceeding took place in a courthouse annex—an appropriate adjunct space—and it arose directly out of a visit to [the judge] in her official capacity." *Id.* at 303–04. While the proceeding

was not tied to a specific case pending before the court, the court found that the absence of this final factor was not dispositive because "under settled precedent, the factors must be considered broadly in favor of immunity," no one factor is mandatory, and "[s]ome acts are [even so] 'clearly' judicial—or so 'inextricably linked' to judicial acts[—]that no further analysis is needed." *Id.* at 301, 304.

16.     Here, application of the *McAlester* factors clearly demonstrates that a judge's decisions regarding recusal or non-recusal are protected. Under the first *McAlester* factor, recusal is a "normal judicial function"—one that judges may not delegate. Mot. ¶ 30; *McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972). That other professionals may have similar obligations under other statutes and rules is irrelevant. The recusal scheme governing judges has different requirements, purposes, and implications from the separate recusal obligations of professionals. Mot. ¶ 30. It is "inextricably linked" to deciding cases because the first thing any judge must decide is whether they can and should take the case. *Jones v. King*, 148 F.4th at 301. And even *if* the recusal statute has some "non-discretionary" provisions in § 455(b),[7] it also has clearly discretionary elements in § 455(a), similar to the statute analyzed by the Fifth Circuit in *Jones v.*

---

[7] Plaintiffs appear to argue § 455(b) is "non-discretionary" and "ministerial" because some of the criteria are less subjective. *See* Resp. ¶¶ 40, 47. But "countless judicial acts, from approving plea agreements to entering default judgments, involve yes-or-no determinations under bright-line rules." *Jones v. King*, 148 F.4th at 303 n.40. The whole point of judicial and quasi-judicial immunity being an "absolute" immunity, as opposed to the "qualified" immunity available to other government actors, is that the immunity applies *even when* the judge or quasi-judicial actor has acted in violation of *clearly established* law. *See, e.g.*, *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir. 1998) ("Because we find that no conduct by the defendants' deprived the plaintiff of a clearly established constitutional right, we need not reach the issue of absolute immunity[,] . . . only . . . qualified immunity."); *Bonner v. Mitchell*, No. 23-cv-00872, 2023 WL 6307972, at *3–4 (W.D. La. Sept. 7, 2023) (quoting *Stokes v. Ward*, 132 F.3d 1455 (5th Cir. 1997)) (finding judge immune for recusal decisions and noting that "[i]mmunity is not affected by the alleged magnitude of the judge's errors or the mendacity of his acts"), *report and recommendation adopted*, 2023 WL 6317615 (W.D. La. Sept. 27, 2023).

9

*King*, 148 F.4th at 303. The other *McAlester* factors also support finding recusal is a judicial act. Recusal or non-recusal typically takes place "in the courtroom or adjunct spaces such as the judge's chambers" or the court's docket. *Holloway*, 765 F.2d at 524. It is "centered around a case then pending before the judge"—a judge recuses himself from a specific case, not in the abstract. *Id.* Finally, it arises "directly and immediately out of a visit to the judge in his official capacity" requesting that he try the case. *Id.*

17.    There is no basis to treat mediator recusal differently. Plaintiffs concede that the judge-specific recusal statute applies to mediators. *See* Resp. ¶ 35 n.87. They have identified no material differences between the nature of a mediator's and judge's recusal.[8] Under these circumstances, it is not even necessary to analyze whether a mediator's recusal is *similar* enough to a judicial function to be entitled to quasi-judicial immunity—it is the *exact same* function. *Cf.* Mot. ¶ 22 & n.2 (discussing factors as applied to mediation generally under *Butz v. Economou*, 438 U.S. 478, 512 (1978)).[9] If anything, the *McAlester* factors would arguably apply even more

---

[8] Plaintiffs' reference to Mediator Guidelines (*see* Resp. ¶¶ 36 n.88, 48) is unavailing. By their own terms, the cited guidelines are "are aspirational," based on "voluntary compliance," and "not intended to be disciplinary rules or a code of conduct." *See* Approval of Amendments to the Ethical Guidelines for Mediators, Misc. Dkt. No. 11-9062 (Tex. Apr. 11, 2011), https://www.txcourts.gov/All_Archived_Documents/SupremeCourt/AdministrativeOrders/miscd ocket/11/11906200.pdf. The guidelines do not alter the fact that recusal decisions are subject to immunity, and Plaintiffs have not cited any case to the contrary.

[9] The cases Plaintiffs cite in paragraph 40 of their Motion in purported support of their "ministerial" argument are inapposite because they involve mostly non-judges doing things wholly unlike judges. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 430, 433–34 (1993) (finding court reporter not entitled to quasi-judicial immunity for failure to produce any transcript for more than two years after trial because producing verbatim transcript of court proceedings was wholly unlike any traditional role of a judge, or for that matter anyone in common-law proceedings); *Supreme Court of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 733–34 (1967) (propounding bar code was legislative function entitling propounding judges to absolute legislative immunity); *Richardson v. Koshiba*, 693 F.2d 911, 912, 914–15 (9th Cir. 1982) (committee's recommending of candidates for judicial office was executive function entitled only to qualified immunity); *Bates v. Kim*, 591 F. Supp. 3d 1355, 1367–68 (N.D. Ga. 2022) (finding police officers could not claim quasi-judicial immunity for following search warrant they initiated). Notably, some of Plaintiffs'

strongly in the case of a court-appointed mediator, because the case will always be in the middle

of the judicial process when the mediator's involvement begins.

## II.     Judicial Immunity Applies Because Bankruptcy Mediators Have Subject Matter Jurisdiction Over Bankruptcy Mediations.

### A.     Plaintiffs' Focus on Jurisdiction to Enter Orders Is a Red Herring, and the Argument Is Explicitly Foreclosed by Supreme Court Precedent.

18.     Plaintiffs accuse Jones of doing the very thing they are doing—"attempt[ing] a

strawman attack," Resp. ¶ 50—by attempting to shift focus away from the relevant question of

whether a court had jurisdiction over the subject matter, to instead focus on the irrelevant question

of whether in some circumstances specific orders may be void or voidable due to being entered by

a judge who misapplied the recusal statute. As much as Plaintiffs may wish it were otherwise, it is

indeed the *exceptions* to immunity that are "narrow," not immunity itself. *Compare Stump v.*

*Sparkman*, 435 U.S. 349, 356 (1978) ("[T]he scope of the judge's jurisdiction must be construed

broadly where the issue is the immunity of the judge."), *with* Mot. ¶ 50 ("[T]he focus [for the

exceptions to immunity] cannot be so narrow.").

19.     The Supreme Court and Fifth Circuit have explicitly held that "the proper inquiry

is *not* whether the judge *actually had* jurisdiction, or even whether the court exceeded its

jurisdictional authority." Mot. ¶ 36 (quoting *Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995)).

It is instead a non-case specific inquiry into the subject matter jurisdiction granted to the court (or

---

cases actually found the actor *was* entitled to judicial or quasi-judicial immunity. *See Scott v.*
*Dixon*, 720 F.2d 1542, 1546–47 (11th Cir. 1983) (defendant clerk of court entitled to judicial
immunity for issuing arrest warrant because "if [defendant] were a judge, his absolute immunity
would be assured" as "[t]he issuance of a warrant would be a function normally performed by a
judge" and relevant statutory scheme authorized clerk of court to issue warrants); *Perkins v. U.S.*
*Fidelity & Guaranty Co.*, 433 F.2d 1303, 1304–05 (5th Cir. 1970) (applying Alabama state law
and finding that judicial immunity applied even if judge failed to follow statutorily required
procedural safeguards).

mediation program) the judge or mediator belongs to. Mot. ¶¶ 34–37 (collecting binding caselaw). This makes Plaintiffs' argument—premised on an (incorrect) theory that § 455(b) is a jurisdictional bar in specific cases—wholly irrelevant.

20.     Plaintiffs' misdirection is especially egregious because they once again fail to address any of the many directly on-point cases finding that judicial immunity is *not* abrogated because of a recusal violation. *See* Mot. ¶ 38 (collecting cases). Nor have Plaintiffs cited any on-point cases of their own. The only case they cite (in a different section of their brief) finding that immunity was abrogated because of a complete lack of subject matter jurisdiction is *Brewer v. Blackwell*, 692 F.2d 387, 397–98 (5th Cir. 1982), which merely found that a justice of the peace was not protected by judicial immunity for purporting to try plaintiffs for a felony when, under relevant law, justices of the peace were limited to trying minor civil cases. Here, on the other hand, we have a bankruptcy judge acting as a bankruptcy mediator in a bankruptcy mediation pursuant to a mediation order duly issued by another bankruptcy judge under the Local Rules, which order further extended Jones all the immunities and protections of a judge. There is no question that bankruptcy court mediators generally have responsibilities pertaining to conducting bankruptcy mediations, and so Jones was not acting in the absence of all jurisdiction when he conducted a bankruptcy mediation—regardless of whether he should have recused himself, and regardless of whether an erroneous non-recusal would void affected orders (which it would not). Mot. ¶ 40.

**B.     Regardless, Recusal Violations Do Not Automatically Divest a Court of Jurisdiction in Any Sense.**

21.     Even if Plaintiffs' argument were examined on its (incorrect) premise that lack of jurisdiction in a specific case were relevant, the argument would *still* fail on its own terms. The Supreme Court has explicitly held—in a case involving 28 U.S.C. § 455(b) because the case related to the justices' own pay—that "Section 455 of Title 28 neither expressly nor by implication

12

purports to deal with jurisdiction. . . . [I]t does not affect the jurisdiction of a court." *United States v. Will*, 449 U.S. 200, 210–11 (1980). The Supreme Court and Fifth Circuit have likewise been clear that recusal violations—even those under § 455(b)—do not even automatically void orders. *See* Mot. ¶ 39 (first citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 862 (1988); then citing *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 485 (5th Cir. 2003); and then citing *CEATS, Inc. v. Cont'l Airlines, Inc.*, 755 F.3d 1356, 1362 (Fed. Cir. 2014)).[10] Plaintiffs' argument that § 455(b) automatically divests a court of all jurisdiction—and thus prevents Jones from claiming immunity over his subsequent actions—yet again flies in the face of binding caselaw that Plaintiffs fail to address.[11]

---

[10] Indeed, any instance of bribery or corruption, as in *Holloway*, is technically a violation of § 455(b)(1), which mandates disqualification when a judge has "personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." And yet *Holloway* was clear that "it is irrelevant [for judicial immunity] that [a defendant] is alleged to have performed . . . acts pursuant to a bribe or a conspiracy." *Holloway*, 765 F.2d at 524.

[11] None of Plaintiffs' cases are remotely applicable. As clarified by *Patterson*, *Tramonte v. Chrysler Corp.*, 136 F.3d 1025, 1031 (5th Cir. 1998) did not purport to (and could not) establish a rule that § 455(b) violations automatically voided subsequent orders. *See Patterson*, 335 F.3d at 485. Plaintiffs miscite *Howell v. Supreme Court of Texas*, 885 F.2d 308, 312 (5th Cir. 1989) for a proposition that the Fifth Circuit was rejecting. *See* Resp. ¶ 54. The other cases cited in paragraph 54 of Plaintiffs' Response applied state law—which obviously has no applicability to a *federal* judge and mediator in a *federal* case. The cases cited in paragraph 43 of Plaintiffs' Response for the "mechanical" and "automatic" nature of § 455(b) disqualification merely stand for the proposition that a judge may not ignore § 455(b) because he thinks some other factor obviates the need to recuse. They are not immunity cases and for the most part found the defendant had no need to recuse under the facts of the cases. They also did not come close to suggesting § 455(b) is jurisdictional, with one pre-*Liljeburg* exception under disanalogous circumstances, *see U.S. v. Gipson*, 835 F.2d 1323, 1325 (10th Cir. 1988) (finding plaintiff could raise recusal violation in attempt to overturn conviction despite guilty plea and analogizing non-waiver provision to jurisdiction). In fact, in yet another miscite, one of the cases Plaintiffs cite actually found motions to disqualify under § 455(b) could be rejected if not timely filed, something not possible for jurisdictional issues. *See Summers v. Singletary*, 119 F.3d 917, 920–21 (11th Cir. 1997) (citing *Liljeberg*).

22.     Finally, even if there were some relevant difference between § 455(a) and § 455(b) as it relates to jurisdiction, it would not matter here—Jones' non-disclosure implicates only § 455(a). The civil law system referenced in § 455 covers only blood relationships, similar to inheritance rules. *See, e.g.*, Code of Conduct for United States Judges, Canon 3(C)(3)(a); *United States v. Viola*, 2017 WL 3225720, at *1 (W.D. La. July 27, 2017). Counsel acknowledges that this Court previously stated in *Van Deelen* that Jones should have recused under § 455(b) because his relationship with Freeman was the "functional equivalent" of a relationship that would fall under § 455(b). The case the Court cited for this proposition, however, actually says the opposite. *See United States v. Rechnitz*, 75 F.4th 131, 134, 143–45 (2d Cir. 2023) (finding that, although district court judge's "near-paternal" relationship with a cooperating criminal co-defendant was the "functional equivalent" of a relationship that would be disqualifying under § 455(b), and thus judge should have recused, that recusal would have been "under § 455(a)," because the defendant [did] "not possess the necessary degree of blood relationship to the district judge to give rise to a technical violation of 28 U.S.C. § 455(b)[]").

## III.     The Supreme Court Has Explicitly Rejected the Argument that Due-Process Violations Are a Reason to Abrogate Judicial Immunity.

23.     Left with no other options, Plaintiffs attempt to argue the whole framework of judicial immunity is unconstitutional per Supreme Court caselaw on Due Process. This is a bizarre argument considering that the Supreme Court established judicial immunity in the first place and has repeatedly reinforced it. In fact, the Supreme Court has explicitly rejected the notion that "failure to comply with elementary principles of procedural due process" is a reason to abrogate judicial immunity, holding instead that "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump*, 435 U.S. at 359.

14

24.    None of Plaintiffs' "Due Process" cases say otherwise. *See* cases cited Resp. ¶¶ 51–52, 58–61. None of them dealt with judicial immunity. Instead, they dealt with things such as whether a statutory scheme for judicial compensation was unconstitutional, or at best whether a given order should be overturned. *See, e.g.*, *Tumey v. Ohio,* 273 U.S. 510, 523 (1927) (finding statutory scheme that awarded judges for convictions but not acquittals to be unconstitutional). Moreover, under these cases, Jones' interest was not sufficiently direct or substantial to even require that any orders be vacated. Unlike direct payments to a judge, "matters of kinship, personal bias, state policy, remoteness of interest would seem generally to be matters merely of legislative discretion," rather than a constitutional issue. *Id.*; *see also, e.g.*, *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 823–27 (1986) (class representative Alabama Supreme Court justice but not prospective class member justices required to disqualify selves from case involving identical issues as class action); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 884 (2009) ("Not every campaign contribution by a litigant or attorney creates a probability of bias that requires a judge's recusal.").

25.    Plaintiffs' due process arguments are academic anyway. At bottom, this Court has no authority to depart from *Stump* and the rest of the massive body of Supreme Court and Fifth Circuit caselaw applying judicial immunity. *See, e.g.*, *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 3 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio*."). There are many other areas of the law where civil monetary remedies are limited or even extinguished, such as qualified immunity, sovereign immunity, the absolute immunity of legislators, and even principles of repose that foreclose jurisdiction after a period of time—even if an injury is fraudulently concealed.

26.    If Plaintiffs desire to advance an as-applied challenge that it would violate the Due Process Clause of the Fifth Amendment for this Court to apply Fifth Circuit and Supreme Court

precedent on judicial immunity, that is an argument Plaintiffs should make on appeal from a final judgment after their claims are dismissed consistent with existing law.[12]

## IV.   Plaintiffs Are Interestholders, and Their Claims Would Be Just As Derivative Even If They Were Creditors.

27.   Plaintiffs' claims should also be dismissed because they lack standing. To avoid duplicating briefing, Jones refers the Court to the discussions on these topics in other Defendants' motions and replies (just as Plaintiffs also incorporate other briefing into their Response Brief, *see* Resp. ¶ 71). In short, Plaintiffs admit they currently have interests in a trust, not bonds or money claims, and so, as in *Van Deelen*, they are interestholders. *See* Resp. ¶ 69 ("[Plaintiffs] subsequently acquired and held Wind Down Trust interests in the place of the bonds."). If they are trying to allege that the final bankruptcy plan was fraudulently entered into and that they should thus be deemed to hold their original bonds, that argument would need to be made in a direct challenge to the plan, not in a collateral proceeding. Even if Plaintiffs were creditors, they still would be foreclosed from asserting claims now owned by the Litigation Trust because they have not alleged any independent harms, as Jones explained in his original Motion ¶¶ 41–43. Plaintiffs

---

[12] Any argument in favor of an exception to judicial immunity for non-speculative harm, as Plaintiffs' counsel has argued in other cases, should likewise be made to the Fifth Circuit, because existing precedent rejects such an exception. Both the Fifth Circuit and Supreme Court have upheld immunity even when there *was* clear evidence the judge acted improperly and was motivated by malice, or when the Court explicitly assumed the allegations were true. *See, e.g., Sparks v. Duval Cnty. Ranch Co.*, 588 F.2d 124, 125–26 & n.2 (5th Cir.) (upholding immunity despite "assum[ing] that the judge in question accepted a bribe" and collecting similar cases), *on reh'g*, 604 F.2d 976 (5th Cir. 1979), *aff'd sub nom. Dennis v. Sparks*, 449 U.S. 24 (1980); *Malina*, 994 F.2d at 1125 (judge immune for sentencing plaintiff to jail for honking at him on the road); *McAlester*, 469 F.2d at 1281–82 (judge immune when he "improperly exercised an autocratic, elephant-gun power to relieve his personal, non-judicial annoyance with a mosquito-sized problem" by jailing confused elderly couple who brought fresh clothes for their defendant son); *Jones v. King*, 148 F.4th at 298 (judge immune for "vengeful scheme to punish [plaintiffs] as 'personal and political adversaries'" via sham juror qualification proceeding).

confirm they are seeking "losses and fees wrongfully taken from the bankruptcy estate and/or Wind Down Trust"—i.e., recovery for harm to the bankruptcy estate, not to themselves directly. Resp. ¶ 70. While Plaintiffs repeat "their intent to move for special appointment," Resp. ¶ 71, they have not done so yet, and this Complaint is premature unless and until they succeed in actually gaining a special appointment. These statements also reflect a fundamental misunderstanding of derivative standing.[13]

## V.    Plaintiffs Have Not Alleged a Plausible Theory of Causation.

28.    While Plaintiffs have alleged that Jones had a relationship with Freeman, their 138-page Complaint says almost nothing about how Jones, as a non-binding mediator, could have caused the alleged harms. What they do say is conclusory, is self-contradictory, contradicts the bankruptcy docket,[14] and is otherwise not plausible under even Rule 8(a)—let alone the more stringent requirements of Rule 9(b), which Defendants have not disputed applies to all their claims. *See* Mot. ¶ 45. As some causation issues apply across defendants, as Plaintiffs do in their Response (Resp. n.92), Jones incorporates other Defendants' briefing to the extent it demonstrates the lack of causation by Jones. Nevertheless, a few Jones-specific comments are in order.

29.    First, Plaintiffs' allegations are conclusory and contradict the bankruptcy docket. Plaintiffs claim an acceptable plan had already been prepared before Jones imposed his own plan without any negotiation. In fact, other stakeholders were suing Plaintiffs (and their proxy LBM)

---

[13] Contrary to Plaintiffs' assertions that the Trustee is apathetic to the issues raised by Plaintiffs, the Trustee has pursued claims. Just recently the Trustee settled with Jackson Walker for a significant portion of the fees paid to Jackson Walker and Freeman. *See* Litigation Trustee's Motion for Entry of an Order Approving Settlement Agreement with Jackson Walker LLP, *In re: Professional Fee Matters Concerning the Jackson Walker Law Firm*, No. 4:23-cv-04787 (S.D. Tex. Oct. 3, 2025).

[14] As explained in Mot. ¶ 8 n.1, the Court may take judicial notice of items on the GWG Bankruptcy Docket.

and disputing their claims before Jones stepped in. *See* Porter Hedge's Mot. to Dismiss (ECF No. 23 ¶¶ 18–22, 25) (citing Bankruptcy Docket Nos. 218, 560, 1055, 1127, 1250, 1253, 1663, 1698, 1816, 1832, 1952). After the mediation allowed Plaintiffs to extract themselves from this precarious situation, Plaintiffs' agent praised Jones on the record for his "hard work …[and] not giving up on us," even "after a lot of pushing back and forth" between the parties, allowing them to "finally g[e]t here today" with a "fair balance" between competing claims. Bankruptcy Docket No. 2010 at 44:23–46:15.[15] And while Plaintiffs have framed the plan as Jones' recommendations to Judge Isgur, the record shows that Jones did not sign or submit it to Judge Isgur—Plaintiffs did (through LBM). *See* Bankruptcy Docket No. 1518 at 2, 23; Bankruptcy Docket No. 1924 at 86, 89. Plaintiffs now say Jones pressured them into the plan, but they nowhere explain how that pressure could have led to them ***submitting, approving, and praising the plan themselves*** in a situation where Jones had no binding authority and no ability to force them to do anything. If Jones' actions in supposedly steamrolling ousted management's previous proposal was as egregious as Plaintiffs now allege, any number of the highly sophisticated lawyers involved would have objected and raised the matter with Judge Isgur, with or without knowledge of the Jones-Freeman relationship.

30.    Second, Plaintiffs' alleged scheme requires either complicity or an implausible dereliction of duty on the part of other bankruptcy judges and professionals in the Southern District of Texas. For the scheme to function as Plaintiffs have alleged it functioned, Judge Isgur would

---

[15] Plaintiffs' claim that "the mediation lasted less than four hours" (Resp. 9) is demonstrably false. Time records submitted by multiple firms confirm that the mediation occurred over multiple full day mediation sessions over multiple days. *See, e.g.*, Bankruptcy Docket No. 2147, at pdf pp. 2, 574, 625–28, 678, 681; Bankruptcy Docket No. 2144, at pdf pp. 847–48, 935–36, 1140; Bankruptcy Docket No. 2143, at pdf pp. 654–55, 658, 717, 732, 813, 817; Bankruptcy Docket No. 2158, at pdf pp. 177, 179–80, 193, 195, 229–30.

have to be complicit or, at a minimum, irresponsible—given that, according to Plaintiffs, he rubber-stamped what Plaintiffs' claim was an unjust, unnecessary, and disastrous liquidation of assets. The clerk of court would also have to be complicit. As Judge Isgur has publicly explained, and Plaintiffs have not disputed, the procedures in the district required the clerk of court to assign cases using a random number generator. Mot. ¶¶ 1, 8, 32 n.7. Moreover, since Plaintiffs' theory of a widespread corruption and racketeering scheme implicates the entire system for how cases were assigned, do Plaintiffs intend to implicate or seek discovery from all the bankruptcy judges in the Southern District of Texas who approved the procedures for how cases are assigned? The complex case procedures were also routinely discussed with the District Court. Is the District Court part of the conspiracy? Plaintiffs also allege Jackson Walker used Freeman's relationship with Jones as a selling point to secure local counsel appointments with other firms, Compl. ¶¶ 45–47, 92, an allegation that is impossible to square with Plaintiffs' central theory that the relationship was secret.

## VI.     The Court Should Deny Plaintiffs' Request For Leave to Amend the Complaint

31.     The dismissal of this case should be with prejudice because any amendment would be futile. *See, e.g.*, *Valley Chili Properties, LLC v. Truist Bank*, 2024 WL 3509483, at *6 (W.D. Tex. June 27, 2024) (first citing *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014) and then citing *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000)). No amendment could overcome Jones' absolute immunity or Plaintiffs' lack of standing. As explained above and in Jones' motion, judicial and quasi-judicial immunity do not depend on the particulars of the act in question, only the category to which it belongs, and conducting a mediation and making recusal decisions are undoubtably judicial acts. This Court need not speculate as to what additional futile amendments Plaintiffs might propose because Plaintiffs' failure to offer a proposed amended complaint is itself reason to deny leave to amend. *See Scott v. U.S. Bank Nat'l*

*Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021), *as revised* (Nov. 26, 2021) ("If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave.").

32.    Moreover, Defendant would be prejudiced if leave to amend were granted. "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages," and is "to be resolved as early in the proceedings as possible." *Mireles*, 592 U.S. at 11; *Hulsey v. Owens*, 63 F.3d 354, 356 (5th Cir. 1995). Jones has already been litigating this immunity issue in cases brought by Plaintiffs' law firm for over a year and half. This Court should not allow Plaintiffs' law firm to further prolong cases clearly barred by judicial immunity.

## CONCLUSION

33.    For all the foregoing reasons and those in Jones' Motion, he respectfully asks this Court to dismiss the claims asserted against him with prejudice.

October 16, 2025

By: */s/ Tyler Ulrich*
Tyler Ulrich (pro hac vice)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, FL 33131
tulrich@bsfllp.com
Telephone: (305) 539-8400

David Boies (pro hac vice)
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
dboies@bsfllp.com

*Counsel for Defendant David R. Jones*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned attorney, do hereby certify that the foregoing instrument was served to all parties of record by CM/ECF on October 16, 2025.