**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

GARY PETERSON, CHRIS NAKASHIMA, JOHN ENGLISH, JAQUETTA ENGLISH, LT-1 EXCHANGE TRUST, LT-2 EXCHANGE TRUST, LT-3 EXCHANGE TRUST, LT-4 EXCHANGE TRUST, LT-5 EXCHANGE TRUST, LT-6 EXCHANGE TRUST, LT-7 EXCHANGE TRUST, LT-8 EXCHANGE TRUST, LT-9 EXCHANGE TRUST, LT-12 EXCHANGE TRUST, LT-14 EXCHANGE TRUST, LT-15 EXCHANGE TRUST, LT-17 EXCHANGE TRUST, LT-18 EXCHANGE TRUST, LT-19 EXCHANGE TRUST, LT-20 EXCHANGE TRUST, ON THEIR OWN BEHALF AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

          PLAINTIFFS,

V.

DAVID R. JONES, ELIZABETH CAROL FREEMAN, THE LAW OFFICE OF LIZ FREEMAN, PLLC, JACKSON WALKER, LLP, AND PORTER HEDGES, LLP,

          DEFENDANTS.

CIVIL ACTION NO. 4:25-CV-2761

JURY TRIAL DEMANDED

**PLAINTIFFS' RESPONSE TO GWG LITIGATION TRUSTEE'S NOTICE OF WITHDRAWAL OF MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT WITH JACKSON WALKER LLP**

The Litigation Trustee and his counsel Reid Collins previously advocated for a collusive settlement—negotiated when Elizabeth Freeman was still Wind Down Trustee and after they knew of her relationship with former Judge David Jones—that released Jackson Walker for less than a third of the fees it billed in the GWG bankruptcy and released Freeman for no consideration from her. On March 13, 2026, without explanation, they gave notice of withdrawal of their motion for approval of the settlement.[1]

Their abandonment of the tainted settlement is a step in the right direction. However, it does not undo the structural conflict Defendants built into the bankruptcy plan. Since August 2023, Freeman and the Litigation Trustee were required to coordinate over any claims held by the Litigation Trust.[2] This necessarily included not only claims against Jackson Walker, but also claims against Freeman herself.

With this structural conflict, the Litigation Trustee and his counsel sat silently for years after Jones admitted to the intimate relationship in October 2023, while Freeman collected exorbitant fees as Wind Down Trustee. The Litigation Trustee and his counsel acquiesced to Freeman's continued profiteering as Wind Down Trustee despite actual knowledge that she assumed the position through fraud.

---

[1] *Peterson, et al., v. Jones, et al.*, No. 25-2761, ECF No. 60.

[2] *GWG*, No. 22-90032, ECF No. 1924, Second Amended Plan at ¶ 2.1 ("the Litigation Trustee shall communicate on a regular basis, confer and coordinate efforts to maximize the ultimate recovery by the Wind Down Trust Beneficiaries from distributions from the Wind Down Trust, including anticipated transactions involving Wind Down Trust Assets and initiation of litigation/settlements involving Litigation Trust Assets"); *see also id*. ECF No. 1910, Litigation Trust Agreement at ¶ 2.1 ("The Wind Down Trustee and the Litigation Trustee shall communicate on a regular basis, confer and coordinate efforts to maximize the ultimate recovery by the Wind Down Trust Beneficiaries from distributions from the Wind Down Trust, including anticipated transactions involving Wind Down Trust Assets and initiation of litigation/settlements involving Litigation Trust Assets"); *see also id*. p.2 ("the sole purpose of the Litigation Trust is to hold and liquidate the Litigation Trust Assets in a manner consistent with the Plan and the terns of this Agreement, in cooperation with the Wind Down Trustee…."); *id*. at ¶ 1.5(a) (also requiring "cooperation with the Wind Down Trustee").

Reid Collins' actions from the outset further illustrate the intractable conflict and a willingness to overlook the massive fraud in this case. On January 5, 2024, Reid Collins, signed a proposed stipulation with Jackson Walker—*who was then acting and being paid as counsel for Freeman in her capacity as Wind Down Trustee*— to keep documents and information confidential.[3] That is, mere months after Jones publicly disclosed his intimate relationship with Freeman and resigned from the bench, and after the U.S. Trustee moved for the return of fees, Jackson Walker represented Freeman in her capacity as Wind Down Trustee in the investigation against her and Jackson Walker. Reid Collins negotiated the following stipulation with Jackson Walker in that capacity:

### STIPULATED CONFIDENTIALITY AND PROTECTIVE ORDER

This Stipulated Confidentiality And Protective Order ("**Stipulation**" or "**Order**") is entered into by and among: (a) Michael I. Goldberg, in his capacity as the Litigation Trustee (the "**Litigation Trustee**") of the Litigation Trust; (b) Elizabeth C. Freeman, in her capacity as Wind Down Trustee of the GWG Wind Down Trust ("**WDT Trustee**"); and (c) any other persons or

\* \* \* \*

---

[3] *GWG*, No. 22-90032, ECF No. 2318 at 10.

**STIPULATED AND AGREED TO BY:**

**REID COLLINS & TSAI LLP**

By: */s/ Morgan Menchaca*
William T. Reid, IV
Tex. Bar No. 00788817
S.D. Tex. Bar No. 17074
Morgan M. Menchaca
Tex. Bar No. 24103877
S.D. Tex. Bar No. 3697565
1301 S. Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
(512) 647-6100
wreid@reidcollins.com
mmenchaca@reidcollins.com

*Counsel for the Litigation Trustee*

**JACKSON WALKER LLP**

By: */s/ Chris Bankler*
Chris Bankler
TX Bar No. 24066754
Kristhy M. Peguero
TX Bar No. 24102776
1401 McKinney Street, Suite 1900
Houston, TX 77010
(713) 752-4200
cbankler@jw.com
kpeguero@jw.com

*Counsel for the WDT Trustee*

Not only did Reid Collins fail to object to Jackson Walker's representation of Freeman or Freeman's continued service as Wind Down Trustee, it negotiated a proposed stipulation with Jackson Walker as Freeman's counsel—in her capacity as Wind Down Trustee—to *keep matters relating to the Jackson Walker investigation confidential*.[4]

Judge Isgur held a hearing on the stipulation on January 31, 2024.[5] Initially, neither the Litigation Trustee nor any attorney from Reid Collins appeared for the hearing even though Reid Collins signed and filed the proposed stipulation.[6] Attorney Morgan Menchaca of Reid Collins ultimately appeared telephonically without the Litigation Trustee present after Judge Isgur called the firm.

---

[4] *Id* at 1–10.

[5] *Id.* ECF No. 2343, PDF audio file attachment.

[6] *Id*. at 4:20–28.

3

Judge Isgur admonished Reid Collins concerning the firm's interaction with Jackson Walker. He was "a little shocked that you dealt with them [as counsel for Freeman/the Wind Down Trustee] on a confidentiality order when there were claims. . . [o]r potential claims against Jackson Walker."[7]

When Judge Isgur pressed Freeman as to why she would hire Jackson Walker as her counsel, her only response was to assert that she had decided—coincidentally just the day before the hearing—to terminate the firm but had not yet told Jackson Walker.[8]

Judge Isgur indicated he would insist upon transparency and declined to approve the stipulation.[9] He announced Jackson Walker was terminated immediately as Freeman's counsel and that Reid Collins should not deal with Jackson Walker in this capacity.[10] Reid Collins later submitted another stipulation, this time with no signature block,[11] which Judge Isgur again declined to approve.[12]

From the outset of the investigation, Reid Collins buried its head in the sand on the conflict posed by working with Freeman and Jackson Walker. It actually negotiated with Jackson Walker—simultaneously as counsel for the Wind Down Trustee and as a potential defendant—and submitted a proposed stipulation that benefitted Jackson Walker and Freeman instead of the WDT Interest holders. The Litigation Trustee did not sign the stipulation. Only Reid Collins did. Reid Collins ostensibly advised him of the stipulation while disregarding the patent conflict in working with Jackson Walker as Freeman's counsel.

---

[7] *Id.* at 12:57–13:08.

[8] *Id* at 3:50–4:10.

[9] *Id.* at 8:57–10:00, 12:19–24.

[10] *Id.* at 12:47–57.

[11] *Id.* ECF No. 2370–1 at 11.

[12] *Id.* ECF No. 2373.

Reid Collins also advised the Litigation Trustee on the putative settlement with Jackson Walker. The firm was charged with informing him of the legal conflict posed by negotiating a settlement that released Freeman (for no consideration from her) on the one hand, while conferring with her as Wind Down Trustee on potential claims held by the Litigation Trust under the plan on the other.

Of course, the now abandoned settlement Reid Collins negotiated with Jackson Walker made no mention of fees Jackson Walker collected for representing Freeman during this time. Nor did the motion to approve that settlement apprise the Court that Freeman retained and paid Jackson Walker to represent her as Wind Down Trustee. Reid Collins' collaboration with Jackson Walker in this capacity, at a time when it knew of the Jones-Freeman relationship, placed it in a difficult position of challenging these fees that should have never been charged to the Wind Down Trust.

Instead of bringing the structural conflict to the attention of the Court or asking for the Court to remove Freeman, Reid Collins compounded the conflict by negotiating and cooperating with Jackson Walker in the dual capacity of counsel for the Wind Down Trustee and as a potential defendant.

### CONCLUSION AND PRAYER

Based on the structural conflict Defendants built into the plan, the Litigation Trustee and his counsel can never meaningfully pursue claims against Jackson Walker, Jones, or Freeman. Their abandonment of the collusive settlement is their first ostensible acknowledgement of the conflict. But it does not resolve it. Reid Collins and the Litigation Trustee have been conferring and cooperating with Freeman and Jackson Walker for years. Only Plaintiffs will pursue these claims vigorously.

**Dated: March 18, 2026**

Respectfully submitted,

By:   /s/ *Mikell A. West*
Mikell A. West
Texas State Bar No. 24070832
S.D. Tex. Bar No. 1563058
Robert W. Clore
Texas State Bar No. 24012426
S.D. Tex. Bar No. 2032287
BANDAS LAW FIRM, P.C.
555 N. Carancahua Street, Suite 1200
Corpus Christi, Texas 78401
Telephone: (361) 698-5200
Facsimile: (361) 698-5222
rclore@bandaslawfirm.com
mwest@bandaslawfirm.com

*Attorneys for Plaintiffs*

## Certificate of Service

I hereby certify that on March 18, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record.

/s/ *Robert Clore*

6